## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PIPEFITTERS LOCAL 537 ANNUITY FUND, On Behalf Of Themselves And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST CORPORATION, TED T. CECALA, DONALD E. FOLEY, DAVID R. GIBSON, ROBERT V.A. HARRA JR., and KEVYN N. RAKOWSKI,<br><br>Defendants. | No. 10-cv-00990-LPS |
| TIMOTHY ROONEY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST CORPORATION, TED T. CECALA, DONALD E. FOLEY, DAVID REED GIBSON, and ROBERT V.A. HARRA JR.,<br><br>Defendants. | No. 10-cv-00995-LPS |

[Additional captions continue on next page]

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF FMA ADVISORY, INC. AND KEITH CORDREY FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

| | |
|---|---|
| MOHAMMED ELZAGHA, Individually and On Behalf of All Others Similarly Situated, | No. 10-cv-01020-LPS |
| Plaintiff, | |
| v. | |
| WILMINGTON TRUST CORPORATION, TED T. CECALA, ROBERT V.A. HARRA JR., DAVID R. GIBSON, KEVYN N. RAKOWSKI, DONALD E. FOLEY, CAROLYN S. BURGER, R. KEITH ELLIOTT, LOUIS J. FREEH, GAILEN KURG, REX L. MEARS, STACEY J. MOBLEY, MICHELE M. ROLLINS, OLIVER R. SOCKWELL, ROBERT W. TUNNELL, JR., SUSAN D. WHITING, J.P. MORGAN SECURITIES and KEEFE, BRUYETTE & WOODS, INC., | |
| Defendants. | |
| VINCENT LYNCH, on behalf of himself and all others similarly situated, | No. 10-cv-1086-LPS |
| Plaintiff, | |
| v. | |
| WILMINGTON TRUST CORPORATION, TED T. CECALA, DONALD E. FOLEY, DAVID R. GIBSON, KEVYN N. RAKOWSKI, and ROBERT V.A. HARRA JR., | |
| Defendants. | |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES................................................................................ii, iii, iv

INTRODUCTION ...................................................................................................1

BACKGROUND OF THE RELATED ACTIONS ........................................................2

I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED ......................................3

II.     THE FMA/CORDREY GROUP SHOULD BE APPOINTED
        LEAD PLAINTIFF BECAUSE IT IS THE PRESUMPTIVELY
        MOST ADEQUATE PLAINTIFF...................................................................4

        A.      THE LEGAL REQUIREMENTS UNDER THE PSLRA.......................................4

        B.      THE FMA/CORDREY GROUP HAS COMPLIED WITH
                THE PSLRA ........................................................................................5

        C.      THE FMA/CORDREY GROUP IS THE PRESUMPTIVE LEAD
                PLAINTIFF BECAUSE IT HAS THE "LARGEST FINANCIAL
                INTEREST IN THE RELIEF SOUGHT BY THE CLASS" AS
                DETERMINED UNDER THE PSLRA..........................................................6

        D.      THE FMA/CORDREY GROUP OTHERWISE SATISFIES RULE 23 ...............6

                1.      The FMA/Cordrey Group's Claims are Typical of the Claims of the
                        Class.......................................................................................7

        E.      AS AN INSTITUTIONAL INVESTOR AND AN INDIVIDUAL
                INVESTOR WITH THE LARGEST FINANCIAL INTEREST IN THE
                RELIEF SOUGHT, THE FMA/CORDREY GROUP IS
                PARTICULARLY WELL-SUITED FOR APPOINTMENT AS LEAD
                PLAINTIFF.............................................................................................9

III.    THE COURT SHOULD APPROVE THE FMA/CORDREY GROUP'S
        CHOICE OF LEAD COUNSEL ....................................................................13

CONCLUSION.........................................................................................................13

## TABLE OF AUTHORITIES

**Case**                                                                                          **Page**

*Appleyard v. Wallace,*
    754 F.2d 955 (11th Cir. 1985) ........................................................................... 7

*Babcock v. Computer Assocs. Int'l, Inc.,*
    212 F.R.D. 126 (E.D.N.Y. 2003) ................................................................. 7, 8

*Bowman v. Legato Sys.,*
    195 F.R.D. 655 (N.D. Cal. 2000) ................................................................... 11

*Burke v. Ruttenberg,*
    102 F. Supp. 2d 1280 (N.D. Ala. 2000) ........................................................ 10

*Fischler v. Amsouth Bancorporation,*
    No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997)........... 7

*Gluck v. CellStar Corp.,*
    976 F. Supp. 542 (N.D. Tex. 1997) ........................................................ 11, 12

*Greebel v. FTP Software, Inc.,*
    939 F. Supp. 57 (D. Mass. 1996) ................................................................. 11

*In re Baan Co. Sec. Litig.,*
    186 F.R.D. 214 (D.D.C. 1999) ..................................................................... 11

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) ..................................................................... 6, 11

*In re Faro Techs. Sec. Litig.,*
    No. 6:05-CV-1810-ORL-22 (DAB), 2006 WL 1119201 (M.D. Fla. Apr. 26, 2006) ....... 10

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ............................................................................ 8

*In re Network Assocs. Sec. Litig.,*
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ......................................................... 11

*In re Oxford Health Plans Inc. Sec. Litig.,*
    182 F.R.D. 42 (S.D.N.Y. 1998) ..................................................................... 9

*In re Party City Sec. Litig.,*
    189 F.R.D. 91 (D.N.J.1999) ......................................................................... 9

*In re Razorfish Inc. Sec. Litig.,*
    143 F. Supp. 2d 304 (S.D.N.Y. 2001) ......................................................... 12

*Johnson v. Celotex Corp.,*
    899 F.2d 1281 (2d Cir. 1990).................................................................. 4

*Kennedy v. Tallant,*
    710 F.2d 711 (11th Cir. 1983) ............................................................. 8

*Kirkpatrick v. J.C. Bradford & Co.,*
    827 F.2d 718 (11th Cir. 1987) ............................................................. 8

*Laborers Local 1298 Pension Fund v. Campbell Soup Co.,*
    No. Civ. A. 00-152, 2000 WL 486956 (D.N.J. April 24, 2000) ........................................ 9

*Lax v. First Merchants Acceptance Corp.,*
    No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ...................... 7, 9

*Philips v. Joint Legislative Comm. On Performance & Expenditure Review,*
    637 F.2d 1014 (5th Cir. 1981) ............................................................. 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.,*
    229 F.R.D. 395 (S.D.N.Y. 2004) .......................................................... 5, 7

*Priest v. Zayre Corp.,*
    118 F.R.D. 552 (D. Mass. 1988)............................................................ 7

*Ravens v. Iftikar,*
    174 F.R.D. 651 (N.D. Cal. 1997) .......................................................... 11

*Rossini v. Ogilvy & Mather, Inc.,*
    798 F.2d 590 (2d Cir. 1986)............................................................... 7

*Schriver v. Impac Mortg. Holdings, Inc.,*
    SACV 06-31 CJC, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. Mar 2, 2006) ...................... 6

*Schulman v. Lumenis, Ltd.,*
    No. 02 Civ. 1989 (DAB), 2003 WL 21415287 (S.D.N.Y. June 18, 2003)...................... 11

## STATUTES

15 U.S.C. §77k(e) ......................................................................... 6

15 U.S.C. §77z-1(a)(1).................................................................... 4

15 U.S.C. §§77z-1(a)(3)(A) .............................................................. 4, 5

15 U.S.C. §77z-1(a)(3)(A)(i) ............................................................ 4

15 U.S.C. §§77z-1(a)(3)(B) ............................................................................ 4, 5, 6, 13

15 U.S.C. §77z-1(a)(3)(B)(i) .................................................................................. 4

15 U.S.C § 77z-1(a)(3)(B)(ii)(I) ............................................................................ 9

15 U.S.C. §77z-1(a)(3)(B)(iii) ............................................................................ 5, 6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) .......................................................................... 9

15 U.S.C. §77z-1(a)(3)(B)(iii)(II)(aa).................................................................... 13

15 U.S.C §77z-1(a)(3)(B)(v) ................................................................................ 13

15 U.S.C. §§77l(a)(2) ............................................................................................ 2

15 U.S.C. §§78j(b) ................................................................................................ 2

15 U.S.C. §§78t(a) ................................................................................................ 2

Fed. R. Civ. P. 23(a) ............................................................................................ 2

Fed. R. Civ. P. 23(a)(4) ........................................................................................ 8

Fed. R. Civ. P. 42(a) ........................................................................................ 1, 3

## INTRODUCTION

Movants FMA Advisory, Inc. ("FMA") and Keith Cordrey ("Cordrey") (collectively the "FMA/Cordrey Group") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 27 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) consolidating the above-captioned related class actions (the "Related Actions") pursuant to Fed. R. Civ. P. 42(a); (2) appointing the FMA and Cordrey as Lead Plaintiffs pursuant to the PSLRA; (3) approving their selection of Gardy & Notis, LLP and Faruqi & Faruqi, LLP as plaintiffs' lead counsel in this action and in any subsequently filed and/or related cases; and (4) granting such other and further relief as the Court may deem just and proper.

FMA, an institutional investor, is a member of the putative class in the Related Actions and suffered losses in excess of approximately $211,949[1] as a result of its investments in the securities of Wilmington Trust Corporation ("Wilmington" or the "Company" or "Defendant"). Cordrey, an individual investor, is also a member of the putative class in the Related Actions and suffered losses in excess of approximately $233,680[2] as a result of his investments in the securities of Wilmington and also options for the securities of Wilmington. The FMA/Cordrey Group, with combined losses in excess of $445,629 in losses, believe that they have incurred the largest loss of any other movant, and as such, they have the largest financial interest in the outcome of this litigation, and satisfies the requirements to qualify as the "most adequate

---

[1]   *See* Declaration of John G. Harris in Support of the Motion Of FMA Advisory, Inc. and Keith Cordrey For Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel (the "Harris Decl."), Ex. A (Sworn certification of Peter J. LaBella on behalf of FMA Advisory, Inc.).

[2]   *See* Harris Decl. Ex. B (Sworn certification of Keith Cordrey).

plaintiff" as defined by the PSLRA. The FMA/Cordrey Group also satisfy the requirements of Fed. R. Civ. P. 23(a), as their claims are typical of the other members of the putative class, and they will fairly and adequately represent the class. The FMA/Cordrey Group will also be able to fairly and adequately represent a subclass of options purchasers. In addition, the FMA/Cordrey Group have selected law firms with substantial experience in prosecuting securities class actions to serve as lead counsel for the class.

## BACKGROUND OF THE RELATED ACTIONS

The Related Actions are federal securities class actions brought on behalf of persons and entities who purchased or otherwise acquired Wilmington securities. The related actions assert claims against Wilmington and certain of its officers and directors under Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2), and 77(o)) and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Wilmington is a full service bank founded in 1903. The Company describes itself as a relationship management company that helps clients increase and preserve their wealth through a variety of deposit-taking, lending, fiduciary, trustee, financial planning, investment consulting, asset management, insurance, broker-dealer, and administrative services.

Beginning around October 23, 2009 and until November 1, 2010, Wilmington repeatedly issued SEC filings that were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them during the Class Period: (1) the Company improperly delayed recording loan charge offs; (2) that the Company's reported income and asset quality were materially overstated due to Defendants material understatement of Wilmington's loan loss provisions, loan loss reserves

and income tax expense; (3) that as a result of the foregoing, the Company's financial statements were materially false and misleading and not fairly presented in conformity with GAAP; (4) that the Company's internal and disclosure controls were materially deficient; (5) that the Company was engaged in unsafe and/or unsound banking practices; and (6) based on the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company, its prospects and growth.

On November 1, 2010, Wilmington announced it lost $365.3 million in the third quarter of 2010, the quarter ended September 30, 2010, primarily as a result of a $281.5 million charge to "reflect the increased risk in our loan portfolio" and a $100.7 million income tax charge resulting from the Company's continued losses and the uncertainty about the reliability of Wilmington's deferred tax asset due to the poor credit quality of its loan portfolio. Defendants also announced that after "carefully stud[ying] the company's strategic options" and "review[ing] a wide range of alternatives," Wilmington's Board of Directors determined that "the best option for our shareholders, as well as our clients and the employees" was a merger with M&T at a value of $3.84 per common share, or more than *40% less* than its previously inflated market value of $7.11 per share.

As a result of these materially false and misleading statements and failures to disclose, Wilmington common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Wilmington common stock relying upon the integrity of the market price of Wilmington common stock and market information relating to Wilmington, and have been damaged thereby.

## ARGUMENT

## I.  THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42 (a). Pending before this Court are four Related Actions, each of

which asserts class claims on behalf of those who purchased Wilmington common stock. The Actions each name the Company and certain of its officers and/or directors as defendants and involve the same factual and legal issues.[3] Consolidation is therefore appropriate. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

## II.   THE FMA/CORDREY GROUP SHOULD BE APPOINTED LEAD PLAINTIFF BECAUSE IT IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF

### A.   The Legal Requirements Under the PSLRA

The PSLRA establishes a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §77z-1(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. §77z-1(a)(3)(A)(i). Here, the first of the Related Actions was filed on November 18, 2010, and plaintiff's counsel in that action published a press release announcing the filing and notifying class members of their right to move the Court to serve as lead plaintiff no later than 60 days thereafter.

Second, within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§77z-1(a)(3)(A) and (B).

Next, within 90 days after publication of the initial notice of pendency, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or

---

[3]   Consolidation is appropriate notwithstanding slight variations in the complaints filed in the Related Actions.   Indeed, the The FMA/Cordrey Group will appropriately resolve such variations in a consolidated amended complaint.

members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §77z-1(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa)   has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §77z-1(a)(3)(B)(iii); *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 402-04 (S.D.N.Y. 2004).

## B.   The FMA/Cordrey Group Has Complied With the PSLRA

The time period in which class members may move to be appointed Lead Plaintiff in this case, under 15 U.S.C. §77z-1(a)(3)(A) and (B), expires on January 18, 2010.  The FMA/Cordrey Group's application, filed on January 18, 2010, is thus timely.  The FMA/Cordrey Group has also reviewed the complaints against Wilmington and is willing to serve as a representative party on behalf of the Class.  *See* Harris Decl. Exs. A & B.  In addition, the FMA/Cordrey Group has selected and retained competent counsel to represent it and the Class.  *See* Harris Decl. Exs. C & D (attaching firm resumes of Gardy & Notis, LLP and Faruqi & Faruqi, LLP).

Accordingly, the FMA/Cordrey Group has satisfied the individual requirements of 15 U.S.C. §77z-1(a)(3)(B) and is entitled to have its application for appointment as lead plaintiff, and its selection of lead counsel approved by the Court.

5

### C.   The FMA/Cordrey Group Is the Presumptive Lead Plaintiff Because It Has the "Largest Financial Interest In the Relief Sought By the Class" As Determined Under the PSLRA

According to 15 U.S.C. §77z-1(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the class member who represents the largest financial interest in the relief sought by the action. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (identification of the most adequate plaintiff, "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'").

Here, the FMA/Cordrey Group incurred a loss of approximately $445,629 on its transactions in Wilmington stock, based on the damage methodology set forth in 15 U.S.C. §77k(e). *See* Harris Decl. Exs. A & B. The FMA/Cordrey Group believes that its investment in Wilmington common stock and its losses from such investments are greater than those of all other qualified movants seeking appointment as lead plaintiff.

### D.   The FMA/Cordrey Group Otherwise Satisfies Rule 23

The PSLRA provides that in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §77z-1(a)(3)(B).  With respect to the claims of class representatives, Fed. R. Civ. P. 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the class.  For purposes of a motion to appoint lead plaintiff pursuant to the PSLRA, however, "the prospective lead plaintiff need only make a *prima facie* showing that it meets the typicality and adequacy factors." *Schriver v. Impac Mortg. Holdings, Inc.*, SACV 06-31 CJC, 2006 U.S. Dist. LEXIS 40607, at *16 (C.D. Cal. Mar 2, 2006) (citation

omitted); *see also Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 6, 1997); *Fischler v. Amsouth Bancorporation*, No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412. As detailed below, the FMA/Cordrey Group readily satisfies both the typicality and adequacy requirements of Rule 23.

1. **The FMA/Cordrey Group's Claims are Typical of the Claims of the Class**

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *see also Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412; *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003). The requirement that the proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412; *Philips v. Joint Legislative Comm. On Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted that determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citation omitted). Since the plaintiffs seek to prove that defendants "committed the same unlawful acts in the same method against an entire class . . . all

members of this class have identical claims . . . therefore, the certification of the suite as a class action satisfied the requirements of typicality requirement of Rule 23(a)(3)." *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, the FMA/Cordrey Group seeks to represent a class of purchasers of Wilmington securities that have identical, non-competing and non-conflicting interests. The FMA/Cordrey satisfies the typicality requirement because, just like all other members of the class, it purchased Wilmington common stock and suffered economic loss thereby when the price of Wilmington common stock declined as a result of the materially false and misleading statements published by the defendants.

    **2.**    **The FMA/Cordrey Group will Fairly and Adequately Represent the Interests of the Class**

The adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of a proposed lead plaintiff to the existence of any conflicts between the interest of the lead plaintiff and the members of the class. This standard for adequacy is met if it appears that (1) the named plaintiff has interests in common with, and not antagonistic to, the class' interests; and (2) the plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation. *See, e.g., Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995); *Babcock*, 212 F.R.D. at 131 (citation omitted) (stating that the standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the proposed Lead Plaintiff and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation.).

The FMA/Cordrey Group meets the adequacy requirement, as it will effectively manage this litigation and will vigorously represent the interest of all members of the class. Specifically, (1) the FMA/Cordrey Group's interests are aligned with, and not adverse to those of the Class; (2) the FMA/Cordrey Group has obtained qualified and experienced counsel; and (3) the members of the FMA/Cordrey Group have submitted certifications indicating their willingness to assume the responsibilities of a class representative. *See generally Lax*, 1997 U.S. Dist. LEXIS 11866, at *21-25.

**E.    As An Institutional Investor And An Individual Investor With the Largest Financial Interest In The Relief Sought, The FMA/Cordrey Group Is Particularly Well-Suited For Appointment As Lead Plaintiff**

The FMA/Cordrey Group presents the favorable opportunity to appoint both an institutional investor and an individual investor as lead plaintiff. The PSLRA provides that the most adequate plaintiff may be a "person or group of persons," or "member or members of the proposed plaintiff class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); § 77z-1(a)(3)(B)(ii)(I). Courts have favored appointing groups containing both institutional and individual investors as lead plaintiff. *See, e.g., Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. Civ. A. 00-152, 2000 WL 486956, at *3 (D.N.J. April 24, 2000) ("The Court also considers it desirable to have both an institutional investor, like Connecticut, and individual investors, like DeValle and Green, included as lead plaintiffs since each may bring a unique perspective to the litigation."); *In re Party City Sec. Litig.*, 189 F.R.D. 91, 114 (D.N.J.1999) (appointing institutional investor and individual investor as lead plaintiff); *In re Oxford Health Plans Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (appointing both institutional investors and individual investors as lead plaintiff "ensures that the interests of all class members will be adequately represented in the

9

prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants.").

Here, the FMA/Cordrey Group has an institutional investor and an individual investor, both suffering large losses in Wilmington securities. FMA is a classic example of the sort of lead plaintiff envisioned by Congress in its enactment of the PSLRA – a sophisticated institutional investor with a real financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts by improving the quality of representation in securities class actions"). The legislative history of the PSLRA demonstrates that it was intended to encourage institutional investors such as the FMA to serve as lead plaintiff. The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."

> \*       \*       \*

> The Conference Committee believes that . . . in many cases the beneficiaries of pension funds - small investors - ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in*, 1995 U.S.C.C.A.N. 730, 733.

Courts around the country have noted a Congressional preference to appoint institutional investors. *See, e.g., In re Faro Techs. Sec. Litig.*, No. 6:05-CV-1810-ORL-22 (DAB), 2006 WL 1119201, at \*3 (M.D. Fla. Apr. 26, 2006) (favoring proposed institutional investor lead plaintiff); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1331 (N.D. Ala. 2000) (noting aim of PSLRA was to

encourage institutional investors to control securities class actions); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"); *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (one purpose behind the PSLRA is "to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel'") (citation omitted). "Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs." *Id.; see also In re Cendant Corp. Litig.*, 264 F.3d at 244 (Congress "anticipated and intended that [institutional investors] would serve as lead plaintiffs.").[4]

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996). Furthermore, Congress believed that "increasing the role of institutional investors in class actions would ultimately benefit shareholders and assist courts by improving the quality of representation in securities class action." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (stating that Congress wanted to encourage large, sophisticated institutional investors to direct securities class actions, thereby supplanting the prior regime of "figurehead plaintiffs who exercise no meaningful supervision of litigation"). Congress reasoned that the empowerment of institutional

---

[4]    *See also Bowman v. Legato Sys.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) (institutional investors are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA] lead plaintiff requirements . . ."); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional investor").

investors would result in the appointment of lead plaintiffs that can best prosecute the claims and are best able to negotiate with and oversee counsel. *See In re Razorfish Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation . . . ."); *Gluck*, 976 F. Supp. at 548 ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors").

This presumption is rooted in Congress' belief that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts." S. Rep. No. 104-98, at 11 (1995). In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have or readily could develop the expertise necessary to assess whether plaintiffs' attorneys are acting as faithful champions for the plaintiff class.

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman"); *see also* S. Rep. No. 104-98, at 11 n.32 (noting that Weiss & Beckerman provided "the basis for the most adequate plaintiff provision").

The FMA/Cordrey Group is ideally suited for the role as lead plaintiff. As an institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, and an individual investor who will bring his own unique perspective to the litigation, the FMA/Cordrey Group will be able to actively represent the class and ensure that the interests of all class members will be adequately represented in the prosecution of the action.

## III.   THE COURT SHOULD APPROVE THE FMA/CORDREY GROUP'S CHOICE OF LEAD COUNSEL

The FMA/Cordrey Group's choice of lead counsel satisfies the requirements of the PSLRA.  Pursuant to 15 U.S.C §77z-1(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class.  The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. §77z-1(a)(3)(B)(iii)(II)(aa).  The FMA/Cordrey Group selected and retained Gardy & Notis, LLP and Faruqi & Faruqi, LLP to serve as lead counsel for the class.  Gardy & Notis, LLP and Faruqi & Faruqi, LLP both possess extensive experience litigating securities class actions and have both successfully prosecuted numerous securities class actions on behalf of injured investors.  *See* Harris Decl. Ex. C and D.  Thus, the Court may be assured that by approving the FMA/Cordrey Group's choice of lead counsel, the class will receive the highest caliber of legal representation.

## CONCLUSION

For the reasons stated above, the FMA/Cordrey Group satisfies the requirements of the PSLRA for appointment as the most adequate plaintiff in this action and should be appointed lead plaintiff pursuant to 15 U.S.C. §77z-1(a)(3)(B).  As the most adequate plaintiff, the FMA/Cordrey Group respectfully requests that the Court: (1) consolidate the above-captioned related actions; (2) appoint the FMA/Cordrey Group as lead plaintiff pursuant to the PSLRA; (3) approve the FMA/Cordrey Group's selection of Gardy & Notis, LLP and Faruqi & Faruqi, LLP as lead counsel in this action and in any subsequently filed and/or related cases; and (4) grant such other and further relief as the Court may deem just and proper.

**BERGER HARRIS, LLC**

By:   */s/ John G. Harris*

John G. Harris (DE ID No. 4017)
Brian M. Gottesman (DE ID No. 4404)
1201 N. Orange Street, 3rd Floor
Wilmington, Delaware 19801
Tel: 302-655-1140
Fax: 302-655-1131
jharris@bergerharris.com
bgottesman@bergerharris.com

*Counsel for Movant The FMA/Cordrey Group and
Proposed Delaware Counsel for the Class*

Dated: January 18, 2011
Wilmington, Delaware

**OF COUNSEL:**

**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis
Charles A. Germershausen
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7337
Fax: 201-567-7377

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Juan E. Monteverde
369 Lexington Ave., 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331

*Counsel for Movant The FMA/Cordrey Group
and Proposed Lead Counsel for the Class*

14

**SADIS & GOLDBERG LLP**
Douglas Hirsch
Charles Dufresne
551 Fifth Avenue, 21st Floor
New York, New York 10176
Tel: 212-573-6660
Fax: 212-573-6661

*Counsel for Movant The FMA/Cordrey Group*