## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| PIPEFITTERS LOCAL 357 ANNUITY FUND, on Behalf Of Themselves And All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST CORPORATION, TED T. CECALA, DONALD E. FOLEY, DAVID R. GIBSON, ROBERT V.A. HARRA, JR. and KEVYN N. RAKOWSKI,<br><br>                     Defendants. | Civil Action No. 10-00990 (LPS) |

[Captions Continued On Next Page]

### MEMORANDUM OF LAW IN SUPPORT OF KORNITZER CAPITAL MANAGEMENT, INC.'s MOTION FOR CONSOLIDATION, FOR APPOINTMENT AS LEAD PLAINTIFF, AND FOR APPROVAL OF ITS SELECTION OF LEAD AND LIAISON COUNSEL

                                                  Joseph J. Farnan, III (Bar No. 3945)
                                                  Brian E. Farnan (Bar No. 4089)
                                                  FARNAN LLP
                                                  919 North Market Street, 12th Floor
                                                  Wilmington, DE  19801
                                                  Telephone: (302) 777-0300
                                                  Facsimile: (302) 777-0301
                                                  Email: jjfarnan@farnanlaw.com
                                                                              bfarnan@farnanlaw.com

Date: January 18, 2011                                 Counsel for Movant

[Additional counsel listed on signature block]

| | |
|---|---|
| TIMOTHY ROONEY, Individually And On Behalf Of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>    v.<br><br>WILMINGTON TRUST CORPORATION, TED T. CECALA, DONALD E. FOLEY, DAVID REED GIBSON and ROBERT V.A. HARRA, JR.,<br><br>                         Defendants. | Civil Action No. 10-00995 (LPS) |
| MOHAMMED ELZAGHA, Individually and On Behalf Of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>    v.<br><br>WILMINGTON TRUST CORPORATION, TED T. CECALA, ROBERT V.A. HARRA, JR., DAVID R. GIBSON, KEVYN N. RAKOWSKI, DONALD E. FOLEY, CAROLYN S. BURGER, R. KEITH ELLIOTT, LOUIS J. FREEH, GAILEN KRUG, REX L. MEARS, STACEY J. MOBLEY, MICHELE M. ROLLINS, OLIVER R. SOCKWELL, ROBERT W. TUNNELL, JR., SUSAN D. WHITING, J.P. MORGAN SECURITIES and KEEFE, BRUYETTE & WOODS, INC.,<br><br>                         Defendants. | Civil Action No. 10-01020 (LPS) |

|  |  |
|---|---|
| VINCENT LYNCH, On Behalf Of Himself And All Others Similarly Situated,<br><br>                           Plaintiff,<br><br>    v.<br><br>WILMINGTON TRUST CORPORATION, TED T. CECALA, DONALD E. FOLEY, DAVID R. GIBSON, KEVYN N. RAKOWSKI, and ROBERT V.A. HARRA, JR.,<br><br>                         Defendants. | Civil Action No. 10-01086 (LPS) |

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................. 1

II. STATEMENT OF FACTS ............................................ 3

III. ARGUMENT ...................................................... 5

    A. The Actions Should Be Consolidated For All Purposes .................... 5

    B. Movant Is The Most Adequate Applicant and Should Be Appointed Lead Plaintiff .................................................. 6

        1. Movant Has Complied with the Notice and Filing Provisions of the PSLRA ................................. 6

        2. Movant Suffered The Largest Loss Of Any Other Movant .......... 7

        3. No Grounds Exist To Challenge KCM's Adequacy As Lead Plaintiff .................................................. 8

    C. The Court Should Approve KCM's Choice of Counsel .................. 10

IV. CONCLUSION .................................................. 12

## TABLE OF AUTHORITIES

Page

**Cases**

*City of Roseville Employees' Retirement System v. Horizon Lines Inc.*,
   No. CIV. A. 08-969, 2009 WL 1811067 (D. Del. June 18, 2009) .............. 6, 8-10

*Dutton v. Harris Stratex Networks, Inc.*, NO. CIV. A. 08-755,
   2009 WL 1598408 (D. Del. June 5, 2009) ........................................ 5

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) .................................. 1, 8-10

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ........................ 1, 10

*In re Cendant Corp. Litig.*, 182 F.R.D. 476 (D.N.J. 1998) ...................... 6

*In re Century Business Services Sec. Litig.*, 202 F.R.D. 532 (N.D. Ohio 2001) .......... 5

*In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286 (E.D.N.Y.1998) ................ 5

*Malasky v. IAC/Interactivecorp*, No. 04 Civ. 7447 (RJH),
   2004 WL 2980085 (S.D.N.Y. Dec. 21, 2004) ..................................... 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ............. 1

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................ *passim*

**Other Authorities**

H.R. Rep. No. 104-369 (1995) .................................................... 1

Fed. R. Civ. P. 42(a) ........................................................... 5

## I. INTRODUCTION

Kornitzer Capital Management, Inc. ("KCM" or "Movant") respectfully submits this memorandum of law in support of its motion for consolidation, appointment as lead plaintiff, and for approval of its selection of lead and liaison counsel. As an institutional investor, KCM is uniquely qualified to serve as lead plaintiff on behalf of the class proposed in the above-referenced actions and is precisely the type of investor that Congress had in mind when it passed the Private Securities Litigation Reform Act ("PSLRA") in 1995. The legislative history of the PSLRA reflects that it was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, *inter alia*, such investors will possess substantial business acumen and, motivated by a significant financial interest in the outcome of the action, "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Rep. No. 104-369, at 34 (1995); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2508 (2007) (PSLRA "aimed to increase the likelihood that institutional investors – parties more likely to balance the interests of the class with the long-term interests of the company – would serve as lead plaintiffs"); *In re Cavanaugh*, 306 F.3d 726, 738 (9th Cir. 2002) (PSLRA's lead plaintiff provisions "promote the goal of attracting institutional investors ..."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 243-244 (3d Cir. 2001) ("The plaintiff with the largest stake in a given securities class action will almost invariably be a large institutional investor, and the PSLRA's legislative history expressly states that Congress anticipated and intended that such investors would serve as lead plaintiffs") (citation omitted). As explained below, appointment of KCM as lead plaintiff in this consolidated securities action will fulfill the goal of the PSLRA.

Presently pending before this Court are at least four securities class action lawsuits (the "Actions") that, with some variations in length of class period and/or defendants named, are brought on behalf of those persons or entities that purchased or otherwise acquired the publicly traded securities, including common stock, of Wilmington Trust Corporation ("Wilmington Trust" or the "Company") between, at the earliest, April 18, 2008 and November 1, 2010, inclusive (the "Class Period"). As noted below, the Actions all allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78(j)(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against Defendant Wilmington Trust, as well as Defendants Ted. T. Cecala ("Cecala"), the Company's former Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board"); Donald E. Foley, Cecala's successor as CEO and Board Chairman; David R. Gibson, the Company's Chief Financial Officer ("CFO"); Robert V.A. Harra, Jr., the Company's President and Chief Operating Officer ("COO"); and Kevin N. Rakowski, the Company's Senior Vice President and Controller:

| CASE NAME | CASE NO. | DATE FILED |
|---|---|---|
| *Pipefitters Local 537 Annuity Fund v. Wilmington Trust Corp., et al.* | CV-10-00990-LPS | 11/18/2010 |
| *Rooney v. Wilmington Trust Corp., et al.* | CV-10-00995-LPS | 11/19/2010 |
| *Elzagha v. Wilmington Trust Corp., et al.* | CV-10-01020-LPS[1] | 11/23/2010 |
| *Lynch v. Wilmington Trust Corp., et al.* | CV-10-01086-LPS | 12/10/2010 |

As discussed below, consolidation of the above-captioned actions is appropriate because

---

[1] The *Elzagha* action also asserts claims under the 1933 Securities Act against members of the Company's Board, as well as the underwriters of the Company's February 23, 2010 common stock offering.

each alleges substantially identical claims based upon virtually identical factual allegations against many of the same defendants. In addition, because Movant is the "most adequate" plaintiff to represent those who purchased or otherwise acquired Wilmington Trust securities during the Class Period, it should be appointed as lead plaintiff. Movant has also selected and retained the Edgar Law Firm LLC (the "Edgar Firm") and Shepherd Finkelman Miller & Shah, LLP ("SFMS") to serve as its counsel, both of which have extensive experience in prosecuting securities fraud and other complex litigation matters, as well as Farnan LLP ("Farnan"), a Wilmington-based firm with extensive experience in this Court in complex litigation, including securities cases, to serve as its liaison counsel. Those selections should be approved.

## II.   STATEMENT OF FACTS[2]

Wilmington Trust is a financial services holding company incorporated in this State. Complaint, ¶¶7, 20. Several months prior to the start of the Class Period, the Complaint alleges that Wilmington Trust was desperate for cash and in December, 2008, issued $330 million in preferred stock to the U.S. Treasury under the Troubled Asset Relief Program ("TARP"). Complaint, ¶23. However, at that time and continuing through the Class Period, the quality of Wilmington Trust's loan portfolio was continuing to decline; the Complaint includes a graph showing the dramatic increase in the Company's percentage of problematic loans – from just over 9% to almost 21% of the Company's total loan portfolio over a span of just five quarters. Complaint, ¶¶24, 27-28.

However, the Company's stock price needed to be shored up so that, *inter alia*, additional

---

[2]These facts are based upon the complaint filed on November 18, 2010 in the first of the Actions to be commenced, *Pipefitters Local 537 Annuity Fund v. Wilmington Trust Corp., et al.*, Civil Action No. 10-00990-LPS (the "Complaint").

capital could be raised to repay the TARP funding. Complaint, ¶24. Accordingly, Wilmington Trust never increased its loan loss reserves, claiming instead that the amount of the reserve was "appropriate" and was the Company's "best estimate ... based on subjective judgments" and "sound" "methodology." Complaint, ¶¶29, 38. Contrary to its claimed compliance with Generally Accepted Accounting Principles ("GAAP"), the named Defendants caused Wilmington Trust to intentionally or recklessly delay recognition of its loan losses and understated its income tax expense in order to maintain the Company's artificially inflated stock price. Complaint, ¶25.

Contemporaneous with the Company's February, 2010 stock offering and continuing thereafter, Wilmington Trust's loan portfolio came under increasing regulatory scrutiny. Complaint, ¶¶29, 44. In June, 2010, an analyst report was issued, in which the Company's stock was downgraded based upon the discovery that Wilmington Trust's loan portfolio was in worse condition than previously disclosed. Complaint, ¶¶31, 52. One month later, the Company announced an unexpected loss of $116.4 million for the second quarter of 2010, which was attributed to, *inter alia*, increases in nonperforming loans. Complaint, ¶¶35, 55. Although each of these revelations resulted in significant price declines on heavy trading volume, it was not until November 1, 2010 that the proverbial bottom dropped out of the Company's stock price. That day, it was announced that Wilmington Trust had incurred an additional $281.5 million in loan losses, the amount of nonperforming loans had almost doubled from that reported at the end of the previous quarter, and that, in Defendants' opinion, the "best available option for [the Company'] stockholders" was to agree to a merger with M&T Bank Corporation at a value of $3.84 per common share, which was more than 40% less than the Company's then, albeit

inflated, market value of $7.11 per share. Complaint, ¶¶35, 62.

## III. ARGUMENT

### A. The Actions Should Be Consolidated For All Purposes.

Consolidation is appropriate where there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a). Here, each of the above-captioned Actions assert claims for violation of the Exchange Act on behalf of a proposed class of persons who purchased or otherwise acquired Wilmington Trust securities during substantially similar time periods.[3] All the Actions name the Company, both its former and current CEO, and most of Wilmington Trust's other senior officers as defendants (as noted, the *Elzagha* action names members of the Company's Board as additional defendants) and involve the same factual and legal issues – specifically, whether the plaintiffs purchased or otherwise acquired Wilmington Trust common stock and other publicly traded securities at prices which were artificially inflated as a result of Defendants' false and misleading statements, and whether Defendants' acts violate Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. Accordingly, the test for consolidation is met here. *See, e.g., Dutton v. Harris Stratex Networks, Inc.*, NO. CIV.A 08-755, 2009 WL 1598408, at *1 (D. Del. June 5, 2009) (consolidation appropriate where, *inter alia*, the actions involved the same defendants, "nearly identical allegations regarding materially false and

---

[3] Of the four Actions, the class period alleged in the *Lynch* action is the longest, and is used by KCM as it is the most encompassing. Generally, it would be premature to decide the proper class period at this stage because any discrepancies among the Actions will be resolved through the Lead Plaintiff's filing of an amended complaint. In addition, courts have not viewed differences in class periods as an impediment to consolidation. *See, e.g., Malasky v. IAC/ Interactivecorp*, No. 04 Civ. 7447 (RJH), 2004 WL 2980085, at *2 (S.D.N.Y. Dec. 21, 2004); *In re Century Business Services Sec. Litig.*, 202 F.R.D. 532, 537 (N.D. Ohio 2001); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 292-93 (E.D.N.Y.1998).

misleading statements" regarding a company's "financial well-being," which allegedly caused the market price of the company's securities to be artificially inflated); *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998) ("[C]onsolidation is common in federal securities class action cases"). Moreover, consolidation will result in substantial efficiencies for the Court and the parties. Therefore, the above-captioned Actions should be consolidated for all purposes.

### B. Movant Is The Most Adequate Applicant And Should Be Appointed Lead Plaintiff.

#### 1. Movant Has Complied with the Notice and Filing Provisions of the PSLRA

The PSLRA establishes a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§78u-4(a)(1) and (a)(3)(B)(I). *See, e.g.*, *City of Roseville Employees' Retirement System v. Horizon Lines Inc.*, No. CIV. A. 08-969, 2009 WL 1811067, at *1 (D. Del. June 18, 2009) (describing "two-step process" for appointment of lead plaintiff pursuant to the PSLRA). Pursuant to this procedure, the plaintiff who files the initial action must publish a notice to the class within twenty (20) days of filing the action. This notice must inform class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(I). Within sixty (60) days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Here, notice of the filing of the first of the Actions, *Pipefitters Local 537 Annuity Fund*, was published on November 18, 2010, following the filing of the Complaint in that Action. *See*

Exhibit "A" to the Declaration of Brian E. Farnan ("Farnan Dec.") submitted herewith. Accordingly, the time period in which class members may move to be appointed lead plaintiff in this case expires on January 18, 2011. *See* 15 U.S.C. §78u- 4(a)(3)(A) and (B). Movant now timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

The Certification of KCM, which is attached to the supporting Farnan Dec. as Exhibit "B," states that a representative of KCM, duly authorized to prosecute these claims, has reviewed the allegations of the Complaint and that KCM is willing to serve as a representative on behalf of the class. In addition, KCM has selected and retained competent counsel to represent it and the class. The firm resumes for the Edgar Firm, SFMS and Farnan LLP are collectively attached as Exhibit "C" to the Farnan Dec. Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have its motion for appointment as lead plaintiff granted, and its selection of the Edgar Firm and SFMS as lead counsel, and Farnan LLP as liaison counsel, approved by the Court.

### 2. Movant Suffered The Largest Loss Of Any Other Movant

The PSLRA provides that, within ninety (90) days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that
>
> > (aa) has either filed the complaint or made a motion

> in response to a notice...;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). *See City of Roseville*, 2009 WL 1811067, at *1; *see also Cavanaugh*, 306 F.3d at 729-730.

During the Class Period, KCM purchased Wilmington Trust common stock and suffered significant losses. Specifically, as reflected in its Certification (Exhibit "B"), KCM purchased a total of 113,400 shares of the Company's common stock during the Class Period and, after subtracting for the value of those retained shares, has suffered estimated losses in excess of $1,070,000,[4] which demonstrates KCM's financial interest in the outcome of this action. To the best of Movant's knowledge, there are no other applicants seeking appointment as lead plaintiff that have a larger financial interest. Therefore, KCM satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action, and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. §78u-4 (a)(3)(B).

### 3. No Grounds Exist To Challenge KCM's Adequacy As Lead Plaintiff

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the

---

[4]Under the Exchange Act, losses are calculated as the difference between the purchase or sale price paid and the mean trading price over a 90-day period beginning after the close of the class period. *See* 15 U.S.C. § 78u-4(e)(1). Here, although the 90-day period has not ended, the mean or average closing price for Wilmington Trust common stock from November 2, 2010 through January 14, 2011 (74 calendar days and 52 trading days) is $4.23 per share. A chart reflecting the calculation of KCM's losses is attached as Exhibit "1" to KCM's Certification.

requirements of Rule 23 of the Federal Rules of Civil Procedure." In selecting a lead plaintiff, it is well established that the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a). *See City of Roseville*, 2009 WL 1811067, at *2 (noting that the inquiry "need not be extensive," and that "institutional investors and others with large losses will, more often than not, satisfy the typicality and adequacy requirements") (quoting *Cendant*, 264 F.3d at 263-265); *see also Cavanaugh*, 306 F.3d at 730. KCM should be appointed lead plaintiff because it satisfies the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical – but not identical – of those of the class. The Court should ask "whether the circumstances of the movant, or the legal theory upon which the movant bases its claims, 'are markedly different' from those of the other class members." *City of Roseville*, 2009 WL 1811067, at *2 (quoting *Cendant*, 264 F.3d at 265). Here, KCM satisfies this requirement because, just like all other class members, it purchased or otherwise acquired Wilmington Trust common stock during the Class Period; the prices at which those purchases were made were artificially inflated because of Defendants' materially false and misleading statements and/or omissions; and it suffered damages as a result of Defendants' conduct. Thus, KCM's claims arise out of the same course of events as those of other class members and are typical.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." In this Circuit, adequacy determines "whether the movant has the ability and incentive to vigorously represent the class claims, whether it has obtained adequate counsel, and whether there is any conflict between the movant's claims and the claims it asserts

on behalf of the class." *City of Roseville*, 2009 WL 1811067, at *2 (citations omitted).[5]

Here, KCM is an adequate representative of the class. Like the class, KCM has sustained substantial damages as a result of its purchase of Wilmington Trust common stock and would benefit from the same relief. Furthermore, there is no evidence of any antagonism between KCM and the class. In addition, as shown below, Movant's proposed lead and liaison counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Having suffered significant losses, KCM will also be motivated to vigorously prosecute this action. Thus, KCM satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

C. **The Court Should Approve KCM's Choice of Counsel**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. *See, e.g., Cendant*, 264 F.3d at 276 ("[T]he [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"); *Cavanaugh*, 306 F.3d at 734 (the PSLRA "clearly leaves the choice of class counsel in the hands of the lead plaintiff"). KCM has selected the Edgar Firm and SFMS to serve as co-lead counsel in this case. Both the Edgar Firm and SFMS have substantial experience in the prosecution of shareholder, securities and other complex litigation, and have the resources necessary to efficiently conduct

---

[5] As the *City of Roseville* court observed, the *Cendant* court "added two additional adequacy factors in the PSLRA context:" "'whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel.'" *Id.*, 2009 WL 1811067, at *2 (citation omitted). The first factor has been met and the second factor is only applicable "where a group of plaintiffs jointly move for lead plaintiff status," *id.*, and has no application here.

this litigation. In addition, Farnan LLP is well-equipped and more than capable to act as liaison counsel. Accordingly, the Court should approve KCM's selection of co-lead counsel and liaison counsel.

## IV. CONCLUSION

For all of the foregoing reasons, Movant respectfully requests that the Court: (i) consolidate these actions; (ii) appoint KCM as lead plaintiff in this consolidated action; and (iii) approve Movant's selection of Edgar Law Firm LLC and Shepherd, Finkelman, Miller & Shah, LLP to serve as co-lead counsel, and Farnan LLP to serve as liaison counsel.

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Joseph J. Farnan, III (Del. Bar No. 3945)
Brian E. Farnan (Del. Bar No. 4089)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Email: jjfarnan@farnanlaw.com
       bfarnan@farnanlaw.com

Counsel for Movant

OF COUNSEL:

John M. Edgar
John F. Edgar
EDGAR LAW FIRM, LLC
1032 Pennsylvania Ave.
Kansas City, MO 64105
Telephone: (816) 531-0033
Facsimile: (816) 531-3322
Email: jme@edgarlawfirm.com
       jfe@edgarlawfirm.com

James E. Miller
Patrick A. Klingman
Karen Leser-Grenon
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
Email: jmiller@sfmslaw.com
       pklingman@sfmslaw.com
       kleser@sfmslaw.com

Scott R. Shepherd
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 E. State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
Email: sshepherd@sfmslaw.com
       nfinkelman@sfmslaw.com

Lesley E. Weaver
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
199 Fremont Street, 20th Floor
San Francisco, CA 94105-2255
Telephone: (415) 992-7282
Facsimile: (415) 489-7701
E-mail: lweaver@sfmslaw.com

Date: January 18, 2011