**UNITED STATES DISTRICT COURT**

**DISTRICT OF DELAWARE**

| | |
|---|---|
| PIPEFITTERS LOCAL 537 ANNUITY FUND, On Behalf of Themselves And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST CORPORATION, TED T. CECALA, DONALD E. FOLEY, DAVID R. GIBSON, ROBERT V.A. HARRA JR., and KEVYN N. RAKOWSKI,<br><br>Defendants. | No. 10-cv-00990-LPS<br><br>(Securities Class Action)<br><br>Hon. Leonard P. Stark |

(caption continued on subsequent page)

**BRIEF IN FURTHER SUPPORT OF THE MOTION OF THE INSTITUTIONAL INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF CO-LEAD COUNSEL AND CONSOLIDATION OF ALL RELATED ACTIONS**

Pamela S. Tikellis (Bar No. 2172)
A. Zachary Naylor (Bar No. 4439)
**CHIMICLES & TIKELLIS LLP**
222 Delaware Avenue, Suite 1100
Wilmington, Delaware 19801
(302) 656-2500

*Proposed Liaison Counsel*

Gerald H. Silk
Avi Josefson
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1285 Avenue of the Americas
New York, New York 10019
(212) 554-1400

Maya Saxena
Joseph E. White III
**SAXENA WHITE P.A.**
2424 North Federal Highway
Suite 257
Boca Raton, Florida 33431
(561) 394-3399

*Counsel for Proposed Lead Plaintiff the Institutional Investor Group and Proposed Co-Lead Counsel for the Class*

Blair A. Nicholas
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
12481 High Bluff Drive
Suite 300
San Diego, CA 92130
(858) 793-0070

*Counsel for Proposed Lead Plaintiff the Institutional Investor Group and Proposed Co-Lead Counsel for the Class*

Dated: February 4, 2011

| | |
|---|---|
| TIMOTHY ROONEY, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST CORPORATION, TED T. CECALA, DONALD E. FOLEY, DAVID REED GIBSON and ROBERT V.A. HARRA, JR.,<br><br>Defendants. | No. 10-cv-00995-LPS<br><br>(Securities Class Action)<br><br>Hon. Leonard P. Stark |
| MOHAMMED ELZAGHA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST CORPORATION, TED T. CECALA, ROBERT V.A. HARRA, JR., DAVID R. GIBSON, KEVYN N. RAKOWSKI, DONALD E. FOLEY, CAROLYN S. BURGER, R. KEITH ELLIOTT, LOUIS J. FREEH, GAILEN KRUG, REX L. MEARS, STACEY J. MOBLEY, MICHELE M. ROLLINS, OLIVER R. SOCKWELL, ROBERT W. TUNNELL, JR., SUSAN D. WHITING, J.P. MORGAN SECURITIES and KEEFE, BRUYETTE & WOODS, INC.,<br><br>Defendants. | No. 10-cv-01020-LPS<br><br>(Securities Class Action)<br><br>Hon. Leonard P. Stark |
| VINCENT LYNCH, on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST CORPORATION, TED T. CECALA, DONALD E. FOLEY, DAVID R. GIBSON, KEVYN N. RAKOWSKI and ROBERT V.A. HARRA, JR.,<br><br>Defendants. | No. 10-cv-01086-LPS<br><br>(Securities Class Action)<br><br>Hon. Leonard P. Stark |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ........................................................................................................ 3

I. The Institutional Investor Group Should Be Appointed Lead Plaintiff .............................. 3

A. The Institutional Investor Group Has The Largest Financial Interest In The Relief Sought By The Class ........................................................................ 3

B. The Institutional Investor Group Is An Ideal Lead Plaintiff Group Under Controlling Third Circuit Precedent ........................................................ 5

II. The Institutional Investor Group Has Chosen Counsel Who Have Already Devoted Significant Effort and Resources to the Prosecution of this Litigation ............................. 8

III. Kornitzer Misstated Its Transactions In Wilmington Stock, Overstated Its Losses And Is Otherwise Inadequate ........................................................................ 10

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES


**Page(s)**

**CASES**

*A.F.I.K. Holding SPRL v. Fass*,
216 F.R.D. 567 (D.N.J. 2003)....................5

*City of Roseville Emps. Ret. Sys. v. Horizon Lines Inc.*,
No. 08-cv-969, 2009 U.S. Dist. LEXIS 62572 (D. Del. June 18, 2009)....................4

*Cortese v. Radian Group, Inc.*,
Civil Action No. 07-3375, 2008 U.S. Dist. LEXIS 6958 (E.D. Pa. Jan. 30, 2008)....................5

*Foley v. Transocean Ltd.*,
10-cv-05233-NRB, 2011 U.S. Dist. LEXIS 1541 (S.D.N.Y. Jan. 3, 2011)....................4, 11

*Gannon v. Cont'l Ins. Co.*,
920 F. Supp. 566 (D.N.J. 1996)....................14

*Greater Pa. Carpenters Pension Fund v. Adolor Corp.*,
Civil Action No. 04-1728, 2004 U.S. Dist. LEXIS 26205 (E.D. Pa. Dec. 29, 2004)....................5

*In re Am. Bus. Fin. Servs., Inc. Noteholders Litig.*,
Civil Action No. 05-232, 2005 U.S. Dist. LEXIS 5074 (E.D. Pa. Mar. 29, 2005)....................4, 5

*In re Bank of Am. Corp. Sec. Derivative and Empl. Ret. Income Sec. Act (ERISA) Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009)....................6

*In re Cable & Wireless, PLC Sec. Litig.*,
217 F.R.D. 372 (E.D. Va. 2003)....................13

*In re Cell Pathways, Inc. Sec. Litig.*,
203 F.R.D. 189 (E.D. Pa. 2001)....................4, 7

*In re Cendant Corp. Litigation*,
264 F.3d 201 (3d Cir. 2001).................... *passim*

*In re Molson Coors Brewing Co. Sec. Litig*,
233 F.R.D. 147 (D. Del 2005)....................9

*In re Nice Sys., Ltd. Sec. Litig.*,
188 F.R.D. 206 (D.N.J. 1999)....................5, 12

*In re Terayon Commc'n Sys., Inc., Sec. Litig.*,
No. C 00-01967 MHP, 2004 U.S. Dist. LEXIS 3131 (N.D. Cal. Feb. 23, 2004)....................13

*In re Vicuron Pharms., Inc. Sec. Litig.*,
225 F.R.D. 508 (E.D. Pa. 2004)....................4

*In re Vonage Initial Pub. Offering Sec. Litig.*,
No. 07-177(FLW), 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 7, 2007)..........................3, 12

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l Inc.*,
Civ. No. 00-cv-3605 (DRD), 2000 U.S. Dist. LEXIS 16712 (D.N.J. Nov. 16, 2000) ..........5, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
127 S.Ct. 2499 (2007)..........9

**STATUTES**

15 U.S.C. § 77z-1.......... *passim*

15 U.S.C. § 78m..........11

15 U.S.C. § 78u-4 .......... *passim*

The Merced County Employees' Retirement Association, the Coral Springs Police Pension Fund, the St. Petersburg Firefighters' Retirement System, the Pompano Beach General Employees Retirement System, and the Automotive Industries Pension Trust Fund (collectively the "Institutional Investor Group"), respectfully submit this Brief in further support of their Motion and in opposition to the competing movants.[1]

## INTRODUCTION

The Institutional Investor Group has by far the largest financial interest of any of the four movants in this litigation under the plain language of the PSLRA and the standards adopted by the Third Circuit Court of Appeals in *In re Cendant Corp. Litigation*, 264 F.3d 201, 263 (3d Cir. 2001) ("*Cendant*"), as illustrated by the following chart:

| Movant | Purchases | Net Funds Expended | FIFO Loss | LIFO Loss |
|---|---|---|---|---|
| **Institutional Investor Group** | **174,750** | **$1,909,405** | **$2,022,414** | **$1,352,401** |
| Public Pension Funds | 132,220 | $535,003 | $1,125,363 | $1,095,799 |
| Kornitzer[2] | 113,400 | $1,552,856 | $1,073,174 | $1,073,174 |
| FMA/Cordrey | 54,210 | $570,345 | $445,629 | $445,629 |

Further, the Institutional Investor Group has made a *prima facie* showing that it "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," 15

[1] The other movants seeking Lead Plaintiff appointment are: (1) State-Boston Retirement System, Norfolk County Retirement System and Oklahoma Police Pension & Retirement System (collectively, the "Public Pension Funds"); (2) Kornitzer Capital Management, Inc. ("Kornitzer"); and (3) FMA Advisory, Inc. and Keith Cordrey (collectively, "FMA/Cordrey"). In recognition of the Institutional Investor Group's superior financial interest, FMA/Cordrey withdrew its motion in support of the Institutional Investor Group. *See* D.I. 17. Similarly, the Public Pension Funds have acknowledged that they lack the largest financial interest. *See* D.I. 16.

[2] This chart utilizes the data provided by Kornitzer on its Certification. As discussed in Section III, *infra*, that Certification appears to be materially deficient and the losses and transaction information contained therein grossly overstated.

U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(cc), 78u-4(a)(3)(B)(iii)(I)(cc), and is an adequate group under the PSLRA and *Cendant*. Specifically, *Cendant* established that a small, cohesive collaboration of sophisticated institutional investors such as the Institutional Investor Group, which is capable of supervising and overseeing counsel as well as the litigation, is an appropriate Lead Plaintiff. Indeed, as discussed below, the majority of the largest and most important recoveries achieved under the PSRLA were obtained by groups of institutional investors, including the more than $3 billion recovered in *Cendant* itself.

Here, the Certifications, Joint Declaration and Supplemental Joint Declaration of the Institutional Investor Group (collectively, the "Joint Declarations") demonstrate that the Group more than satisfies the requirements for appointment of a Lead Plaintiff group laid out in *Cendant*.[3] Specifically, the members of the Institutional Investor Group joined together of their own volition and conferred on multiple occasions regarding the prosecution of the case and supervision of counsel. *See* Supplemental Joint Declaration ¶ 3. The Institutional Investor Group also negotiated a reasonable fee agreement and caused its counsel to enter into a Joint Prosecution Agreement providing for the division of the work in the case and ensuring that the case is handled in a vigorous, efficient, and cost-effective manner.[4] *See id.* ¶¶ 5-6; *see also In re Cendant* 264 F.3d at 266. These steps further demonstrate that the Institutional Investor Group has the ability and incentive to drive the litigation.

Each of the other movants has a far smaller financial interest in the litigation than the Institutional Investor Group, and their motions must therefore be denied. Moreover, the only

---

[3] *See* Supplemental Joint Declaration of the Institutional Investor Group (herein, the "Supplemental Joint Declaration") attached as Ex. A to the Supplemental Declaration of A. Zachary Naylor (herein, the "Naylor Supplemental Decl."); *see also* D.I. 13 at Exs. A and E.

[4] The Institutional Investor Group will provide the Court with the Joint Prosecution Agreement *in camera*, upon the Court's request.

remaining movant that challenges the Institutional Investor Group's Motion, Kornitzer, is inadequate to serve as Lead Plaintiff. As discussed below, Kornitzer's Certification violates the PSLRA by not disclosing extensive trading that it was required to include on its Certification and, thereby, inaccurately representing its losses. In addition, Kornitzer is an investment advisor that has in the past misrepresented its authority to seek Lead Plaintiff appointment of behalf of its advisory clients. Kornitzer also lacks standing to pursue claims under the Securities Act of 1933 arising out of the February 2010 offering of Wilmington Trust Corporation ("Wilmington" or the "Company") stock because it did not purchase shares in that offering and, therefore, cannot represent the entire Class. These deficiencies render Kornitzer inadequate to serve as Lead Plaintiff. *See In re Vonage Initial Pub. Offering Sec. Litig.*, No. 07-177(FLW), 2007 U.S. Dist. LEXIS 66258, at *27-28 n.8 (D.N.J. Sept. 7, 2007); *see also* 15 U.S.C. §§ 77z-1(a)(2)(A); 78u-4(a)(2)(A).

Because the Institutional Investor Group has the largest financial interest in the litigation and has made a *prima facie* showing of its typicality and adequacy, it is presumed to be the most adequate plaintiff and no "proof" exists to rebut the Institutional Investor Group's typicality or adequacy to represent the Class. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(cc)-(II), 78u-4(a)(3)(B)(iii)(I)(cc)-(II). Accordingly, the Institutional Investor Group should be appointed Lead Plaintiff.

## ARGUMENT

### I. The Institutional Investor Group Should Be Appointed Lead Plaintiff

#### A. The Institutional Investor Group Has The Largest Financial Interest In The Relief Sought By The Class

The Institutional Investor Group's financial interest eclipses the financial interest of all other movants by a considerable margin. When determining which movant has the largest

financial interest, the Third Circuit has set forth the following factors for courts to consider: "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs."[5] *Cendant*, 264 F.3d at 262 (citations omitted); *City of Roseville Emps. Ret. Sys. v. Horizon Lines Inc.*, No. 08-cv-969, 2009 U.S. Dist. LEXIS 62572, at *4 (D. Del. June 18, 2009).

Here, the Institutional Investor Group's financial interest eclipses the financial interest of all other movants by a considerable margin, as illustrated by the chart above. *See supra* at 2. Indeed, the Institutional Investor Group suffered a loss that is over ***79% greater*** than the Public Pension Funds, a loss approximately ***88% greater*** than Kornitzer, and almost ***353% greater*** than FMA/Cordrey when calculated on a first-in-first-out ("FIFO") basis. On a last-in-first-out ("LIFO") basis, the Institutional Investor Group suffered a loss that is over ***23% greater*** than the Public Pension Funds, over ***26% greater*** than Kornitzer, and approximately ***203%*** greater than FMA/Cordrey.[6] Because the Institutional Investor Group possesses the largest financial interest by any measure, it is entitled to the presumption that it is the most adequate plaintiff.

---

[5] Courts in this Circuit consider the losses to be the most important factor. *See In re Am. Bus. Fin. Servs., Inc. Noteholders Litig.*, Civil Action No. 05-232, 2005 U.S. Dist. LEXIS 5074, at *2-*4 (E.D. Pa. Mar. 29, 2005) (describing only amount of losses suffered); *see also In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (citations omitted) (noting that financial loss is the most significant element); *In re Cell Pathways, Inc. Sec. Litig.*, 203 F.R.D. 189, 191 (E.D. Pa. 2001) (comparing movants' losses only).

[6] "LIFO calculates losses by assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale . . . FIFO assumes that the first stocks to be sold are the stocks that were acquired first." *Foley v. Transocean Ltd.*, 10-cv-05233-NRB, 2011 U.S. Dist. LEXIS 1541, at *11 (S.D.N.Y. Jan. 3, 2011).

### B. The Institutional Investor Group Is An Ideal Lead Plaintiff Group Under Controlling Third Circuit Precedent

The Third Circuit made unequivocally clear in *Cendant* that a group of investors such as the Institutional Investor Group is an appropriate lead plaintiff under the express terms of the PSLRA. *See In re Cendant*, 264 F.3d at 266 ("The PSLRA expressly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).[7] Specifically, the Third Circuit held that a group of sophisticated investors that is small enough to operate as a single unit and that has made affirmative showings of its ability to vigorously represent the Class' claims including the ability to negotiate a reasonable retainer agreement is an ideal group under the PSLRA. *See id.* at 223-224, 264-269 (affirming district court's appointment of a Lead Plaintiff group composed of CalPERS, New York State Common Retirement Fund and New York City Pension Funds); *see also Cortese v. Radian Group, Inc.*, Civil Action No. 07-3375, 2008 U.S. Dist. LEXIS 6958, at *12-13 (E.D. Pa. Jan. 30, 2008) (finding group of institutional investors that promised to maximize recovery for the class and retained counsel on a contingency basis was an adequate group); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 573 (D.N.J. 2003) (individual and institution were an appropriate lead plaintiff group based on affidavits that the members were "ready, willing, and able to represent the class"); *Local 144 Nursing Home Pension Fund v. Honeywell Int'l Inc.*, Civ. No. 00-cv-3605 (DRD), 2000 U.S. Dist. LEXIS 16712, at *14 (D.N.J. Nov. 16, 2000) (five institutional investors that submitted evidence of their ability to vigorously litigate the action and supervise counsel were an appropriate lead plaintiff group).

[7] Courts within this Circuit have repeatedly found that groups of five investors are able to effectively coordinate and supervise litigation. *See In re Am. Bus.*, 2005 U.S. Dist. LEXIS 5074, at *7 (appointing group of five investors as lead plaintiff); *Greater Pa. Carpenters Pension Fund v. Adolor Corp.*, Civil Action No. 04-1728, 2004 U.S. Dist. LEXIS 26205, at *11 (E.D. Pa. Dec. 29, 2004); *Honeywell*, 2000 U.S. Dist. LEXIS 16712, at *13 (same); *In re Nice Sys., Ltd. Sec. Litig.*, 188 F.R.D. 206, 221 (D.N.J. 1999) (same).

Courts recognize the benefit of having sophisticated institutional investors working together as a Lead Plaintiff to ensure the class is provided with the best possible representation. *See id* at *13-14. Indeed, 86 of the top 100 recoveries (by dollar value) under the PSLRA were achieved by institutional Lead Plaintiffs and ***fully 44 of these—just over 51%—were achieved by Lead Plaintiff groups composed of multiple institutional investors***. *See* Naylor Supplemental Decl. Ex. B. The recoveries obtained by Lead Plaintiff groups include four of the top ten and eight of the top fifteen largest securities class action resolutions in history, including *Cendant*. *Id.* Moreover, two of the most significant cases to arise from the recent economic crisis are being led by groups of institutional investors. *See In re Bank of Am. Corp. Sec. Derivative and Empl. Ret. Income Sec. Act (ERISA) Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing group of five institutions); *In re Lehman Brothers Equity/Debt Securities Litigation*, 08-cv-05523-LAK (S.D.N.Y. July 31, 2008) (same). *See* Naylor Supplemental Decl. Ex. C. In addition, several of the largest securities class actions currently being litigated in this Circuit are led by groups that mirror the characteristics of the Institutional Investor Group. *See e.g. In re Schering-Plough Corp./ENHANCE Litig.*, 08-CV-397-DMC-JAD (D.N.J.) (appointing group composed of five pension funds); *In re Merck & Co., VYTORIN/ZETIA Secs. Litig.*, 08-CV-2177-DMC-JAD, (D.N.J.) (appointing group comprised of five institutional investors) (Naylor Supplemental Decl. Exs. D and E).

The Institutional Investor Group not only satisfies the standards laid out in this Circuit's controlling opinion in *Cendant*, it is an exemplary Lead Plaintiff. Each member of the Institutional Investor Group is a sophisticated pension fund representing union automotive workers, firefighters, police officers, and other public employees. These institutions are accustomed to acting as fiduciaries and have already demonstrated their ability to vigorously

prosecute this case. Specifically, the Institutional Investor Group's Joint Declarations, the Joint Prosecution Agreement and the reasonable fee the Group negotiated with counsel demonstrate that the Institutional Investor Group is independent of its attorneys and is capable of and incentivized to prosecute the litigation and supervise counsel. *Cendant*, 264 F.3d at 224, 265-269 (finding "no indication" that Lead Plaintiff group was artificially created by its lawyers because it made affirmative showings of its independence, including negotiating a reasonable fee). As the Joint Declarations make clear, the members of the Institutional Investor Group each determined independently to join together to prosecute this Action with the shared belief that such litigation, spearheaded by dedicated and sophisticated institutions, would guarantee that the action is vigorously prosecuted to provide the maximum recovery possible for the Class. *See* Joint Declaration ¶¶ 1-9; Supplemental Joint Declaration ¶¶ 2-3. Moreover, the Institutional Investor Group's members jointly conferred to discuss each member's respective duties to effectively monitor and oversee the action. *See* Joint Declaration ¶¶ 10-12; Supplemental Joint Declaration ¶¶ 4-5. Specifically, the members of the Institutional Investor Group discussed their commitment to providing the Class with the best representation possible by directing litigation strategy and participating in all major litigation decisions. *Id*. Such demonstrated cooperation between the members of the Institutional Investor Group repudiates any challenge to the Group's ability to effectively oversee or manage the litigation. *See In re Cell Pathways, Inc. Sec. Litig.*, 203 F.R.D. 189, 193-94 (E.D. Pa. 2001) (holding that affidavits of four investors describing their commitment to vigorously prosecute the action in the best interests of the Class demonstrated the group was "capable of monitoring counsel" and thus an adequate Class representative).

Indeed, the members of the Institutional Investor Group have worked closely together and engaged in discussions both before and after the filing of their opening lead plaintiff motion.

Such discussions resulted in the formation of a Joint Prosecution Agreement between Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Saxena White, P.A. ("Saxena White"), through which the Institutional Investor Group memorialized its ability to oversee counsel by delineating protocols for the communication between the members of the Institutional Investor Group and counsel and the allocation of work between counsel. Supplemental Joint Declaration ¶¶ 5-6. Specifically, the Joint Prosecution Agreement establishes that this litigation is to be efficiently prosecuted through several oversight mechanisms, including: (1) attorney-in-charge designations to facilitate orderly decision making; (2) group communication and attorney reporting protocols to ensure that members of the Institutional Investor Group remain apprised of the status of the action and to guard against duplicative attorney efforts; (3) stipulations allocating work between counsel to aid the expeditious and orderly prosecution of the litigation; (4) detailed record-keeping requirements for attorney time, which shall be made available to the Institutional Investor Group, to foster the efficient litigation of this action; and (5) the establishment of a joint litigation fund to properly finance the litigation. *See id.*

Accordingly, the Institutional Investor Group has fully demonstrated that it is an appropriate Lead Plaintiff under *Cendant* and its progeny.

## II. The Institutional Investor Group Has Chosen Counsel Who Have Already Devoted Significant Effort and Resources to the Prosecution of this Litigation

This Court should approve the Institutional Investor Group's selection of Bernstein Litowitz and Saxena White to serve as Co-Lead Counsel for the Class. Pursuant to the PSLRA, the Lead Plaintiff is tasked with selecting Lead Counsel to represent the Class, subject to Court approval. 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v); *see In re Cendant*, 264 F.3d at 276 ("[T]he Reform act evidences a strong presumption in favor of approving a properly-

selected lead plaintiff's decisions as to counsel selection and counsel retention."); *In re Molson Coors Brewing Co. Sec. Litig*, 233 F.R.D. 147, 150-51 (D. Del 2005) (Jordan, J).

Bernstein Litowitz is one of the preeminent securities class action law firms, and Saxena White is similarly experienced in litigating on behalf of injured investors. *See* D.I. 13 at Ex. E, ¶¶ 11-12; *see also* D.I. 13 at Ex. F-G; D.I. 14 at pp. 12-14. In fact, Bernstein Litowitz served as Co-Lead Counsel in *In re Cendant Corporation Securities Litigation*, 2:98-cv-01664-WHW-ES (D.N.J.) in this Circuit, in which it recovered over $3 billion on behalf of defrauded investors.

In addition to their impressive experience litigating complex securities class actions, counsel for the Institutional Investor Group have conducted an extensive two-month investigation into Wilmington's alleged misconduct. *See* Supplemental Joint Declaration ¶¶ 8-9. This rigorous investigation is necessary in order to allege fraud and scienter with particularity as required by the PSLRA. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2510 (2007) (inference of fraud must be "cogent and compelling"). For example, counsel for the Institutional Investor Group have identified over 700 former employees and have already spoken with dozens of such witness about the facts relating to this case. *See* Supplemental Joint Declaration ¶¶ 8-9. The Group's counsel have also consulted with forensic accounting experts concerning Wilmington's accounting treatment for the loan portfolio at issue in the litigation. *Id.* Accordingly, the Institutional Investor Group's selection of counsel further demonstrates the Group's adequacy and the Class will be well served by its appointment.

Bernstein Litowitz and Saxena White each have the necessary expertise and resources to vigorously litigate this Action in the best interests of the Class. *See* D.I. 13 Ex. E, ¶¶ 11-12; *see also* D.I. 13 Exs. F-G; D.I. 14 at pp. 12-14. By entering into the Joint Prosecution Agreement, Bernstein Litowitz and Saxena White ensured that this action will be prosecuted without

duplicative efforts or costs, and that there will be regular, detailed communications with the Institutional Investor Group. Accordingly, this Court should approve the Institutional Investor Group's selection of Co-Lead Counsel and otherwise grant its Motion.

## III. Kornitzer Misstated Its Transactions In Wilmington Stock, Overstated Its Losses And Is Otherwise Inadequate

Although it lacks the largest financial interest, Kornitzer's submission nonetheless requires scrutiny because Kornitzer appears to have overstated its loss and submitted a Certification that disregards the requirements of the PSLRA. Specifically, Kornitzer's Certification states that it reflects all ***"purchases***" of Wilmington stock during the Class Period. D.I. 11 Ex. B (emphasis added). That is directly contrary to the PSLRA, which expressly requires Lead Plaintiff movants to identify all "***transactions***" in the subject security – ***purchases and sales***. 15 U.S.C. §§ 77z-1(a)(2)(A); 78u-4(a)(2)(A) (emphasis added). Indeed, in the last three cases in which it sought appointment as Lead Plaintiff, Kornitzer complied with the PSLRA and expressly stated that its Certification reflected ***all transactions*** of the subject security. See Naylor Supplemental Decl. Exs. F, G and H.[8] Kornitzer's deviation from past compliance with the PSLRA, despite the fact that all four Certifications were signed by Kornitzer's CEO, John C. Kornitzer, and that the same counsel represented Kornitzer in each case, suggests that Kornitzer intentionally omitted sales of Wilmington stock. The only reason to omit such sales would be to overstate Kornitzer's purported interest in this litigation.

Specifically, Kornitzer's Certification identifies total purchases of 113,400 shares of Wilmington and ***no sales***, and calculates Kornitzer's loss of more than $1 million by treating all

[8] Kornitzer's Certification is also deficient in that it fails to identify the *Sequenom* litigation as a securities class action in which it sought to serve as Lead Plaintiff, as required by the PSLRA. 15 U.S.C. §§ 77z-1(a)(2)(A); 78u-4(a)(2)(A).

113,400 shares as being retained through the end of the Class Period.[9] As an institutional money manager, however, Kornitzer is required by the SEC to file quarterly statements of its holdings pursuant to Form 13F.[10] *See* 15 U.S.C. § 78m(f). Kornitzer's Form 13F filings before and during the Class Period reflect transactions in Wilmington stock that directly contradict the Certification submitted in this case. In particular, Kornitzer engaged in significant sales of Wilmington stock during the Class Period – including sales of at least 62,242 shares during the third quarter of 2009, when Wilmington stock traded at an average price of approximately $12.60 per share, roughly triple the price that Kornitzer used to calculate its losses. Taking into account its sales during that quarter alone, it is quite possible that Kornitzer overstated its loss by as much as ***half a million dollars***.[11] According to Kornitzer's Form 13F filings, the Fund also sold over 10,000 shares between September 2008 and the end of March 2009, when Wilmington stock traded at an average of more than $18 per share – ***more than 4 times*** the price Kornitzer

[9] Under the PSLRA, the losses incurred on so-called "retained" shares are calculated using the average price of Wilmington stock during the 90 days following the end of the Class Period. *Transocean*, 2011 U.S. Dist. LEXIS 1541, at *14. Here, Kornitzer used an average price of $4.23 per share to calculate the losses on all 113,400 shares.

[10] Forms 13F, by providing quarterly holding information, give a snapshot of an institution's trading but do not provide the full transaction data required by the PSLRA. By comparing holdings at the end of each quarter, it is possible to establish whether Kornitzer increased or decreased its total position and, if the latter, calculate the minimum shares sold during the quarter.

[11] That is, if the loss on those 62,242 shares is calculated using the average share price of $12.60, the loss would be approximately $520,965 lower than if calculated using the $4.23 per share price applied by Kornitzer.

used to calculate its loss.[12] The Forms 13F, which show that Kornitzer held 210,893 shares as of March 31, 2008 and 210,743 shares as of June 30, 2008 flatly contradict Kornitzer's Certification, which reports holding no shares of Wilmington as of the start of the Class Period on April 18, 2008.

By not reporting its complete transactions, Kornitzer not only overstates its loss but also prevents application of the financial interest analysis dictated by the Third Circuit in *Cendant*. As noted above, that analysis requires consideration of net expenditures – the monies spent to buy shares ***less the monies received from sales***. Courts in this Circuit also consider the number of net shares purchased (total purchases ***less total sales***) as part of the financial interest analysis. *In re Nice Sys., Ltd. Secs. Litig.*, 188 F.R.D. 206, 217 (D.N.J. 1999). Here, comparing the shares Kornitzer reported holding at the start of the Class Period on Forms 13F with reported holdings at the end of the Class Period reveals a net increase of just 14,458 shares during the Class Period – roughly 10% of the 113,400 net shares that Kornitzer claims to have purchased.

The fact that Kornitzer's Certification violates the PSLRA, overstates its losses and omits information central to the financial interest analysis required by the Third Circuit provides ample

[12] In addition, the Semi-Annual Report for the Buffalo Funds – mutual funds whose trading Kornitzer has included with its own in past Lead Plaintiff motions – shows that those funds held 77,000 shares of Wilmington as of September 2010 and that an undisclosed number of those shares are "segregated as collateral for open written option contracts." *See* Buffalo Funds Semi-Annual Report, Naylor Supplemental Decl. Ex. I. Accordingly, Kornitzer's Certification either failed to accurately describe the shares held by the Buffalo Funds or, if the Certification excluded the Buffalo Funds, failed to include the transactions of a major Kornitzer advisory client.

grounds to reject its motion.[13] *See In re Vonage*, 2007 U.S. Dist. LEXIS 66258, at *27-28 n.8 (rejecting Lead Plaintiff whose certification contained misleading trading data and loss calculations and other errors); *In re Terayon Commc'n Sys., Inc., Sec. Litig.*, No. C 00-01967 MHP, 2004 U.S. Dist. LEXIS 3131, at *25-*28 (N.D. Cal. Feb. 23, 2004) (explaining failure to disclose several transactions in PSLRA certification rendered plaintiffs inadequate and atypical representative); *see also* 15 U.S.C. §§ 77z-1(a)(2)(A); 78u-4(a)(2)(A).

But Kornitzer is inadequate for additional reasons, and subject to unique defenses that preclude its appointment. *See e.g.*, *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 377-78 (E.D. Va. 2003) (citing cases for the proposition that "[c]ourts have refused to appoint as [sole] lead plaintiff investors . . . with the largest loss that are subject to unique defenses or are otherwise infirm"). Specifically, Kornitzer is an investment advisory firm whose Lead Plaintiff motion is based not only on its own trading, but on the trading of certain unidentified clients that purportedly authorized Kornizter to assert this motion on their behalf. Kornitzer does not identify which clients whose claims it asserts here, but its website states that Kornitzer "manages separate accounts for foundations, pensions, trusts, family offices, endowment funds, small businesses and Fortune 500 companies" while also serving as the investment manager (and founder) of the Buffalo Funds – a family of 10 publicly registered mutual funds – and as the investment manager for "all of [the] Common and Collective Funds" offered by the Great Plains Trust Company. *See* Naylor Supplemental Decl. Ex. L.

---

[13] A chart reflecting Kornitzer's holdings as reported in Forms 13F during the Class Period, and the change in position from the prior quarter, is provided as Ex. J to the Naylor Supplemental Declaration. A chart provided as Ex. K to the Naylor Supplemental Decl. shows that in past cases where Kornitzer's Certification included both purchases and sales, the holdings reflected in the Certification mirrored the holdings reported on Forms 13F, while in this case the holdings of Wilmington stock reported on Forms 13F deviate substantially from the holdings reported on Kornitzer's Certification.

Kornitzer has in the past claimed to have authority to represent the Buffalo Funds in securities litigation when it could not demonstrate such authority. Specifically, in *In re Faro Technologies Inc. Securities Litigation*, No. 6:05-cv-1810-ACC-DAB (M.D. Fl. 2008), Kornitzer was appointed Lead Plaintiff on the basis of investments made on behalf of certain of the Buffalo Funds, which were not identified to the court in Kornitzer's Lead Plaintiff motion. *See* Memorandum of Law in Support of the Motion for Lead Plaintiff Appointment, *In re Faro Tech. Inc. Sec. Litig.*, (M.D. Fl. Feb. 6, 2006) (ECF No. 19). Naylor Supplemental Decl. Ex. M. When defendants opposed Kornitzer's motion for class certification, Kornitzer could not demonstrate any such authority and its management agreement with the Buffalo Funds in fact stated that Kornitzer has no such authority. Naylor Supplemental Decl. Exs. N and O. Tellingly, just one week after defendants challenged Kornitzer's adequacy, Kornitzer moved to stay the *Faro* litigation in order to mediate a quick settlement of the case. Naylor Supplemental Decl. Ex. P.

Finally, Kornitzer alone is incapable of representing the entire Class because it cannot assert claims under the Securities Act arising out of Wilmington's February 23, 2010 offering of 18.88 million shares of Wilmington stock at $13.25 per share, which raised over $250 million for the Company.[14] Kornitzer did not purchase shares pursuant to this offering and, therefore, lacks standing to represent the members of the Class who can assert claims under the Securities Act. *See e.g.*, *Gannon v. Cont'l Ins. Co.*, 920 F. Supp. 566, 575 (D.N.J. 1996) (a plaintiff who purchased securities "on the open market" has no cause of action under Section 11). Accordingly, in order to represent the Class, Kornitzer would need to work together with an

[14] Claims under Sections 11, 12(a)(2) and 15 of the Securities Act arising out of the February 2010 offering have been asserted against Wilmington, its officers and directors and the underwriters of the offering. Class Action Complaint at 40-42, *Elzagha v. Wilmington*, No. 10-cv-01020-LPS (D. Del. Jan. 23, 2010) (D.I. 1).

investor who purchased on the offering, and include that investor as a named plaintiff and class representative in order to cover all claims.[15]

In contrast, the Institutional Investor Group is able to assert claims under ***both*** the Securities Act and Exchange Act because certain of its members purchased 8,750 Wilmington shares pursuant to the February 23, 2010 offering. The Group can therefore represent the interests of the ***entire*** Class.

## CONCLUSION

For the reasons discussed above, the Institutional Investor Group respectfully requests that the Court: appoint the Institutional Investor Group to serve as Lead Plaintiff, approve the Institutional Investor Group's selection of Bernstein Litowitz and Saxena White as Co-Lead Counsel for the Class and consolidate the related actions.

Dated: February 4, 2011

Respectfully Submitted,

/s/ A. Zachary Naylor

Pamela S. Tikellis (Bar No. 2172)
A. Zachary Naylor (Bar No. 4439)
**CHIMICLES & TIKELLIS LLP**
222 Delaware Avenue, Suite 1100
Wilmington, Delaware 19801
Telephone: (302) 656-2500
Facsimile: (302) 656-9053

*Proposed Liaison Counsel for the Class*

Gerald H. Silk
Avi Josefson
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

[15] For this reason, Kornitzer cannot be heard to challenge the Institutional Investor Group simply because it is a group of institutions since Kornitzer itself cannot represent the Class without working as part of a similar group.

1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

Blair A. Nicholas
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
12481 High Bluff Drive
Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

Maya Saxena
Joseph E. White III
**SAXENA WHITE P.A.**
2424 North Federal Highway
Suite 257
Boca Raton, Florida 33431
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

*Counsel for Proposed Lead Plaintiff the Institutional Investor Group and Proposed Co-Lead Counsel for the Class*