# EXHIBIT M



BOARD OF GOVERNORS
OF THE
FEDERAL RESERVE SYSTEM
WASHINGTON, D. C. 20551

ADDRESS OFFICIAL CORRESPONDENCE
TO THE BOARD

June 27, 2014

**By electronic mail and by mail**
Hannah G. Ross, Esq.
Bernstein Litowitz Berger & Grossman LLP
1285 Avenue of the Americas, 38th Floor
New York, NY  10019

Joseph E. White, III
Saxena White P.A.
2424 N. Federal Highway, Suite 257
Boca Raton, FL  33431

   Re: Request for Access to Confidential Supervisory Information in *In re Wilmington Trust Securities Litigation*, No. 10-cv-00990-SLR (D. Del.)

Dear Ms. Ross and Mr. White:

  This regards your letter to me dated June 4, 2014 ("June 4 letter"), in which you state that you represent the Court-appointed Lead Plaintiffs ("Lead Plaintiffs") in the above-captioned securities class action pending in United States District Court for the District of Delaware against Wilmington Trust Corporation ("WTC" or "Bank") and certain WTC executives, board members, audit committee members, outside auditors, and underwriters (collectively, "Defendants").  You have provided me with some of the pleadings in this case, including the Stipulation and Protective Order Governing the Production and Exchange of Confidential Information, filed May 28, 2014 ("Protective Order") and the Fourth Amended Consolidated Securities Class Action Complaint, filed June 13, 2013 ("Complaint").  You have also provided the Court's March 20, 2014 opinion granting in part and denying in part Defendants' Motion to Dismiss.  *See In re Wilmington Trust Securities Litig.*, 2014 WL 1151988 (D. Del., Mar. 20, 2014) ("Opinion").

  As I understand from your June 4 letter, and from the Court's Opinion, this is a securities class action asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").  You state that the gravamen of the Complaint is that during the Class Period, which runs from January 18, 2008 through November 1, 2010, Defendants made a series of materially false and misleading statements relating to WTC's commercial real estate lending and accounting practices.  June 4 letter at 2.  You state that, among other things, Defendants failed to disclose highly material information concerning the Bank's true financial condition by not

reporting past due and nonperforming loans and thereby significantly understated the Bank's loan loss reserves. *Id.* You further state that Defendants misrepresented the Bank's loan underwriting and asset review practices, or its monitoring of the creditworthiness of the Bank's borrowers and repayment status of its loans. *Id.* You state that when the truth about Defendants' alleged fraud was revealed, the Bank collapsed. *Id.*

According to your June 4 letter, these events gave rise to a host of regulatory and criminal investigations into WTC's lending and accounting practices following the end of the Class Period, including by the SEC, FBI, the IRS Criminal Investigative Division, and the Special Inspector General for TARP, which you define as the "Government Entities." *Id.* You state that, in connection with these investigations, Defendants produced a large number of documents to the Government Entities concerning the Bank's commercial lending operations. *Id.* at 2-3. You state that Lead Plaintiffs understand through communications with WTC that many of these documents contained CSI, but that the Federal Reserve provided a waiver of its claims of CSI privilege for the production of those documents to the Government Entities. *Id.* at 3.

Accordingly, you request that the Board of Governors of the Federal Reserve System ("Board") authorize WTC and the other Defendants to disclose to the Lead Plaintiffs three categories of confidential supervisory information (collectively, the "Confidential Supervisory Information"): (1) documents and testimony that Defendants have produced and continue to produce to various Government Entities … investigating WTC's lending and accounting practices; (2) documents related to an alleged[1] Memorandum of Understanding the Federal Reserve imposed on the Bank in late 2009 (the "MOU"); and (3) documents related to the 'significant regulatory action' that the Bank cited in its February 14, 2011 Definitive Proxy Statement as one of the primary reasons the Bank's Board of Directors recommended that the Bank's shareholders approve the acquisition of the Bank by M&T Bank Corp. ("M&T") that was announced November 1, 2010. *Id.* at 1.

The information that you seek, which consists of communications between WTC and Federal Reserve Bank of Philadelphia ("FRBP") examination staff, internal WTC documents discussing communications with the Bank's regulators, information prepared by WTC in response to examiners' requests, and documents relating to an alleged MOU, constitutes confidential supervisory information of the Board as defined in 12 C.F.R. § 261.2(c). Confidential supervisory information is "confidential and privileged." *Id.,* § 261.22(a). The Board believes, as a general matter, that documents of this type must remain confidential because of the need to ensure absolute candor in communications between bankers and examiners. Upon written request to the Board's General Counsel by a party seeking such information, confidential supervisory information may be made available if such person is able to show a "substantial need

---

[1] An MOU is a non-public supervisory document between a financial institution and its supervising Federal Reserve Bank and/or state supervisors that details supervisory expectations and the institution's plans to fulfill them. An MOU and related documents are confidential supervisory information under the Board's Rules Regarding Availability of Information, 12 C.F.R. § 261.2(c). Because the existence of an MOU is itself confidential, the Board neither confirms nor denies the existence of an MOU nor documents relating to an MOU.

for the information that outweighs the need to maintain confidentiality" and that disclosure would be "consistent with the supervisory and regulatory responsibilities and policies of the Board." *Id.*, § 261.22(c). Before such information may be released, the requester must comply with all provisions of 12 C.F.R. § 261.22(b).

The Lead Plaintiffs' stated reason for needing the Confidential Supervisory Information is that these documents are "directly relevant to the well-pleaded facts of the Complaint, including the Individual Defendants' scienter and the falsity of their statements." June 4 letter at 6. You state that "the requested information is vital for Lead Plaintiffs to establish the Defendants' liability for the alleged misrepresentations and omissions." *Id.* For example, you state that "in order to establish that Wilmington Trust's Board and senior management were on notice that the Bank's asset review group's inadequacies were weaknesses in the Bank's control structure, Lead Plaintiffs need the documents reflecting Wilmington Trust's communications with the Federal Reserve during the 2007 and 2008 reviews that identify the group's inadequate staffing, review, and organization as control structure weaknesses." *Id.* You further state that the Complaint alleges that, among other things, communications and discussions with the Federal Reserve put Defendants on notice that WTC's lending and accounting practices were deficient and contrary to Defendants' statements to investors. *Id.* at 4 (citing Compl., ¶¶ 288, 291(1), 292(e)&(h), 293(h)&(j), 294(j), 295(b)-(f)). You state that, because of these known facts, the Complaint alleges that Defendants acted knowingly or with severe recklessness in publicly understating the amount of past due loans in the Bank's portfolio (¶¶ 218-28), by continuing to represent to investors that Wilmington's lending practices were "consistent" and "rigorous" (¶¶ 241-58) and by understating the Bank's loan loss reserves ((¶¶ 229-40). *Id.* Based on your letter, you appear to be seeking access to the Board's Confidential Supervisory Information primarily to establish that Defendants acted with scienter in allegedly making material misrepresentations or omissions under section 10(b) and Rule 10b-5 of the Exchange Act.[2]

Based upon my understanding of this matter and on discussions with appropriate Federal Reserve System staff, I have determined that you have not shown a substantial need for the Confidential Supervisory Information that outweighs the need for the Board to maintain confidentiality, and that disclosure would not be consistent with the supervisory and regulatory responsibilities and policies of the Board. 12 C.F.R. § 261.22.

The reasons for my determination are as follows. First, in its Opinion, the Court found that "to establish scienter [under the Exchange Act], plaintiffs must 'allege facts giving rise to a 'strong inference' of 'either reckless or conscious behavior.'" *In re Wilmington Trust Securities Litigation*, 2014 WL 1151988 at *9 (quoting *Inst. Investors Group v. Avaya, Inc.*, 564 F.3d 242, 267 (3d Cir. 2009)). The Court went on to list a number of allegations in the Complaint which, if

---

[2] Your claims under sections 11 and 12(a)(2) of the Securities Act sound in strict liability and negligence, and the Board's documents would not be necessary to prove scienter with respect to those claims. *See In re Wilmington Trust Securities Litigation*, 2014 WL 1151988 at *12 ("'[i]n this part of the Complaint, Lead Plaintiffs assert a series of strict liability and negligence claims based on the Securities Act on behalf of the Class …. Lead Plaintiffs expressly disclaim any allegations of knowing or reckless misconduct ….'") (quoting Compl., ¶ 387).

4

proven, would satisfy the scienter requirement. In particular, the Court found "that the WTC's loan committee ... approved the fraudulent mass extension of hundreds of past due loans in the fourth quarter of 2009 *for the purpose of* erasing those loans from WTC's financial statements." *Id.* at *10 (emphasis supplied). The Court found "[t]he senders and recipients of internal emails, along with the contents of those, evidence that some of the officer defendants knew of and discussed the past due loans misrepresentations." *Id.* The Court stated "[t]he past due loans appeared on delinquency reports for years." *Id.* "WTC did not update the appraisals for the matured past due loans, as it would had it been forced to acknowledge the deteriorations of the commercial past due loan portfolio ...." *Id.* The Court cited a conference call in which individual defendants "specifically reassured the market that WTC was stable and that there would not be a 'blow up' related to credit." *Id.*

From these allegations, the Court concluded "[u]nder a totality of the circumstances review ... plaintiffs have evidenced a strong inference of scienter on the part of WTC and the officer defendants." *Id.* (emphasis supplied). It is notable that the Court reached this conclusion without citing to any of the communications between the Bank and its regulators that you claim are essential to your case. Even if I were to assume for the sake of argument that the communications between the Bank and its regulators, and the alleged MOU, might provide *additional* evidence of scienter, it is plain from the Court's opinion that you are able to meet your burden of proof on the issue of scienter without access to the privileged regulatory communications that you seek.

Second, in addition to the Court's Opinion, the allegations of the Complaint confirm that the Board's Confidential Supervisory Information is just one possible source of evidence, among many others, on the issue of scienter. For example, ¶ 11 of the Complaint alleges that the "Officer Defendants knew by the start of the Class Period of the critical deficiencies in the Bank's lending and risk management practices" because the Federal Reserve "*as well as* KPMG LLP ('KPMG'), the Bank's outside audit firm, *and* [WTC's] own Internal Audit department all sharply criticized the Bank's risk-management procedures and internal controls dating back to at least 2007." Compl., ¶ 11 (emphasis supplied). Even assuming for the sake of argument -- as you claim -- that the Board's Confidential Supervisory Information might provide additional evidence of Defendants' alleged knowledge of deficiencies in the Bank's lending and risk management practices, other evidence is available to you on these issue from KPMG's files and the Bank's internal records, as well as testimony of KPMG and Bank officers. Not only does the availability of this other evidence avoid the need to disclose privileged regulatory communications, it is readily available to you in discovery because the Bank and KPMG are defendants.

By way of further example, ¶ 88 of the Complaint alleges that the Bank's "outdated '[a]ppraisal problem'" "was frequently discussed at monthly ARG meetings and quarterly Credit Strategy meetings;" that "members of the ARG actually maintained a lengthy list of the outdated appraisals," and that "the Federal Reserve raised repeated concerns regarding Wilmington's out-of-date appraisals." Compl., ¶ 88. As with the allegations relating to critical deficiencies in lending and risk management practices, this allegation makes clear that the Federal Reserve's concerns are only one possible source of evidence on Defendant's knowledge of the alleged outdated appraisals, adding to the Bank's internal records of ARG meetings, Credit Strategy

meetings, and the ARG list, which should be readily available to you. *See also* Compl., ¶ 95 (alleging that *both* KPMG and the Federal Reserve repeatedly warned Officer Defendants of violations of the 10% Rule and that KPMG sent the Bank a detailed letter on the subject). Thus, even assuming for the sake of argument that Confidential Supervisory Information might be probative on the issue of scienter, it is cumulative of information that is already available to you from the Defendants, and I find that it is not necessary to your action.

Third, you state that the Court cited the Federal Reserve's alleged MOU as evidence of scienter on the part of KPMG and a "red flag" that WTC's outside auditor ignored. June 4 letter at 6. The Court held that, as to Lead Plaintiffs' claims against KPMG under section 10(b) and Rule 10b-5, "plaintiffs must show 'either [a] lack [of] a genuine belief that its representations were supported by adequate information or [that KPMG] engaged in auditing practices so shoddy that they amounted at best to a 'pretended audit' even in the face of assertions of good faith.'" *Id.* at *10 (quoting *In re Suprema Specialties, Inc. Securities Litigation*, 438 F.3d 256, 279 (3rd Cir. 2006)). "'At the pleading stage, courts have recognized that allegations of GAAS violations, coupled with allegations that significant 'red flags' were ignored, can suffice to withstand a motion to dismiss.'" *Id.* (quoting *In re Suprema Specialties*). The Opinion goes on to cite "several red flags" that were probative of KPMG's scienter in connection with its representation that WTC's financial statements conformed to GAAP, including KPMG's letters to Bank management "identifying WTC's 'lack of review of its loan portfolio as a material weakness in [WTC's] internal controls;'" a 2009 letter from KPMG to WTC criticizing the Bank's use of interest reserves; the Board's alleged MOU; and an October 29, 2009 internal Bank email on the issue of "'matured loans.'" *Id.* The Court also pointed to KPMG's unfettered access to WTC documents; the lack of evidence that WTC provided falsified records to KPMG; and KPMG's failure to request updated appraisals from WTC as possible evidence of KPMG's scienter. *Id.* Thus, while the Court cites the alleged MOU as *one red flag*, it is just one among numerous red flags described in the Opinion. Accordingly, I find that you have not shown that it is necessary for you to obtain the alleged MOU and supporting documentation in order to prove KPMG's scienter.

Moreover, the informal and confidential nature of an MOU is designed to facilitate the open exchange of information between a bank and its regulators, short of formal enforcement action, which is the hallmark of the bank examination process. *E.g., In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992). Congress recognized the need for confidentiality in informal supervisory orders when it enacted 12 U.S.C. § 1818(u)(1)(A), which provides a presumption of disclosure for formal written agreements, stating in the legislative history that "[i]nformal supervisory orders would not have to be disclosed." H.R. Rep. No. 101-54(I), at 395 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 191. Given the strong policy interest in maintaining confidentiality of MOUs and supporting documents, as recognized by Congress, and the availability to you of other evidence on the issue of KPMG's scienter, I find that your stated need for the alleged MOU and related documents does not outweigh the need to maintain confidentiality of this information. 12 C.F.R. § 261.22(a).

Fourth, you request "documents related to the 'significant regulatory action' that the Bank cited in its February 14, 2011 Definitive Proxy Statement as one of the primary reasons the

Bank's Board of Directors recommended that the Bank's shareholders approve the acquisition of the Bank by M&T Bank Corp. (M&T) that was announced in November 2010." June 4 letter at 1. The Definitive Proxy Statement was issued after the Class Period ended on November 1, 2010. Among other things, it advised shareholders to approve the merger because of "[m]anagement's belief that, without a strategic transaction acceptable to its regulators, [WTC] would likely face significant regulatory actions in the near term." Definitive Proxy Statement at 17. You describe the Definitive Proxy Statement in the Complaint as a "post-class period event." Id., ¶ 210. You do not explain in your June 4 letter how this post-Class Period event is relevant to alleged misstatements of material fact and omissions that took place during the Class Period. In fact, the Complaint alleges that "on Monday, November 1, 2010, [WTC's] investors finally learned the truth about [WTC's] true financial condition and the full extent of the problems in the Bank's loan portfolio." Compl., ¶ 198. Accordingly, any alleged misstatement or omission after that date, or evidence of scienter after that date, would not be relevant to your claims. As a result, I find that you have not shown the relevance of this category of Confidential Supervisory Information and your request for this Information is denied.

Finally, you state that "Lead Plaintiffs would be unduly prejudiced without production of the information that WTC has produced has produced to various Government Entities, as well as the documents regarding the [alleged] MOU and the subsequent imposition of regulatory actions." June 4 letter at 7. I disagree. You are not requesting access to the Confidential Supervisory Information for purposes of defending an action brought against your clients by one of the Government Entities. Rather, you seek access to this Information in your role as Lead Plaintiffs in a securities class action brought by your clients against WTC and other Defendants. Accordingly, I do not find that your clients will be unduly prejudiced by not having access to Confidential Supervisory Information provided to the Government Entities.

For these reasons, your request for access to the Confidential Supervisory Information is denied. Should you have any questions about this action, please call Yvonne F. Mizusawa, Senior Counsel, at (202) 452-3436.

Sincerely,

*Katherine H. Wheatley*

Katherine H. Wheatley
Associate General Counsel

cc: Ms. Maryann Connolly
    Federal Reserve Bank of Philadelphia

    Thomas J. Allingham, II, Esq.
    Skadden, Arps, Slate, Meagher & Flom
    Attorney for Defendant WTC