# Chimicles & Tikellis LLP
### ATTORNEYS AT LAW

222 Delaware Avenue, Suite 1100
P.O. Box 1035
Wilmington, DE 19899
Telephone: (302) 656.2500
Telecopier: (302) 656.9053
E-mail: Mail@Chimicles.com

Nicholas E. Chimicles
Pamela S. Tikellis *
Robert J. Kriner, Jr. *
Steven A. Schwartz
Kimberly Donaldson Smith
Joseph G. Sauder
Timothy N. Mathews
A. Zachary Naylor *
Matthew D. Schelkopf
Benjamin F. Johns
Catherine Pratsinakis *
Christina Donato Saler
Alison G. Gushue
Scott M. Tucker *
Tiffany J. Cramer
Vera G. Belger *
Joseph B. Kenney

OF COUNSEL
Anthony Allen Geyelin
David M. Maser

*Attorneys admitted to
practice in Delaware

October 2, 2014

**BY CM/ECF AND HAND DELIVERY**
The Honorable Sherry R. Fallon
United States District Court
J. Caleb Boggs Federal Building
844 North King Street
Room 6100 Unit 14
Wilmington, Delaware 19801-3586

Re:   *In re Wilmington Trust Securities Litigation*, C.A. No. 10-990-SLR-SRF

Dear Magistrate Judge Fallon:

   Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") writes to request that the Court grant a protective order under Federal Rule of Civil Procedure 26(c) quashing the Wilmington Trust Defendants' September 24, 2014 Notice of Rule 30(b)(6) Deposition of BLB&G (the "Notice") (Exhibit 1).

   BLB&G is the Court-appointed Co-Lead Counsel in the above-referenced matter and has represented Lead Plaintiffs in this Action since January 18, 2011. More than three years ago, Co-Lead Counsel performed a thorough investigation of the wrongdoing that occurred at Wilmington Trust, which was conducted in accordance with the highest of ethical and professional standards. That investigation led to the disclosure in Lead Plaintiffs' Consolidated Complaint (D.I. 39) of numerous stunning facts regarding the true nature of Wilmington Trust's illicit business practices during the Class Period. Since then, Lead Plaintiffs' allegations have been publicly confirmed and corroborated by a host of criminal indictments, guilty pleas, and, most recently, a sanctions and cease-and-desist order against Wilmington Trust by the Securities & Exchange Commission.



HAVERFORD OFFICE
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642.8500
Telecopier: (610) 649.3633

Now, more than three years since the filing of Lead Plaintiffs' Consolidated Complaint and fifteen months since the filing of Lead Plaintiffs' Fourth Complaint (D.I. 149), Defendants have raised questions regarding BLB&G's investigation. Specifically, on the evening of September 24, the Wilmington Trust Defendants filed a surprise notice to take a Rule 30(b)(6) deposition of BLB&G on topics regarding Lead Counsel's investigation and relationship with Lead Plaintiffs, which implies that BLB&G acted improperly in its investigation and pursuit of these claims. However, Lead Counsel's behavior has at all times been beyond reproach, as the accompanying Declaration of Hannah Ross ("¶__" attached as Exhibit 2) makes plain. Further, almost all of the noticed topics seek information that is indisputably protected by the attorney-client privilege or work-product doctrine, or can be discovered through less intrusive means. BLB&G respectfully submits that the Deposition Notice should be quashed as improper and harassing.[1]

I. **Defendants' Disfavored Tactics "Lower The Standards of the Profession"**

Depositions of opposing trial counsel are extreme and disfavored litigation tactics that cause "the standards of the profession to suffer." *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 512-13 (1947); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987) ("Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation."). Courts within this and other Circuits hold that, "as a matter of public policy," counsel is presumptively entitled to a protective order against being deposed by an adversary. *See, e.g., Memory Bowl v. Pointe Ins. Co.*, 280 F.R.D. 181, 186 (D.N.J. 2012) ("Deposing opposing counsel can interfere with the adversarial process by 'inviting delay, disruption, harassment, and perhaps even disqualification of the attorney from further representation of the client in the underlying litigation.'") (internal quotation omitted). Defendants bear the burden to establish why this extraordinary relief and exception to normal deposition practice should be allowed. *See Allergan Inc. v. Pharmacia Corp.*, 2002 WL 1268047, at *1 (D. Del. May 17, 2002) (Robinson, J.).

Indeed, Judge Robinson has held that a party seeking the deposition of opposing counsel bears the heavy burden of demonstrating that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Allergan*, 2002 WL 1268047, at *1 (applying the "*Shelton* factors" required to depose opposing counsel and granting protective order precluding deposition of opposing counsel) (citing *Shelton*, 805 F.2d at 1327).

II. **The Notice Fails To Satisfy Any Of The *Shelton* Factors**

Defendants do not – and cannot – meet any of the *Shelton* factors. Specifically, the eight Deposition Topics listed in the Notice seek information that is largely privileged or can be (and largely has been) obtained from other sources, and is far from "crucial" to Defendants' preparation of their defense. Upon BLB&G's request, counsel for the parties held a meet and

---

[1] The BLB&G Deposition Notice was improperly served upon non-party BLB&G. On these grounds alone, the Notice should be quashed.

The Honorable Sherry R. Fallon
October 2, 2014
Page 3 of 5

confer regarding the Notice on September 30, 2014, at which time BLB&G asked Defendants to provide their bases for the Notice under the *Shelton* standards. Defense counsel was unable to do so. Rather, Defendants maintained that: (i) there is no heightened standard for depositions of opposing counsel, and the applicable standard is simple "relevance"; (ii) the Topics in the Notice met that standard; and (iii) they would not accept any other means of obtaining the information they sought, such as an interrogatory or representation from counsel.

**Topics 1 and 4:** Defendants seek testimony regarding counsel's communications with confidential witnesses cited in the Complaint, including any instances during which an attorney or investigator retained by BLB&G "posed as . . . a Wilmington Trust staff member, Securities and Exchange Commission employee, or banking regulator."[2] No BLB&G attorney or investigator ever falsely represented their identity or the nature of this Action. ¶¶26-27. Indeed, numerous documents produced in this Action demonstrate that it is Lead Plaintiffs' investigators' practice to fully identify themselves to potential witnesses and to follow up most calls with an email providing clear information on the investigator's contact information, the law firm, the nature of the litigation, and a link to BLB&G's firm website. ¶27, Ross Decl. Ex. H.

In any event, Lead Plaintiffs have produced all written communications with and documents received from confidential witnesses. Nothing more is permitted. Indeed, Defendants conceded – in Court filings less than two weeks ago – that counsel's recollections regarding discussions with confidential witnesses is privileged work product.[3]

**Topics 2 and 3:** These topics seek testimony regarding BLB&G's unsolicited receipt of potentially privileged Bank documents three years ago, which Lead Counsel never used or relied upon in any manner. Specifically, on October 20, 2011, a former Wilmington Trust employee showed up unsolicited at Liaison Counsel's offices with a box of documents. ¶2. Liaison counsel e-mailed the documents to Lead Counsel on a Friday evening without substantively reviewing them. ¶2. BLB&G looked at the documents only long enough to determine what they were and then determined that some of them might be privileged. ¶3. Lead counsel then sequestered the documents and consulted with an ethics expert to determine the appropriate next steps. ¶¶3-4. Shortly thereafter, Lead Counsel notified defense counsel about the situation and requested a telephonic conference to discuss how to proceed. ¶5. Within days, Lead Counsel destroyed and returned all copies of the documents of which they were aware to defense counsel. ¶¶7-9, n.2. These documents did not form the basis of any allegation in the complaints or any other filing in this Action. ¶¶13-17, 21-25. These facts, which are set forth in the Ross Declaration, establishes that Lead Counsel acted with only the highest standards of ethical behavior.

Nevertheless, during the parties' recent meet and confer regarding the Notice, defense

---

[2] During the meet and confer, Defense counsel explained that Topic 4 was also focused on the supposed misrepresentations that are the basis for Topic 1.

[3] *See* September 19, 2014 Letter from Robert Saunders, Esq. (D.I. 267) at 3 ("[T]he Wilmington Trust Defendants agree that . . . counsel's internal memoranda analyzing or strategizing about discussions with confidential witnesses . . . may fairly be withheld on work product grounds.").

The Honorable Sherry R. Fallon
October 2, 2014
Page 4 of 5

counsel stated that – notwithstanding BLB&G's repeated representations that these documents have never been used – they believe that BLB&G improperly relied upon these documents in drafting the Fourth Amended Consolidated Complaint.[4] This accusation is entirely without foundation, as the sources for the Complaint's allegations are plainly indicated on the face of the Complaint and, in multiple instances, mirror allegations contained in Lead Plaintiffs' first complaint, filed six months before Lead Plaintiffs received these documents. ¶¶21-25.

Not once in nearly three years (and three complaint amendments) have Defendants raised a single question about BLB&G's receipt or brief custody of these documents. Nor have Defendants challenged or moved to strike Lead Plaintiffs' allegations as improper. Their decision to raise these issues for the first time through the Notice reeks of gamesmanship in advance of their opposition to Lead Plaintiffs' motion for class certification.

To the extent that the Wilmington Trust Defendants believe that certain of the allegations in the Fourth Complaint were based upon these unsolicited documents, BLB&G invites the Wilmington Trust Defendants to submit all 81 documents cited on Defendants' privilege log (Ross Decl. Ex. D) to the Court for *in camera* review so that the Court may review them and compare them to the Fourth Complaint's allegations.

**Topics 5 and 6** seek testimony from BLB&G regarding their relationship with the Lead Plaintiffs, which invades the attorney-client privilege and is information that should be sought through other means. Indeed, these two Topics are substantially identical to Topics 5 and 6 in Defendants' Rule 30(b)(6) deposition notices to Lead Plaintiffs. *See* D.I. 270, 272-73, 275-76.

**Topics 7 and 8** seek information regarding Plaintiffs' experts that is well beyond the scope of permissible discovery. To the extent that Defendants seek testimony concerning agreements with Professor S.P. Kothari, the only testifying expert currently identified in this Action, Professor Kothari may be asked questions about his agreement with BLB&G and other counsel in this Action at his noticed deposition currently scheduled to take place on October 17, 2014. Testimony concerning BLB&G's agreements with non-testifying consultants is specifically prohibited by Fed. R. Civ. P. 26(b)((4)(D), and Defendants have raised no "exceptional circumstances" warranting such an inquiry.

\*   \*   \*

As set forth above and in the accompanying Ross Declaration, Defendants cannot satisfy any of the *Shelton* factors for any of the Topics and therefore cannot meet their burden to demonstrate why they are entitled to the deposition of opposing counsel here. To the extent that any of the information that Defendants seek is not privileged, there are multiple other more appropriate avenues of information-gathering available to Defendants, including, among other avenues, obtaining representations from counsel, serving interrogatories, or deposing the Confidential Witnesses, Lead Plaintiffs, and testifying experts.

---

[4] During our meet and confer, defense counsel clarified that these unsolicited documents are also the focus of Topic 3, which seeks testimony regarding "[t]he source of the documentary or evidentiary bases for the allegations in the Complaint" and references a handful of paragraphs.

The Honorable Sherry R. Fallon
October 2, 2014
Page 5 of 5

                                        Respectfully,

                                        A. Zachary Naylor (#4439)

cc:    Clerk, U.S. District Court (by CM/ECF and Hand Delivery)
        Counsel of Record in the Captioned Actions (by CM/ECF and E-mail)