IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE WILMINGTON TRUST SECURITIES LITIGATION | ) ) ) ) | Master Civ. No. 10-990-SLR-SRF (Consolidated Securities Class Action) |

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE AND MOTION FOR A LIMITED STAY OF DISCOVERY

CHARLES M. OBERLY, III
United States Attorney
District of Delaware
1007 N. Orange St.
Suite 700
Wilmington, DE 19801

Robert F. Kravetz, Esq.
Lesley F. Wolf, Esq.
Assistant United States Attorneys

WILLIAM STELLMACH
Chief, Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005

Brent Wible, Esq.
Assistant Chief

William Johnston, Esq.
Trial Attorney

Dated: October 10, 2014

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................................i

TABLE OF AUTHORITIES...........................................................................................................ii

INTRODUCTION……………………………………………………………………………...…1

NATURE AND STAGE OF THE PROCEEDINGS……………………………………...……...2

    I. The Government's Parallel Criminal Investigation………………………………………..2

    II. The Relationship Between the Government Investigation and the Private Securities Litigation…………………………………………………….....................................................5

    III. Current Status of the Private Securities Lawsuit……………………………………...6

ARGUMENT………………………………………………………………………………….....8

    I. The Government May Intervene As of Right Under Rule 24..........................................8

    II. A Limited Stay is Necessary to Protect the Criminal Investigation..............................9

        A. There is Substantial Overlap in the Issues and Witnesses in the Criminal and Civil Cases...............................................................................................................10

        B. An Active, Parallel Criminal Investigation, Which Has Resulted in Several Indictments to Date, is Ongoing.........................................................................................11

        C. The Parties Will Not be Prejudiced by the Nature and Length of the Requested Stay.......................................................................................................12

        D. A Limited Stay Will Satisfy the Interests of the Court and the Public..............14

CONCLUSION.............................................................................................................................15

# **TABLE OF AUTHORITIES**

**Federal Cases**

Benjamin ex. rel. Yock v. Dep't of Public Welfare, 701 F.3d 938 (3d Cir. 2012) .......................... 8

Kashi v. Gratos, 790 F.2d 1050 (2d Cir. 1986) .............................................................................. 11

Kleissler v. U.S. Forest Service, 157 F.3d 964 (3d Cir. 1998) ........................................................ 8

Klitzman, Klitzman & Gallagher v. Krut, 591 F.Supp. 258 (D.N.J. 1984) ................................... 11

Landis v. North Am. Co., 299 U.S. 248 (1936) ............................................................................... 9

Nutramax Labs. Inc. v. Twin Labs. Inc., 183 F.R.D. 458 (D. Md. 1998) ..................................... 14

Southeast Recovery Group, LLC v. BP America, Inc., 278 F.R.D. 162 (E.D. La. 2012) ......10, 11, 12, 15

Texaco, Inc. v. Borda, 383 F.2d 607 (3d Cir. 1967) .................................................................. 9, 14

United States v. Mellon Bank, 545 F.2d 869 (3d Cir. 1976) ............................................... 9, 10, 12

Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd., 7 F.Supp.2d 523 (D.N.J. 1998)..10, 11, 12, 14, 15

**Federal Statutes**

28 U.S.C. § 515(a) .......................................................................................................................... 9

28 U.S.C. § 516 ............................................................................................................................... 9

28 U.S.C. § 547(1) .......................................................................................................................... 9

**Federal Rules**

FED.R.CIV.P. 30(a)(2)(A)(ii) and 26(b)(2)(C) .............................................................................. 14

## INTRODUCTION

The United States of America (the "United States" or the "government"), a non-party to this action, respectfully moves to intervene pursuant to Federal Rule of Civil Procedure 24 and for a limited stay of fact discovery until on or about March 1, 2015.[1] The government's request for a stay is limited to a definite time frame, through March 1, 2015, and solely to a stay of fact depositions, interrogatories, and requests for admissions relating to items 3(a)(1)-(4) of the Joint Rule 26(f) Scheduling Order (the "Scheduling Order") (D.I. 240).[2] The government's motion does not encompass a request to otherwise stay document production, discovery relating to class certification, or any other issues in the Scheduling Order.

As set forth more fully herein, the requested relief is warranted because: (1) the factual discovery sought to be stayed would, if permitted to move forward, have a substantial negative impact on the government's ongoing investigation of the Wilmington Trust Corporation ("Wilmington Trust" or "the Bank") and its employees, which overlaps substantially with the private securities lawsuit; (2) the parties would not be prejudiced given the brief nature of the stay, its limited scope, and the existence of ongoing litigation surrounding document production and the bank regulatory privilege that is likely to impact the parties' ability to complete fact discovery as set forth in the Court's Scheduling Order; and (3) the limited stay will serve the

---

[1] Pursuant to Local Rule 7.1.1, the United States has conferred with counsel for the plaintiffs and defendants regarding the instant motion. Robert S. Saunders, counsel for Wilmington Trust Corp., represented that he spoke with counsel for each of the defendants and that defendants do not oppose the government's motion to intervene and for a limited stay. Hannah G. Ross and Joseph E. White, counsel for plaintiffs, represented that they spoke with counsel for plaintiffs, and that plaintiffs (1) do not oppose the government's request to intervene, but (2) will likely oppose the motion for a limited stay of discovery through March 1, 2015.

[2] The Scheduling Order incorporated all dates from a prior order entered by the Court on May 19, 2014 (D.I. 197.)

interests of the Court and the public in allowing the government to complete its investigation in a timely and efficient manner.

## NATURE AND STAGE OF THE PROCEEDINGS[3]

### I. The Government's Parallel Criminal Investigation

Over the past three years, the United States of America has been investigating alleged criminal conduct at Wilmington Trust Corporation, whose acquisition by M&T Bank Corp. was announced in November 2010. As reflected in public documents filed in connection with criminal proceedings in the District of Delaware, the subject of the investigation includes, but is not limited to, whether Wilmington Trust and its officers and employees made materially false statements and omissions in public securities filings and in regulatory reports filed with federal agencies. See *Ex Parte* Affidavit of Assistant United States Attorney Robert F. Kravetz (hereinafter "*Ex Parte* Affidavit"), Ex. A ¶ 3. (setting forth the scope of the criminal investigation in greater detail).

Since the inception of the investigation, the United States has brought criminal charges against six individuals, including three former Wilmington Trust employees and three former bank customers. Two of those individuals, Brian Bailey[4] and Joseph Terranova,[5] are former high-ranking Wilmington Trust employees who pleaded guilty to conspiracy offenses relating directly to the Bank's underwriting and false reporting of past due and nonaccrual loans. Both

---

[3] Because of the nature of the ongoing investigation, the government has requested, in a separate motion, to file an *ex parte* affidavit under seal in order to provide the Court with further information regarding the investigation. See In re Grand Jury Subpoena, 745 F.3d 681, 689 (3d Cir. 2014) (collecting cases) (stating that the United States Court of Appeals for the Third Circuit has held that the use of *ex parte* affidavits is "a procedure consistently endorsed to preserve grand jury secrecy").

[4] *United States v. Brian D. Bailey*, Crim. No. 14-05-RGA.

[5] *United States v. Joseph Terranova*, Crim. No. 13-39-GMS.

Bailey and Terranova are cooperating with the government's ongoing investigation and have agreed to delay their sentencing hearings until their cooperation is completed.

The conduct to which Bailey and Terranova admitted in their guilty pleas relates directly to the core allegations underpinning the private securities lawsuit, that is, the Bank's alleged misrepresentations and omissions surrounding its nonperforming loan portfolio and its failure to accurately reserve for loan losses. For example, Bailey, pursuant to his plea agreement (Ex. B), admitted to the facts set forth in paragraphs 1-50 of his Criminal Information (Ex. C). In general, the Bailey Information described the rapid growth of the Bank's Commercial Real Estate Loan Portfolio between the mid- to late-2000s, and the corresponding increased volume of such loans reaching their maturity dates. (Ex. C ¶¶ 13-16.)[6] The Bailey Information further described in detail the Bank's practice of "waiving," or failing to report publicly, matured loans that were "current for interest," in particular with respect to quarterly regulatory filings. (Ex. C ¶¶ 8-12, 17-30.) Through his guilty plea, Bailey admitted his involvement in approving supplemental financing to developers who were struggling to make timely interest payments in order to keep otherwise nonperforming loans current for interest during the economic downturn. (Ex. C ¶¶ 36-44.) Bailey further admitted that he and other Bank executives were aware that "the substantial decrease in real estate valuations made it difficult for the Bank to extend or restructure many lending relationships in 2009 without suffering negative economic consequences, including, but not limited to, placing loans on nonaccrual status, taking additional reserves against loan losses, and/or charging off losses related to particular loans." (Ex. C ¶ 35.) Because of the Bank's waiver practice, among others, the supplemental financing scheme led to the Bank

---

[6] A "matured loan" is a term loan in which the principal payment is past due and must be repaid to the lender in full, unless the Bank extends the loan through a new legal agreement with the borrower. (Ex. C ¶ 17.)

3

underreporting hundreds of millions of dollars of past due loans throughout 2009. (Ex. C ¶¶ 45-50.)

In his plea agreement (Ex. D), Terranova admitted to the facts set forth in paragraphs 12-48 of his Criminal Information (Ex. E). Like Bailey, Terranova admitted to his involvement in providing financing to Bank customers "to keep original loans on non-performing projects current, and to keep the loans from being classified as past due and/or nonaccrual loans." (Ex. E ¶ 27; see also ¶¶ 22-26.) Terranova further admitted to knowing that the Bank's commercial real estate portfolio was declining precipitously in 2009, and that Bank lending practices had the effect of concealing the Bank's public reporting of past due and nonperforming loans. (Ex. E ¶¶ 28-39.) Similar to the Bailey Information, the Terranova Information described how the supplemental financing and waiver practices resulted in the Bank underreporting its past due and nonaccrual loan portfolio by hundreds of millions of dollars in securities filings in 2009 (Ex. E ¶¶ 40-47). Those past due loan figures were used by the Bank in connection with its capital raise in February 2010. (Ex. E ¶ 48.)

In addition to the Bailey and Terranova guilty pleas relating to the Bank's concealment of nonperforming loans, the government has brought criminal charges relating to other conduct affecting Wilmington Trust. Bailey and James A. Ladio,[7] the former founder and CEO of MidCoast Bank, pleaded guilty to their roles in an illegal "loan-swap" scheme that related, at least in part, to the loan underwriting and credit culture at Wilmington Trust. The government also charged former Wilmington Trust clients Michael A. Zimmerman[8] and Salvatore Leone[9]

---

[7] *United States v. James A. Ladio*, Crim. No. 13-113-RGA. Ladio's sentencing hearing is scheduled for November 24, 2014.

[8] *United States v. Michael A. Zimmerman*, Crim. No. 13-10-GMS. Zimmerman's case is pending trial, scheduled to begin on March 30, 2015.

with making multiple false statements to the Bank to illegally obtain proceeds from construction loan draws. The government also charged former Wilmington Trust lender Peter Hayes[10] with multiple fraud offenses relating to an alleged scheme to benefit from a personal lending relationship with one of the Bank's largest clients.

## II. The Relationship Between the Government Investigation and the Private Securities Litigation

The core factual allegations in plaintiffs' Fourth Amendment Criminal Complaint (D.I. 149) (the "Complaint") rely substantially on information released publicly in the criminal actions. For example, of the 22 paragraphs set forth in the "Overview Of the Case" section of the Complaint (¶¶ 1-22), twelve relate directly to the criminal investigation. (Id. ¶¶ 1, 3-9, 13-15, and 21.) Moreover, of the approximately 164 paragraphs in the "Background" section of the Complaint, which sets forth the core factual allegations, approximately 77 paragraphs relate directly to the criminal investigation. (Id. ¶¶ 54-84, 91-101, 110-133, 140, 157-160, 162, 166-167, 169-170, and 213-216.) Many of the additional paragraphs, which refer to statements made by confidential witnesses, served to "confirm," according to plaintiffs, information released in the criminal case. (Id. ¶¶ 85-90; 102-109; 134-139; 141-151.) An objective reading of the Complaint thus reveals the centrality of the government's criminal investigation to the civil case.

The relationship of the Complaint to the criminal investigation is no accident. On March 29, 2012, this Court dismissed plaintiffs' initial complaint for failure to state a claim. The current version of the Complaint survived a motion to dismiss only after it was amended extensively to incorporate facts obtained from public documents filed by the government in the

---

[9] *United States v. Salvatore J. Leone*, Crim. No. 13-95-GMS. Leone pleaded guilty and is awaiting sentencing.

[10] *United States v. Peter Hayes*, Crim. No. 14-39-RGA. Hayes pleaded not guilty to the charges, and his case is in the pretrial motions stage.

5

government's criminal cases.  In fact, this Court's Memorandum Opinion denying defendants' motion to dismiss the Complaint relied, in substantial part, on the facts within the Complaint that related to the government's criminal investigation. In re Wilmington Trust Securities Lit., - - F.Supp. 2d. - -, 2014 WL 1151988, *3-5, 7-9 (D. Del. March 20, 2014) (citing to specific paragraphs in the Complaint).  In its Opinion, this Court referenced alleged material misstatements or omissions of the Wilmington Trust defendants, which related directly to the conduct set forth in the Terranova Information:

> WTC fraudulently understated the true amount of its past due loans in its SEC filings, which emphasized that "one of [WTC]'s primary risks is credit risk (the risk that borrowers will be unable to repay their loans)." (See, e.g., D.I. 150, ex. 1 at 44 (2008 10–K); ex. 5 at 50 (2009 10–K).) The amount of past due loans is a key financial metric, reflecting whether loans are being repaid and impacting the credit quality of WTC's loan portfolio and its financial condition. Further, the reported amount of past due loans directly impacted WTC's reported reserve, i.e., if past due loans increased, the reserve increased, and WTC's income decreased on a dollar-for-dollar basis. WTC also improperly "waived" a substantial amount of past due loans by falsely claiming that the loans were being extended, without obtaining updated loan appraisals. These misstatements are material.

Id. at *8.  The Court further concluded that the factual predicate from the Terranova Information led it to determine that "plaintiffs have evidence of a strong inference of scienter on the part of WTC and the officer defendants." Id. at *10.

### III.   Current Status of the Private Securities Lawsuit

The Court's Scheduling Order contemplated the commencement of depositions on or before September 8, 2014; the completion of document production on or before October 17, 2014; and the completion of all fact discovery on or before December 19, 2014.  Paragraph 3(a) of the Scheduling Order set forth the broad parameters of discovery agreed-upon by the parties, which includes:

1. "Whether Defendants made false statements to the public regarding Wilmington Trust's (the "Bank's") lending operations, including but not limited to, facts related to" eleven discrete areas that overlap with the government's criminal investigation.

2. "The mental state of Defendant Wilmington Trust and the Officer Defendants, including, but not limited to, facts regarding" four discrete areas that relate to the government's criminal investigation.

3. "Whether KPMG's certification of the Bank's 2009 annual financial statements . . . was false[.]"

4. "The Bank's secondary Offering performed in February 2010, including, but not limited to, facts regarding" whether statements in the Definitive Proxy Statement issued in February 2014 were false.

(D.I. 240 ¶ 3(a).)

To date, no depositions have occurred, despite the Scheduling Order's contemplated start date of September 8, 2014. On October 6, 2014, plaintiffs' counsel filed its Notice to Take Depositions. (D.I. 290.) In the Notice, plaintiffs' counsel indicated its intent to depose twenty-three current and former Wilmington Trust/M&T Bank employees, including several of the named defendants.[11] The deposition schedule indicated that the depositions would occur between October 20, 2014, and December 19, 2014.

Fact discovery has been delayed further by issues relating to a motion filed by plaintiffs to compel the production of documents withheld by the Bank pursuant to the "bank examination privilege." (D.I. 233, 242.) The Board of Governors of the Federal Reserve System (D.I. 247) and the Delaware Office of the State Banking Commissioner (D.I. 293) have intervened, or

---

[11] On September 23-24, 2014, Defendant Wilmington Trust filed Notices to Take Depositions of seven individuals, or organizational representatives, from October 7, 2014, to October 10, 2014. (D.I. 270-276.) These depositions relate solely to class certification issues. See Wilmington Trust Defendants' Motion for Extension of Scheduling Order Deadlines (D.I. 289 ¶ 3.)

7

sought to intervene, to assert the privilege.[12]

## ARGUMENT

### I. The Government May Intervene As of Right Under Rule 24

The government is permitted to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) The Court of Appeals has identified four conditions that a movant must meet in order to intervene as of right in a civil action: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." Benjamin ex. rel. Yock v. Dep't of Public Welfare, 701 F.3d 938, 948 (3d Cir. 2012)

All four conditions are met in this case. The application for intervention is timely, given that plaintiffs filed their Notice for Depositions earlier this week, on October 6, 2014, and that the depositions of Wilmington Trust-related individuals have not yet occurred.

Moreover, the government has a sufficient interest in the litigation, which may be affected or impaired by the advancement of fact discovery in this case. As set forth in further detail below regarding the request for a stay, the government's criminal investigation touches directly on the core factual issues of the private securities litigation. Kleissler v. U.S. Forest Service, 157 F.3d 964, 972 (3d Cir. 1998) (noting that the "polestar" for intervention is "whether the intervenor's interest is direct or remote.")

Finally, no existing party in the litigation is able to adequately represent the interests of the government, given that the Department of Justice is the sole entity authorized to prosecute

---

[12] The parties have informed the government that banking regulators from the FDIC, OCC, and the States of Pennsylvania and New Jersey participated in a teleconference with United States Magistrate Judge Sherry R. Fallon on October 7, 2014, and may also seek to intervene and invoke the privilege.

8

federal criminal offenses within the District of Delaware.  See 28 U.S.C. § 515(a) (setting forth the authority of United States Attorney General and other officers of the United States Department of Justice to conduct criminal and grand jury proceedings); 28 U.S.C. § 516 (reserving the conduct of litigation to which the United States is a party to the Department of Justice); 28 U.S.C. § 547(1) (stating that it is the duty of the Unites States Attorney within a judicial district to "prosecute for all offenses against the United States.").

For these reasons, and given the non-opposition of the parties, the United States respectfully requests the Court to grant the motion to intervene.[13]

## II.   A Limited Stay is Necessary to Protect the Criminal Investigation

A District Court has the inherent power to stay a proceeding.  Landis v. North Am. Co., 299 U.S. 248 (1936) (holding that the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants"); Texaco, Inc. v. Borda, 383 F.2d 607 (3d Cir. 1967) (holding that the district court did not abuse its discretion in ordering a limited stay of a civil action until the completion of a criminal case).  This power extends to situations where parallel civil and criminal proceedings involve "substantial matters of the same nature."  United States v. Mellon Bank, 545 F.2d 869, 873 (3d Cir. 1976).  In such situations, resolution of the criminal case may "moot, clarify, or otherwise affect various contentions in the civil case," and may prevent the possibility that parties to the civil action "might improperly exploit civil discovery."  Id.

In determining whether to grant a stay in a parallel civil proceeding, courts generally consider the following factors: (1) the extent to which the issues in the criminal and civil cases

---

[13] For these same reasons, the government also satisfies the requirements for permissive intervention under Rule 24(b), as the application is timely and involves common questions of law and fact.

overlap; (2) the status of the case, including whether the defendants have been indicted; (3) the plaintiffs' interest in proceeding expeditiously weighed against the prejudice to a plaintiff caused by a delay; (4) the private interests of and burdens of the defendants and/or the moving party; (5) the interest of the court; and (6) the public interest.  Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd., 7 F.Supp.2d 523, 527 (D.N.J. 1998) (citations omitted).  Application of the relevant factors in the instant case supports the government's request for a limited stay.

### A. There is Substantial Overlap in the Issues and Witnesses in the Criminal and Civil Cases.

The similarity of issues between the civil action and the criminal investigation "has been termed 'the most important issue at the threshold' in determining whether or not to grant a stay." Walsh Securities, 7 F.Supp.2d at 527 (quoting Hon. Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 203).  Given the factual background set forth above and in the *Ex Parte* Affidavit, there can be no dispute that there is a substantial overlap of the issues pending in the criminal cases/investigation and the civil case.  These issues relate generally to whether the Bank and the Bank defendants made materially false statements and omissions in connection with public securities filings and to federal regulators.  Resolution of the criminal case with respect to these issues may "moot, clarify, or otherwise affect various contentions in the civil case."  Mellon Bank, N.A., 545 F.2d at 873.

Furthermore, as set forth in the *Ex Parte* Affidavit, a number of the individuals noticed for deposition have been interviewed by the government and may be potential witnesses in a criminal action.  The fact that witnesses overlap in both the criminal investigation and the civil action is an additional factor that weighs in favor of a stay.  Southeast Recovery Group, LLC v. BP America, Inc., 278 F.R.D. 162, 168 (E.D. La. 2012).

### B. An Active, Parallel Criminal Investigation, Which Has Resulted in Several Indictments to Date, is Ongoing.

The second factor to consider is the stage of the government's investigation. Here, the government charged two former high-level Bank employees directly relating to the core issues in the private securities lawsuit. The government further charged four additional individuals with criminal conduct that is at least also related to issues in the private securities lawsuit.[14]

Courts have recognized that a stay may be granted "even though an indictment or information has not yet been returned if the Government is conducting an active parallel investigation." Walsh Securities, 7 F.Supp.2d at 527; see also Kashi v. Gratos, 790 F.2d 1050, 1057 (2d Cir. 1986) (granting a stay of civil proceedings pending the United States Attorney's criminal investigation); Southeast Recovery Group, 278 F.R.D. at 168 (imposing a stay of a civil case because, although formal charges had not been filed, charges were possible in the "near future" and the investigation and matters before the grand jury were at a "particularly sensitive and critical stage"); Klitzman, Klitzman & Gallagher v. Krut, 591 F.Supp. 258, 269 & n.7 (D.N.J. 1984) (issuing stay of a civil lawsuit pending completion of a criminal grand jury investigation). In this case, criminal charges are not pending against the Bank or the Bank defendants. Others, however, have been charged with related conduct, and the *Ex Parte* Affidavit sets forth the status of the government's active criminal investigation in detail. (See generally Ex. A.)

Moreover, additional fact discovery in the form of depositions, interrogatories, and requests for admission could prejudice the government substantially, as potential defendants may be able to use the deposition process to disrupt the criminal investigation. Courts have issued stays to protect the government's interest in preventing criminal defendants, or targets of an

---

[14] The Complaint refers in detail to the Bank's relationship with Michael A. Zimmerman, who is one of the four individuals who has been charged to date in the government's investigation.

11

investigation from obtaining early discovery though the civil process. See, e.g., Mellon Bank N.A., 545 F.2d at 873. Here, it has been disclosed publicly that Bailey and Terranova have pleaded guilty and have agreed to cooperate in the government's investigation. The government has also interviewed, in various settings, a number of the other individuals noticed to be deposed, some of whom would certainly be witnesses in any criminal case brought by the government. (Ex. A ¶¶ 7-8.) Permitting the depositions of these individuals to move forward would allow the Bank and those Bank defendants who are subjects or targets of the government investigation to potentially "disrupt and perhaps undermine" the investigation. Southeast Recovery Group, 278 F.R.D. at 168; Walsh Securities, 7 F.Supp.2d at 527 (noting the concern that interrogatory and deposition discovery could harm the government's investigation "by disclosing the testimony of potential government witnesses in the criminal action").

Accordingly, the results of the government investigation to date and the current status of the investigation weigh heavily in favor of a stay.

### C. The Parties Will Not be Prejudiced by the Nature and Length of the Requested Stay.

The nature and length of the requested stay also weighs in favor of the government's request. The government is requesting only an approximately four-month, limited stay of depositions, interrogatories, and requests for admission relating to the core overlapping issues in the ongoing criminal investigation and the civil case. Importantly, the request for a stay does not encompass document production or issues surrounding class certification, which could proceed as scheduled.

The limited scope and duration of the stay outweigh any possible prejudice to the parties, particularly where they expressly considered possible government intervention in proposing the

12

Scheduling Order in May 2014. (D.I. 197.) Paragraph 7 of the document stated the following regarding the possibility of government intervention:

> **7.     Government Intervention**.  All of the foregoing deadlines are conditioned on the Governmental Entities not interfering with discovery.  In the event any Governmental Entity seeks to stay, limit, or review any discovery sought or provided by any party, the parties agree to meet and confer regarding the reasonable modification of these deadlines.

The fact that the parties expressly contemplated government intervention, and agreed to modify discovery deadlines accordingly, weighs against any later assertion that they will suffer prejudice if a limited stay is imposed.[15]

Moreover, as set forth above, the parties have not yet completed document production; nor have they begun taking depositions.  Significant issues remain open regarding the document production process, including resolution of whether a banking examination privilege applies with respect to a large volume of documents that have not been produced to date.  That process involves (1) the Bank's review and determination of potential "protected documents"; (2) the Bank's providing such documents to the appropriate financial regulator to review; (3) the financial regulator(s)' determination whether the privilege will be claimed with respect to certain documents; (4) briefing by the interested parties as to whether the privilege applies; and (5) final court resolution as to the applicability of the privilege.  (See generally D.I. 247 at 13-14.)  The Court has set a briefing schedule and scheduled an oral argument for November 4, 2014, on this issue.  Thus, at the earliest, resolution of the banking examination privilege will not occur for at least an additional month.[16]

---

[15] Defendants, who were parties to the proposed scheduling order, do not oppose the government's request for a stay.

[16] The process may take even longer, given the recent request to intervene by the Delaware Office of the State Banking Commissioner (D.I. 293), as well as the possible intervention of other federal and state regulators.

As such, the document production process is not yet complete. There is a strong preference in delaying depositions until all documents are produced because documents are generally needed for an effective examination of a witness. See generally Nutramax Labs. Inc. v. Twin Labs. Inc., 183 F.R.D. 458, 461 (D. Md. 1998). The Court's ruling regarding the banking examination privilege will sharpen the issues for depositions and trial. If plaintiffs prevail, they will obtain additional documents that they may utilize in fact depositions. Under such circumstances, plaintiffs will be able to complete the deposition process without seeking leave of Court to recall deponents. See FED.R.CIV.P. 30(a)(2)(A)(ii) and 26(b)(2)(C).

Given the narrowly tailored nature of the government's request, the parties' prior recognition of the possibility of government intervention, and the procedural posture of the case, the parties will not be prejudiced by a limited stay until March 1, 2015.

### D.  A Limited Stay Will Satisfy the Interests of the Court and the Public.

Finally, a limited stay will satisfy the interests of the Court and the public. The Court has an interest in conserving judicial resources and ensuring that its caseload is managed efficiently. Walsh Securities, 7 F.Supp.2d at 528. Although the limited stay requested by the government will result in some delay of the civil proceedings, it is possible that the advancement of the criminal proceedings may narrow and advance the proceedings in the civil case. Borda, 383 F.2d at 609. For example, a stay may avoid the need for potential Court intervention to consider Fifth Amendment self-incrimination concerns raised by deponents. Walsh Securities, 7 F.Supp.2d at 527-29 (noting that without a stay "interrogatory and deposition discovery would likely cause inefficiency, because several defendants will be forced to assert Fifth Amendment privileges"). It will also provide time for the Court and the parties to resolve issues surrounding the banking examination privilege. Resolution of this important issue prior to the beginning of depositions –

which impacts document production directly – will avoid the parties burdening the Court with requests to reopen depositions pursuant to Federal Rules of Civil Procedure 30(a)(2)(A)(ii) and 26(b)(2)(C). Finally, the limited nature of the stay will not impact other case activity – such as document production unrelated to the banking examination privilege and class certification – to continue in accordance with the Scheduling Order.

A limited stay will also advance the public interest. "The public interest in law enforcement efforts through criminal investigation of alleged fraud is substantial." Southeast Recovery Group, 278 F.R.D. at 169. If additional charges arise out of the criminal investigation, the government will be in a stronger position than plaintiffs to remedy any tangible harm to the public relating to conduct alleged in the private securities lawsuit. Walsh Securities, 7 F.Supp.2d at 529. As a result, there would be no harm to the public in granting a stay of the civil case until March 1, 2015, to allow the government to complete its investigation.

## CONCLUSION

The government's requested stay recognizes its interest in resolving a long-standing, ongoing criminal investigation and is "tailored to the legitimate needs and evolving status of the criminal investigation." Southeast Recovery Group, 278 F.R.D. at 168. Accordingly, for all of the reasons set forth above, the United States respectfully requests the Court to grant its

unopposed motion to intervene and its motion for a limited stay of fact discovery.

                                                    Respectfully Submitted,
                                                    CHARLES M. OBERLY, III
                                                    United States Attorney
                                                    District of Delaware

                                                    _____/s/_____
                                                    Robert F. Kravetz, Esq.
                                                    Lesley F. Wolf, Esq.
                                                    Assistant United States Attorneys


                                                    WILLIAM STELLMACH
                                                    Chief,  Fraud Section, Criminal Division
                                                    United States Department of Justice

                                                    _____/s/_____
                                                    Brent Wible, Esq.
                                                    Assistant Chief
                                                    William Johnston, Esq.
                                                    Trial Attorney

October 10, 2014