IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE WILMINGTON TRUST SECURITIES LITIGATION | : | Master File No. 10-cv-00990-SLR |
| | : | (Securities Class Action) |
| | : | Hon. Sue L. Robinson |
| | : | Electronically Filed |

ANSWER AND BRIEF IN SUPPORT OF THE PENNSYLVANIA DEPARTMENT OF BANKING AND SECURITIES' OPPOSITION TO THE PLAINTIFFS' MOTION TO COMPEL

Linda Carroll (PA Bar No. 35868)
Deputy Chief Counsel
Begene Bahl (PA Bar No. 87803)
Senior Deputy Chief Counsel
Pennsylvania Department of Banking and Securities
17 N. Second Street, Suite 1300
Harrisburg, PA 17101
licarroll@pa.gov
Phone: (717) 787-1471
Fax: (717) 783-5122
*Pro hac vice*

*Counsel for Intervener Pennsylvania Department of Banking and Securities*

Jennifer R. Noel (DE Bar No. 3987)
Deputy Attorney General
Department of Justice
State of Delaware
Carvel State Office Building
820 N. French Street, SLC C600
Wilmington, DE 19801
Jennifer.Noel@state.de.us
Phone: (302) 577-8842
Fax: (302) 577-8656

*Local Counsel for Pennsylvania Department of Banking and Securities*

# TABLE OF CONTENTS


TABLE OF CITATIONS ........ ii

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ........ 1

STATEMENT OF FACTS ........ 2

SUMMARY OF THE ARGUMENT ........ 3

ARGUMENT ........ 5

I. Pennsylvania Law and Federal Law Provide Bank Examination Privilege for the PaDoBS' Proprietary Documents ........ 5

II. The Balancing Test Fails to Demonstrate Good Cause to Override the PaDoBS' Bank Examination Privilege ........ 6

A. The PaDoBS' Proprietary Documents Are Not Relevant to This Case ........ 8

B. Other Evidence is Available to Prove the Allegations in the Complaint ........ 11

C. This Litigation is Not So Serious As to Require Override of Bank Examination Privilege of Untimely and Irrelevant Documents ........ 11

D. Malfeasance by Government is Not At Issue ........ 13

E. Release of Examination Reports Negatively Impacts the Communications Between Regulators and Their Subject Banks ........ 14

CONCLUSION ........ 15

**TABLE OF CITATIONS**

Cases

*In re Banc One Securities Litigation.*,
209 F.R.D. 418 (N.D. 2002) ....................11

*In re Bankers Trust Co.*,
61 F.3d 465 (6th Cir. 1995) ....................3, 7, 8, 13

*Benjamin Shirk v. Fifth Third Bancorp.*,
2008 U.S. Dist. LEXIS 111425
(S.D. Ohio July 2, 2008) ....................3, 4, 7, 8, 10, 11, 12, 13, 14

*Delaware Riverkeeper v. The Delaware River Basin Commission*,
300 F.R.D. 207, 2014 U.S. Dist. LEXIS 77823 (D.C.N.J. June 9, 2014) ....................13

*Dimon Int'l, Inc. v. Arab Am. Bank*.,
1995 U.S. Dist. LEXIS 18839 (E.D.N.C. Dec. 1, 1995) ....................6

*In re Franklin Nat'l Bank Sec. Lit.*,
478 F. Supp. 577 (E.D.N.Y. 1979) ....................7

*In re Midlantic Corporation Shareholder Litigation*.,
1994 WL 750664 (D.C. Cir. Oct. 24, 1994) ....................4, 10

*In re Providian Financial Corp. Securities Litigation*.,
222 F.R.D. 22, 2004,
U.S. Dist. LEXIS 9971 (D. D.C. June 2, 2004) ....................4, 7, 11, 12, 13

*Schreiber v. Society for Sav. Bancorp, Inc*., 11 F.3d 217 (D.D.C. 1993) ....................14

*In re Subpoena Served upon the Comptroller of the Currency and The Sec. of the Bd. of Govs. of the Fed. Res. Sys.*,
967 F.2d 630 (D.C. Cir. 1992) ....................4, 8, 14

Statutes

7 P.S. §§ 6221-6223 ....................3, 6

71 P.S. § 733-302A.(4) ....................3, 6

71 P.S. § 733-302A.(2) ....................3, 5

71 P.S. § 733-302B ....................3, 5

71 P.S. § 733-404A ....... 5

<u>Other Authorities</u>

Fed. R. Civ. P. 26 ....... 12

Fed. R. Evid. 501 ....... 6

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

On September 29, 2014, the Pennsylvania Department of Banking and Securities (the "PaDoBS") first learned that some of its proprietary documents, and references to material taken from its proprietary documents, are the subject of a *Motion by Lead Plaintiffs to Compel Production of Documents Withheld by Defendants Based on "The Bank Examination" Privilege* filed on August 5, 2014. D.I. 233. An accompanying brief was filed that same day. D.I. 234. On October 17, 2014, the PaDoBS, through local counsel, filed a *Notice of Intent of The Pennsylvania Department of Banking and Securities to Assert Bank Examiner Privilege,* D.I. 311, and a *Motion to Intervene of the Pennsylvania Department of Banking and Securities,* D.I. 310. This motion was referred on October 17 per the order of August 7, 2014. A *Motion and Order for Admission Pro Hac Vice,* D.I. 309, was also filed on October 17, 2013 which was granted by the Court on October 21, 2014.

The number of documents proprietary to the PaDoBS are comparatively few in number because of the limited amount of time the PaDoBS served as a regulator of Wilmington Trust of Pennsylvania ("WTPA") during the Class Period. WTPA a subsidiary bank was merged with and into Wilmington Trust FSB, Maryland on or before November 1, 2008. The PaDoBS, concurrently with the Federal Reserve Board, was a regulator only until that time after which it no longer had jurisdiction over any of the WTC banks. In early 2008, the PaDoBS was involved in two examinations of WTPA. The PaDoBS asserts bank examination privilege over those examination reports, and over any content taken from those reports appearing in a separate document whether created by the bank or others. Therefore, the PaDoBS respectfully files this Answer and Brief in support of its opposition to Plaintiffs' motion to compel as it relates to documents proprietary to the PaDoBS pursuant to the Court's September 16, 2014 oral Order.

## STATEMENT OF FACTS

The PaDoBS is a state regulator that exercised regulatory authority over one subsidiary of the Wilmington Trust Company, that being Wilmington Trust of Pennsylvania. The authority of the PaDoBS was shared with the primary regulator, the Federal Reserve Board. The authority of the PaDoBS ended when Wilmington Trust of Pennsylvania was merged into other subsidiary banks outside the jurisdiction of Pennsylvania in 2008. Early in 2008, the PaDoBS conducted two examinations of Wilmington Trust of Pennsylvania. One examination was focused on the trust activities of the bank. The other examination was a routine examination of the financial condition of the bank and its compliance with federal and state banking laws. The period examined in both cases was as of the close of business in 2007. This pre-dated the Class Period and the pre-dated the time period when alleged deceit and malfeasance occurred. The examinations are essentially irrelevant to the complaint. Similarly, any document that contains information from those examination reports is also a privileged document. Their relevance would depend on when those documents were created. Pennsylvania is in the process of reviewing all documents identified by Defendants as pertaining to Pennsylvania and will provide Plaintiffs with specifics as to whether privilege in accordance with the argument set forth herein attaches.

## SUMMARY OF THE ARGUMENT

1. Pennsylvania law provides specific privileges to the PaDoBS' proprietary examination reports and communications with its regulated banks. Pennsylvania law is comprehensive in that it incorporates federal privileges within its statutes, and therefore whatever bank examination privilege the Federal Reserve Board has, is, at a minimum, the privilege to be afforded Pennsylvania. 7 P.S. §§ 6221-6223; 71 P.S. § 733-302A.(2); 71 P.S. § 733-302B; 71 P.S. § 302A.(4).

2. Pursuant to federal caselaw, the bank examination privilege is intended to preserve candor necessary to communications between regulators and the banks, and to avoid a chilling of communications by disclosure of sensitive information. *Benjamin Shirk v. Fifth Third Bancorp,* 2008 U.S. Dist. LEXIS 111425 *7 (S.D. Ohio July 2, 2008) citing *In re Bankers Trust Co*., 61 F.3d. 465 (6th Cir. 1995) at 471.

4. The bank examination privilege does not protect "factual" information, but does protect the opinions, recommendations, advice and guidance of the regulator, and anything that would reveal the opinions, recommendations, advice and guidance of the regulator, such as a bank's response thereto. *Benjamin Shirk v. Fifth Third Bancorp,* 2008 U.S. Dist. LEXIS 111425 *7 (S.D. Ohio July 2, 2008) citing *In re Bankers Trust Co.*, 61 F.3d at 465 (6th Cir. 1995) at 471.

5. Here, Plaintiffs are not seeking the permissible factual information, rather, Plaintiffs' purpose for moving to compel is to gain access to the privileged portions of regulator's privileged documents. D.I. 234 at 5-6.

6. Pennsylvania proprietary documents are not relevant to the complaint because they do not fall within the Class Period. One examination concerns only trust activities and not the lending activities alleged in the complaint. D.I. 149 ¶¶ 23, 52, 72, 168, 169, 174, 220, 219.

7. The motion to compel should be denied as to privileged material because the required good cause does not exist to override the privilege. *In re Providian Financial Corp. Securities Litigation*, 222 F.R.D. 22, 2004 U.S. Dist. LEXIS 9971 *11 citing *In re Subpoena Served upon the Comptroller of the Currency*, 967 F.2d 630 at 634.

8. The five factor balancing test qualifies the bank examination privilege for good cause and does not establish a "rigorous standard" as claimed by Plaintiffs in their brief in support of their motion to compel. D.I. 234, page 11. The test proves that the PaDoBS meets its burden that the bank examination privilege should not be overridden in relation to the privileged content of its examinations and related documents, there being no good cause to provide privileged material. *Benjamin Shirk v. Fifth Third Bancorp,* 2008 U.S. Dist. LEXIS 111425 (S.D. Ohio July 2, 2008); *In re Providian Financial Corp. Securities Litigation*, 222 F.R.D. 22, 2004 U.S. Dist. LEXIS 9971; *In re Subpoena Served upon the Comptroller of the Currency* 967 F.2d 630 at 634; *In Re Midlantic Corporation Shareholder Litigation*, 1994 WL 750664 ( D.C. Oct. 24, 1994) *6.

## ARGUMENT

### I. Pennsylvania Law and Federal Law Provide Bank Examination Privilege for the PaDoBS' Proprietary Documents.

The PaDoBS regulates depository institutions and produces examination reports, and other documents, which are protected by the bank examination privilege under both state and federal law. The Pennsylvania Department of Banking Code establishes that the reports of examination are proprietary to the PaDoBS. The statute sets forth in relevant part:

> . . . Reports of examination issued by the department remain the sole property of the department. A report of examination issued by the department to an institution is strictly confidential. Any copy of a report of examination is and shall remain the property of the department and is furnished to the institution, subject to the express condition that it shall be returned to the department immediately upon a request from the secretary. If a subpoena or other legal process is received calling for production of such a report of examination, or any portion thereof, the department shall be notified immediately by the institution. . .

71 P.S. § 733-404A.

A second statute imposes upon employees of the PaDoBS a requirement of non-disclosure for any proprietary or confidential examination report, and other documents. The Pennsylvania Department of Banking and Securities Code forbids the disclosure of "any information contained in or ascertained from any examination or investigation made by the department, or any letter, report, or statement sent to the department, or any other paper or document in the custody of the department" except as allowed by the act in limited circumstances to law enforcement or other financial regulatory agencies. 71 P.S. § 733-302A.(2). It is a crime for any person, including the Secretary of the PaDoBS, to knowingly and willingly violate the non-disclosure provisions of the Department of Banking and Securities Code. 71 P.S. § 733-302B.

The bank examiner privilege is further supported by the Bank Compliance Privilege Act. Under that statute, privileged content received by a compliance or audit committee, or included in a document created by a compliance or audit committee, cannot be admitted into evidence in any civil action which arises out of a matter evaluated by the compliance committee. 7 P.S. §§ 6221-6223.

The Department of Banking and Securities Code further provides that "any privileges available to Federal financial institution regulators under Federal statute, regulation or common law shall be available to the department." 71 P.S. § 733-302(4). Accordingly, the PaDoBS has the same bank examination privilege as the Federal Reserve Board. This application of federal bank examination privilege is warranted especially since at least one examination report at issue was a joint examination. Therefore, the legal arguments presented in the Federal Reserve Brief regarding its privileges are incorporated by reference as though fully set forth herein in relation to the PaDoBS. Under the Federal Rules "when state law supplies the rule of decision with respect to an element of a claim or defense, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with state law." *Dimon International, Inc. v. Arab American* Bank, 1995 U.S. Dist. LEXIS 18839 (E.D. N.C.1995) citing Fed. R. Evid. 501 *10. Pennsylvania law strongly supports the bank examination privilege as does federal law, and it should not be overridden in this case.

## II. The Balancing Test Fails to Demonstrate Good Cause to Override the PaDoBS' Bank Examination Privilege.

Examination reports are one of the primary means of communication between banks and their regulators. These reports are in their essence advisory and include opinion, recommendations and guidance by the regulator based on the examiners' understanding of

factual information provided by a given bank. See *In re Franklin National Bank Securities Litigation*, 478 F. Supp. 577 at 579 (E.D.N.Y. 1979); 1979 U.S. Dist. LEXIS 10600 **3. Often, unprivileged factual information contained in an examination report is so intertwined with the privileged content one cannot be severed from the other. See, *Benjamin Shirk v. Fifth Third Bancorp, ("Shirk"),* 2008 U.S. Dist. LEXIS 111425 (S.D. Ohio July 2, 2008) *11. In such situations, and in situations where the privileged information is the objective of the motion to compel, good cause must be demonstrated before the privileged information can be produced. Based on its brief in support of its motion to compel, Plaintiffs are not interested in the factual portion of the examination reports. Plaintiffs allege that Defendants acted with "scienter" and hope to prove that through the examination reports and other communications between the regulators Federal Reserve and the Bank. D.I. 234, page 6. Plaintiffs allege:

> (i) At multiple times through the Class Period, the Federal Reserve identified serious deficiencies in the Bank's risk-management procedures and internal controls. See, e.g. ¶¶ 11, 144 (2007 and 2008 reviews), 152 (2009 review).

D.I. 234 page 5. Whether "serious deficiencies" exist in risk-management procedures and internal controls would be a judgment and opinion formed by the regulator based on factual information provided by the bank during the examination process. Hence, Plaintiffs' purpose in obtaining the regulator's documents is to possess the privileged advice, opinions, recommendations and guidance of the regulator. Accordingly, the Court must employ the balancing test elucidated in the caselaw to determine if good cause exists to override the bank examination privilege. *In re Bankers Trust Co*., 61 F.3d. 465 (6th Cir. 1995) at 472.

The bank examination privilege is a qualified privilege that may be overridden only if good cause is shown based on a balancing test by which competing claims of the privilege and good cause may be evaluated. *In re Providian Financial Corp. Securities Litigation*

("*Providian"*), 222 F.R.D. 22, 2004 U.S. Dist. LEXIS 9971 *11 citing *In re Subpoena Served upon the Comptroller of the Currency* ("*Fleet*") 967 F.2d 630 at 634. In evaluating good cause, "the court must balance the "competing interests" of the party seeking the documents and those of the government" and at a minimum, the court must consider: 1) the relevance of the evidence sought to be protected; 2) the availability of other evidence; 3) the "seriousness" of the litigation; 4) the role of government in the litigation, and 5) the possibility of further timidity by government employees who will be forced to recognize that their secrets are violable." *Shirk *8* citing *In re Bankers Trust Co*. at 471.

In addition to the arguments set forth herein, all arguments set forth in Federal Reserve Board's Brief applicable to the Joint Examination are incorporated by reference.

**A. The PaDoBS' Proprietary Documents Are Not Relevant to This Case.**

Defendants provided the PaDoBS with prototype documents, a privilege log, redaction log and access to a data base of documents. Approximately thirty documents were identified as potentially proprietary to the PaDoBS to date. Of those documents, two examinations reports proprietary to the PaDoBS were identified to date as being proprietary to the PaDoBS. An e-mail between the bankers referencing a small amount of information from one of the examination reports was also identified. The PaDoBS asserts bank examination privilege as to these documents, and any similar documents to be identified as the review process continues. The PaDoBS contends that the requisite good cause for production of the examination reports in discovery does not exist based on the first prong of the balancing test because the examination reports are not relevant.

One examination, conducted solely by the PaDoBS, focused solely on the trust activities of WTPA (hereinafter the "Trust Examination"). The Trust Examination is not relevant because

it does not include a review of loans, loan loss reserves, defaults on loans, or credit practices, which are at issue in the complaint. The fourth amended complaint alleges that the loan and credit practices at Wilmington Trust led to many defaulted loans which were hidden from investors by various tactics, public statements, and representations made by officers and directors of the bank. D.I. 149. Because the Trust Examination is not relevant to the complaint, good cause is not shown to override the bank examination privilege based on the first prong of the balancing test.

Secondly, both the Trust Examination and the more broad examination conducted jointly with the Federal Reserve ("Joint Examination") lie outside the Class Period. Both examinations commenced in early 2008, but the records reviewed were as of the close of business on December 31, 2007. The Plaintiffs define the Class Period in the fourth amended complaint, as being January 18, 2008 through November 1, 2010. D.I. 149 ¶ 23. Throughout the fourth amended complaint, references are made to Serious Doubt Loans beginning the fourth quarter of 2008 through the fourth quarter of 2009. See D.I. 149 ¶ 72; ¶ 174 (M&T bank identified losses back to January 1, 2008.) Plaintiffs write:

> During the Class Period, the Bank reported serious doubt loan figures that were each false and misleading when made because, as detailed in the Criminal Information, Wilmington failed to report the true amount of the Bank's commercial loans that were between 30-89 days past due- and thus in "serious doubt" - from the period starting on at least August 25, 2005 and continuing until at least March 31, 2010.

D.I. 149 ¶ 220. The reference to "serious doubt loan figures" is to figures reported during the Class Period. Loans that were the subject of the alleged deceit may have reached back to 2005, but the alleged deceit did not occur until the Class Period beginning on January 18, 2008. D.I. ¶ 219. The methodology employed by Defendant WT regarding Loan Loss Reserves was changed in late 2008, from the methodology used during the examination review period of 2007. D.I.

234, ¶ 168. The greatest alleged malfeasance occurred with the mass extension of loans in 2009 and 2010 pre-dating the 2007 examinations by up to two years. D.I. 149, ¶ 169. Plaintiffs' primary allegation is summarized well by its statement that "[d]uring the Class Period, Wilmington publically reported financial results that created the false impression that the Bank was weathering the financial crisis without any of the crippling credit losses suffered by other financial institutions." D.I. 149, ¶ 52. Once again demonstrating that it was the deceitful actions that are relevant and those did not occur until after the period examined in the Trust Examination and Joint Examination. To the extent loan and credit information from 2007 is required to compare with representations made later, they are readily available in the Defendants' own records non-proprietary to the PaDoBS.

The court in *Shirk* found that privileged regulatory documents outside the time period of the alleged malfeasance at issue were not relevant. *Shirk* *9. The Court explained: "The lack of apparent relevance of the privileged documents militates heavily against, if not precludes, requiring their production." *Id.* The D.C. District Court similarly determined that documents were irrelevant because they were outside the time period when alleged misrepresentations were made. *In Re Midlantic Corporation Shareholder Litigation ("Midlantic")* 1994 WL 750664 (D.C. Oct. 24, 1994) *6. The District Court in *Midlantic* said that documents outside of the relevant time period were not relevant to plaintiffs' case, so plaintiffs' interest in disclosure did not outweigh the government's need for confidentiality." *Id.* Because the Pennsylvania Joint Examination and the Trust Examination cover a time pre-dating the Class Period, and given that the Trust Examination does not pertain to the subject of the complaint, there is insufficient relevance to meet the good cause standard necessary to override the bank examination privilege as to these documents. If the court were to review the contents of the Trust Examination and the

Joint Examination reports, it will be apparent that they are not timely, not relevant, and should not be produced. See *Providian **8.*

**B. Other Evidence is Available to Prove the Allegations in the Complaint.**

The second prong of the balancing test looks at the availability of other evidence upon which the Plaintiff can rely to support its claims. To the extent the Pennsylvania Joint Examination contains factual information, intertwined with privileged information, on loans, credit policies and loan loss reserves, such evidence would be cumulative and unnecessary to Plaintiffs' case. Even a cursory review of Plaintiffs' 213 page complaint reveals the plethora of evidence available to Plaintiffs from numerous unprivileged sources. Plaintiffs have available to them testimony from bank employees; borrowers; loan files from the Bank; Board minutes (with redactions of bank examiner privileged information); internal e-mails (with redactions of bank examiner privileged information); KPMG audit reports and related material; M&T's due diligence for merger; outside audit reports; SEC filings; and 10-K filings. See, D.I. 234, fn. 13-23, pg. 95-96. When plaintiffs have access to raw factual materials that underlie the examiners' opinions, the second prong of the balancing test is not met. *Shirk* *10 citing *In re Banc One Securities Litigation*, 209 F.R.D. 418, 427 (N.D. 111, 2002). Since Plaintiffs have ample evidence to rely upon, the Joint Examination is not required to be produced based on the second prong of the balancing test.

**C. This Litigation is Not So Serious As to Require Override of Bank Examination Privilege of Untimely and Irrelevant Documents.**

This action is a civil matter for which the remedy is monetary damages. The PaDoBS contrasts this action with the seriousness of the criminal prosecutions. The interests of justice must be served in regard to criminal prosecutions and the production of confidential bank

examination materials are most warranted in relation to those prosecutions. One notes that the statutes governing the confidentiality of privileged material, broadly defined in the Pennsylvania statutes, makes exceptions for disclosure to law enforcement agencies in recognition of the seriousness of criminal prosecutions. The same is not true for civil litigation among private parties where monetary damages are the remedy. *Shirk* *10. In *Shirk*, an ERISA action between private litigants the court found the third prong of the balancing test unsatisfied. The court stated: ". . . although this action is undoubtedly 'serious,' an ERISA action between private litigants, where money damages[to the Plan] are the remedy, does not rise to the level of seriousness which would require production of confidential bank examination materials." *Id.* In *Providian,* even after concluding that the privileged material was relevant under the parameters of *Rule 26* and finding that the material was not available elsewhere, the court still maintained that plaintiffs in that case failed to demonstrate good cause to override the bank examination privilege. *Providian ** 20.* The court made its determination despite plaintiffs' argument over the "seriousness of the litigation" and the importance of the federal securities laws. The District of Columbia District Court stated:

> While the importance of the policies underlying the federal securities laws cannot be overstated, those policies do not presumptively preempt the policies underlying the bank examination privilege. Although the securities laws are founded on an ideal of full disclosure, similar disclosure by bank regulations is not mandated, nor should it be. Bank regulators have a different role to play and different statutes to enforce than do private securities lawyers. See *In re Subpoena Served upon the Comptroller of the Currency*, (*Fleet)* 967 F.2d [630] at 634. ("The supervisory relationship … calls for adjustment, not adjudication.") Contrary to plaintiffs' core argument, the policies underlying the bank examination privilege are not necessarily eclipsed whenever the policy in favor of securities disclosure surfaces.

*Providian* **20 - **21.

Here, as in *Shirk* and *Providian*, the Court should recognize the purpose served by the bank examination privilege is to "preserve candor and communications between bankers and examiners, which is considered essential to the effective supervision of banking institutions." *Shirk* *7 citing *In re Bankers Trust* at 471. This purpose cannot be served if the privilege is to be overridden in every private lawsuit.

**D. Malfeasance by Government is Not At Issue.**

The PaDoBS, and the other government regulators, are not parties to this litigation. Rather, the PaDoBS has intervened solely for the purpose of protecting proprietary documents entitled to the bank examination privilege. The PaDoBS has not been accused of malfeasance in this case. The PaDoBS does not have a direct interest in the outcome of the case and is not likely to continue as an intervener subsequent to resolution of the motion to compel production of bank examination privileged documents is resolved. Under such circumstances, the fourth prong of the balancing test is not met. *Shirk* *10. The Court in *Providian,* also involving an action between private parties similar to this case, explained that the policy in favor of overriding the privilege in order to shed light on alleged government malfeasance is not in play. *Providian* **21. Nor is government malfeasance a concern here. In *Providian*, the court did not override the bank examination privilege based on the fourth prong after concluding that the government was not involved in the underlying class action. Further, the *Providian* court interpreted the purpose of the fourth prong as assisting in finding government malfeasance. *Providian* **21. That is not applicable in this case between private litigants. "Improper motivation on the part of a government agency should be at issue before a court considers bypassing the deliberative process and privilege." *Delaware Riverkeeper v. The Delaware River Basin Commission*, 300 F.R.D. 207, 2014 U.S. Dist. LEXIS 77823 **18 (D.C.N.J. June 9, 2014). This Court, like the

Court in Providian should protect privileged material and allow only factual material to be provided if relevant. Accordingly, the fourth prong of the test is not met.

### E. Release of Examination Reports Negatively Impacts the Communications Between Regulators and Their Subject Banks.

The last prong of the *Bankers Trust* balancing test concerns the potential chilling effect disclosure of deliberative material would have on future communications between banks and their regulators. This impact is not insignificant. *Shirk* *11. The bank examination privilege is grounded in practical necessity. As the D.C. Circuit Court stated:

> Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communications between the regulated banking firm and the bank regulatory agency. Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*Shirk* *7-*8 citing *Fleet*, 967 F.2d at 633-634.

The PaDoBS argues that the chilling effect of overriding the bank examination privilege can reach beyond the specific bank to other institutions that learn of the disclosure. The PaDoBS contends that the mere fact that the privilege is overridden, whether under protective agreement or otherwise, is sufficient to discourage financial institutions from being forthright with the regulator. Most courts take the chilling effect upon the bank examination process seriously. See *Schreiber v. Society for Sav. Bancorp, Inc.*, 11 F.3d 217 at 222 citing *Fleet*, 967 F.2d at 633-634.

Based on the foregoing, the PaDoBS contends that the last prong of the balancing test has not demonstrated good cause to override the bank examination privilege as to the Trust Examination, the Joint Examination or documents containing information taken from those documents.

## CONCLUSION

The PaDoBS generally objects to the production of documents that include the opinion, recommendations, conclusions and determinations of the PaDoBS, including examination reports and e-mail communications that reference material from the examination reports that are protected by the bank examination privilege. The PaDoBS states its objection without regard to whether those documents have been produced and continue to be produced to the U.S. Attorney, the SEC, or other Government Entities as that term is defined by Plaintiffs, as criminal enforcement and regulatory enforcement are of greater public interest than private litigation. The general objection is more specifically supported as to the PaDoBS' proprietary documents as failing to meet good cause required for production as measured by the five prong balancing test. In short, the PaDoBS' documents are not relevant, other evidence is available, the action is not as serious as required to override the privilege, there is no government malfeasance alleged, and the candor between the regulated banks and the regulators would be harmed by overriding the privilege. For these reasons, the PaDoBS respectfully requests that this court deny Plaintiffs' motion to compel as to privileged information proprietary to the PaDoBS.

Respectfully submitted,

PENNSYLVANIA DEPARTMENT OF
BANKING AND SECURITIES

/s/ *Linda Carroll*
Linda Carroll, Deputy Chief Counsel
Attorney ID # PA 35686

Begene A. Bahl
Senior Deputy Chief Counsel
Attorney ID # PA 87803

17 North Second Street, suite 1300
Harrisburg, PA 17101
(717) 878-1471

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

*/s/ Jennifer R. Noel*
Jennifer R. Noel, DE Bar No. 3987
Joseph C. Handlon, DE Bar NO. 3952
Deputy Attorney Generals
Delaware Department of Justice
820 N. French Street, C600
Wilmington, DE 19801
(902) 577-8400

CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2014 I filed the *Answer and Brief in Support of the Pennsylvania Department of Banking and Securities' Opposition to the Plaintiffs' Motion to Compel* with the Clerk of Court using CM/ECF which will send notification to the following:

Norman M. Monhait, Esq.
Rosenthal, Monhait & Goddess, P.A.
Mellon Bank Center, Suite 1401
P.O Box 1070
919 Market St.
Wilmington, DE 19899-1070

A. Zachary Naylor, Esq.
Chimicles & Tikellis, LLP
222 Delaware Ave., 11th Floor
P.O. Box 1035
Wilmington, DE 19899

Thomas J. Allingham, II, Esq.
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square
P.O .Box 636
Wilmington, DE 19899

M. Duncan Grant, Esq.
Pepper Hamilton LLP
1313 Market St., Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709

Jaclyn C. Levy, Esq.
Potter Anderson & Corroon, LLP
1313 N. Market St.
Hercules Plaza, 6th Fl.
P.O. Box 951
Wilmington, DE 19899-0951

Virginia A. Gibson, Esq.
Hogan Lovells US LLP
1835 Market St. 29th Fl.
Philadelphia, PA 19103

David Wilks, Esq.
Wilks, Lukoff & Bracegirdle, LLC
1300 N. Grant Avenue, Suite 100
Wilmington, DE 19806

Brian Michael Gottesman, Esq.
Berger Harris, LLP
1105 N. Market St., 11th Floor
Wilmington, DE 19801

Christine S. Azur, Esq.
Labaton Sucharow LLP
300 Delaware Avenue, Suite 1225
Wilmington DE 19801

Yvonne F. Mizusawa, Esq.
Board of Governors of the Federal
Reserve System
20th and C Streets, N.W.
Washington, DC 20551

Joseph C. Handlon
Jennifer R. Noel
Deputy Attorneys General
Carvel State Building
820 N. French Street, 6th Floor
Wilmington, DE 19801

Charles M. Oberly, III
United States Attorney
District of Delaware
1007 N. Orange St.
Suite 700
Wilmington, DE 19801

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

*/s/ Jennifer R. Noel*
Jennifer R. Noel, DE Bar No. 3987
Joseph C. Handlon, DE Bar NO. 3952
Deputy Attorney Generals
Delaware Department of Justice
820 N. French Street, C600
Wilmington, DE 19801
(902) 577-8400

and

PENNSYLVANIA DEPARTMENT OF
BANKING AND SECURITIES
/s/ *Linda Carroll*
Linda Carroll, Deputy Chief Counsel
Attorney ID # PA 35686
Begene A. Bahl
Senior Deputy Chief Counsel
Attorney ID # PA 87803
17 North Second Street, suite 1300
Harrisburg, PA 17101
(717) 878-1471

Dated: October 24, 2014