UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE WILMINGTON TRUST SECURITIES LITIGATION | Master File 10-cv-00990-SLR-SRF<br>(Securities Class Action) |
| This document relates to: ALL ACTIONS | |

**OFFICE OF THE COMPTROLLER OF THE CURRENCY'S OPPOSITION TO LEAD PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD BY DEFENDANTS BASED ON "THE BANK EXAMINATION" PRIVILEGE**

## I. Introduction

Non-party Office of the Comptroller of the Currency ("OCC"), an agency of the United States, respectfully submits this memorandum of points and authorities in opposition to the Lead Plaintiffs' pending Motion to Compel Production of Documents Withheld by Defendants Based on "the Bank Examination" Privilege (Dkt. 233).

This case involves claims of securities fraud involving a bank holding company and its commercial bank, regulated by the Board of Governors of the Federal Reserve and the State of Delaware, respectively. The OCC is ***not*** the regulator of the holding company or the commercial bank; instead, the OCC is the successor regulator[1] of a former small subsidiary federal savings association that is not mentioned amongst the hundreds of factual allegations leveled by the Plaintiffs in their Fourth Amended Complaint. The Lead Plaintiffs seek an order of this Court overruling and permanently barring the OCC from raising any privileges over its regulatory

[1] *See* Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376–2223) (2010) (transferring supervisory responsibility over federal savings associations from the former Office of Thrift Supervision ("OTS") to the OCC). By statute, OCC succeeds to the former OTS's legal rights and privileges with respect to federal savings associations. 12 U.S.C. § 5414. This Opposition shall refer to the OCC and OTS interchangeably.

materials related to the federal savings association subsidiary, regardless of the fact that their own controlling pleading omits the subsidiary completely and does nothing other than mention (in a single irrelevant footnote) the existence of the OCC or OTS.[2]

The factual, legal, and procedural posture of the OCC is entirely different from the Lead Plaintiffs' arguments directed to the Federal Reserve's and State of Delaware's prudential supervision of the holding company and its commercial bank. Instead of appropriately distinguishing the OCC and the small subsidiary savings association in their Motion to Compel, the Lead Plaintiffs simply conflate all regulators and their regulated institutions together, and fail to address the central fact that the Fourth Amended Complaint does not involve any allegations pertaining to the former OTS-regulated savings association.[3]

Because the Plaintiffs have never raised any claim of securities fraud involving the savings association, the Court's previous memorandum opinions on the various Defendants' motions to dismiss omit any discussion of the OTS, the OCC, or the subsidiary savings association. On the other hand, those opinions extensively highlight the role of the Federal Reserve, its supervision of the holding company, and the commercial bank. *See* Memorandum Opinions of March 29, 2012 (Dkt. 85) and March 20, 2014 (Dkt. 184).

So far as it respects the OCC and its supervision of the subsidiary, the Lead Plaintiffs' motion is premised upon a single, incorrect assertion that the OCC has "expressly waived any claims of privilege" over its confidential documents related to the subsidiary that are held by the

[2] *See* Fourth Amended Complaint (Dkt. 149) at 26 n.4. Besides this single footnote, neither OTS nor OCC appears at all in the 236-page Fourth Amended Complaint. The pleading similarly omits any specific reference whatsoever to the subsidiary savings association formerly supervised by OTS.

[3] *Cf. In re Wilmington Trust Corp.*, SEC Dkt. Nr. 3-16098 (Sep. 11, 2014) (issuing a consent Cease and Desist order). The Securities and Exchange Commission ("SEC") Order notes that the case arose from loss-disclosure issues by "Wilmington Trust Company, a retail and commercial bank headquartered in Wilmington, Delaware." The SEC Order references supervisory activity conducted by the Federal Reserve, but again, there is no reference to the subsidiary savings association formerly regulated by the OTS.

Defendants. Plaintiffs' Memorandum of Points and Authorities ("Pl. Mem.")(Dkt. 234) at 2. *See also id*. at 19. The OCC has neither expressly nor impliedly waived its claims of privilege with respect to its confidential documents. Lead Plaintiffs' sole basis for arguing that the OCC has waived its privilege attached to the documents in question is that the materials in the Defendants' possession were made available to other government agencies. By statute, the OCC is authorized to share materials with other federal agencies without waiving any privilege that may attach to OCC documents. 12 U.S.C. § 1821(t). *See also* 12 C.F.R. § 4.37(d) ("Intention of OCC not to waive rights"). Lead Plaintiffs' motion makes no other arguments related to the OCC or its supervision of the subsidiary.

Contrary to the representation in their motion, however, just 22 days before bringing their motion, the Lead Plaintiffs filed a written request asking that the OCC waive its privileges.[4] This administrative request, made under the OCC's *Touhy* regulation, 12 C.F.R. § 4.31, *et seq*., is currently under review and no final decision has been issued. Indeed, it was not until October 6, 2014 that the OCC received from counsel for the Defendants a privilege log identifying, *inter alia*, the OCC and former OTS documents identified by them as falling within the bank examination privilege and other documents redacted in part based upon privilege. These logs list over 16,000 different documents. On October 15, 2014, the OCC received from the Defendants the actual documents identified in the privilege logs, including two hard drives and an encrypted CD containing a large mass of OCC documents.[5]

---

[4] *See* OCC Ex. 1, appended hereto. Like the instant Motion to Compel, the Lead Plaintiffs' *Touhy* request lumps the OTS and OCC in with the Federal Reserve. While the Fourth Amended Complaint alleges facts only concerning the holding company and its commercial bank, the *Touhy* request purports to reference the savings association as falling within the Fourth Amended Complaint. *See id*. at 3-4. A review of the Lead Plaintiffs' citations to the Fourth Amended Complaint, however, finds only references to the Federal Reserve, the holding company, and the commercial bank, and none whatsoever to the savings association or the OTS.

[5] *See* OCC Ex. 2, appended hereto.

The OCC submits that, rather than enter the requested order that would negate a broad range of governmental privileges[6] *in toto*, the better (and legally appropriate) course is to permit the OCC to consider and formally respond to the Lead Plaintiffs' administrative request pursuant to its regulations. Allowing the OCC adequate time to carry out its review of the disputed materials pursuant to its regulations allows the agency to avoid harm to the public interest that could result from an unrestricted disclosure while at the same time providing for an orderly mechanism for granting a discretionary waiver of privilege. *See United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 468, 71 S. Ct. 416, 419 (1951) ("When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged is obvious."). By adopting procedures that allow an orderly consideration of requests for documents, a Federal agency does not infringe on prerogatives of the Judicial Branch and, absent evidence that such regulatory procedures conflict with the Judicial Branch's rules, the courts should require respect for the Executive Branch regulations.

## II. Factual And Regulatory Background

The OCC is an independent bureau of the U.S. Department of the Treasury with primary supervisory responsibility over national banks and savings associations under the National Bank Act of 1864, codified at 12 U.S.C. § 1 *et seq*., as amended. The OCC is charged with ensuring that the banks and savings associations that it regulates operate in a safe and sound manner and

[6] While Lead Plaintiffs' memorandum references only the bank examination privilege, other governmental privileges may attach to some documents in the Defendants' possession. For example, all Federally-chartered banks are required to compile and submit Suspicious Activity Reports ("SARs") to regulators pursuant to the Bank Secrecy Act. 12 C.F.R. Part 21 (OCC regulation governing SARs). Disclosure of SARs to third parties outside the government is a felony. 31 U.S.C. § 5322.

in compliance with the laws requiring fair treatment of their customers and fair access to credit and financial products. 12 U.S.C. § 1(a). *See generally In re Subpoena Served upon the Comptroller of the Currency and Sec'y of Bd. of Governors of Fed. Reserve Sys.*, 967 F.2d 630, 633-34 (D.C. Cir. 1992) (explaining bank safety-and-soundness supervision).

The OCC accomplishes its mission chiefly through a staff of bank examiners (12 U.S.C. §§ 7, 9, 481), who are distributed among four district offices and approximately 48 field offices, as well as at the Agency's headquarters in Washington, D.C. *See generally* www.occ.gov/about. These examiners are responsible for examining banking activities and practices of national banks and their affiliates as well as Federal branches. 12 U.S.C. § 481. One of the principal tools for regulating national banks and Federal branches is periodic examination of the banks, which culminates in issuance of a Report of Examination ("ROE") assessing the safety and soundness of the institution. *Id.*

OCC bank examiners perform the role assigned by Congress in 12 U.S.C. § 481 and 12 U.S.C. § 1820(d). The OCC is required to conduct a full-scope, on-site examination of each national bank or savings association every twelve months, with the exception that smaller banks are examined every eighteen months. 12 C.F.R. § 4.6. Moreover, the OCC is authorized to conduct additional examinations whenever the bureau deems it necessary. 12 U.S.C. § 481.

The OTS was the primary federal regulator for a former savings association subsidiary of the holding company called Wilmington Trust, F.S.B. ("FSB"). The FSB was a small portion of the Wilmington Trust corporate complex and is not referenced at all in the Plaintiffs' 236-page Fourth Amended Complaint. Despite being given three opportunities to amend their complaint, Plaintiffs have made no allegations of fraud concerning the FSB. The Fourth Amended Complaint makes no allegations, factual or otherwise, about the OTS's supervision of the

subsidiary. By the terms of their own pleading to the Court, there are no allegations that make the former OTS's supervision of the FSB relevant to the securities claims leveled against the holding company.

**1. The Process For Reviewing Requests To Disclose Non-Public OCC Materials**

Given the OCC's role as the primary regulator of national banks and federal savings associations, private litigants frequently look to the agency as a source of information about an institution or particular transaction. In order to balance a litigant's desire for access to confidential supervisory information against the public interest in confidentiality, the OCC has promulgated regulations setting out means by which private litigants may obtain non-public agency information. 12 C.F.R. §§ 4.31 *et seq.*[7] Non-public OCC information is defined in the OCC's regulations in part as "information that the OCC is not required to release under the FOIA . . . or that the OCC has not yet published or made available pursuant to 12 U.S.C. 1818(u) and includes . . . [a] report of examination, supervisory correspondence, an investigatory file compiled by the OCC or OTS in connection with an investigation, and any internal agency memorandum, whether the information is in the possession of the OCC *or some other individual or entity*." 12 C.F.R. § 4.32(b)(1)(iii)(emphasis added).

These regulations are issued pursuant to 5 U.S.C. § 301, a housekeeping statute in which Congress granted to the head of each Executive Department authority to "prescribe regulations for the government of its department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." *See Touhy*, 340 U.S. at 468, 71 S. Ct. at 419 (1951). The OCC's *Touhy* regulations

[7] Other federal agencies have promulgated similar regulations. *See, e.g.*, 12 C.F.R. § 309.6 (FDIC); 12 C.F.R. § 261.22 (Board of Governors of the Federal Reserve System). *See also* 28 C.F.R. §§ 16.21-.29 (Department of Justice); 22 C.F.R. Part 172 (Department of State); 15 C.F.R. Part 15a (Department of Commerce).

require that a party seeking non-public OCC information must submit a request to the Director of the OCC's Litigation Division in Washington, D.C. 12 C.F.R. § 4.34(a). The request must include information to apprise the OCC of the nature of the litigation, such as a copy of the complaint or other pleading setting forth the assertions in the case, the name of counsel to each party, and other matters describing the litigation. 12 C.F.R. § 4.33(a)(3)(ii). Where a request for non-public OCC information is made in connection with an adversarial matter, the OCC's regulations require, among other tests, that the requester show: (1) that the requested information is relevant to the purpose for which it is sought; (2) that other evidence reasonably suited to the requester's needs is not available from any other source; (3) that the need for the information outweighs the public interest considerations in maintaining the confidentiality of the OCC information and outweighs the burden on the OCC to produce the information; and (4) how the issues in the case and the status of the case warrant that the OCC allow disclosure. 12 C.F.R. §§ 4.33(a)(3)(iii)(A)-(D). These regulations envision that a final decision on a litigant's request will normally be rendered within 60 days of its submission. 12.C.F.R. § 4.35(a)(4).

**2. Lead Plaintiffs' Request To The OCC**

The current dispute involves the disposition of documents in the possession of Defendants that, based upon Defendants' preliminary review, appear to be non-public OCC information (i.e. confidential regulatory communications) under the OCC's regulations. *See* 12 C.F.R. § 4.32(b). As such, Defendants may not disclose this information absent (1) permission from the OCC or, (2) a final order from a federal court of competent jurisdiction where the OCC has had the opportunity to appear and oppose discovery. 12 C.F.R. § 4.37(b). *See Schreiber v. Soc'y for Sav. Bancorp*, 11 F.3d 217, 222 (D.C. Cir. 1993) (rejecting the suggestion that a

litigant can obtain production of examination reports and related correspondence that are records of the agency but are in the bank's possession without the agency's permission).

On July 14, 2014, Plaintiffs filed a *Touhy* request with the OCC. The request seeks approval from the OCC for the Defendants to disclose the non-public OCC material identified by the Defendants. *See* OCC Ex. 1. The OCC's ability to consider this request, however, was hampered by the Defendants' inability to provide the OCC with a privilege log or copies of the documents until very recently. The OCC received the identified documents from the defendants on October 15, 2014, two days before this Court set a date for the federal regulators to assert privilege.[8] There simply has not been sufficient time for the OCC to review the documents and make a decision with respect to the Plaintiffs' *Touhy* request.

The size of the task before the OCC is formidable. The privilege logs identified over 16,000 different documents for the OCC to potentially review. The Defendants in this matter initially identified over three million pages of documents in their possession that are responsive to the Plaintiffs' various discovery requests. Wilmington Trust Defendants' Response to the Motion to Compel ("Def. Res.") (Dkt. 242) at 2.

Based on the parties' pleadings, the privilege log prepared by the Defendants, and the OCC's initial review of a judgmental sample of documents provided by Defendants,[9] OCC has

---

[8] In a filing with the Court on October 17, 2014, the OCC indicated its intention to maintain its applicable privileges over its supervisory information held by the Defendants.

[9] The OCC has confined its initial judgmental review to documents coded by the Defendants as OCC being the lead regulator. The agency's review of these initial documents has identified no items related to the holding company's securities fraud as alleged by Plaintiffs in their case – for example, OCC has seen no communications made by FSB officials to their regulators asking for help to cover up the FSB's true condition in order to fraudulently prop up the holding company's stock price. Despite having been provided the privilege log at the same time as the OCC, as of the date of this Opposition, Lead Plaintiffs have made no argument to the Court (or to the OCC) identifying any OCC documents on the privilege log as being highly relevant to the securities fraud claims against the holding company or otherwise not subject to OCC privileges.

As the Lead Plaintiffs have failed to raise any arguments (besides OCC waiver of privilege) before submission of this Opposition, any new arguments – besides the alleged waiver – which may be offered in a reply by Lead Plaintiffs would be improper.

yet to identify documents withheld by the Defendants that are relevant to the issues in this case.[10] Plaintiffs, however, insist here upon wholesale production of all OCC documents whether or not they are relevant on the sole basis that the OCC "expressly waived any claims of privilege" over confidential documents coming within the OCC *Touhy* regulation that are held by the Defendants. Pl. Mem. (Dkt. 234) at 2.

The OCC tried and failed to obtain a reasonable commitment from Lead Plaintiffs to address the document review issue; instead, the Lead Plaintiffs demand immediate and unconditional release to them of all OCC documents and a permanent bar on the Agency from ever asserting any privilege over any of its documents. The OCC, therefore, has no choice but to file this opposition to the Motion to Compel.

## III. Argument

### 1. Plaintiffs' allegation that OCC waived its privileges is contradicted by statute, and the Plaintiffs' motion offers no analysis to show that OCC documents are not shielded by bank examination privilege.

As noted above, the Defendants in this matter initially identified over three million pages of documents in their possession that are responsive to the Plaintiffs' various discovery requests. This universe of documents appears to be largely co-existent with a previous assembly of documents that the Defendants created in conjunction with an investigation conducted by, amongst other governmental entities, the Securities and Exchange Commission ("SEC"). Pl. Mem. (Dkt. 234) at 2. During this investigation, some OCC documents were provided by the Defendants to the SEC. *Id*. Plaintiffs' sole argument in favor of waiver is the assertion that the various Defendants previously provided OCC material to the SEC. *Id*.

---

[10] The OCC is aware that controversy in the case centers upon a "Memorandum of Understanding" ("MOU") entered into by the holding company and the Federal Reserve. Neither OTS nor the OCC were parties to the Federal Reserve's MOU. Documents provided by Defendants show that, at different times, a Supervisory Agreement and a different MOU were entered into between the ***subsidiary*** FSB and the OTS. The Federal Reserve was not a party to these actions.

Congress has specifically facilitated the ability of banking regulators such as the OCC to share its privileged or confidential regulatory materials with other federal agencies without waiving any applicable privileges. Section 1821(t)(1) of the Federal Deposit Insurance Act, 12 U.S.C. § 1821(t)(1), reads:

> A covered agency, in any capacity, shall not be deemed to have waived any privilege applicable to any information by transferring that information to or permitting that information to be used by—
>
> (A) any other covered agency, in any capacity; or
>
> (B) any other agency of the Federal Government (as defined in section 6 of title 18).

A "covered agency" is defined as including "[A]ny federal banking agency", 12 U.S.C. § 1821(t)(2)(A), which includes the OCC or, previously, the OTS. The SEC is a "commission" that is an "agency of the Federal Government" under 18 U.S.C. § 6.[11] Finally, the term "privilege" as used in the statute "includes any work-product, attorney-client, or other privilege recognized under Federal or State law." 12 U.S.C. § 1821(t)(2)(B).

Lead Plaintiffs' argument that the sharing of OCC documents with the SEC or any other federal agency serves to waive any privilege that may attach is incorrect. Federal statute permits the OCC (and the other federal banking regulatory agencies) to do precisely this without fear of the waiver alleged by the Lead Plaintiffs. Their waiver argument should therefore be rejected by the Court.

---

[11] The term "agency" includes "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense." 18 U.S.C. § 6. Congress established the SEC in 1934. *See* 15 U.S.C. § 78d.

**2. The OCC should not have to undertake the burden of a large-scale document-by-document privilege review until the Plaintiffs demonstrate that access to these materials is necessary.**

The OCC has limited resources, which is a very real constraint on its ability to conduct a page-by-page review of the mass of OCC supervisory documents held by Defendants related to the subsidiary FSB. In this case, however, there is nothing amongst the allegations of the Fourth Amended Complaint involving the FSB or its supervision by OCC. Therefore, Plaintiffs should be required to show that the withheld OCC information related to the subsidiary FSB plays a significant role in this case. A first step in making that showing is providing the information required under the OCC's *Touhy* regulations and then for the Court to require Plaintiffs to adhere to the standard administrative process.[12]

As the Rules of Civil Procedure are designed to minimize the burden of costs of discovery in general – and especially upon non-parties such as the OCC – the Court should exercise its discretion to prevent imposing a potentially unnecessary burden and expense of document review on a non-party. Further, entry of an order overruling OCC's privileges will result in violation of important governmental interests. The Court should deny the Lead Plaintiffs' motion, require them to comply with the OCC's *Touhy* regulation, and specify that they must demonstrate a specific, compelling need to access to confidential OCC supervisory

[12] At least one court within the Third Circuit has thoroughly considered and approved of the "salutary effects" of requiring litigants to adhere to administrative agency procedures prior to seeking relief in federal courts. *Golden Pacific Bancorp v. Fed. Deposit Ins. Corp.*, No. Civ. A 99-3799, 1999 WL 1332312, at *2, 4 (D.N.J. Nov. 10, 1999) (discussing the beneficial interests of exhausting administrative remedies before a party invokes judicial process, and noting that such interests include, *inter alia*, the possibility that administrative review may moot the controversy, allowing an administrative agency to take a position as to the matter prior to judicial intervention, and developing an administrative record for judicial review); *see also Quezada v. Mink*, No. 10-CV-00879, 2010 WL 4537086, at *5 (D. Colo. Nov. 3, 2010) ("[T]his Circuit has interpreted *Touhy* to allow federal officials to limit subordinates' authority to produce documents or provide testimony pursuant to duly-enacted regulations."); *but see Galarza v. Szalczyk*, No. 10-6815, 2011 WL 1045119, at *3 (E.D. Pa. March 21, 2011) (finding that where the plaintiff made a good faith effort to comply with *Touhy* regulations while simultaneously filing a motion for expedited discovery, *Touhy* regulations did not bar the defendant, an Immigration and Customs Enforcement deportation officer, from being deposed).

materials despite the fact that the lawsuit does not implicate the supervision of the subsidiary FSB.

## IV. Conclusion

For the foregoing reasons, the Motion to Compel, as it respects the OCC and its documents related to the subsidiary FSB, should be denied.

Dated: October 24, 2014

Respectfully submitted,

AMY FRIEND
Chief Counsel

DANIEL J. STIPANO
Deputy Chief Counsel

HORACE SNEED
Director, Litigation Division

GREGORY TAYLOR
Assistant Director, Litigation Division

*/s/Christopher A. Sterbenz*
CHRISTOPHER A. STERBENZ
Counsel, Litigation Division

Office of the Comptroller of the Currency
400 7th Street, S.W.
Washington, D.C. 20219
christopher.sterbenz@occ.treas.gov
(202) 649-6314

**Certificate of Service**

I hereby certify that on October 24, 2014, I caused a copy of the foregoing to be filed on the Court's electronic filing system. All counsel of record will receive service thereby.

*/s/Christopher A. Sterbenz*
CHRISTOPHER A. STERBENZ