**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **IN RE WILMINGTON TRUST SECURITIES LITIGATION** | Master File No. 10-cv-00990-SLR-SRF |
| | (Securities Class Action) |
| This document relates to: ALL ACTIONS | Hon. Sue L. Robinson |
| | ELECTRONICALLY FILED |

# LEAD PLAINTIFFS' BRIEF IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR A LIMITED STAY OF DISCOVERY

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Blair Nicholas
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323

-and-

Hannah Ross (*pro hac vice*)
Lauren McMillen Ormsbee (*pro hac vice*)
Katherine M. Sinderson (*pro hac vice*)
Jake Nachmani (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Phone: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Lead Plaintiffs and Co-Lead Counsel for the Class*

**CHIMICLES & TIKELLIS LLP**

Pamela S. Tikellis (Bar No. 2172)
A. Zachary Naylor (Bar No. 4439)
Vera G. Belger (Bar No. 5676)
222 Delaware Avenue, 11th Floor
P.O. Box 1035
Wilmington, DE 19899
Phone: (302) 656-2500
Fax: (302) 656-9053

*Liaison Counsel for the Class*

**SAXENA WHITE P.A.**

Maya S. Saxena (*pro hac vice*)
Joseph E. White, III (*pro hac vice*)
Lester Hooker (*pro hac vice*)
Brandon T. Grzandziel (*pro hac vice*)
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Phone: (561) 394-3399
Fax: (561) 394-3382

*Counsel for Lead Plaintiffs and Co-Lead Counsel for the Class*

October 27, 2014

# Table of Contents


INTRODUCTION ..... 1

NATURE AND STAGE OF PROCEEDINGS ..... 2

Lead Plaintiffs' Investigation Into Wilmington Trust ..... 2

Discovery In This Action ..... 3

ARGUMENT ..... 4

I. The Court Should Exercise Its Discretion And Deny Or Limit The Stay ..... 4

A. The Broader Scope Of The Civil Action ..... 5

B. Prejudice To Plaintiffs And The Stage Of The Criminal Proceedings ..... 5

C. The Interests Of The Government, The Public And The Court ..... 6

II. The Stay, If Granted, Should Be Limited ..... 6

A. The Stay Should Be Limited To The Certain Witnesses ..... 6

B. The Stay Should Not Be Extended ..... 7

III. The Stay, If Granted As To All Of Lead Plaintiffs' Noticed Depositions, Should Apply To All Fact Depositions ..... 7

CONCLUSION ..... 8

# **Table of Citations**

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Digital Equip. Corp. v. Currie Enters., et al.*,
142 F.R.D. 8 (D. Mass. 1991)........................................................................5

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....................................................................................4

*U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*,
811 F. Supp. 808 (E.D.N.Y. 1992) ..................................................................6

Lead Plaintiffs, the Merced County Employees' Retirement Association, the Coral Springs Police Pension Fund, the St. Petersburg Firefighters' Retirement System, the Pompano Beach General Employees Retirement System, and the Automotive Industries Pension Trust Fund (collectively, "Lead Plaintiffs"), respectfully submit this memorandum of law in opposition to the Motion for a Limited Stay of Discovery filed by the United States Attorney's Office for the District of Delaware (the "Government") (the "Motion").

## INTRODUCTION

Lead Plaintiffs have aggressively litigated this Action since its inception nearly four years ago when their investigation publicly revealed, for the first time, the extent and severity of the wrongdoing at Wilmington. Since the Court sustained Lead Plaintiffs' allegations in March 2014, (D.I. 184), Lead Plaintiffs have pushed the case forward at every opportunity in the face of significant headwinds from Defendants and third parties. Lead Plaintiffs have done so because they believe strongly that it is past time for aggrieved Wilmington shareholders – some of whom lost their life savings in this formerly venerable institution – to have their day in court.

In late September, shortly after Lead Plaintiffs identified to Defendants and the Government a list of Wilmington Trust deponents, the Government notified the parties that it intended to seek to stay all merits discovery in this Action for several months in order to allow the Government's investigation that has been ongoing since at least 2012 to move forward without interference. Despite repeated requests from Lead Plaintiffs, the Government refused to provide any substantive information regarding the need for such a stay, and its Motion does not provide any additional clarity. While the Government has submitted an *Ex Parte* Affidavit providing additional information regarding the direction, status and scope of its investigation, the Government has not demonstrated to Lead Plaintiffs why a complete stay of fact discovery in this Action is necessary to protect a criminal investigation that has been ongoing for many years.

Accordingly, and without the benefit of the *Ex Parte* Affidavit, Lead Plaintiffs oppose the Government's attempt to impose a wholesale stay on merits discovery in this Action. Should the Court determine that a stay is warranted, Lead Plaintiffs respectfully request that the Court limit the scope of the stay.

## NATURE AND STAGE OF PROCEEDINGS

### Lead Plaintiffs' Investigation Into Wilmington Trust

On November 1, 2010, Wilmington shocked the market by admitting that the Bank had failed to report approximately $800 million in unreported losses in its loan portfolio, was subject to "significant" regulatory action, and was being acquired by M&T because it could no longer survive as an independent entity. The market's reaction was swift: Wilmington's stock price plummeted over 40%, resulting in the loss of hundreds of millions of dollars by investors.

Within weeks of the November 1, 2010 disclosure, counsel for Lead Plaintiffs began an investigation into Wilmington's wrongdoing that included interviews with numerous former Wilmington employees and consultations with various experts. Without the benefit of the Government's criminal investigations, Lead Plaintiffs identified rampant misconduct relating to the Bank's fraudulent loan-underwriting practices, including misuse of the "10% Rule" and manipulation of the Bank's asset-review processes. Lead Plaintiffs also identified numerous violations of Generally Accepted Accounting Principles ("GAAP") with respect to the calculation of the Bank's loan-loss reserve. Notably, Lead Plaintiffs independently discovered that the Federal Reserve (as well as KPMG and the Bank's internal audit group) had repeatedly criticized the Bank's practices for years, leading to the imposition of a Memorandum of Understanding ("MOU") on Wilmington. The MOU required the Bank to make fundamental and systemic changes to its commercial loan policies and procedures in 2009 and 2010, which led to the disclosure of the truth to investors in 2010.

Following the appointment of Lead Plaintiffs and Lead Counsel on March 7, 2011, Lead Plaintiffs documented the results of their investigation in the initial Consolidated Securities Class Action Complaint, filed on May 16, 2011 (D.I. 39) (the "First Complaint"). While subsequent developments made public by the Government's criminal investigation in 2012 and 2013 have allowed Lead Plaintiffs to refine and expand the allegations in their sustained Fourth Complaint, the bedrock facts and allegations from the First Complaint remain intact.

The allegations in the First Complaint and, most recently in the Fourth Complaint, relate directly to the Bank's fraudulent underwriting and false reporting of past due and nonaccrual loans between 2007 and 2010, and assert claims against the Bank, the Individual Officer and Director Defendants, KPMG, and the Underwriter Defendants. Finally, Lead Plaintiffs have alleged fraud claims against KPMG and strict liability claims against both KPMG and the Underwriter Defendants with respect to a February 2010 Secondary Offering of common stock.

**Discovery In This Action**

On March 20, 2014, this Court sustained the allegations in the Fourth Complaint, allowing discovery against Defendants to proceed. Given the time that had elapsed between the First Complaint and the Court's Order, Lead Plaintiffs sought to enact a schedule that would allow a speedy discovery process and resolution of the Action. On May 19, 2014, the Court entered the parties' proposed joint Scheduling Order (D.I. 197), which allowed Lead Plaintiffs to begin taking depositions of Defendants on September 8, 2014.

The Government has been kept informed of all major stages of discovery. Indeed, the Government initially advised the parties in April 2014 that the agreed-upon schedule allowing fact-witness depositions to commence in September caused no concern for the Government's investigation. On September 18, 2014, in accordance with the Scheduling Order, Lead Plaintiffs sent the Wilmington Trust Defendants a list of twenty-three fact witnesses that Lead Plaintiffs

anticipated deposing, beginning on October 6, 2014. Ex. A. Lead Plaintiffs sent a copy of that letter to the Government. Ex. B. Shortly thereafter, the Government informed Lead Plaintiffs for the first time that it intended to seek to stay depositions in this Action until March 2015 and asked Lead Plaintiffs to agree to such a stay.

Lead Plaintiffs immediately sought additional information from the Government, but the Government explained that, due to grand jury secrecy concerns, it could not share any further information about the status of its investigation. Lead Plaintiffs then proposed a compromise to the Government whereby the stay of depositions would apply only to the Individual Defendants, Terranova and Bailey. The Government rejected this proposal. Finally, Lead Plaintiffs sought assurance from the Government that it would not try to later extend the requested stay beyond March 2015. The Government was unwilling to provide such assurance and, accordingly, Lead Plaintiffs declined to consent to the requested stay.

Similarly, in its publicly filed Motion, the Government has not provided any of the information or assurances that Lead Plaintiffs have sought. Lead Plaintiffs therefore are left with no choice but to oppose the Government's Motion requesting a four-month stay of all fact depositions, interrogatories, and requests for admission in this Action.

## **ARGUMENT**

### I. **The Court Should Exercise Its Discretion And Deny Or Limit The Stay**

The consideration of whether to grant a motion to stay discovery in a civil action "calls for the exercise of judgment which must weigh the competing interests and maintain an even balance." *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). The requested stay should be denied because Lead Plaintiffs believe that the Government has not demonstrated why a lengthy four-month complete stay of fact witness depositions and other discovery is necessary to protect a criminal investigation that has been ongoing and active for many years. However, Plaintiffs

recognize that the Court is in possession of additional information submitted *ex parte* and, based on that information, should the Court determine that a stay is warranted, Plaintiffs request that certain qualifications and modifications be considered. *See Digital Equip. Corp. v. Currie Enters., et al.*, 142 F.R.D. 8, 12 (D. Mass. 1991) (citing *Securities & Exchange Commission v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)) (it is within the Court's discretion to, in lieu of a total stay, "impose protective orders, seal interrogatories, impose a stay for a finite period of time, or limit a stay to a particular subject matter").

**A. The Broader Scope Of The Civil Action**

While there is overlap and similarity of issues between the Government's criminal investigation and this Action, the scope of this Action is more broad than the criminal actions. For example, certain Defendants – specifically, KPMG and the Underwriter Defendants – have not yet been publicly implicated as targets of the criminal investigation, whereas in this Action Lead Plaintiffs have alleged fraud claims against KPMG and strict liability claims against both KPMG and the Underwriters. Further, as the Government indicates in its Motion (Motion at 11), none of the Defendants have yet been indicted. The Government's requested stay will suspend Plaintiffs' ability to develop certain theories of this Action and is, therefore, overbroad and unnecessary.

**B. Prejudice To Plaintiffs And The Stage Of The Criminal Proceedings**

The delay that will result from the requested stay will prejudice the Class' interests in the speedy resolution of this case. Class members have a significant interest in obtaining a recovery of their losses due to the Defendants' fraud and the Government's criminal investigation will not make them whole. Plaintiffs have already spent four years aggressively litigating this Action and are ready and willing to move this case toward the October 2015 trial date. While Plaintiffs understand the Government's concerns regarding the need to preserve the integrity of the grand

jury process, a stay of all proceedings at this juncture prejudices the Plaintiffs and the Class by further delaying their recovery – possibly well beyond the March 1, 2015 deadline for which the Government presently asks.

### C. The Interests Of The Government, The Public And The Court

The Court, with its superior knowledge of the state of the Government's investigation arising from its review of the Government's *Ex Parte* Affidavit, is best-suited to weigh the remaining three factors considering whether the stay is in the best interests of the Government, the public and the Court. Plaintiffs respectfully note, however, that the Bank's shareholders have a significant interest in pursuing recovery of their losses caused by Defendants' fraud, and the Court has an interest in avoiding unnecessary delay. *See U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 811 F. Supp. 808, at 808 (E.D.N.Y. 1992) (citing *Arden Way Assocs.*, 660 F. Supp. 1494, 1497) (the convenience of the courts is best served when motions to stay proceedings are discouraged because "a policy of issuing stays 'solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration'").

## II. <u>The Stay, If Granted, Should Be Limited</u>

### A. The Stay Should Be Limited To The Certain Witnesses

Lead Plaintiffs proposed a compromise to the Government that only the depositions of the Individual Defendants (Cecala, North, Harra, Gibson, and Foley), Terranova and Bailey should be stayed in light of the Government's ongoing criminal investigations, but that all other depositions of non-control group witnesses should be allowed to proceed. The Government rejected this proposal. Admittedly without the benefit of the Government's *Ex Parte* submission, Lead Plaintiffs do not understand how taking the depositions of the non-control group executives

could harm the Government's case. Therefore, Lead Plaintiffs respectfully request that the Court modify the Government's requested stay to include only these seven individuals.

### B. The Stay Should Not Be Extended

As stated above, Lead Plaintiffs are concerned that the Government will later seek to extend the requested stay beyond March 1, 2015 (or any earlier date that the Court may set). Indeed, the Government is unable to provide Plaintiffs any assurance that it will not do so. Should the Court grant the Government's motion for a stay, Plaintiffs respectfully request that this is the only stay allowed in this Action, and that their fact witness depositions will commence on March 1, 2015 (or any earlier date that the Court may set) barring any extraordinary showing of need.

## III. The Stay, If Granted As To All Of Lead Plaintiffs' Noticed Depositions, Should Apply To All Fact Depositions

The Government's Motion seeks to stay only the depositions of Defendants' witnesses noticed for deposition by Plaintiffs. On November 4, 2014, Defendants' opposition to Lead Plaintiffs' September 12, 2014 motion for class certification will be filed. Defendants have now deposed all five Lead Plaintiffs, and no further non-expert depositions will be necessary in support of or opposition to class certification. If there is a stay imposed to protect the Individual Defendants and other Wilmington Trust employees along with the KPMG and Underwriter Defendant witnesses from answering discovery from Lead Plaintiffs, a commensurate stay should protect Lead Plaintiffs (and other fact witnesses) from discovery by Defendants. Therefore, Plaintiffs respectfully request that the stay, should it be granted, explicitly apply to the depositions of all parties following the filing of Defendants' November 4, 2014 class certification opposition brief.

## CONCLUSION

For the reasons stated herein, Lead Plaintiffs respectfully request that that Court deny the Government's Motion or, alternatively, limit the requested stay as set forth in Sections II and III above.

Dated: October 27, 2014

**CHIMICLES & TIKELLIS LLP**

*/s/ A. Zachary Naylor*
Pamela S. Tikellis (Bar No. 2172)
A. Zachary Naylor (Bar No. 4439)
Vera G. Belger (Bar No. 5676)
222 Delaware Avenue, 11th Floor
P.O. Box 1035
Wilmington, DE 19899
Phone: (302) 656-2500
Fax: (302) 656-9053

*Liaison Counsel For The Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Blair Nicholas
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323

-and-

Hannah Ross
Lauren McMillen Ormsbee
Katherine M. Sinderson
Jake Nachmani
1285 Avenue of the Americas
New York, NY 10019
Phone: (212) 554-1400
Fax: (212) 554-1444

**SAXENA WHITE P.A.**

Maya S. Saxena
Joseph E. White, III
Lester R. Hooker
Brandon T. Grzandziel
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Phone: (561) 394-3399
Fax: (561) 394-3382

*Counsel For Lead Plaintiffs And Co-Lead Counsel For The Class*