**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **IN RE WILMINGTON TRUST SECURITIES LITIGATION** | Master File No. 10-cv-00990-SLR-SRF |
| This document relates to: ALL ACTIONS | (Securities Class Action)<br>Hon. Sue L. Robinson<br>ELECTRONICALLY FILED |

# LEAD PLAINTIFFS' BRIEF IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR A STAY OF DISCOVERY


**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Blair Nicholas
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323

-and-

Hannah Ross (*pro hac vice*)
Katherine M. Sinderson (*pro hac vice*)
Lauren McMillen Ormsbee (*pro hac vice*)
Jeremy Robinson (*pro hac vice*)
Jake Nachmani (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Phone: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Lead Plaintiffs and Co-Lead Counsel for the Class*

**CHIMICLES & TIKELLIS LLP**

Pamela S. Tikellis (Bar No. 2172)
A. Zachary Naylor (Bar No. 4439)
Vera G. Belger (Bar No. 5676)
222 Delaware Avenue, 11th Floor
P.O. Box 1035
Wilmington, DE 19899
Phone: (302) 656-2500
Fax: (302) 656-9053

*Liaison Counsel for the Class*

**SAXENA WHITE P.A.**

Maya S. Saxena (*pro hac vice*)
Joseph E. White, III (*pro hac vice*)
Lester R. Hooker (*pro hac vice*)
Brandon T. Grzandziel (*pro hac vice*)
Jorge Amador (*pro hac vice*)
Kathryn W. Weidner (*pro hac vice*)
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Phone: (561) 394-3399
Fax: (561) 394-3382

*Counsel for Lead Plaintiffs and Co-Lead Counsel for the Class*


October 30, 2015

**Table of Contents**


INTRODUCTION ..... 1

NATURE AND STAGE OF PROCEEDINGS ..... 3

I. Lead Plaintiffs' Investigation Into Wilmington Trust ..... 3

II. Discovery In This Action ..... 5

ARGUMENT ..... 8

I. The Court Should Exercise Its Discretion And Deny Or Narrowly Limit The Stay ..... 8

A. A Complete Stay Would Severely Prejudice Lead Plaintiffs And The Class ..... 10

B. This Action Is Considerably Broader In Scope Than The Criminal Actions ..... 12

C. The Interests Of The Public, The Court And The Government Weigh Against The Requested Stay ..... 13

II. Any Additional Stay Should Remain Limited To Specific Witnesses ..... 13

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AIG Life Ins. Co. v. Phillips*, No. 07–cv–00500,
2007 WL 2116383 (D. Colo. July 20, 2007) ....................8

*Arden Way Assoc. v. Boesky*,
660 F. Supp. 1494 (S.D.N.Y. 1987)....................9, 13

*Bryer v. Jefferson*, No. 12–1028,
2013 WL 3753420 (D. Del. July 8, 2013) ....................9

*In re CFS-Related Sec. Fraud Litig.*,
256 F. Supp. 2d 1227 (N.D. Okla. 2003)....................9

*Clinton v. Jones*,
520 U.S. 681 (1997)....................8

*De'omilia Plastic Surgery, PC v. Sweeton*, No. 12–06415,
2013 WL 6070037 (D.N.J. Nov. 18, 2013) ....................8, 9

*Digital Equip. Corp. v. Currie Enters., et al.*,
142 F.R.D. 8 (D. Mass. 1991)....................9

*In re Herley Indus. Inc. Sec. Litig.*, No. 06-2596,
2007 WL 1120246 (E.D. Pa. April 11, 2007)....................9, 10, 13

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....................8

*Maloney v. Gordon*,
328 F. Supp. 2d 508 (D. Del. 2004)....................9

*SEC v. Saad*,
384 F. Supp. 2d 692 (S.D.N.Y. 2005)....................8

*SEC v. Chakrapani*, No. 09 Civ. 325,
2010 WL 2605819 (S.D.N.Y. June 29, 2010) ....................1, 8, 14

*SEC v. Dresser Indus.*,
628 F.2d 1368 (D.C. Cir. 1980)....................9

*In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570,
2012 WL 104512 (S.D.N.Y. Jan. 11, 2012) ....................8

*Texaco, Inc. v. Borda*,
383 F.2d 607 (3d Cir. 1967)....................9

*United States v. Gibson*,
No. 1:15-cr-00023-RGA (D. Del. May 6, 2015) ....................11

*United States v. Joseph Terranova*,
No. 1:13-cr-00039 (D. Del. Apr. 10, 2013) ....................4

*Walsh Sec. Inc. v. Cristo Prop. Mgmt., Ltd.*,
7 F. Supp. 2d 523 (D.N.J. 1998) ....................9, 10

**OTHER AUTHORITIES**

Fed. R. Crim. P. 16(a)(1)(A)-(F)....................11

Lead Plaintiffs respectfully submit this memorandum of law in opposition to the motion by the United States Attorney's Office for the District of Delaware (the "Government") for a second stay of discovery of this Action (the "Motion") (D.I. 415).

## INTRODUCTION

The Government seeks the "extraordinary remedy" of a stay of all discovery in this Action. The stay requested will last at least another year – until December 2016 – but in reality is requested for a period of indefinite duration. Not only does the Government seek to stay the pending depositions of 24 witnesses – all of whom are essential to this securities class action – but they also seek to stay all interrogatories, requests for admission, and the further production of documents that are not currently the subject of a motion to compel. The Government's requested stay is far too broad and overreaching, and is based on a purely speculative risk that depositions and other discovery here will somehow harm the Government's case against four of the Defendants. Critically, this Court has already stayed the depositions of those four criminal Defendants in its October 13, 2015 Order, along with the depositions of two former Wilmington executives who have pled guilty and are cooperating with the Government. The complete stay of this Action – which will last at least one year (and likely much longer) – is not warranted and the Government's Motion should be denied. The Government is simply not entitled to unilaterally control all potential witnesses in the criminal action who may also testify in a related civil action. *See SEC v. Chakrapani*, 2010 WL 2605819, at *11 (S.D.N.Y. June 29, 2010) (holding that there is no legal right "entitling the government to preserve its cooperators from examination before trial" and that the Government's "preference to avoid cross-examination and related impeachment of prized witnesses" ignores the reality that "prized witnesses often must testify more than once in both civil and criminal proceedings").

Indeed, this Court already implicitly determined that the relief sought by the Government is inappropriate in its October 13, 2015 Order (the "Lift Stay Order") (D.I. 409). In that Order, the Court lifted the stay of this Action that had been in effect for over one year, and ordered that only "the depositions of the six criminal defendants (and any individuals who may be indicted in the future) . . . shall remain stayed pending the resolution of the criminal actions." The Lift Stay Order made clear that the Court "reflected on the most appropriate course for the instant litigation" in deciding to lift in large part the stay of this Action. Indeed, the Court was fully informed by, among other things:

- The Government's October 10, 2014 motion for a four-month stay of discovery, which was supported by an *ex parte* submission to the Court providing the Government's reasons for the stay (D.I. 297);
- The subsequent criminal indictments of four defendants in this action (discussed in D.I. 391, 398, 408, at 6-7);
- Magistrate Judge Fallon's suggestion that depositions "for which the Fifth Amendment is not a concern" should proceed (D.I. 408, Ex. A at 20);
- The fact that this Action has been pending since November 2010 and the Defendants' motions to dismiss were denied on March 20, 2014, more than eighteen months ago;
- The parties' September 30, 2015 Status Reports (D.I. 407 & 408), which discussed the status of the criminal action (scheduled for trial in September 2016), the propriety of any continued wholesale stay of depositions and other discovery in this action; and
- The Government's intention to once again move to stay if the Court lifted the then-existing stay, which was communicated in Lead Plaintiffs' Status Report.

The Government's Motion raises no new issues and should be denied in its entirety. Further, the requested stay (based purely on hypotheticals) is highly prejudicial to Lead Plaintiffs and the Class and the Government is incorrect to claim otherwise. The trial of the indicted Defendants is currently scheduled for September 2016 – approximately eleven months away – and is estimated to last eight weeks. Between now and then, it is likely that the trial date may

change, especially in light of the Government's repeated admonition that its investigation is ongoing and additional indictments are possible. *See* D.I. 415-1, at 3 (citing *Ex Parte* Affidavit at ¶¶8-9). Lead Plaintiffs are entitled to prosecute their action, which includes deposing those witnesses that remain free from criminal prosecution and analyzing documents made available to Defendants in preparing their defense.

Lead Plaintiffs have no wish to, or intention of, intruding on the Government's investigation. Indeed, Lead Plaintiffs are not requesting the ability to depose the actual targets of that investigation at this time. Lead Plaintiffs have aggressively litigated this Action since its inception nearly five years ago, when their investigation publicly revealed, for the first time, the extent and severity of the pervasive fraudulent conduct at Wilmington. Since the Court sustained Lead Plaintiffs' allegations in March 2014, (D.I. 184), Lead Plaintiffs have pushed the case forward at every opportunity in the face of significant headwinds from Defendants, the Government, third parties and other intervenors (including the Federal Reserve). Lead Plaintiffs have done so because it is well past time for aggrieved Wilmington shareholders to have their day in court. The Government's overreaching based on, at best, speculative concerns cannot be credited. The motion should be denied.

## NATURE AND STAGE OF PROCEEDINGS

### I. Lead Plaintiffs' Investigation Into Wilmington Trust

On November 1, 2010, Wilmington shocked the market by admitting that the Bank had failed to report approximately $800 million in unreported losses in its loan portfolio and was being acquired by M&T because it could no longer survive as an independent entity. The market's reaction was swift: Wilmington's stock price plummeted over 40%, resulting in the loss of hundreds of millions of dollars by investors, which to this day they still have not recouped.

Within weeks of the November 1, 2010 disclosure, counsel for Lead Plaintiffs began an investigation into Wilmington's wrongdoing that included interviews with numerous former Wilmington employees and consultations with various experts. Without the benefit of the Government's criminal investigations (which, to the extent they had been initiated, were not public), Lead Plaintiffs independently identified rampant misconduct relating to the Bank's fraudulent loan-underwriting practices, including misuse of the "10% Rule" and manipulation of the Bank's asset-review processes. Lead Plaintiffs also identified numerous violations of Generally Accepted Accounting Principles ("GAAP") with respect to the calculation of the Bank's loan-loss reserve. Notably, Lead Plaintiffs independently discovered that the Federal Reserve (as well as KPMG and the Bank's internal audit group) had repeatedly criticized the Bank's practices for years, leading to the imposition of a Memorandum of Understanding ("MOU") on Wilmington. The MOU required the Bank to make fundamental and systemic changes to its commercial loan policies and procedures in 2009 and 2010, which led directly to the disclosure of the truth to investors in 2010.

Following the appointment of Lead Plaintiffs and Lead Counsel on March 7, 2011, Lead Plaintiffs documented the results of their investigation in the initial Consolidated Securities Class Action Complaint, filed on May 16, 2011 (D.I. 39) (the "First Complaint").[1] The Government's first related indictment (of a Bank lending officer) occurred two years later, in April 2013.[2] While subsequent developments made public by the Government's criminal investigation in 2012 and 2013 have allowed Lead Plaintiffs to refine and expand the allegations in their

[1] While plaintiffs ultimately amended the First Complaint, the facts at the heart of the First Complaint remained the same.

[2] *United States v. Joseph Terranova*, Crim. No. 13-39-GMS.

sustained Fourth Complaint, the bedrock facts and allegations from the First Complaint remain unchanged.

## II. Discovery In This Action

After the Court sustained Lead Plaintiffs' detailed factual allegations on March 20, 2014, Lead Plaintiffs immediately sought to enact a schedule that would allow a speedy discovery process and resolution of the Action. On May 19, 2014, the Court entered the parties' proposed joint Scheduling Order (D.I. 197), which allowed Lead Plaintiffs to begin taking depositions on September 8, 2014, and ordered that document production be substantially complete by October 17, 2014.[3] The Government has been kept informed of all major stages of discovery. Indeed, the Government initially raised no objection in April 2014 when it was told that that the agreed-upon schedule allowed fact-witness depositions to commence in September 2014.

In September 2014, Lead Plaintiffs sent the Wilmington Trust Defendants a list of twenty-three fact witnesses that Lead Plaintiffs anticipated deposing, which were to begin on October 6, 2014. A courtesy copy of this list was contemporaneously sent to the Government, which thereafter informed Lead Plaintiffs for the first time that it intended to seek to stay depositions until March 2015, and further asked Lead Plaintiffs to agree to such a stay. The Government rejected Lead Plaintiffs' proposed compromise that the Government's requested stay of depositions would apply only to the Individual Defendants, Terranova and Bailey, and refused to commit to lifting its requested stay after March 2015. Accordingly, Lead Plaintiffs

[3] As the Court is aware, Wilmington Trust produced over 1.4 million additional pages of documents between May 2015 and October 30, 2015, months after the substantial completion date, due to a significant error in their earlier document production. *See* D.I. 408 at 3-5. The only remaining documents to be produced (to Lead Plaintiffs' knowledge) are those that result from the Court's resolution of Lead Plaintiffs' pending motion to compel the production of the approximately 50,000 documents being withheld on the purported basis of the bank examination privilege.

declined to consent. The Government's initial motion for a stay, filed on October 10, 2014, was terminated as moot on April 8, 2015. The Court also did not rule on Plaintiffs' request for a case schedule (D.I. 384) and, accordingly, none of the formally noticed depositions took place.[4]

On July 2, 2015, following the hearing on Lead Plaintiffs' motion for class certification (during which the criminal action and Defendants' desire for a stay was discussed), the Court stayed this action "until further order of the court" in light of the fact "that the original scheduling order (D.I. 197) is no longer operable and [] there are parallel proceedings which impact the instant litigation." D.I. 397. The Court also ordered the parties to file status reports on September 30, 2015. In their September 30, 2015 Status Report, Lead Plaintiffs requested that the July 2 stay be lifted and that all depositions commence by November 1, 2015. D.I. 408 at 1-3. Lead Plaintiffs presented a compromise to the Court (based in part on Magistrate Judge Fallon's comments made on April 7, 2015), that to the extent the Court wished to stay any depositions, that stay should be limited to depositions of the six criminal defendants. *Id.* at 1. Lead Plaintiffs specifically noted that the U.S. Attorneys' Office objected to the stay being lifted and would seek to intervene to stay depositions. *Id.* at 2, n.1. Wilmington Trust also submitted a Status Report on September 30, 2015 requesting that all discovery be stayed in this Action, with the exception of the Bank's overdue document production and any documents to be produced

[4] In the Motion, the Government states that depositions in this Action "have yet to be formally noticed." That is not true. Lead Plaintiffs issued a formal Notice of Deposition for each individual on the list they sent to Defendants in September 2014. *See* D.I. 290. Lead Plaintiffs subsequently formally noticed the depositions of KPMG witnesses (D.I. 328) and the Underwriter Defendants (D.I. 379). There was no need to re-notice those depositions, especially in light of the provision in the so-ordered Scheduling Order that states that "[b]efore noticing a deposition, the noticing party shall consult with opposing counsel about the deposition schedule so that the convenience of counsel, witnesses, and parties may be accommodated, if possible." D.I. 240 at 7.

following the Court's ruling on the regulatory privilege asserted by the Federal Reserve and other regulators. D.I. 407.

With full awareness of both parties' and the Government's position, the Court lifted the stay in its Lift Stay Order with the exception of the depositions of the six criminal defendants and any other individuals subsequently indicted – the compromise suggested by Magistrate Judge Fallon and Lead Plaintiffs. D.I. 409.

As directed by the Court's Lift Stay Order, Lead Plaintiffs sent to Defendants a list of deponents to be scheduled beginning November 1, 2015 and ending on January 30, 2016. Lead Counsel has pressed Defendants and third parties to schedule these depositions. To date, Lead Plaintiffs have received dates for just six depositions – only one of which was provided by counsel for Defendants, the first of which is scheduled for November 17, 2015. Indeed, Defendants have indicated that they will likely "rethink" their willingness to even ***schedule*** depositions while the Government's motion is pending.[5]

A courtesy copy of Lead Plaintiffs' deponent list was sent to the Government on October 15, 2015. The Government informed Lead Plaintiffs on October 20, 2015 that it would seek to overturn the Court's Lift Stay Order and ask the Court to reverse course and impose a near-complete stay of the proceedings until after the completion of the September 2016 trial(s) in the criminal actions. Given the estimated eight-week trial length, the Government's requested stay would last until December 2016 at the very least, and possibly longer if the trial is postponed or takes more than eight weeks to complete. This requested stay would prevent Lead Plaintiffs from taking even a single deposition for more than a year, and would prevent Lead Plaintiffs'

[5] Counsel for Defendant Cecala, who has not been indicted, refused to provide Lead Plaintiffs with any dates for a possible deposition, even prior to the Government filing its motion.

access to any documents produced to Defendants by the Government – documents to which Lead Plaintiffs are entitled.

## ARGUMENT

### I. The Court Should Exercise Its Discretion And Deny Or Narrowly Limit The Stay

The consideration of whether to grant a motion to stay discovery in a civil action "calls for the exercise of judgment which must weigh the competing interests and maintain an even balance." *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). Courts have recognized that "[a] stay of [a] civil case . . . is an extraordinary remedy." *In re Terrorist Attacks on Sept. 11, 2001*, 2012 WL 104512, at *2 (S.D.N.Y. Jan. 11, 2012) (alteration in original; internal quotation marks and citation omitted). The person seeking a stay "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997)). There is no presumption in favor of a stay based on the importance of enforcement of the criminal laws; to the contrary, "[i]n a civil case, there is a strong presumption in favor of discovery, that any party – the Government no less than any other litigant – must overcome if it seeks a [stay]." Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 209 (1990).

The Court's Lift Stay Order is consistent with the actions taken by other courts in allowing civil discovery (including depositions) to proceed in securities actions where there are parallel criminal proceedings. *See, e.g.*, *De'omilia Plastic Surgery, PC v. Sweeton*, 2013 WL 6070037, at *7 (D.N.J. Nov. 18, 2013) (denying stay requested by defendants facing criminal prosecution); *S.E.C. v. Saad*, 384 F. Supp. 2d 692, 693 (S.D.N.Y. 2005) (denying Government's motion to stay depositions of witnesses in civil action who were not defendants in or witnesses for the Government in an upcoming criminal trial); *Chakrapani*, 2010 WL 2605819, at *11 (rejecting Government's motion for stay, noting that there is no "legal requirement entitling the government to preserve its cooperators from examination before trial" and that "prized witnesses

often must testify more than once in both civil and criminal proceedings"); *AIG Life Ins. Co. v. Phillips*, 2007 WL 2116383, at *4 (D. Colo. July 20, 2007) (denying defendants' request for stay of all discovery pending completion of criminal action and limiting stay to discovery addresses to indicted defendant); *In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d 1227, 1242 (N.D. Okla. 2003) (denying indicted defendants' motion to stay his deposition during pendency of criminal action); *Arden Way Assoc. v. Boesky*, 660 F. Supp. 1494, 1496-1500 (S.D.N.Y. 1987) (denying defendants' motion for a stay, finding that "The Constitution does not require a stay of civil proceedings pending the outcome of related criminal proceedings.").[6]

The Government's requested stay should be denied because Lead Plaintiffs will be unduly prejudiced and the Government has not demonstrated why a complete stay of fact witness depositions and other discovery for at least a year is necessary to protect its case against the criminal defendants. However, should the Court entertain the Government's motion, Plaintiffs request that the stay be limited to the exceptions already implemented by the Court in staying the depositions of the six criminal defendants, and any other individuals who are indicted by the Government. *See Digital Equip. Corp. v. Currie Enters., et al.*, 142 F.R.D. 8, 12 (D. Mass. 1991) (citing *SEC v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)) (it is within the

---

[6] The Government argues that the denial of the requested stays in *CFS-Related Sec. Fraud* and *Arden Way* are somehow inapposite because the stay was requested by defendants and not the Government. There is no basis for this position. Indeed, a number of the cases cited by the Government involve stays that were requested by the criminal defendants (or cooperators) who were parties to a civil action. *See Texaco, Inc. v. Borda*, 383 F.2d 607, 609 n.4 (3d Cir. 1967); *Bryer v. Jefferson*, 2013 WL 3753420, at *1 n.1 (D. Del. July 8, 2013); *Maloney v. Gordon*, 328 F. Supp. 2d 508, 510 (D. Del. 2004); *Walsh Sec. Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523 (D.N.J. 1998). Notably, several of the cases upon which the Government relies actually ***denied*** the requested stay. *See De'omilia Plastic Surgery*, 2013 WL 6070037 (denying stay requested by defendants facing criminal prosecution); *In re Herley Indus. Inc. Sec. Litig.*, 2007 WL 1120246 (E.D. Pa. April 11, 2007) (denying defendants' motion for a complete stay of civil proceedings pending resolution of defendants' criminal cases).

Court's discretion to, in lieu of a total stay, "impose protective orders, seal interrogatories, impose a stay for a finite period of time, or limit a stay to a particular subject matter").

When considering whether to grant a stay, courts balance, among other things:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*Walsh Sec.*, 7 F. Supp. 2d at 527. The balance of these factors favors denial of the Government's requested stay. Here, (1) the broad stay sought by the Government would cause great prejudice to Lead Plaintiffs and the certified Class by preventing them from completing discovery or bringing their (long overdue) case to trial in any determinate timeframe; (2) the scope of this Action is far broader than the criminal actions; and (3) the public interest and the interest of the Court weighs heavily in allowing this Action to proceed and address an unprecedented fraud committed against and harming thousands of investors. For the reasons set forth below, the Government has failed to meet its burden of justifying the extraordinary remedy of the indefinite stay it seeks, and its motion should be denied.

### A. A Complete Stay Would Severely Prejudice Lead Plaintiffs And The Class

The Government's claim that "the additional stay requested by the government does not meaningfully prejudice the parties" is false. Government Brief at 11. If granted, the stay will bring this case to a halt (again) for an indefinite period of time, allowing memories to fade and critical witnesses to disperse. Indeed, the requested stay prejudices the Class' interests in the speedy resolution of this Action. The Government's criminal prosecution will not make Lead Plaintiffs and the Bank's former shareholders whole – this Action will. Class members have a significant interest in obtaining a recovery of their losses due to the Defendants' fraud. *See In re Herley Indus. Inc. Sec. Litig.*, 2007 WL 1120246, at *3 (E.D. Pa. Apr. 11, 2007) (there is an

"important public interest in the prompt resolution of securities claims"). Lead Plaintiffs have already spent five years aggressively litigating this Action and are ready and willing to move this case forward. While Lead Plaintiffs realize that it is likely that no trial in this Action will occur until the criminal prosecution has concluded, the ability to take depositions, potentially complete expert discovery, and otherwise build their case over the next year will allow for a speedy resolution of this Action once the criminal case is completed. Without such relief, time will stand still for more than one year, with Lead Plaintiffs unable to move the case forward at all.[7]

Moreover, the Government seeks through its stay to bar Lead Plaintiffs' access to documents produced by the Government to Defendants – documents that the Defendants will have access to for over one year prior to Lead Plaintiffs. On October 21, 2015, the Government produced documents to Defendants in the criminal action that it was required to turn over pursuant to Federal Rule of Criminal Procedure 16(a)(1)(A)-(F). These documents include written and recorded statements by Defendants, all documents in the government's possession that are "material to preparing the defense," that "the government intends to use in its case-in-chief at trial," or were "obtained from or belongs to the defendant," including "certain reports prepared by the Government in connection with its investigation (the "Reports")."[8] These documents are clearly relevant to this Action and are subject to production pursuant to the

[7] The Government implies that a complete stay of this Action would somehow benefit Lead Plaintiffs and the Class, citing one instance where a civil case settled during the pendency of a years'-long stay requested by the Government. Government Brief at 13 n.14. There is no evidence that such an outcome is common or at all likely to occur in this Action, and should be given no weight.

[8] On October 21, 2015, the Government filed a motion for a supplemental protective order in the criminal action (which was granted the same day) preventing Defendants from producing the Reports to Lead Plaintiffs until this Court rules upon the Motion or until November 16, 2015, whichever date is earlier. *See United States v. Gibson, et al.*, Crim. No. 15-23-RGA, D.I. 88 & 90.

document requests issued by Lead Plaintiffs in 2014. The Government's request to sequester all such materials is overbroad and highly prejudicial to Lead Plaintiffs.

Conversely, the Government makes no attempt to explain how deposing these witnesses or producing documents that would be subject to the protective order in this Action would prejudice the Government's case. Indeed, the Government does not even intend to call many of these deponents as witnesses in the criminal action, and some witnesses have not even provided statements to the Government. *Id*. at 8 (noting that "the ***bulk*** of the individuals to be noticed for deposition have provided statements to the government in connection with its investigation and ***may*** be witnesses at trial") (emphasis added).[9]

**B. This Action Is Considerably Broader In Scope Than The Criminal Actions**

The Government's requested stay will suspend Plaintiffs' ability to develop certain key theories of this Action that are irrelevant to the criminal actions and is, therefore, overbroad and unnecessary. While there is overlap and similarity of issues between the Government's criminal action and this Action, the scope of this Action is broader. For example, KPMG and the Underwriter Defendants have never been publicly implicated as targets of the criminal investigation. On the other hand, in this Action, Lead Plaintiffs have alleged fraud claims against KPMG and strict liability claims against both KPMG and the Underwriters. Moreover, while the Government's action is limited to false statements made between October 2009 and November 2010 (*see* D.I. 415-2, ¶65), this Action alleges fraudulent conduct beginning no later than January 18, 2008.

[9] The Government raises the possibility of "Fifth Amendment concerns" that may arise in connection with the non-stayed unindicted witnesses. Government Brief at 9-11. These concerns, to the extent they arise, may be raised and addressed with respect to specific witnesses who bring those concerns to the parties' and the Government's attention.

### C. The Interests Of The Public, The Court And The Government Weigh Against The Requested Stay

There is an "important public interest in the prompt resolution of securities claims." *In re Herley*, 2007 WL 1120246, at *3. "Indeed, the public interest in the integrity of securities markets militates in favor of the efficient and expeditious prosecution of these civil litigations." *Arden Way*, 660 F. Supp. at 1500. "To this end it would behoove both the litigants and the court to tailor a stay . . . to minimize any delays upon the process." Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. at 205.

The Court, in the Lift Stay Order, has already weighed the relevant interests in allowing this Action to proceed and concluded that the balance of those interests demanded a tailored stay that balanced the Government's interest with that of Lead Plaintiffs and the Class. *See* Lift Stay Order (ordering a stay of "the depositions of the six criminal defendants (and any individuals who may be indicted in the future, if any)" after "having reviewed the status letters submitted by the parties, and having reflected on the most appropriate course for the instant litigation"). The Government has not presented any information that should cause the Court to reconsider that decision.[10]

## II. <u>Any Additional Stay Should Remain Limited To Specific Witnesses</u>

This Court arrived at a compromise in its Lift Stay Order by staying the depositions of the criminally-indicted Individual Defendants (North, Harra, Gibson and Rakowski), and admitted felons Terranova and Bailey, the two former Wilmington Trust executives who are cooperating with the Government in its prosecution of those Individual Defendants. All other depositions should be allowed to proceed. Admittedly without the benefit of the Government's

[10] The Court is best suited to weigh whether the Government is entitled to any additional protections in light of its *Ex Parte* Affidavit. Lead Plaintiffs are unable to address arguments to which they are not privy.

*Ex Parte* submission, Lead Plaintiffs do not understand how taking the depositions of these twenty-four executives could harm the Government's case given the fact that "prized witnesses often must testify more than once in both civil and criminal proceedings." *See Chakrapani*, 2010 WL 2605819, at *11. To the extent that the Government can demonstrate to the Court how a particular witnesses is so crucial to (or a target of) its investigation, the Court could modify the existing stay to include only those individuals.

## CONCLUSION

For the reasons stated herein, Lead Plaintiffs respectfully request that that Court deny the Government's Motion.

Dated: October 30, 2015

**CHIMICLES & TIKELLIS LLP**

*/s/ **A. Zachary Naylor***

Pamela S. Tikellis (Bar No. 2172)
A. Zachary Naylor (Bar No. 4439)
Vera G. Belger (Bar No. 5676)
222 Delaware Avenue, 11th Floor
P.O. Box 1035
Wilmington, DE 19899
Phone: (302) 656-2500
Fax: (302) 656-9053

*Liaison Counsel For The Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Blair Nicholas
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323

-and-

Hannah Ross
Katherine M. Sinderson
Lauren McMillen Ormsbee
Jeremy Robinson
Jake Nachmani
1285 Avenue of the Americas
New York, NY 10019
Phone: (212) 554-1400
Fax: (212) 554-1444

**SAXENA WHITE P.A.**

Maya S. Saxena
Joseph E. White, III
Lester R. Hooker
Brandon T. Grzandziel
Jorge Amador
Kathryn W. Weidner
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Phone: (561) 394-3399
Fax: (561) 394-3382

*Counsel For Lead Plaintiffs And Co-Lead Counsel For The Class*