**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE WILMINGTON TRUST SECURITIES LITIGATION | Master File No. 10-cv-00990-SLR-SRF<br>(Securities Class Action)<br>Hon. Sue L. Robinson |
| This document relates to: ALL ACTIONS | |

**WILMINGTON TRUST'S OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR AN ORDER PARTIALLY LIFTING THE STAY OF FACT DISCOVERY**

Jamie L. Edmonson (Bar No. 4247)
Venable LLP
1201 N. Market Street
Suite 1400
Wilmington, Delaware 19801
302-298-3535 (telephone)
302-298-3550 (facsimile)
jledmonson@venable.com

James A. Dunbar (*admitted pro hac vice*)
Daniel P. Moylan (*admitted pro hac vice*)
Matthew R. Alsip (*admitted pro hac vice*)
Venable LLP
210 West Pennsylvania Avenue – Suite 500
Towson, Maryland 21204
410-494-6200 (telephone)
410-821-0147 (facsimile)
jadunbar@venable.com
dpmoylan@venable.com
mralsip@venable.com

*Counsel for Wilmington Trust Corporation*

DATED: October 4, 2016

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

FACTS ........ 2

- I. This civil case. ........ 2
- II. The criminal case. ........ 3
- III. Lead Plaintiffs' motion. ........ 3

ARGUMENT ........ 4

- I. The Court should not modify the stay to permit depositions of the Wilmington Witnesses. ........ 4
  - A. Lead Plaintiffs do not dispute the substantial overlap between the cases. ........ 5
  - B. The criminal case is at an advanced stage -- indictments have been returned and the trial is scheduled. ........ 6
  - C. Lead Plaintiffs will not suffer any prejudice by extending the stay for an additional nine months. ........ 6
  - D. WT Corp. would be substantially prejudiced if the discovery stay is modified to permit depositions of the Wilmington Witnesses. ........ 8
  - E. The Court's interests favor a continuing stay as to the Wilmington Witnesses. ........ 10
  - F. The public's interests favor a continuing stay as to the Wilmington Witnesses. ........ 13
- II. The Court should allow the production of previously withheld or redacted documents on a reasonable schedule. ........ 13

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Bryer v. Jefferson, 2013 WL 3753420 (D. Del. July 8, 2013) ............ passim

Continental Ins. Co. v. Securi Enter., Inc., 2010 WL 5392735 (D.N.J. Dec. 21, 2010) ............ 5

Grunewald v. United States, 353 U.S. 391 (1957) ............ 4

In re Adelphia Commc'n Sec. Litig., 2003 WL 22358819 (E.D. Pa. May 13, 2003) ............ 6, 7, 9

In re Herley Indus. Inc. Sec. Litig., 2007 WL 1120246 (E.D. Pa. April 11, 2007) ............ 7, 9

LiButti v. United States, 107 F.3d 110 (2d Cir. 1997) ............ 8

Maloney v. Gordon, 328 F. Supp.2d 508 (D. Del. 2004) ............ passim

Med. Inv. Co., Ltd. v. Int'l Portfolio, Inc., 2014 WL 2452193 (E.D. Pa. May 30, 2014) ............ 11

Ohio v. Reiner, 532 U.S. 17 (2001) ............ 4

Rad Servs., Inc. v. Aetna Cas. & Sur. Co., 808 F.2d 271 (3d Cir. 1986) ............ 8

Reyes v. Freebery, 141 Fed. Appx. 49 (3d Cir. 2005) ............ 5

Reyes v. Freebery, 2004 WL 1737683 (D. Del. July 30, 2004) ............ 5, 6, 10, 12

S.E.C. v. Fishoff, 2016 WL 1262508 (D.N.J. Mar. 31, 2016) ............ 11

Volmar Distrib., Inc. v. New York Post Co., Inc., 152 F.R.D. 36 (S.D.N.Y. 1993) ............ 9, 11

Walker v. Cnty. of Gloucester, 2016 WL 1725942 (D.N.J. April 28, 2016) ............ 7

Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp.2d 523 (D.N.J. 1998) ............ 6, 7, 10

Defendant Wilmington Trust Corporation ("WT Corp."), by its undersigned counsel, submits this memorandum in opposition to Lead Plaintiffs' Motion for an Order Partially Lifting the Stay of Fact Discovery (the "Motion"). (D.I. 461.)

Lead Plaintiffs have asked the Court to modify the existing stay of deposition discovery to permit them to depose fact witnesses except those who are defendants in the pending criminal case, those who may be indicted in the future, and those who have "significant Fifth Amendment concerns." WT Corp. opposes the Motion to the extent Lead Plaintiffs seek to take the depositions of WT Corp., its affiliates, or their current or former employees, officers, or directors (collectively, the "Wilmington Witnesses").

## INTRODUCTION

On April 13, 2016, this Court rejected Lead Plaintiffs' earlier request to modify the discovery stay in this case to permit depositions. (D.I. 454 (the "Stay Order").) Nothing has happened since that time to justify a modification of the stay to permit any depositions of the Wilmington Witnesses. The single new development relied upon by Lead Plaintiffs is that Judge Andrews rescheduled the start of the criminal trial from January 23, 2017 to October 2, 2017 -- a period of less than nine months -- to give the criminal defendants adequate time to prepare their cases. That development does not warrant modifying the stay to permit Lead Plaintiffs to depose the Wilmington Witnesses. On the contrary, modifying the stay to permit such depositions will impose substantial new burdens on this Court and will unfairly impair WT Corp.'s ability to defend the allegations in this case and the criminal case, with no corresponding benefit to anyone.

Lead Plaintiffs also ask the Court to modify the stay to permit the production of documents previously withheld or redacted at the bank regulators' request on the basis of the

bank examination privilege. WT Corp. does not oppose this request, but asks that the Court permit Defendants a reasonable time of 60 days to produce the documents.

## FACTS

### I. This civil case.

This and other civil cases alleging securities fraud against WT Corp. and others were filed beginning in late 2010. The cases were subsequently consolidated and, in May 2011, Lead Plaintiffs filed their first consolidated Complaint. (D.I. 39.) Lead Plaintiffs struggled to state a claim upon which relief could be granted, and amended their pleading multiple times. They filed the present operative Fourth Amended Complaint (the "Complaint") in June 2013. (D.I. 149.)

Lead Plaintiffs seek damages based on alleged misrepresentations made from 2008 to 2010 about WT Corp.'s financial condition and, in particular, its commercial loan portfolio. (See Complaint at ¶¶ 1-22.) Lead Plaintiffs allege that Defendants misrepresented facts about WT Corp.'s past-due and non-performing loans; WT Corp.'s credit review and underwriting practices; WT Corp.'s loan loss reserves; and other aspects of WT Corp.'s commercial lending. (Id.)

Extensive document discovery has taken place. WT Corp. has produced hundreds of thousands of documents to date. Further, as explained below (infra, pp. 13-14), it is preparing to produce additional documents that were previously withheld or redacted at the bank regulators' request on the basis of the bank examination privilege.

Depositions in this case have been stayed (with the exception of one brief time period) since the government first requested a stay in October 2014. In the April 13 Stay Order, this Court denied Lead Plaintiffs' request to modify the stay to permit fact depositions. The Court concluded that the public's "strong interest in allowing the criminal process to be completed"

outweighed Lead Plaintiffs' interests in this civil case. (D.I. 454 at 2.) Lead Plaintiffs are now seeking once again to modify the stay to permit fact depositions.

## II. The criminal case.

The parallel criminal case entitled United States v. Wilmington Trust Corp., et al., No. 15-23-RGA, is based on the same alleged conduct that is the subject of this civil case -- allegedly fraudulent activity related to WT Corp.'s reporting of its commercial loan portfolio, including past due loans.[1] WT Corp. and four of the individual defendants in this civil case are also defendants in the criminal case.[2] Judge Andrews has scheduled the trial in the criminal case to begin on October 2, 2017.

Lead Plaintiffs have conceded the overlapping nature of the civil and criminal cases on numerous occasions. For example, in a Status Report filed in September 2015, they acknowledged that the "allegations in the criminal actions closely mirror many of [their] allegations against the Defendants . . .." (D.I. 408 at 7; emphasis added.) This Court agreed in the Stay Order, holding that there is "extensive overlap" between the civil and criminal cases. (D.I. 454 at 2.)

## III. Lead Plaintiffs' motion.

In the Motion, Lead Plaintiffs are asking that the discovery stay be modified to permit depositions of fact witnesses other than: (a) the criminal defendants; (b) "any other individuals who are indicted by the Government"; and (c) "anyone else with significant Fifth Amendment concerns." (Motion at 6, 8.) It is not entirely clear to what extent Lead Plaintiffs are seeking to

---

1 A copy of the Third Superseding Indictment in the criminal case is attached as **Exhibit 1**.

2 The criminal defendants are: WT Corp.; Robert Harra (former President of WT Corp.); David Gibson (former Chief Financial Officer of WT Corp.); William North (former Chief Credit Officer of WT Corp.); and Kevyn Rakowski (former Senior Vice President and Controller of WT Corp.).

depose the Wilmington Witnesses. WT Corp. itself is a current criminal defendant and at least some of the depositions of the Wilmington Witnesses would effectively be depositions of WT Corp. Moreover, some of the Wilmington Witnesses -- those who were employed by WT Corp. during the time period covered by the Third Superseding Indictment -- would have legitimate Fifth Amendment concerns because the Indictment alleges, in substance, a broad conspiracy involving multiple former WT Corp. employees.[3] See, e.g., **Ex. 1** at pp. 22-25 (alleging a conspiracy among the criminal defendants and unnamed "agents, employees, and subsidiaries").

For the reasons set forth below, to the extent Lead Plaintiffs are seeking to modify the stay as to the Wilmington Witnesses, the Motion should be denied.

## ARGUMENT

### I. The Court should not modify the stay to permit depositions of the Wilmington Witnesses.

In the Stay Order (D.I. 454), this Court concluded that a stay was appropriate in this case. That conclusion is still appropriate today as to the Wilmington Witnesses. This Court applies six factors to determine whether civil proceedings should be stayed in light of simultaneous criminal proceedings involving the same subject matter:

(1) the extent to which the issues in the civil and criminal cases overlap;

(2) the status of the criminal proceedings, including whether any defendants have been indicted;

(3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay;

(4) the burden on the defendants;

(5) the interests of the court; and

---

[3] The Supreme Court has held that "one of the basic functions of the privilege is to protect innocent men." Grunewald v. United States, 353 U.S. 391, 421 (1957); see also Ohio v. Reiner, 532 U.S. 17 (2001) (per curiam).

(6) the public interest.

Maloney v. Gordon, 328 F. Supp.2d 508, 511 (D. Del. 2004)[4]; Bryer v. Jefferson, 2013 WL 3753420, at *1 n. 1 (D. Del. July 8, 2013); Reyes v. Freebery, 2004 WL 1737683, at *2 (D. Del. July 30, 2004).[5] Every single factor weighs in favor of denying Lead Plaintiffs' Motion as to the Wilmington Witnesses.[6]

**A. Lead Plaintiffs do not dispute the substantial overlap between the cases.**

Substantial overlap between civil and criminal cases is the most important factor in favor of staying a civil case. Maloney, 328 F. Supp.2d at 511. Here, this Court held in the Stay Order that "there is an extensive overlap between the parallel civil and criminal proceedings." (D.I. 454 at 2.) Lead Plaintiffs do not seriously dispute this.[7] Accordingly, this factor weighs in favor of a continued stay as to the Wilmington Witnesses.

---

[4] Internal citations and quotations are omitted from this memorandum unless otherwise noted.

[5] In Reyes v. Freebery, 141 Fed. Appx. 49, 51 (3d Cir. 2005), the Third Circuit held that it lacked jurisdiction to review this Court's stay order and remanded the case.

[6] Lead Plaintiffs did not submit a list of witnesses that they intend to depose in the event the Court grants their Motion. As a result, WT Corp. cannot at this time address any objections that are specific or unique to individual witnesses. WT Corp. reserves the right to assert such objections with respect to individual witnesses in the event the Court grants the Motion.

[7] Although they concede the substantial overlap between the cases, Lead Plaintiffs argue in their Motion that the criminal case is narrower because some of the civil defendants are not criminal defendants, and because the claims in the civil case allegedly cover a period of time extending back to January 2008, whereas the criminal claims extend back to October 2009. (Motion at 1, 5 n. 3.) This argument is legally irrelevant and factually misleading. The law does not require perfect symmetry between the civil and criminal cases in order to impose a stay in the civil case. E.g., Continental Ins. Co. v. Securi Enter., Inc., 2010 WL 5392735, at *9 (D.N.J. Dec. 21, 2010) (stay was warranted where there was "significant overlap" between the proceedings, even though "perfect symmetry" did not exist). Further, the Third Superseding Indictment in the criminal case includes factual allegations extending as far back as January 2007 (**Ex. 1** at 6-7), which is before the start of the class period in this civil case.

**B. The criminal case is at an advanced stage -- indictments have been returned and the trial is scheduled.**

Former Chief Judge Sleet has observed that the "strongest case for a stay of discovery in [a] civil case occurs during a criminal prosecution after an indictment is returned." Bryer, 2013 WL 3753420, at *1 n. 1. The rule is no different for securities class actions. In re Adelphia Commc'n Sec. Litig., 2003 WL 22358819, at *3-6 (E.D. Pa. May 13, 2003) (declining to vacate a stay in a putative securities class action where certain of the civil defendants had been indicted in a parallel criminal case).

Lead Plaintiffs do not dispute the advanced stage of the criminal case. Accordingly, this factor weighs in favor of a continued stay as to the Wilmington Witnesses.

**C. Lead Plaintiffs will not suffer any prejudice by extending the stay for an additional nine months.**

Lead Plaintiffs argue in their Motion that the rescheduling of the criminal trial from late January 2017 to early October 2017 harms their interests by risking "further faded memories and the death or other unavailability of key witnesses," and by delaying what they hope will be a money judgment to recover their alleged financial damages. (Motion at 6.)

This Court has already rejected these arguments. Lead Plaintiffs made these "prejudice" arguments in a prior opposition to the government's motion to stay. (See D.I. 422 at 10.) The Court rejected the arguments when it granted the government's motion and entered a stay in November 2015. (D.I. 423.)

Judge Andrews' recent decision to delay the start of the criminal trial by less than nine months does not improve Lead Plaintiffs' prejudice argument. This and other district courts in the Third Circuit have held that a delayed recovery of possible money damages does not prejudice a plaintiff. In Reyes, 2004 WL 1737683, at *5, Judge Jordan held: "At bottom, the Plaintiffs have not shown any prejudice other than delay in pursuing their rights, which is

insufficient to prevent staying this [civil] case." A plaintiff seeking to avoid a stay must show a "unique" harm, not merely a litigation delay. Thus, in Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp.2d 523, 528 (D.N.J. 1998), the court held:

> A stay could push back the resolution of the civil case by several months or even years. Delays in civil cases are fairly common, however. Walsh has asserted no injury that is particularly unique.

In In re Herley Indus. Inc. Sec. Litig., 2007 WL 1120246, at *2 (E.D. Pa. April 11, 2007), a case cited by Lead Plaintiffs, the court held that "the plaintiff should demonstrate a unique injury, such as the dissipation of assets or an attempt to gain an unfair advantage from the stay." "[C]ontinued monetary loss and the passage of time" are not unique injuries. Id. The same rule applies in a securities class action. In re Adelphia, 2003 WL 22358819, at *4 ("Plaintiffs have not shown any prejudice other than delay in pursuing their suits, which is insufficient to support vacating the stay.").

Furthermore, Lead Plaintiffs' speculative concerns about fading memories and unavailable witnesses do not justify modifying the stay as to the Wilmington Witnesses. If these concerns were sufficient to avoid a stay, no civil case would ever be stayed -- because every stay necessarily involves a risk of faded memories or unavailable witnesses. This is not a "unique" harm. Bryer, 2013 WL 3753420, at *1 n. 1 (rejecting the argument that a stay would prevent the collection of fact discovery and "lead to spoliation and prejudice"); Walsh, 7 F. Supp.2d at 528 (rejecting the argument that a stay would cause "memories to fade"); Walker v. Cnty. of Gloucester, 2016 WL 1725942, at *2 (D.N.J. April 28, 2016) (rejecting the argument that a stay would harm the "ability to preserve evidence").[8]

Accordingly, this factor weighs in favor of a continued stay as to the Wilmington

---

[8] In the Motion, Lead Plaintiffs assert a concern that the criminal trial may be delayed beyond October 2017. WT Corp. is not aware of any factual basis for this concern.

Witnesses.[9]

**D. WT Corp. would be substantially prejudiced if the discovery stay is modified to permit depositions of the Wilmington Witnesses.**

Modifying the stay to allow Lead Plaintiffs to take depositions of the Wilmington Witnesses would result in substantial prejudice to WT Corp. For example:

- Lead Plaintiffs acknowledge in their Motion (p. 8) that there may be witnesses, other than the criminal defendants, who have "significant Fifth Amendment concerns." These witnesses could include former WT Corp. employees whom Lead Plaintiffs will seek to depose if the Court modifies the stay. These former employees can be expected to consider asserting their Fifth Amendment rights and refusing to testify at a deposition in this case.[10] Lead Plaintiffs will certainly argue that an adverse inference should be drawn against WT Corp. on the basis of its former employees' legitimate reliance on their constitutional rights. See Rad Servs., Inc. v. Aetna Cas. & Sur. Co., 808 F.2d 271, 277 (3d Cir. 1986) ("the admission as evidence of a non-party's invocation of the Fifth Amendment privilege is not per se reversible error"). Such an argument would require the Court to analyze and decide complex admissibility issues. See LiButti v. United States, 107 F.3d 110, 123 (2d Cir. 1997) (admissibility of a non-party invocation of the Fifth Amendment privilege in a civil case "and the concomitant drawing of adverse inferences" is a multi-factor analysis requiring a case-by-case approach). Any argument in favor of an adverse inference would be hotly contested, and would burden the Court with

---

9 Each Lead Plaintiff is a large pension fund. Each has hundreds of millions of dollars in assets. Lead Plaintiffs' investments in WT Corp. stock represent only a small fraction of their total holdings. (See Complaint at Appendix A.) None of the Lead Plaintiffs has argued that a continued stay of deposition discovery in this case will harm its ongoing operations in any respect.

10 Former WT Corp. officers and directors would presumably have similar concerns.

substantial motion practice. Should an adverse inference ultimately be drawn against WT Corp., it would cause a serious, unfair, and unnecessary harm to its defense of this case.

- Permitting Lead Plaintiffs to proceed with depositions of the Wilmington Witnesses may give the government unfair insight into WT Corp.'s criminal defense strategy before trial. Judge Jordan recognized this concern in Maloney, 328 F. Supp.2d at 512, observing that if a stay is not granted in the civil case while the criminal case is pending, the defendants "run the risk of exposing their criminal defense strategies to the government." See also In re Adelphia, 2003 WL 22358819, at *5 (holding in a putative securities class action that "Defendants also may be forced to reveal their criminal defense strategies if the [civil] case is allowed to proceed").

- Permitting Lead Plaintiffs to proceed with depositions of the Wilmington Witnesses may give the government additional evidence to use in the criminal case against WT Corp. -- information that it would not normally be permitted to obtain in the course of criminal proceedings. This would give the government an unfair advantage in its prosecution of WT Corp. See Volmar Distrib., Inc. v. New York Post Co., Inc., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("Refusing to grant a stay might also expand the rights of criminal discovery beyond the limits of Rule 16(b) of the Federal Rules of Criminal Procedure, expose the basis of the defense to the prosecution in advance of trial, or otherwise prejudice the case."); In re Herley, 2007 WL 1120246, at *2 (same, citing Volmar).

- Permitting Lead Plaintiffs to proceed with depositions of the Wilmington Witnesses may result in substantial discovery inefficiencies and wasted resources (infra, pp. 10-13). The criminal verdicts may narrow the issues in this civil case, or lead to a settlement. There

is a real possibility that WT Corp. resources spent now on depositions and discovery disputes would be wasted.

All of this prejudice will fall most heavily on M&T Bank Corporation (WT Corp.'s parent company) and its shareholders, even though neither M&T nor its shareholders had any involvement in the alleged conduct that forms the basis of the civil and criminal cases. On the contrary, M&T's agreement to acquire WT Corp. in late 2010 assured that WT Corp.'s depositors would suffer no harm, without using a dime of FDIC insurance funds; led to the repayment of TARP funds that the U.S. government had extended to WT Corp.; and brought continued employment to many Delaware residents. But because WT Corp. is now a wholly-owned subsidiary of M&T, any prejudice to WT Corp. will, as a practical matter, harm M&T and its shareholders. There is nothing fair or equitable about that.

Accordingly, this factor weighs in favor of a continued stay as to the Wilmington Witnesses.

**E. The Court's interests favor a continuing stay as to the Wilmington Witnesses.**

Permitting depositions of the Wilmington Witnesses would be inconsistent with this Court's interest in proceeding efficiently in this civil case. Modifying the stay is likely to impose a substantial burden on this Court to resolve discovery and evidentiary disputes involving assertions of the Fifth Amendment privilege.

In Bryer, 2013 WL 3753420, at *1 n. 1, Chief Judge Sleet held:

> The court has an interest in the efficient resolution of its cases, and, while it understands that staying this action will result in some delay, it believes that proceeding with discovery under the shadow of the criminal action would actually create greater inefficiency. If Bryer were to invoke his Fifth Amendment rights, the court likely would be burdened with additional privilege and discovery issues in attempting to mitigate the prejudicial effect of the invocation.

(Emphasis added.) See also Reyes, 2004 WL 1737683, at *5 (staying the civil case would "eliminate the need to wrestle with how to balance Fifth Amendment rights and open access to evidence"); Maloney, 328 F. Supp.2d at 513 ("If the civil action is stayed until the conclusion of the criminal proceedings, then it obviates the need to make rulings regarding potential discovery disputes involving issues that may affect the criminal case."); Walsh, 7 F. Supp.2d at 528 (granting the stay would relieve the court of burdens associated with "deciding a constant stream of privilege issues"). These discovery issues, and others that inevitably will arise, can be avoided with a stay.

Furthermore, the resolution of the criminal case may narrow the issues in this civil case and render extensive depositions of the Wilmington Witnesses unnecessary. No matter who prevails, the jury's decision in the criminal case will provide a powerful impetus for a settlement of this civil case -- and a settlement would make all of the Court's and parties' resources spent now on depositions and discovery disputes a waste. Maloney, 328 F. Supp.2d at 513 ("[T]he outcome of the criminal proceedings may guide the parties in settlement discussions and potentially eliminate the need to litigate some or all of the issues in this case. Thus, staying this case preserves judicial resources and may streamline other aspects of the civil case."); S.E.C. v. Fishoff, 2016 WL 1262508, at *4 (D.N.J. Mar. 31, 2016) (because of the "substantial overlap" between the civil and criminal cases, "it is likely that resolution of the criminal case will moot, clarify, or otherwise affect various contentions in the Civil Case"); Med. Inv. Co., Ltd. v. Int'l Portfolio, Inc., 2014 WL 2452193, at *4 (E.D. Pa. May 30, 2014) ("A stay pending resolution of the criminal case is likely to . . . reduc[e] the risk of duplication of effort, increas[e] the potential for settlement, and simplify[] the issues raised in this civil litigation."); Volmar, 152 F.R.D. at 41

("the availability of transcripts and other evidence from the criminal trial may eliminate altogether the need for certain depositions").[11]

Lead Plaintiffs argue in their Motion that proceeding now with some depositions "will allow for a speedy resolution of this Action once the criminal case is completed." (Motion at 6.) They assert that lifting the stay will "allow the parties to assess the relative strengths of their cases, explore potential settlements on a more informed basis, and potentially make motions for summary judgment . . .." (Id.) All of these assertions are wrong.

Permitting some depositions to go forward, but not those of the most important witnesses -- i.e., former WT Corp. officers and anyone else who may be indicted or who has "significant Fifth Amendment concerns" (Motion at 8) -- will not permit a "speedy resolution" of this civil case after the criminal trial concludes. Numerous depositions of both fact and expert witnesses will still be required after the criminal trial. Nor will Lead Plaintiffs' proposal assist the parties in assessing the strengths or weaknesses of their cases. Such an assessment can only be done after the government and the defendants have presented their cases at the criminal trial. Further, it is not conceivable that a partial discovery record in this civil case, without any testimony from the key witnesses, will provide the basis for a meritorious motion for summary judgment prior to the conclusion of the criminal trial.

In Reyes, 2004 WL 1737683, at *3, this Court held that it was "better to err on the side of caution" and stay discovery so that the discovery "can be conducted free of prejudice and undue restrictions" resulting from a parallel criminal case. That reasoning applies to this case with full

---

[11] Likewise, continuing the stay eliminates the possibility that Lead Plaintiffs will seek to re-depose Wilmington Witnesses after the criminal action is resolved. Seeking to re-depose witnesses would cause even more disputes for the Court to resolve. Volmar, 152 F.R.D. at 41-42 ("if only a partial stay is granted, once it is lifted plaintiffs will seek to depose [the criminal defendants], and then may need to re-depose individuals in light of the critical testimony [the criminal defendants] are likely to give in their depositions").

force. Accordingly, this factor weighs in favor of a continued stay as to the Wilmington Witnesses.

### F. The public's interests favor a continuing stay as to the Wilmington Witnesses.

Continuing the stay as to the Wilmington Witnesses will be in the public's interest. This and other courts have held that the public's interest is best served by permitting a criminal proceeding to advance without being hindered by a parallel civil proceeding. E.g., Maloney, 328 F. Supp.2d at 513 ("The public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant.").

Accordingly, this factor weighs in favor of a continued stay as to the Wilmington Witnesses.

## II. The Court should allow the production of previously withheld or redacted documents on a reasonable schedule.

WT Corp. does not object to a modification of the discovery stay for the purpose of permitting the production of documents previously withheld or redacted at the bank regulators' request on the basis of the bank examination privilege (the "Documents"). WT Corp. requests that it be permitted 60 days to complete the production.

WT Corp. and M&T have withheld or redacted a set of documents on the basis of only the bank examination privilege.[12] WT Corp. and M&T expect that they will be able to produce these documents promptly after any order to do so.

However, WT Corp. and M&T have withheld or redacted a different set of documents on the basis of the bank examination privilege and the attorney client and/or work product privileges. For these documents, counsel must perform a document-by-document review in

12 Lead Plaintiffs issued a subpoena on non-party M&T.

order to disentangle the bank examination privilege from the other privileges. Counsel has already started that review.

Accordingly, WT Corp. and M&T respectfully request that the Court allow 60 days for production of the Documents.

## CONCLUSION

WT Corp. respectfully requests that the Court: (a) deny Lead Plaintiffs' Motion to the extent it seeks to modify the stay to permit depositions of the Wilmington Witnesses; and (b) permit WT Corp. and M&T 60 days to complete production of the Documents previously withheld or redacted on the basis of the bank examination privilege.

October 4, 2016

Respectfully submitted,

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (Bar No. 4247)
Venable LLP
1201 N. Market Street
Suite 1400
Wilmington, Delaware 19801
302-298-3535 (telephone)
302-298-3550 (facsimile)
jledmonson@venable.com

James A. Dunbar (*admitted pro hac vice*)
Daniel P. Moylan (*admitted pro hac vice*)
Matthew R. Alsip (*admitted pro hac vice*)
Venable LLP
210 West Pennsylvania Avenue – Suite 500
Towson, Maryland 21204
410-494-6200 (telephone)
410-821-0147 (facsimile)
jadunbar@venable.com
dpmoylan@venable.com
mralsip@venable.com

*Counsel for Wilmington Trust Corporation*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of October, 2016, I served a copy of the foregoing opposition memorandum using the Court's CM/ECF system.

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (Bar No. 4247)

13168188/15