IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| IN RE WILMINGTON TRUST SECURITIES LITIGATION | ) | Master Civ. No. 10-990-SLR-SRF |
| | ) | (Consolidated Securities Class Action) |
| | ) | |

**MEMORANDUM OF LAW IN RESPONSE TO LEAD PLAINTIFFS' MOTION TO LIFT STAY OF DISCOVERY**


CHARLES M. OBERLY, III
United States Attorney
District of Delaware
1007 N. Orange St.
Suite 700
Wilmington, DE 19801

Robert F. Kravetz, Esq.
Lesley F. Wolf, Esq.
Jamie M. McCall, Esq.
Assistant United States Attorneys


Dated: October 6, 2016

# TABLE OF CONTENTS

PAGE


INTRODUCTION....................................................................................1

NATURE OF THE PROCEEDINGS...........................................................2

ARGUMENT.........................................................................................5

I. If the Stay is Lifted, Discovery Should Commence Against All Parties.........................................................................5

A. Governing Standard............................................................5

B. The Court May Mitigate *Walsh* Factors Seemingly Supporting a Stay by Entering a Protective Order ...........................................6

C. The Remaining *Walsh* Factors Support Lifting the Stay in its Entirety.........11

II. Piecemeal Discovery Remains Inefficient, Unworkable, and Would Result in Unfair Advantages..................................................12

CONCLUSION.......................................................................................15

# TABLE OF AUTHORITIES

PAGE

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)........................................................................ 6

*Digital Equipment Corp. v. Currie Enterprises*, 142 F.R.D. 8 (D. Mass. 1991)........................ 6, 7

*In re CFS-Related Securities Fraud Litig.*, 256 F.Supp.2d 1227 (N.D. Okla. 2003)..................... 7

*Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995)............................................. 6

*Lizarraga v. City of Nogales*, No. CV 06-474-TUC DCB, 2007 WL 215616 (D. Ariz. Jan. 24, 2007)........................................................................................................................ 7

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83 (2d Cir. 2012).............................. 7, 12

*National Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595 (3d Cir. 1980).................. 14

*Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201 (1989)................................................ 7

*Rigas v. Deloitte & Touche, LLP*, No. 4:14-mc-0097, 2014 WL 957395 (M.D. Pa. March 12, 2014)...................................................................................................................... 14

*United States v. Mellon Bank, N.A.*, 545 F.2d 869 (3d Cir. 1976)................................................ 6

*United States v. Parcels of Land,* 903 F.2d 36 (1st Cir. 1990)...................................................... 7

*United States v. Tinney*, 473 F.2d 1085 (3d Cir. 1973) .............................................................. 14

*Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.*, 7 F.Supp.2d 523 (D.N.J. 1998). 5, 8, 11, 12

# INTRODUCTION

Nearly seven years ago, hundreds of individual victims and numerous pension funds suffered substantial financial losses due to Wilmington Trust's alleged failure to disclose to investors the manner by which it was manipulating the appearance of its commercial loan portfolio. Now, with the criminal trial continued an additional nine months, and with no assurance that the criminal defendants consider this trial date to be final, the government must consider the best interests of the victims and the public in resolving both the criminal and civil cases. Given these vital considerations, the government does not oppose the Court lifting the stay in the civil action – but only if discovery proceeds against all parties.

To mitigate harm to the parties and potential witnesses, the Court may enter a protective order that would shield answers to interrogatories and depositions from being used substantively against the party and/or witness in the criminal case. Such a resolution would guarantee the timely completion of fact discovery and pretrial motions; protect witnesses from having to choose between testifying and invoking their Fifth Amendment privilege; alleviate the harm to the Bank from being subject to adverse inferences drawn on the basis of former employees refusing to testify; lessen the burden on the Court from having to intervene in inevitable discovery disputes; and ensure that the civil trial could begin shortly after the completion of the criminal case.

Absent a complete lifting of the stay, however, the stay should remain in place through the conclusion of the criminal trial. A partial lifting of the stay would be inefficient and would not substantially advance the rights of the victims. First, as the government has noted repeatedly in its filings, a piecemeal discovery approach would not significantly advance the civil case, given that key depositions would not take place until well after the criminal trial and that the civil action would require additional time to advance through the pretrial process (including summary

judgment). Second, a partial lifting of the stay (and, in particular, the Bank's position seeking to shield its former employees from depositions), would inure only to the benefit of the criminal defendants and to the detriment of the victims, the government, and the public. Third, a partial lifting of the stay would promote inefficiency, not judicial economy.

Accordingly, and for the reasons set forth below, the government respectfully requests the Court to either lift the stay in its entirety, or to keep the stay in place until the completion of the criminal trial.

## NATURE OF THE PROCEEDINGS

Nearly two years ago, the government first moved to intervene and for a limited stay of fact discovery in this matter. (D.I. 298.) The government did so in order to protect its ongoing criminal investigation, which had resulted in guilty pleas from two former high-ranking Bank officials, against interference by potential targets of the investigation. In addition, given the then-pending litigation between the civil parties regarding document production (D.I. 459, 460), it was clear that proceeding with fact discovery in the civil case at that time would have been inefficient, would have resulted in a significant strain on judicial resources, and would not have significantly advanced the best interests of the victims and the public.

On July 2, 2015, the District Court entered a formal order that imposed a limited stay in the civil case, but required the parties to complete document production unrelated to pending motions concerning application of the bank examination privilege. (D.I. 397, 404.) In so doing, the Court stated that it would "continue its efforts to resolve any outstanding matters, including class certification and privilege issues, so that any remaining discovery can be completed on an efficient basis once the stay is lifted." (D.I. 397.)

In August 2015, a federal grand jury returned a Superseding Indictment in the criminal case against four parties in the civil action: Robert Harra, David Gibson, William North, and Kevyn Rakowski. *United States v. Gibson et al*, Crim. No. 15-23-RGA. On September 21, 2015, Judge Andrews scheduled trial in the criminal case to begin in September 2016.

On October 15, 2015, the District Court entered an order lifting the stay in this case except "for the depositions of the six criminal defendants (and any individuals who may be indicted in the future, if any) which shall remain stayed pending the resolution of the criminal actions." (D.I. 409.) Shortly thereafter, the government again moved to intervene and to stay the civil case until the completion of the criminal case, which was scheduled to begin approximately eleven months later. (D.I. 416.) The government maintained that a stay was appropriate due to the ongoing criminal investigation, and argued further that a stay would not prejudice the parties at that time because substantial issues remained regarding document production (including the Bank's initial failure to produce responsive documents and whether additional documents would be produced as not subject to the bank examination privilege), thus ensuring that fact discovery could not be completed prior to the conclusion of the scheduled criminal trial. This Court granted the government's motion and imposed a stay of discovery until March 3, 2016. (D.I. 423.)

The government's investigation continued. On January 6, 2016, that investigation culminated when the grand jury returned a Second Superseding Indictment, which added Wilmington Trust Corporation as a defendant to the criminal case. *United States v. Gibson et al*, Crim. No. 15-23-RGA. Despite the fact that one of the law firms representing the Bank in the criminal case previously represented it in the civil case (Skadden Arps), and that the criminal case presented overlapping issues to the civil case, the Bank requested a sixteen-month continuance in

the criminal trial from September 2016 until June 2017. The District Court granted the Bank's request, in part, and continued the criminal trial until January 2017.

In March 2016, the parties submitted status reports in the civil case regarding whether the stay should remain in place. (D.I. 439.) The government argued that a continuing stay was appropriate due to the overlap in the civil and criminal cases and the probability that the government's success in the criminal case would have a preclusive effect in the civil case; that any prejudice that the Lead Plaintiffs would suffer in the civil case would be "diminished given the fixed end to the criminal case"; and that the self-serving requests of the Bank and Individual Defendants to only stay depositions relating to former Bank employees would be used to "result in a one-sided benefit to counsel for the criminal defendants." (*Id.* at 2-3.) In a supplemental status report, the government further criticized the competing requests for a partial stay advanced by the Bank Defendants and the Lead Plaintiffs, noting that the former's approach would impermissibly manipulate the discovery process, while the latter's approach was unworkable and unnecessary because "a trial has been scheduled." (D.I. 450.) On April 13, 2016, this Court entered an order staying fact discovery until the completion of the criminal trial. (D.I. 454.)

Between May and July 2016, the Bank Defendants filed a number of motions to dismiss the criminal Indictment, as well as for other forms of miscellaneous relief. The District Court denied the motions in substantial part, other than dismissing certain counts based on technical defects that the government remedied and reinstated in a Third Superseding Indictment returned on August 2, 2016. On August 11, 2016, the Bank moved to continue the criminal trial from January 2017 until September 2016. Over the government's objection, the Court granted the Bank's motion and continued the trial until October 2, 2017 – approximately three years after the government first moved to stay the civil case.

On September 12, 2016, this Court adopted Magistrate Judge Fallon's Report and Recommendation regarding the applicability of the bank examination privilege. (D.I. 459, 460.) It is likely that responsive documents will be produced to the Lead Plaintiffs within the next sixty days. (D.I. 463 at 13-14.) Thus, the parties will have finally completed document production in the civil case by mid-December.

## ARGUMENT

### I. If the Stay is Lifted, Discovery Should Commence Against All Parties.

Given the length of time until the criminal trial, and the uncertainty surrounding that date, the government does not oppose the Court lifting the stay in the civil case – but only if the stay is lifted with respect to all parties and all potential deponents. Only a complete lifting of the stay can balance the need for the victims of the alleged fraud scheme to timely advance their claims to completion, while also protecting against an unfair windfall for certain parties in the criminal case.

#### A. Governing Standard

In determining whether to grant a stay in a parallel civil proceeding, courts generally consider the following factors: (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the case, including whether the defendants have been indicted; (3) the plaintiffs' interest in proceeding expeditiously weighed against the prejudice to a plaintiff caused by a delay; (4) the private interests of and burdens of the defendants and/or the moving party; (5) the interest of the court; and (6) the public interest. *Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.*, 7 F.Supp.2d 523, 527 (D.N.J. 1998) (citations omitted).

### B. The *Walsh* Factors That Seemingly Support a Stay May be Mitigated by a Protective Order.

Here, several factors which seemingly weigh in favor of continuing the stay may be mitigated by alternative forms of relief, such as a protective order. As the government has repeatedly noted, there is significant overlap between the issues presented in both cases. (D.I. 298, 416.) Yet, the Bank's continued requests to delay the criminal case have undermined the potential for a timely resolution of the criminal case that could "moot, clarify, or otherwise affect various contentions in the civil case." *United States v. Mellon Bank, N.A.*, 545 F.2d 869, 873 (3d Cir. 1976).

Moreover, although additional burdens could theoretically be imposed upon the Bank and the four individual defendants if they proceed with civil discovery,[1] the "Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). Relatedly, a defendant "has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Id.* at 326; *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (stating that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"). Nonetheless, courts have recognized the potential harm that might result from a defendant having to choose between testifying in a civil matter and avoiding an adverse inference and invoking Fifth

[1] The Bank's primary arguments against completing fact discovery are twofold: (1) the individual criminal defendants should not have to choose between invoking their Fifth Amendment right to remain silent and the adverse inference that could result from a failure to testify in the civil case; and (2) the invocation of the Fifth Amendment by the individual defendants and other former employees would unfairly result in adverse inferences against the Bank itself. (D.I. 463 at 6, 8-10.)

Amendment protections. *Digital Equipment Corp. v. Currie Enterprises*, 142 F.R.D. 8, 13 (D. Mass. 1991).

The Court can ameliorate such potential harm and allow the civil case to proceed to the completion of fact discovery, however, by entering a protective order governing the use of interrogatories and depositions in the criminal case. *See generally*, Hon. Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 211-12 (1989) (noting the court's ability to impose relief such as issuing protective orders, limiting examinations and sealing depositions). For example, in *United States v. Parcels of Land,* 903 F.2d 36, 44-45 (1st Cir. 1990), the First Circuit held that a district court's entry of a protective order "prohibiting the use of [the defendant's] deposition transcript, interrogatory answers, and affidavit in any criminal proceeding" in that district was a "reasonable effort to address [the defendant's] fifth amendment concerns and more than satisfied the requirements of the accommodation principle." Similarly, in *Digital Equipment Corp.*, 142 F.R.D. at 15 n.11, the court concluded that it could guard against the potential post-indictment harm faced by criminal defendants in a parallel civil proceeding by directing the parties to enter into a protective order prohibiting "the use of depositions, interrogatories and affidavits except for the limited purposes of impeachment or perjury." *See also Lizarraga v. City of Nogales*, No. CV 06-474-TUC DCB, 2007 WL 215616, *4 (D. Ariz. Jan. 24, 2007) (denying a motion for a stay and directing the parties to file a protective order to "prohibit the use of depositions, interrogatories and affidavits except for the limited purposes of impeachment or perjury") (quoting *Digital Equip. Corp.*, 142 F.R.D. at 15 n.11); *In re CFS-Related Securities Fraud Litig.*, 256 F.Supp.2d 1227, 1240-41 (N.D. Okla. 2003) (holding that a "sensible option" to avoid harm to an indicted defendant from receiving an adverse inference by invoking the Fifth Amendment was "to decline the imposition of a stay of discovery against [the

defendant], seal his deposition, and direct that it not be used for any purpose outside the civil proceeding except for perjury or impeachment"). Other Courts have endorsed a similar approach. *See, e.g., Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 102 (2d Cir. 2012) (denying request of indicted defendants for a stay of the civil matter and stating that individuals in such a position may seek "alternative forms of relief" short of a stay, such as protective orders).

The government respectfully requests that the Court enter a similar protective order in this case. The entry of a protective order limiting the future use of civil depositions except for purposes of impeachment or perjury strikes a fair balance between the rights of the alleged victims to advance their case, while protecting the statements of the criminal defendants and other deponents from being used against them substantively in the criminal case. Any witness who testifies in the civil matter will retain his or her right to not testify, or to invoke Fifth Amendment privileges, at the criminal trial. The entry of the protective order will also promote judicial efficiencies, as it will avoid the need for potential Court intervention to consider potential Fifth Amendment self-incrimination concerns raised by deponents. *See, e.g., Walsh Securities*, 7 F.Supp.2d at 527-29 (noting, in a case in which the parties did not request a protective order, "interrogatory and deposition discovery would likely cause inefficiency, because several defendants will be forced to assert Fifth Amendment privileges").

Moreover, the scope of the protective order would be even more limited than the terms of the government's standard proffer agreement, which permits the government to introduce a witness's proffer statement at trial to "rebut any evidence offered by, or on behalf of" the defendant. *See* Ex. A (Proffer Agreement of Indicted Defendant, filed under seal). In this case, nearly all of the Wilmington Trust former employees who had been noticed previously by the Lead Plaintiffs to testify in depositions – including indicted former employees William North, Kevyn

Rakowski, Brian Bailey, and Joseph Terranova – submitted to government interviews under proffer protection. *See* Ex. B (listing former WTC employees noticed as deponents who participated in government interviews, filed under seal). Given this backdrop, the Bank and the former Wilmington Trust employees who might be called to testify in the civil matter cannot effectively argue that they would be unfairly prejudiced by being deposed in the civil case.

Neither can the Wilmington Trust defendants plausibly contend that allowing civil discovery to proceed would interfere with their preparation of the criminal case. The Bank's lead criminal counsel (Williams & Connolly) represented to Judge Andrews that it has had no involvement in, or reliance on, the civil case. (D.I 462, Ex. B at 26-27) ("I can represent to the Court as a factual matter, we're not relying on anything, nothing that was done in the civil case, not one single piece of work product ...."). Thus, the Bank's civil counsel (Venable) may singularly focus on the civil matter. Moreover, counsel for the Individual Defendants have previously argued in filings before this court that all depositions other than of former Bank employees should proceed. (D.I. 437 at 1-2; D.I. 438 at 2-3.) It would be inconsistent for such counsel, having argued that certain, targeted depositions should proceed, to later submit that they have insufficient resources to prepare for the remaining depositions.

Finally, the Court should reject out of hand the Bank's argument that M&T Bank, the now-parent corporation of Wilmington Trust, will suffer undue prejudice if the stay is lifted as to former Wilmington Trust employees. As an initial matter, the "strain of resources" argument rings hollow when Bank counsel, like the individual defendants, remains willing to expend resources to take depositions of witnesses other than the former Wilmington Trust employees, which might aid the Bank in the criminal case. More fundamentally, however, M&T's refrain that it "saved" Wilmington Trust and should therefore be spared from any burdens of its subsidiary's prior alleged

misconduct is distorting as a matter of law and fact. When M&T acquired Wilmington Trust, it agreed to assume Wilmington Trust's assets and liabilities. At the time of the merger, M&T knew, through its own due diligence process, that there were systemic weaknesses in Wilmington Trust's loan portfolio that would lead to $1 billion in credit losses; that Wilmington Trust faced an ongoing SEC investigation regarding whether the Bank had filed false securities disclosures; and that numerous parties had filed lawsuits against Wilmington Trust relating to pre-acquisition conduct. Yet, M&T decided to finalize the acquisition, acting not out of any charitable motive to save Wilmington Trust's depositors or to repay TARP funds, but because its executives viewed the acquisition of Wilmington Trust as a positive business transaction that could yield "a 20% rate of return."[2] Now, after reaping the significant benefits of the deal to its advantage, M&T relies on its purported altruism – despite omitting that it laid-off over 700 Wilmington Trust employees after finalizing the acquisition[3] – to gain an advantage in litigation regarding the alleged fraudulent conduct of its subsidiary. The Court should reject the claimed prejudice to M&T Bank as any basis to block depositions of former Wilmington Trust employees.

[2] See, e.g., SEC Form 425, "Transcript of Conference Call on November 1, 2010, Between M&T and WTC Executives," at 6, 9 (available via EDGAR at: https://www.sec.gov/Archives/edgar/data/36270/000089882210000644/webcast425.htm) (noting that the acquisition of Wilmington Trust would allow M&T to (1) gain an internationally renowned trust and wealth advisory business and (2) generate an expected 20% rate of return) (accessed Oct. 5, 2016).

[3] See Mellany Armstrong and Amy Cherry, "700+ Wilm. Trust workers losing jobs," WDEL, Feb. 10, 2011 (available at: http://www.wdel.com/story/32311-700-wilm-trust-workers-losing-jobs) (noting that the job cuts "come despite assurances from M&T top brass at the time the merger was announced") (accessed Oct. 5, 2016).

**C. The Remaining *Walsh* Factors Support Lifting the Stay in its Entirety.**

The remaining *Walsh* factors support lifting the stay in its entirety. The government agrees that continued delays in the criminal case will result in substantial prejudice to the victims of the Bank's alleged fraud.

The circumstances of the civil and criminal cases have changed significantly since the government first moved for a stay in October 2014. First, the government's criminal investigation has concluded, and there is no risk that civil discovery could interfere with the grand jury process. In addition, unlike at every other stage in which the government advocated in favor of a stay, all issues regarding document production have been resolved. Thus, the parties will now have access to the universe of documents necessary for depositions no later than mid-December. Given that document production will be complete, the parties can take all depositions within the 90-day window contemplated by the scheduling order without seeking leave to recall witnesses for depositions with the benefit of a complete record.

Most importantly, the repeated continuance requests of the criminal defendants make it unclear whether there is a fixed end in sight in the criminal case. The government's arguments in favor of a stay were premised, in large measure, upon its belief that the criminal case would be concluded well in advance of the civil case; that the timely resolution of the criminal case would have a preclusive effect on the civil case; and that, as a result, there would be no prejudice to the civil parties in allowing the criminal case to proceed to conclusion. Yet, the Bank's failure to disclose documents responsive documents in the civil case (D.I. 462, Ex. A n.8), as well as its continued requests to delay the criminal trial, suggest that the Bank is uninterested in bringing either the criminal or civil case to a timely resolution. *Louis Vuitton*, 676 F.3d at 102 (noting that

dilatory tactics and a "pattern of delay and obfuscation" may be considered in denying a stay request).

Finally, the Bank's position that the government will unfairly benefit from a stay is not supported by the record. Contrary to the Bank's argument, permitting depositions to occur under the terms of the proposed protective order would not likely provide the government with "additional evidence to use in a criminal case against WT" (D.I. 463 at 9) because the government would not be able to use the deposition testimony as substantive evidence. Moreover, given that nearly all of the Bank's former employees have submitted to lengthy government interviews, the government is already aware of the general nature of such testimony. If anything, the criminal defendants may now gain pre-trial access to the sworn statements of certain witnesses (particularly non-culpable third-party witnesses, such as the Bank's auditor and underwriters, and cooperating defendants) that they otherwise would not have an opportunity to examine prior to the criminal case. Permitting the depositions of these individuals to move forward could allow the Bank and the individual defendants potentially to "disrupt and perhaps undermine" the criminal case. *Walsh Securities*, 7 F.Supp.2d at 527 (noting the concern that interrogatory and deposition discovery could harm the government's investigation "by disclosing the testimony of potential government witnesses in the criminal action"). Yet, here the government is willing to assume such risks if the stay is lifted *in its entirety*, because the public interest supports allowing the victims of the alleged offenses to advance the civil case toward completion and to receive the appropriate remedies to which they may be entitled.

## II. Piecemeal Discovery Remains Inefficient, Unworkable, and Would Result in Unfair Advantages.

Only a complete lifting of the stay, with the appropriate protections in place, will advance the best interests of the victims and the public. As the government has expressed repeatedly in its

filings regarding the stay, a piecemeal approach to discovery in the civil case is inefficient, unworkable, and would result in unfair advantages to the criminal defendants that would be anathema to the victims and the public.

First, if the primary rationale is to advance the civil case so that it is ready to be tried immediately following the criminal case (or before, if the criminal defendants seek further delays), that cannot happen if only certain depositions are taken prior to the criminal trial. Given that multiple depositions would have to occur after the criminal trial, there would be an incomplete record for expert depositions, summary judgment, and other pretrial motions. From a practical standpoint, a piecemeal approach thus does not save the civil parties that much time and would still lead to a trial that would likely take place in late-2018 or 2019. Such an approach weighs strongly against lifting the stay because it would not advance the efficient resolution of the civil case. To the contrary, if the stay is lifted in its entirety, the factual record may be developed in early-2017, and the parties may complete the summary judgment process in advance of the criminal trial, thus allowing for the civil trial to begin shortly after the criminal trial concludes. Only a complete lifting of the stay would advance the prompt resolution of the civil case and be in the public interest.

Second, a partial lifting of the stay (and, in particular, the Bank's position seeking to shield its former employees from depositions), would inure only to the benefit of the criminal defendants and to the detriment of the victims and the government. It is clear from the filings of the Bank and the criminal defendants that they would like to depose only those witnesses who might provide a one-sided advantage in the criminal case, while shielding other witnesses who might provide testimony that benefits the victims of the alleged offenses. (D.I. 437 at 1-2; D.I. 438 at 2-3; D.I. 436 at 1 (noting that the Bank "opposes the Motion to the extent Lead Plaintiffs seek to take the

depositions of WT Corp., its affiliates, or their current or former employees, officers, or directors").) Such an inequitable approach would unfairly subordinate the interests of the government and the alleged victims and offend the public's fundamental interest in "fair trials designed to end in just judgments." *United States v. Tinney*, 473 F.2d 1085, 1088 (3d Cir. 1973).

Finally, a partial lifting of the stay would promote inefficiency, not judicial economy. Absent a complete lifting of the stay with a protective order in place, the Court would likely have to rule upon motions for protective orders from attorneys for the former Wilmington Trust employees seeking to block specific depositions and be forced to face issues involving the invocation of the Fifth Amendment privilege on a question-by-question basis.[4] The Court may also have to address questions regarding whether depositions should be reopened at the conclusion of the criminal trial, or whether a witness who previously declined to testify may seek leave to do so and avoid the adverse inferences.

All of these issues may be avoided only if the Court lifts the stay in its entirety with a protective order in place and creates a complete record in advance of the criminal trial. Otherwise, the Court will face a myriad of issues during the discovery process without any prospect of actually completing that process in a timely and efficient manner.

---

[4] "[A] witness cannot relieve himself of the duty to answer questions ... put to him by a mere blanket invocation of the privilege." *National Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595, 598 (3d Cir. 1980). A deponent's invocation of the Fifth Amendment during a deposition generally results in an *in camera* process by which the Court considers, on a question-by-question basis, the scope of the Fifth Amendment privilege to which the witness is entitled. *See Rigas v. Deloitte & Touche, LLP*, No. 4:14-mc-0097, 2014 WL 957395 (M.D. Pa. March 12, 2014).

**CONCLUSION**

For the foregoing reasons, the government respectfully requests the Court to lift the stay of the civil case in its entirety and to issue a corresponding protective order as outlined above. To the extent that the Court is not inclined to lift the stay in its entirety, the government respectfully requests the Court to deny Lead Plaintiffs' Motion (D.I. 461) and to maintain the stay through the conclusion of the criminal trial.

Respectfully Submitted,
CHARLES M. OBERLY, III
United States Attorney
District of Delaware

By: /s/
Robert F. Kravetz, Esq.
Lesley F. Wolf, Esq.
Jamie M. McCall, Esq.
Assistant United States Attorneys

October 6, 2016