**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE WILMINGTON TRUST SECURITIES LITIGATION | Master File No. 10-cv-00990-SLR-SRF<br>(Securities Class Action)<br>Hon. Sue L. Robinson |
| This document relates to: ALL ACTIONS | LEAVE GRANTED: October 14, 2016 |

**WILMINGTON TRUST'S SUPPLEMENTAL BRIEF IN OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR AN ORDER PARTIALLY LIFTING THE STAY OF FACT DISCOVERY**

Jamie L. Edmonson (Bar No. 4247)
Venable LLP
1201 N. Market Street
Suite 1400
Wilmington, Delaware 19801
302-298-3535 (telephone)
302-298-3550 (facsimile)
jedmonson@venable.com

James A. Dunbar (*admitted pro hac vice*)
Daniel P. Moylan (*admitted pro hac vice*)
Matthew R. Alsip (*admitted pro hac vice*)
Venable LLP
210 West Pennsylvania Avenue – Suite 500
Towson, Maryland 21204
410-494-6200 (telephone)
410-821-0147 (facsimile)
jadunbar@venable.com
dpmoylan@venable.com
mralsip@venable.com

*Counsel for Wilmington Trust Corporation*

Dated: October 17, 2016

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. There is no basis under Third Circuit law for adopting the government's proposal of lifting the discovery stay in its entirety and entering a protective order. ..... 2

II. The government cites no controlling or persuasive authority to support its proposal. ..... 8

CONCLUSION ..... 10

# TABLE OF AUTHORITIES


**Cases** **Page(s)**

Brock v. Gerace, 110 F.R.D. 58 (D.N.J. 1986) ... 6

Bryer v. Jefferson, 2013 WL 3753420 (D. Del. July 8, 2013) ... 3, 6

Burt Hill, Inc. v. Hassan, 2009 WL 4730231 (W.D. Pa. Dec. 4, 2009) ... 6

Digital Equip. Corp. v. Currie Enter., 142 F.R.D. 8 (D. Mass. 1991) ... 9, 10

Hoffman v. United States, 341 U.S. 479 (1951) ... 6

In re CFS-Related Sec. Fraud Litig., 256 F. Supp.2d 1227 (N.D. Ok. 2003) ... 9

In re Herley Indus. Inc. Sec. Litig., 2007 WL 1120246 (E.D. Pa. April 11, 2007) ... 7

In re J.M.V., Inc., 90 B.R. 737 (Bankr. E.D. Pa. 1988) ... 6

Kastigar v. United States, 406 U.S. 441 (1972) ... 2, 5

Lizarraga v. City of Nogales Arizona, 2007 WL 215616 (D. Ariz. Jan. 24, 2007) ... 9

Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83 (2d Cir. 2012) ... 10

Maloney v. Gordon, 328 F. Supp.2d 508 (D. Del. 2004) ... 2, 3, 6, 7

Reyes v. Freebery, 2004 WL 1737683 (D. Del. July 30, 2004) ... 4

United States v. Parcels of Land, 903 F.2d 36 (1st Cir. 1990) ... 8, 9

United States v. Trenk, 2006 WL 3359725 (D.N.J. Nov. 20, 2006) ... 6

Volmar Distrib., Inc. v. New York Post Co., Inc., 152 F.R.D. 36 (S.D.N.Y. 1993) ... 7

Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp.2d 523 (D.N.J. 1998). ... 2, 5

Defendant Wilmington Trust Corp. ("WT Corp."), by its counsel, submits this supplemental brief to address the new arguments made by the government in its response (D.I. 468 ("USA Response")) to Lead Plaintiffs' motion to partially lift the discovery stay (D.I. 461-62).

## INTRODUCTION

For more than two years, the government has sought and obtained a complete stay of deposition discovery in this case. The government has argued that a stay until the end of the criminal trial is warranted under Third Circuit law and necessary to protect the criminal proceedings from undue interference caused by civil discovery. (See D.I. 298, 415, 439, 450.) As recently as the filing of Lead Plaintiffs' motion to partially lift the discovery stay on September 19, the government took the same position: "The United States of America objects to a motion to lift the stay for the purpose of conducting fact discovery depositions." (D.I. 461-2 at 2.)[1]

On October 6, 2016, after Lead Plaintiffs filed their pending motion, the government adopted a radically different "all or nothing" position on discovery in this case. The government now seeks relief that not even Lead Plaintiffs are seeking -- it asks the Court to lift the discovery stay in its entirety and permit the depositions of all witnesses, including those whom it has indicted, subject to an ill-defined "protective order." (USA Response at 1, 8, 15.) In the alternative, the government asks the Court to deny Lead Plaintiffs' motion in its entirety. (Id.)

There are multiple problems with the government's suggested approach. First, no actual party to this litigation has sought the complete lifting of the stay proposed by the government. Second, the government's request to lift the stay and enter a protective order finds no support in Third Circuit case law. Third, and most importantly, the government has failed to identify any

---

[1] In this supplemental brief, page references to docket entries refer to the ECF page numbers affixed to the document headers at the time of filing.

new developments that would justify a rebalancing of the six established Walsh factors (the same factors the government has previously used to argue in favor of a stay).[2] The government's proposal would not solve any of the problems that would result from unrestricted depositions, because with or without the proposed protective order, witnesses will still be entitled to assert their Fifth Amendment rights and undoubtedly will do so. See Kastigar v. United States, 406 U.S. 441, 453 (1972) (only "immunity from use and derivative use . . . is sufficient to compel testimony over a claim of the [Fifth Amendment] privilege"). As a result, the government's proposal would impose substantial burdens on this Court and the parties and inflict substantial and unnecessary prejudice on WT Corp., with no offsetting benefit to anyone.

## ARGUMENT

### I. There is no basis under Third Circuit law for adopting the government's proposal of lifting the discovery stay in its entirety and entering a protective order.

Courts in the Third Circuit, including this one, use a six-factor balancing test when considering whether to grant a stay when there is a parallel criminal proceeding. See Maloney v. Gordon, 328 F. Supp.2d 508, 511 (D. Del. 2004) (identifying the six factors as: "(1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, including whether any defendants have been indicted; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the interests of the court; and (6) the public interest" (citing Walsh, 7 F. Supp.2d 523, and other Third Circuit cases).[3]

---

[2] Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp.2d 523 (D.N.J. 1998).

[3] Unless otherwise noted herein, internal citations and quotations are omitted.

As demonstrated below, the six factors weigh heavily against the government's proposal to lift the discovery stay in its entirety, while supporting WT Corp.'s request that the stay remain in place for the current and former employees, officers, and directors of WT Corp. and its affiliates.

The first and most important factor (see Maloney, 328 F. Supp.2d at 511) weighs entirely against the government's proposal to lift the stay. The government concedes that "there is significant overlap between the issues presented in both cases." (USA Response at 6.) Further, this Court has held that "there is an extensive overlap between the parallel civil and criminal proceedings." (D.I. 454 at 2.)

On the second factor, the government has already told this Court that "the transition of the government's case from the investigative to indictment stage is a factor weighing heavily in favor of a stay." (D.I. 450 at 2.) This is consistent with the law in this district. E.g., Bryer v. Jefferson, 2013 WL 3753420, at *1 n. 1 (D. Del. July 8, 2013) (Sleet, C.J.) (the "strongest case for a stay of discovery in [a] civil case occurs during a criminal prosecution after an indictment is returned").

On the third factor, the government has not shown that Plaintiffs or the public will suffer any prejudice by extending the stay in this civil case for an additional nine months until the criminal case is resolved. It argues that the "length of time until the criminal trial, and the uncertainty surrounding that date" justify lifting the stay and entering a protective order. (USA Response at 5.) This new position is inconsistent with what the government previously argued to this Court and it has no basis in Third Circuit law.

In October 2015, the government moved to stay depositions in this case until the end of the criminal trial. (D.I. 415.) Then, the government argued: "Plaintiffs cannot identify any specific prejudice beyond the fact of the delay itself. Accordingly, there is limited, if any, prejudice to the parties by imposing a more fulsome stay of discovery, again suggesting that a stay is appropriate."

(D.I. 415-1 at 16.) The government's October 2015 reasoning applies with equal force today. E.g., Reyes v. Freebery, 2004 WL 1737683, at *5 (D. Del. July 30, 2004) (Jordan, J.) ("At bottom, the Plaintiffs have not shown any prejudice other than delay in pursuing their suits, which is insufficient to prevent staying this [civil] case.").

Furthermore, WT Corp. is unaware of any "uncertainty surrounding" the start of the criminal trial. Judge Andrews has ordered that the trial will start on October 2, 2017. Although the government argues that WT Corp. has engaged in "dilatory tactics" (USA Response at 14-15), nothing could be farther from the truth. WT Corp. moved to reschedule the start of the criminal trial so that it could have adequate time to prepare its defense. Judge Andrews granted that motion. Filing a meritorious motion is not a "dilatory tactic."

With respect to the fourth and fifth factors, the government appears to agree that allowing discovery to proceed would burden the Court and parties and prejudice WT Corp. because many parties and witness are likely to assert their Fifth Amendment rights. (See USA Response at 1.) But the government proposes a newly-minted "solution" to purportedly eliminate the possibility that deponents will assert their Fifth Amendment rights -- a protective order that ostensibly would prevent the government, in the criminal case, from using deposition testimony against the deponent as substantive evidence. (Id.) The government, however, would remain free to make direct use of the testimony for impeachment purposes and any other indirect or derivative use, such as additional factual investigation to aid its prosecution.

This is no solution at all. The government's proposal is premised on the flawed assumption that a protective order would "protect witnesses from having to choose between testifying and invoking their Fifth Amendment privilege." (USA Response at 1.) In fact, the government's ability to use deposition transcripts and other discovery materials from this case for impeachment

and any other indirect or derivative use means that witnesses still will have to "choose" between testifying and asserting the Fifth Amendment privilege. Only the grant of use and derivative use immunity can displace the Fifth Amendment privilege. See Kastigar, 406 U.S. at 453.

The government represented to this Court in its March 2016 status report that when faced with this choice, "the criminal defendants -- and, likely a number of other former Bank employees . . . will undoubtedly assert their Fifth Amendment right against self-incrimination and refuse to testify." (D.I. 439 at 3.) That likelihood is underscored by the government's position in the criminal case. The government's current Third Superseding Indictment alleges, inter alia, a conspiracy involving many former WT Corp. employees. (See D.I. 463 at 7.) The government has expressly reserved the right to bring criminal charges against additional persons. (D.I. 439 at 2 n. 2.) An allegation of a conspiracy involving many people, and the possibility of further indictments, will undoubtedly cause many witnesses in this civil case to assert their Fifth Amendment rights.

Proceeding now with depositions and other fact discovery, and engaging in motions practice to address and resolve numerous discovery disputes concerning the Fifth Amendment and other issues, would waste the Court's and parties' resources. Repeated assertions of the Fifth Amendment will place a severe burden on this Court to resolve an inevitable stream of discovery disputes. Walsh, 7 F. Supp.2d at 528 (granting a stay will relieve the court of burdens associated with "deciding a constant stream of privilege issues").

The government acknowledges that the burden on this Court could include extensive motions practice and burdensome in camera proceedings for each and every witness who asserts the privilege, and a "question-by-question" analysis and determination by this Court of whether the Fifth Amendment may properly be asserted. (USA Response at 17 n. 4: "A deponent's

invocation of the Fifth Amendment during a deposition generally results in an in camera process by which the Court considers, on a question-by-question basis, the scope of the Fifth Amendment privilege to which the witness is entitled.")[4] It is hard to imagine a less efficient and more avoidable use of this Court's resources.

On the other hand, as the government has already acknowledged to this Court, the outcome of the criminal case "may eliminate the need for further action in the civil case, including the taking of deposition of former Wilmington Trust employees." (D.I. 439 at 2; see also D.I. 415-1 at 17: "the progression and resolution of the criminal matters will streamline civil discovery and may well advance a more efficient resolution of the civil case".) This Court has reached the same conclusion on several occasions. E.g., Maloney, 328 F. Supp.2d at 513 ("[T]he outcome of the criminal proceedings may guide the parties in settlement discussions and potentially eliminate the need to litigate some or all of the issues in this case. Thus, staying this case preserves judicial resources and may streamline other aspects of the civil case."); Bryer, 2013 WL 3753420, at *1 n. 1 ("proceeding with discovery under the shadow of the criminal action would actually create greater inefficiency").

In addition to the unnecessary burdens the government would place on this Court, as WT Corp. has already demonstrated, it will suffer substantial prejudice if the stay is lifted. (D.I. 463

[4] Trial courts must determine what testimony, if any, "would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Hoffman v. United States, 341 U.S. 479, 486 (1951). This is determined on a question-by-question basis. See Burt Hill, Inc. v. Hassan, 2009 WL 4730231, at *4-5 (W.D. Pa. Dec. 4, 2009) ("Defendants' assertions of privilege regarding Plaintiff's interrogatories must be analyzed on a question-by-question basis") (citing United States v. Trenk, 2006 WL 3359725, at *3 (D.N.J. Nov. 20, 2006), order vacated in part on other grounds, 2007 WL 174327 (D.N.J. Jan. 22, 2007)); In re J.M.V., Inc., 90 B.R. 737, 740 (Bankr. E.D. Pa. 1988) ( "in order to resolve this matter[,] the actual [deposition] questions asked of the witness must be evaluated in the context of the explanation offered for invocation of the privilege to determine whether potential answers to those questions cannot possibly incriminate [the witness]"); Brock v. Gerace, 110 F.R.D. 58, 62 (D.N.J. 1986) ("A blanket invocation of the Fifth Amendment privilege is not permitted; it must instead be asserted on a question-by-question basis so that the propriety of invoking the privilege can be tested against specific circumstances or questions.").

at 11-13.) The prejudice includes: (a) the adverse inferences that may be drawn against WT Corp. as a result of its former employees, officers, or directors asserting their Fifth Amendment rights; (b) the unfair advantages that the government will enjoy in its prosecution of WT Corp. by obtaining additional factual information and insight into criminal defense strategies through the liberal civil discovery process[5]; and (c) the waste of resources caused by proceeding with discovery now, before the criminal trial is completed.

The government argues that a protective order can solve problems associated with adverse inferences and burdensome litigation over discovery and privilege issues by eliminating the possibility that witnesses will assert the Fifth Amendment privilege. (See USA Response at 1.) As demonstrated above, the proposed protective order will not dissuade witnesses from asserting their Fifth Amendment rights, and, therefore, it will not alleviate the risk of an adverse inference being drawn against WT Corp. or lessen the burdens that will be placed on this Court to resolve discovery disputes.

Finally, the government argues, in substance, that the Court should ignore the unfair prejudice in this civil case that will unquestionably be suffered by M&T Bank (and the individuals and pension funds who own its stock) because M&T Bank anticipated a profit when it acquired WT Corp. in late 2010. (USA Response at 12-13.) Of course M&T Bank expected a profit. Profit-seeking is the bedrock of our economy. It drives economic expansion and employment, and taxes paid on profit and employment help fund our government. The commercial cases before this Court

---

[5] See In re Herley Indus. Inc. Sec. Litig., 2007 WL 1120246, at *2 (E.D. Pa. April 11, 2007) ("Refusing to grant a stay might also expand the rights of criminal discovery beyond the limits of Federal Rules of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of trial, or otherwise prejudice the criminal case") (quoting Volmar Distrib., Inc. v. New York Post Co., Inc., 152 F.R.D. 36, 39 (S.D.N.Y. 1993)); Maloney, 328 F. Supp.2d at 512 (if a stay is not granted in the civil case while the criminal case is pending, the defendants "run the risk of exposing their criminal defense strategies to the government").

involve parties that are in profit-seeking businesses. There is no support for the government's proposition that for-profit litigants should not receive fair and even-handed treatment and be accorded the same legal protections as are traditionally accorded to litigants in this Court. The government has no basis to suggest otherwise.

In short, the government's suggested approach would likely result in: (a) substantial burdens on this Court to resolve numerous discovery disputes about Fifth Amendment assertions and disputes about adverse inferences against WT Corp.; (b) substantial prejudice to WT Corp. in the form of potential adverse inferences; (c) unfair advantages for the government in the criminal case; and (d) a tremendous amount of wasted resources. <u>There is no benefit to anyone to counterbalance these harms</u>. At most, there is a <u>chance</u> that Plaintiffs, if they can prove their case, may <u>possibly</u> recover a money judgment a few months sooner. That speculative possibility does not come close to outweighing the waste of resources and other harms that inevitably would result from adopting the government's proposal.

## II. The government cites no controlling or persuasive authority to support its proposal.

The government does not cite a single case from the Third Circuit in which a court has entered a protective order in order to address the judicial burdens, prejudice, and inefficiency associated with proceeding simultaneously with parallel civil and criminal proceedings. (USA Response at 10-11.) On the other hand, as the government previously argued in this case, there are "numerous cases from this Circuit in which district courts have stayed civil cases post-indictment pending completion of the criminal case." (D.I. 450 at 2; <u>see</u> <u>also</u> D.I. 463 at 7-11.)

The cases cited by the government are easily distinguishable. In <u>United States v. Parcels of Land</u>, 903 F.2d 36, 44-45 (1st Cir. 1990), no party moved for a stay and there was no parallel criminal proceeding. This was a civil forfeiture action. The defendant argued on appeal that the district court improperly struck his affidavit on the basis of his assertion of the Fifth Amendment

privilege at his deposition. Id. at 42. Under these facts, and based on a line of cases addressing the need to "accommodate" Fifth Amendment rights in forfeiture actions because of the threat of future prosecution, the appellate court held that the district court properly entered a protective order. Id. at 44-45.

In re CFS-Related Sec. Fraud Litig., 256 F. Supp.2d 1227 (N.D. Ok. 2003), is also factually distinct. There, unlike here, the court considered a motion to stay filed by just one of many defendants. That motion was opposed by every other party in the case. Id. at 1232-33. Also unlike here, the moving defendant who sought the stay was seeking to simultaneously pursue cross-claims and third-party claims against other parties. Id. at 1235-36, 1239. Under these circumstances, the Oklahoma court denied the requested stay and instead ordered that the movant's deposition transcript be sealed. Id. at 1242. The government itself has previously acknowledged that In re CFS-Related involved "circumstances sharply different from those present in the instant case." (D.I. 415-1 at 18 n. 15 (emphasis added).)

In Lizarraga v. City of Nogales Arizona, 2007 WL 215616 (D. Ariz. Jan. 24, 2007), the Arizona court denied a defendant's motion to stay while he faced criminal charges for sexual assault, largely because the plaintiff showed that she would suffer unique harms if her civil case was delayed. Specifically, the plaintiff showed that her failing mental health and dwindling financial resources justified proceeding with the civil case. Id. at *2. The public interest also favored denying the stay because of the plaintiff's "financial dependency on the state and others." Id. at *4. Plaintiffs do not make such arguments here.

In Digital Equip. Corp. v. Currie Enter., 142 F.R.D. 8 (D. Mass. 1991), the Massachusetts court declined to stay discovery for four (of twenty) civil defendants. The court's analysis included consideration of the "minor" roles played by the four defendants who moved for the stay and a

unique harm that the plaintiff would incur if a stay was entered, specifically, a need to proceed with discovery to identify additional defendants before the expiration of the statute of limitations. Id. at 12. Here, there is no statute of limitations issue, and the indicted criminal defendants are far from "minor" witnesses -- they are WT Corp. and several of its former executive officers. The government previously chastised Lead Plaintiffs for ignoring "the centrality of the indicted individuals to both [the civil and criminal] actions," and argued, "[w]here the essential figures in the civil case are under indictment and a trial has been scheduled, courts have recognized that a complete stay is warranted . . .." (D.I. 450 at 3.)

Finally, in Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 96-102 (2d Cir. 2012), the court applied Second Circuit law and held that the lower court did not abuse its discretion by denying a stay. In so holding, the court noted that many factors actually favored staying the case (e.g., indictments had been issued in a parallel criminal case and the defendants' Fifth Amendment rights were placed at risk in the civil case), but it concluded that the highly deferential standard of review did not warrant a reversal. Id. at 99-102. The court's analysis was based in large part on circumstances demonstrating that the defendants' requested stay was nothing more than a continuation of a pattern of dilatory litigation tactics in the civil case, including a failure to produce responsive documents. Id. No such circumstances exist here.

## CONCLUSION

WT Corp. respectfully requests that the Court reject the government's request that the discovery stay be lifted in its entirety.

October 17, 2016

Respectfully submitted,

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (Bar No. 4247)
Venable LLP
1201 N. Market Street
Suite 1400
Wilmington, Delaware 19801
302-298-3535 (telephone)
302-298-3550 (facsimile)
jedmonson@venable.com

James A. Dunbar (*admitted pro hac vice*)
Daniel P. Moylan (*admitted pro hac vice*)
Matthew R. Alsip (*admitted pro hac vice*)
Venable LLP
210 West Pennsylvania Avenue – Suite 500
Towson, Maryland 21204
410-494-6200 (telephone)
410-821-0147 (facsimile)
jadunbar@venable.com
dpmoylan@venable.com
mralsip@venable.com

*Counsel for Wilmington Trust Corporation*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of October, 2016, I served a copy of the foregoing supplemental brief using the Court's CM/ECF system.

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (Bar No. 4247)