UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE WILMINGTON TRUST SECURITIES LITIGATION | Master File No. 10-cv-00990-SLR-SRF |
| | (Securities Class Action) |
| This document relates to: ALL ACTIONS | Hon. Sue Robinson |
| | ELECTRONICALLY FILED |

**MEMORANDUM OF INTERVENOR THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM IN OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR CLARIFICATION AND TO UNSEAL REPORT AND RECOMMENDATION**

In their Motion for Clarification and to Unseal Report and Recommendation (Dkt # 484) filed November 29, 2016 ("Motion to Unseal"), Plaintiffs seek to apply the Magistrate's August 16, 2016 Report and Recommendation (Dkt # 459) (the "R&R") to a whole different set of confidential supervisory documents in the hands of third parties which were never before the Court. Specifically, plaintiffs ask this Court to "clarify" that the R&R applies to all documents withheld from plaintiffs on the basis of the bank examination privilege "by any person or entity, ... not just those documents withheld by Defendants." Motion to Unseal at 1. This is not the relief plaintiffs sought in their August 5, 2014 Motion to Compel (Dkt # 233) which the R&R resolved. That Motion requested production *only* of bank examination privileged documents in possession of the defendants, and which both the Court and the regulators had the opportunity to review. Not only were third party documents not the subject of the Motion to Compel and the R&R, but plaintiffs' Motion to Unseal seeks to bypass the Board's regulations, which require plaintiffs or a third party to obtain the general counsel's prior approval before confidential

supervisory information may be provided to the plaintiffs. Such an administrative request, if granted in whole or part, could reduce or obviate the need for the Court to intervene, and could be acted upon by the Board notwithstanding the stay of all fact discovery which is currently in place in this case until at least October 2017.[1] The Court should therefore deny plaintiffs' Motion to Unseal and instead permit plaintiffs to pursue their administrative remedies.[2]

**A. Plaintiffs Sought to Compel Bank Examination Privileged Information in the Hands of the Defendants, Not Third Parties**

Lead plaintiffs' August 5, 2014 Motion to Compel Production of Documents Withheld by Defendants Based on the Bank Examination Privilege (Dkt # 233) ("Motion to Compel") was clear and specific. Plaintiffs sought "an order that: *Defendants* Wilmington Trust Corporation ("Wilmington Trust" or the "Bank") … Defendant KPMG … Underwriter Defendants" and individual officer and director defendants "shall produce to Lead Plaintiffs all documents responsive to Lead Plaintiffs' document requests being withheld on the basis of the bank examination privilege." Motion to Compel at 1-2 (emphasis supplied). Plaintiffs further sought an order that "*Defendants* will not withhold documents in the future on the basis of the bank examination privilege or similar regulatory protections" and that "no *testimony*[3] shall be withheld in this Action on the basis of the bank examination privilege." *Id*. at 2 (emphasis supplied). The Motion was limited to compelled production of documents from the defendants

---

[1] By Motion dated Sept. 19, 2016 (Dkt # 461) plaintiffs moved for a partial lifting of the fact discovery stay. That motion is pending.

[2] The OCC and the Delaware Office of the State Bank Commissioner concur in the positions set forth in this brief.

[3] As the Board explained to plaintiffs prior to their filing of the Motion to Unseal, the Board understands that the parties' May 28, 2014 Protective Order (Dkt # 218) permits witnesses (including third parties) to testify regarding materials designated as "Confidential" under the Protective Order, provided that they otherwise comply with the Order, including any bank regulatory information defendants may produce to the plaintiffs under the R&R if the fact discovery stay is lifted.

and testimony regarding such documents, and said nothing about compelling production of regulatory documents from third parties.

Likewise, plaintiffs' Memorandum of Law in Support of the Motion to Compel (Dkt. # 234) at 1 explained "Lead Plaintiffs seek to compel the production of thousands of critically important documents that *Defendants* are currently withholding on the grounds that these documents purportedly contain "confidential supervisory information ("CSI")." *Id.* (emphasis supplied). The plaintiffs' brief did not mention production of CSI by third parties. *Id.*

The relief sought in plaintiffs' Motion to Compel was consist with their administrative request for access to CSI filed with the Board on June 4, 2014. *See* Dkt # 235-2 (Declaration of Hannah Ross in Support of Motion to Compel), filed Aug. 5, 2014 ("Ross Decl."), Exh. L at 1. Plaintiffs' June 4 administrative request asked "the Board [to] … authorize Wilmington Trust and other *Defendants* to disclose to Lead Plaintiffs certain … [CSI] contained in … the documents and testimony that Defendants have produced and continue to produce to various Government Entities." *Id.* (emphasis supplied). Plaintiffs' administrative request did not mention or request access to CSI in the hands of third parties, nor did it identify any such third parties, state what confidential supervisory documents they might possess or describe how those documents are relevant to this case. Consequently, plaintiffs did not exhaust their administrative remedies with regard to CSI in the hands of third parties, and, absent such exhaustion, third parties are prohibited from providing the Board's confidential supervisory information to the plaintiffs.[4]

---

[4] Under the Board's regulations, confidential supervisory information in the hands of a third party remains "property of the Board" and may not be disclosed absent prior written permission of the Board's general counsel. 12 C.F.R. § 261.20(g); *see Schreiber v. Society for Savings Bancorp, Inc.*, 11 F.3d 217, 222 (D.C. Cir. 1993) (reports and records gathered or created by a federal bank regulatory agency in the course of performing its regulatory duties "are deemed the

Based on plaintiffs' representations in the Motion to Compel, as requested by the Court, the parties and intervening regulators agreed that the defendants would provide the Board and other regulators with privilege logs of documents being withheld by defendants on the basis of bank examination privilege, prototypical privileged documents, and access to the documents withheld by the defendants.[5] *See* Dkt # 252 (parties' Sept. 5, 2014 letter to Court summarizing agreement regarding regulatory privilege). Because no third parties were mentioned in, or parties to, this agreement, nor participants in the status conference with the Court, no third party documents, prototypes or privilege logs were provided to the regulators for review.

To the contrary, as plaintiffs' own Motion to Unseal makes clear, the subject of confidential supervisory documents in the hands of third parties did not come up *at all* until plaintiffs' Reply to the Board's Opposition to their Motion to Compel, and then, only in a footnote. *See* Motion to Unseal at 2 n.1 (quoting footnote in plaintiffs' Reply, Dkt # 342, filed Nov. 7, 2014, describing impact of regulators' claim of bank examination privilege on non-party discovery, including from Treliant Risk Advisors). That footnote did not state that plaintiffs sought to compel production of regulatory documents from Treliant, nor did it describe those documents or their potential relevance to this case. Rather, the footnote only stated that Treliant "has withheld their document production in this case pending their review for regulatory privilege." *See* Plaintiffs' Reply, Dkt # 342, at 18 n.19. Indeed, if Treliant or other third parties

records of the agenc[y]" and are available "only with the permission of the agenc[y]")(citing Board's rules).

[5] Upon review of the prototypes and a representative sample of the documents, the Board determined that a small subset was not subject to a claim of bank examination privilege and should be provided to the plaintiffs along with other, similar documents. *See* Dkt #324-1 (Mizusawa Decl.), filed Oct. 24, 2014, at ¶ 9 and Exh. 1 (Board letter to Defendants dated Sept. 23, 2014); Dkt # 382-3, filed Apr. 13, 2015 (Board letters to Defendants WTC and KPMG dated October 29, 2014).

had been the subject of plaintiffs' Motion to Compel, they should have been served with the Motion to Compel and given the opportunity to file a response and appear at the November 4, 2014 hearing, which they were not.

The subject of Treliant was also briefly raised at the November 4, 2014 hearing when plaintiffs listed Treliant as a "third-party contractor … who was brought in to evaluate and review [WTC's] entire loan portfolio" and had "access" to supervisory information, which it was withholding. *See* Exh. A to Motion to Unseal (Dkt # 484-1) (Transcript) at pp. 30, 31 (of 71). Again, plaintiffs did not ask the Court at that time to compel Treliant or any other third party to produce the CSI. *Id.* To the contrary, when asked by the Court to "articulate more precisely what relief you're seeking," plaintiffs' counsel responded "we would like the *defendants* to produce to us several categories of documents that are currently being withheld on the basis of the regulatory privilege." *See* Exh. A to Motion to Unseal (Transcript) at 12 (of 71) (emphasis supplied).

Other than plaintiffs' single footnote in their Reply brief and their passing mention of Treliant at the November 4, 2014 hearing, the regulators were not given notice of CSI in the hands of Treliant or other third parties, nor were they provided the information required under their respective rules,[6] a privilege log, or the opportunity to review these documents for a possible claim of bank examination privilege. The law is clear that Board and other applicable regulators must be given that opportunity. *In re Bankers Trust Co.*, 61 F.3d 465, 472 (6th Cir. 1995) ("the Federal Reserve must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion").

[6] 12 C.F.R. § 261.22(b).

Similarly, the Court was not given the opportunity to conduct *in camera* review of confidential supervisory documents in the hands of Treliant or other third parties. In April 2015, at the Court's direction, the parties filed proposals regarding *in camera* review of documents withheld by the defendants on the basis of bank examination privilege. Dkt ## 382 and 383 (filed April 13, 2015). Plaintiffs' proposal addressed "the over 15,000 documents that Defendants are redacting or withholding pursuant to a claim of regulatory privilege" and did not propose *in camera* review of documents in the hands of Treliant or another third party. *See* Dkt # 383 at 1, 3-4. Indeed, plaintiffs' proposal stated that that *Defendants* were in possession of some documents "related to Treliant's 2010 review of the Bank's loan portfolio," suggesting that some documents Treliant is withholding might possibly be duplicative of documents already in defendants' possession. *Id.* at 3.

On the basis of this record and *in camera* review of documents in defendants' possession, Magistrate Judge Fallon issued the sealed R&R granting in part and denying in part plaintiffs' Motion to Compel, which the Court adopted. *See* Dkt # 459 (dated Aug. 16, 2016) and Dkt # 460 (Sept. 12, 2016). Plaintiffs now seek retroactively to expand the scope of their Motion to Compel and the R&R to encompass confidential supervisory documents in the hands of third parties. Because third party documents were never the subject of an administrative request or the Motion to Compel, and third parties were never served with the Motion to Compel or given the opportunity to respond, nor were the Board nor Court given the opportunity to inspect documents in the hands of third parties, the Court should deny plaintiffs' Motion to Unseal.

### B. Plaintiffs or Third Parties Must Exhaust Administrative Remedies By Filing a Request for Access to Confidential Supervisory Information With the Board Before Seeking Relief from the Court

Plaintiffs' Motion to Unseal also ignores the simple and obvious solution of submitting an administrative request to the Board for prior approval to obtain CSI from Treliant or other third parties. Not only is an administrative request required by the Board's regulations and numerous federal district court opinions upholding those regulations (discussed below), but, if granted in whole or in part, it would obviate or reduce the need for intervention by the Court.

Numerous federal courts have held that plaintiffs must first exhaust administrative remedies by following the procedures set forth in the banking agencies' regulations before seeking Court intervention in matters involving confidential supervisory information.[7] As one

[7] *See Alaska Electrical Pension Fund v. Bank of America Corp.*, No. 14cv7126 (JMF), 2016 U.S. Dist. LEXIS 158455 at **27-28 (S.D.N.Y., Nov. 16, 2016) ("with respect to [confidential supervisory information of the Board, OCC and New York State Department of Financial Services] … Plaintiffs would have to seek relief 'through the established administrative process' before coming back to this Court") (internal citation omitted); *Colonial Bancgroup, Inc. v. PricewaterhouseCoopers LLP*, 110 F. Supp. 3d 37, 43-44 (D.D.C. 2015) ("[t]he agencies' requirements to submit an administrative request for information prior to seeking relief from the court are clear. Counsel cannot independently decide that it need not comply with the regulations"); *In re JPMorgan Chase Mortgage Modification Litigation*, No. 11-md-02290-RGS, 2012 U.S. Dist. LEXIS 167966 at *6 (D. Mass., Nov. 27, 2012) ("[p]laintiffs may not move to compel the production of privileged examination information until they have first contacted the agency that holds the privilege and followed the agency's procedures for obtaining information"); *In re CitiMortgage HAMP Litigation*, No. MDL 11-2274-DSF, 2012 U.S. Dist. LEXIS 169324 at **28-29 (C.D. Cal., June 7, 2012) ("[p]laintiffs here have not yet sought the responsive documents from the OCC, and therefore their request that the Court balance the interests involved in production is premature"); *In re Countrywide Financial Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 120590 at *4 (C.D. Cal., Dec. 28, 2009) ("[p]laintiffs must first exhaust all administrative procedures and submit requests to use the documents in this litigation to the FRB and OCC …"); *Bay Bank v. f/v Order of Magnitude*, 2007 U.S. Dist. LEXIS 16241 at *8 (W.D. Wash., March 7, 2007) ("[b]ecause Defendants have not attempted to use the procedure outlined in the regulations [of the FDIC] … their Motion to Compel is Denied"); "); *FDIC v. Flagship Auto Center*, 2005 U.S. Dist. LEXIS 9468 at *18 (N.D. Ohio, May 13, 2005) (denying motion to compel production of bank examination materials where "[d]efendants have failed to demonstrate that they made an administrative request to the Board for documents"); *Raffa v. Wachovia Corp.*, 242 F. Supp. 2d 1223, 1225 (M.D. Fla. 2002) (directing plaintiffs to use OCC

court recently found in a case involving Board and OCC confidential supervisory information, "[t]he exhaustion doctrine serves the interests of judicial economy, by offering an agency the opportunity to correct its own errors and to develop an administrative record, and separation of powers, by assuring that courts do not unduly intrude into the operations of executive branch administrative agencies." *Colonial Bancgroup*, 110 F. Supp. 3d at 44.

Here, not only do the Board's regulations require plaintiffs or a third party to file an administrative request, 12 C.F.R. §§ 261.20(g), .22, .23, but there are sound policy reasons for doing so. An administrative request would enable the Board (or other applicable regulator) to determine whether the disputed material is confidential supervisory information in the first place. If not, there would be no barrier to production because of regulatory privilege and no need for the Court to rule on that issue. Moreover, the Board has reviewed the R&R and is well versed on the Court's application of bank examination privilege to documents in defendants' possession. The Board is also familiar with the facts of this case, having reviewed the Fourth Amended Complaint, Protective Order, the Court's opinions, and other pertinent documents. The Board is therefore well-placed to process an administrative request and could do so expeditiously. Should the Board grant in whole or in part plaintiffs' or a third party's administrative request, or determine that some or all of the material is not CSI (as it did for a small subset of defendants' documents), no further action by the Court may be needed, or the issues before the Court may be significantly narrowed.

---

administrative procedures for access to confidential supervisory documents); *American Savings Bank v. Painewebber Inc.*, 210 F.R.D. 721, 722 (D. Ha. 2001) (litigants seeking to compel production of unpublished OTS documents would first be required to use the procedures set forth in the OTS's regulations); *National Union Fire Ins. Co.* v. *Midland Bancor*, 159 F.R.D. 562, 572 (D. Kan. 1994) ("[c]ourts simply deny motions to compel information exempted from disclosure by [Board and FDIC] regulations when the moving party has not completed the procedures outlined in the regulations for obtaining such information").

While plaintiffs argue “the Parties and the Court have already devoted over two years’ worth of time and substantial resources to issues regarding the bank examination privilege,” Motion to Unseal at 5, the Board in fact responded promptly to plaintiffs’ June 4, 2014 administrative request on June 27, 2014 —a period of just over three weeks. *See* Dkt # 235-2, Ross Decl., Exhs. L and M (plaintiffs’ June 4, 2014 administrative request and Board’s June 27, 2014 response). There is no reason to think the Board would not promptly respond to a second administrative request, especially now that it is familiar with the issues in this lawsuit, the R&R, and defendants’ prototypes, privilege logs and samples of defendants’ documents.

Moreover, plaintiffs’ argument that an administrative request would be too time-consuming and cumbersome is disingenuous. Fact discovery in this case, including document discovery, is stayed until completion of the parallel criminal proceeding, which is scheduled for trial on October 2, 2017. *See* Order dated April 13, 2016 (Dkt # 454) and Defendants’ Opposition to Plaintiffs’ Motion for an Order Partially Lifting the Stay (Dkt # 463) filed Oct. 4, 2016 at 1. Because fact discovery is stayed, an administrative request would not impede these proceedings or conflict with the stay, but rather would maintain the status quo with regard to civil document discovery during the pendency of the stay while the parallel criminal case proceeds.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Unseal should be denied and plaintiffs should be permitted to file an administrative request for access to documents in the hands of third parties that may contain confidential supervisory information.

Dated: December 14, 2016

Respectfully submitted,

Katherine H. Wheatley
Associate General Counsel
Board of Governors of the Federal Reserve System

_/s/ Yvonne F. Mizusawa________
Yvonne F. Mizusawa
Senior Counsel
Board of Governors of the Federal Reserve System
20th & C Streets N.W.
Washington, D.C. 20551
(PH) (202) 452-3436
(FAX) (202) 736-5615

Attorneys for Intervenor the Board of Governors of the Federal Reserve System