**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE WILMINGTON TRUST SECURITIES LITIGATION | Master File No. 10-cv-00990-SLR-SRF<br><br>(Securities Class Action)<br><br>Hon. Sue L. Robinson |
| This document relates to: ALL ACTIONS | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER QUASHING DEFENDANTS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS**

# TABLE OF CONTENTS

**Page**


Introduction .......... 1

Procedural Overview .......... 3

I. After initial discovery, the government intervened and this litigation was stayed beginning in late 2014. .......... 3

II. The Court lifted the stay in December 2016 and entered a new scheduling order. .......... 4

Argument .......... 5

I. Defendants' Second Request is timely. .......... 5

II. There is no other basis to quash Defendants' Second Request. .......... 10

III. Denying the Motion and requiring Plaintiffs to produce all responsive, non-privileged documents will not prejudice Plaintiffs, but granting the Motion will certainly prejudice Defendants. .......... 15

Conclusion .......... 15

CERTIFICATE OF SERVICE .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Barry D. Roseman Profit Sharing Plan v. Sports & Recreation, Inc., 165 F.R.D. 108 (M.D. Fla. 1996) ....13

Cipollone v. Liggett Grp., Inc., 785 F.2d 1108 (3d Cir. 1986)....11

E.E.O.C. v. Citicorp Diners Club, Inc., 985 F.2d 1036 (10th Cir. 1993) ....11

Glenmede Trust Co. v. Thompson, 56 F.3d 476 (3d Cir. 1995)....11

In re Harcourt Brace Jovanovich, Inc. Sec. Litig., 838 F. Supp. 109 (S.D.N.Y. 1993) ....14

McCabe v. Ernst & Young, LLP., 494 F.3d 418 (3d Cir. 2007)....13

Rivera v. Exeter Fin. Corp., 2016 WL 374523 (D. Colo. Feb. 1, 2016)....11

Sciele Pharma, Inc. v. Lupin, Ltd., 2013 WL 12161442 (D. Del. Jan. 31, 2013)....2

Re XPRT Ventures, LLC v. eBay, Inc., 2011 WL 13142141 (D. Del. June 15, 2011)....2, 4, 5

**Other Authorities**

6-26 Moore's Federal Practice, §26.102....11

Defendants, by their undersigned counsel, submit this memorandum in opposition to Plaintiffs' Motion for Protective Order Quashing Defendants' Second Request for Production of Documents to Plaintiffs (the "Motion"). (D.I. 572 & 576.)

## Introduction

There is no basis to quash Defendants' Second Request for Production of Documents to Plaintiffs (the "Second Request"), because the scheduling "deadline" on which Plaintiffs principally rely in their Motion has had no effect in this case for years.[1] Defendants served their Second Request in a timely manner under the Court's most recent scheduling order, which was entered on January 24, 2017. That order established a deadline of June 1, 2017 for "[a]ll fact discovery." (D.I. 509 at 3.)[2] Furthermore, Defendants' Second Request seeks relevant and discoverable documents not previously requested from Plaintiffs in this action. Defendants are entitled to conduct document discovery in accordance with the Court's scheduling order.

The high stakes of this litigation underscore the need to allow Defendants to undertake full document discovery. Plaintiffs are pursuing a securities fraud class action against Defendants, seeking alleged damages for a nationwide class of investors covering a nearly two-year time span. Plaintiffs undoubtedly will make a damage claim of tens or even hundreds of millions of dollars.

The Motion, which makes it clear that Plaintiffs possess discoverable documents that have not been produced to Defendants, is just one aspect of Plaintiffs' current strategy to stonewall Defendants in discovery. They also have moved to quash third-party document subpoenas served on their investment advisors by Defendant Wilmington Trust Corporation ("WT Corp."). (D.I.

---

[1] A copy of Defendants' Second Request is attached as **Exhibit 1**. All exhibits are attached to the Declaration of Matthew R. Alsip.

[2] Page number references are to the Court's e-filing stamp located in the document header.

573 & 577.) Plaintiffs also have refused to substantively answer interrogatories served by several Defendants.

Plaintiffs' current obstructionism stands in stark contrast to their prior representations to the Court. Since late 2014, when fact discovery was initially stayed at the government's request, Plaintiffs have repeatedly urged the Court to re-open fact discovery so that this case may proceed to a resolution. In December 2016, they successfully moved the Court to lift the stay notwithstanding the parallel criminal case. (D.I. 461, 478, 488.) Plaintiffs then urged the Court to enter an expedited scheduling order to complete fact discovery. (D.I. 498.) Now, they seek to hinder Defendants' ability to prepare their defenses in this substantial class action litigation.

Plaintiffs got what they wanted. The Court lifted the stay and re-opened fact discovery, and required that "[a]ll fact discovery" be completed by June 1, 2017. Defendants are entitled to the discoverable documents that Plaintiffs are now refusing to produce. See, e.g., Sciele Pharma, Inc. v. Lupin, Ltd., 2013 WL 12161442, at *2 (D. Del. Jan. 31, 2013) ("[T]he Court must be mindful that the federal rules of discovery promote a broad and liberal policy of discovery for the parties to obtain the fullest possible knowledge of the issues and facts before trial."); Re XPRT Ventures, LLC v. eBay, Inc., 2011 WL 13142141, at *7 (D. Del. June 15, 2011) ("A liberal interpretation of the discovery rules will afford the parties opportunities to obtain the fullest possible knowledge of the issues and facts prior to trial.").[3] Plaintiffs cannot pick and choose discovery based on their strategic interests.

[3] Unless otherwise noted herein, internal citations and quotations are omitted.

## Procedural Overview

**I. After initial discovery, the government intervened and this litigation was stayed beginning in late 2014.**

The initial civil actions against Defendants alleging securities fraud were filed in late 2010. The actions were consolidated and, in May 2011, Plaintiffs filed their First Consolidated Securities Class Action Complaint. (D.I. 39.) Plaintiffs then spent more than two years amending their pleading multiple times. They did not file their current Fourth Amended Consolidated Securities Class Action Complaint until June 2013. (D.I. 149.)

The parties propounded their initial requests for the production of documents in mid-2014. (E.g., D.I. 192-195, 223, 241.) This early discovery included multiple sets of voluminous document requests propounded by Plaintiffs on Defendants, which collectively sought more than 100 broad categories of documents (Defendants' Second Request contains just 16 requests).[4] In response to these and later requests, WT Corp. alone has produced nearly 1.3 million documents (over ten million pages), and has spent a massive amount of time and money to do so.

By contrast, Plaintiffs have produced just over 13,000 documents in this case in response to Defendants' requests (D.I. 576 at 10), or about 1% of the number of documents that WT Corp. has produced.

Discovery -- and the litigation, generally -- came to a halt in early October 2014, when the government initially intervened in the case and moved for a stay. (D.I. 297-298.) Discovery was effectively frozen for two years at the government's request until December 2016. During those

---

[4] Copies of Plaintiffs' initial requests for the production of documents to Defendants (other than KPMG), which were served in 2014, are attached as **Exhibit 2**. The 2014 requests served on KPMG are addressed below.

two years, the only litigation activities related to class certification, Defendants' (primarily, WT Corp.'s) supplemental document productions in response to Plaintiffs' 2014 requests, and motion practice about the stay itself.[5]

The 2014 proceedings were governed by an initial case schedule ordered by the Court on May 19, 2014. That schedule, which the Court ordered prior to the government's intervention, provided: "[t]he parties shall substantially complete document production on or before October 17, 2014, and shall serve all requests for the production of documents so as to complete document production by that date." (D.I. 197 at 2.)

When it entered this order, the Court anticipated that the government might interfere with the discovery process. It therefore provided that, "the foregoing deadlines are conditioned on the Governmental Entities not interfering with discovery." (D.I. 197 at 4.) "In the event any Governmental Entity seeks to stay, limit, or review any discovery sought or provided by any party, the parties agree to meet and confer regarding the reasonable modifications of these deadlines." (Id.) Thus, once the government intervened in early October 2014, the case deadlines established in the May 2014 scheduling order no longer had any effect in this case.

## II. The Court lifted the stay in December 2016 and entered a new scheduling order.

On December 19, 2016, the Court lifted the stay at the request of Plaintiffs and the government. (D.I. 488.) The Court ordered the parties to meet and confer about a "revised schedule" for the case. (Id.) After the parties were unable to reach agreement on a new and revised case schedule, the Court held a hearing on January 19 to consider the parties' competing positions. On January 24, the Court entered a new scheduling order that provided, inter alia, that "[a]ll fact

[5] The government did not seek to stay class certification proceedings, nor did the government seek to interrupt Defendants' supplemental productions in response to Plaintiffs' 2014 document requests.

discovery shall be completed on or before June 1, 2017." (D.I. 509 at 3.) The Court's new scheduling order did not reference or incorporate any terms of the May 2014 scheduling order, and it did not impose a separate deadline for document discovery. (Id.)

The parties have engaged in extensive fact discovery since the Court entered the new scheduling order. This has included both Plaintiffs and Defendants making new requests for documents. Plaintiffs have made new requests for documents produced by the government (and all other parties and persons) in the parallel criminal case, as well a new request for an additional two years of loan policy documents.

Defendants served their Second Request on Plaintiffs on February 23, well in advance of the June 1 fact discovery deadline. (D.I. 528.) On March 27, Plaintiffs filed their Motion to quash the Second Request (D.I. 572 & 576), arguing primarily that all requests for documents should have been served in advance of the October 17, 2014 deadline set forth in the Court's May 2014 scheduling order. On the same day, Plaintiffs filed a parallel motion seeking to quash document subpoenas that WT Corp. had served on Plaintiffs' investment advisors (D.I. 573 & 577), also primarily on the basis of the alleged October 2014 deadline.

## Argument

### I. Defendants' Second Request is timely.

Plaintiffs' principal argument is that Defendants' Second Request is untimely under the Court's May 2014 scheduling order. Based on that order (D.I. 197 at 2), Plaintiffs argue that all requests for the production of documents (and third-party document subpoenas) needed to be served in time to complete document production by October 17, 2014. (D.I. 576 at 9.) Plaintiffs' argument fails for at least three reasons.

First, the case deadlines set forth in the May 2014 order became inoperative at the moment the government intervened in this civil case and moved for a stay on October 10, 2014. (D.I. 297-298.) The Court's May 2014 order says so:

> **Government Intervention.** All of the foregoing deadlines are conditioned on the Governmental Entities not interfering with discovery. In the event any Governmental Entity seeks to stay, limit, or review any discovery sought or provided by any party, the parties agree to meet and confer regarding the reasonable modifications of these deadlines.

(D.I. 197 at 4; emphasis added.) Thus, once the government intervened, all deadlines in the May 2014 were null and void and subject to re-negotiation by the parties. No new deadlines were set again until the Court entered the January 24 case schedule, which established June 1, 2017 as the deadline for "[a]ll fact discovery." (D.I. 509 at 3.)

Second, even if the government's intervention had not voided all of the case deadlines contained in the May 2014 order, those deadlines were superseded earlier this year by the Court's January 24 scheduling order. By relying on the three-year-old scheduling order from 2014, Plaintiffs simply ignore the Court's January 24 scheduling order. In the 2017 order, the Court expressly provided a June 1, 2017 deadline for "[a]ll fact discovery." (D.I. 509 at 3.) The Court did not exclude or carve out document discovery, or establish a separate deadline for document discovery, or make any reference to the May 2014 order. It simply ordered that "[a]ll fact discovery" be completed by June 1, 2017. A request for the production of documents propounded by one party to another under Fed. R. Civ. P. 34, like Defendants' Second Request, is one type of "fact discovery," and nothing in the new scheduling order would preclude it.

The Court's entry of a new June 1 deadline for all fact discovery was no accident. Plaintiffs and Defendants submitted briefing and proposed case schedules that expressly asked for a new deadline for "all fact discovery." (D.I. 497 & 498.) Neither Plaintiffs nor Defendants sought to

make an exception or a separate deadline for document discovery. (Id.) Nor did Plaintiffs argue in their briefing that document discovery had closed in October 2014 and should not be re-opened with the lifting of the stay that they requested. (D.I. 498.) Instead, Plaintiffs and Defendants urged the court to enter a new deadline for "all fact discovery." The Court did exactly that in its January 24 order. Thus, the current deadline for all fact discovery in this case is June 1, 2017. Defendants served their Second Request on February 23, well in advance of that deadline.

Third, Plaintiffs' own conduct in this litigation has been inconsistent with their current position that requests for the production of documents (and third-party document subpoenas) cannot be served after October 2014. Plaintiffs have themselves made multiple new requests for documents since October 2014, including since the Court lifted the stay in December 2016. This has occurred on at least three occasions:

- On December 19, 2016, just hours after the Court lifted the stay, Plaintiffs requested that WT Corp.'s counsel in the parallel criminal case produce all documents produced by the government or any other party or non-party in the criminal case.[6] Plaintiffs' broad request for all documents produced in the criminal case was not included in Plaintiffs' pre-October 2014 document requests directed at Defendants.[7] (See **Ex. 2**.) As a result of this request, WT Corp. produced over 560,000 documents to Plaintiffs.

- On March 2, 2017, Plaintiffs served an interrogatory on WT Corp. that requested the production of additional documents.[8] Plaintiffs demanded the immediate production of

[6] A copy of counsel's email request is attached as **Exhibit 3**.

[7] Plaintiffs' only prior request for documents produced in the criminal case were those that had been produced by WT Corp., not the government and other parties or witnesses.

[8] A copy of Plaintiffs' first set of interrogatories to WT Corp. is attached as **Exhibit 4**.

numerous types of loan policy documents for the time period of January 1, 2005 through December 31, 2010. This represented a new request for an additional two years of loan policy documents. Plaintiffs had previously requested only documents for the time period of January 1, 2007 through May 16, 2011. (See **Ex. 2**.)[9]

- On November 26, 2014, more than a month after the alleged October 17, 2014 document production deadline, Plaintiffs served a request for the production of documents on Defendant KPMG -- and collected additional documents as a result of that request. (D.I. 354; see also D.I. 576 at 6.)

Plaintiffs argue in their Motion that their November 2014 requests to KPMG "were clearly subsumed within their previous requests." (D.I. 576 at 6.) This argument is incorrect and also irrelevant. The document requests served on KPMG in November 2014 sought, generally, all documents related to the "practices and procedures to be followed by KPMG" in planning and performing audits and reviews of WT Corp. during the relevant time period.[10] That request simply was not made before the alleged October 2014 deadline.[11] Had Plaintiffs actually believed that their November 2014 requests were "clearly subsumed within [their] previous requests," they would have moved to compel and not served a third request for documents on KPMG after the October 2014 document production deadline they now rely on to attempt to thwart Defendants' discovery efforts.

---

[9] WT Corp. has objected to Plaintiffs' interrogatory, as well as the accompanying document request, on grounds unrelated to the supposed October 2014 document production deadline.

[10] A copy of Plaintiffs' November 2014 requests for the production of documents to KPMG is attached as **Exhibit 5**.

[11] A copy of Plaintiffs' pre-October 2014 requests for the production of documents to KPMG is attached as **Exhibit 6**.

Further, even assuming, arguendo, that the request made in November 2014 was "subsumed" within Plaintiffs' prior document requests directed at KPMG, the fact remains that Plaintiffs made a document request after the October 2014 deadline, and they received new documents from KPMG in response to that request. (D.I. at 576 at 6.) These undisputed facts show the hypocrisy of Plaintiffs' current reliance on the alleged October 2014 deadline.[12]

In addition to Plaintiffs themselves making repeated new requests for documents after October 2014 (and receiving hundreds of thousands of documents in response), Plaintiffs chose not to object when, on November 4, 2014 (after the alleged October 17, 2014 deadline), Defendant J.P. Morgan Securities LLC served a document subpoena on non-party Buckhead Capital Management, LLC (D.I. 340-1), one of Plaintiffs' investment advisors. Plaintiffs did not move to quash that subpoena, much less argue that it was untimely under the Court's May 2014 scheduling order.[13]

In sum, Plaintiffs ignore the alleged October 2014 deadline when it suits their needs, and they seek to enforce it when it suits their needs.[14]

---

12 Plaintiffs note that in January 2015, KPMG objected to Plaintiffs' document requests on the basis of the October 2014 deadline. (D.I. 576 at 3 and Exhibit C.) That objection was made two years before the Court ordered that "all fact discovery" be completed by June 1, 2017. Further, notwithstanding the objection, KPMG produced documents.

13 Plaintiffs also did not object when, on March 13, 2017, WT Corp. served its First Request for Production of Documents to KPMG (D.I. 542), or when WT Corp. served document subpoenas on several federal and state banking regulators and other witnesses. (E.g., D.I. 547, 585 – 587, 599.)

14 In their Motion, Plaintiffs argue that Defendants erred by not obtaining an extension of time to serve document requests. (D.I. 576 at 10.) Defendants do not need an extension of time. The Court ordered that "all fact discovery" shall remain open until June 1, 2017.

## II. There is no other basis to quash Defendants' Second Request.

Plaintiffs make general assertions that that the Second Request is "largely duplicative" of Defendants' prior document requests; that it is "exceedingly broad and unduly burdensome"; and that it "principally concerns issues relevant to the prerequisites of class certification." (D.I. 576 at 4.) These conclusory assertions are without merit.

The Second Request is not "largely duplicative" of Defendants' prior requests for the production of documents to Plaintiffs. Most of Defendants' prior requests, served in June 2014, were appropriately aimed at obtaining documents relevant to class certification proceedings.[15] For example, request no. 5 sought documents related to each Plaintiff's decision to act as a class representative; request no. 6 sought documents related to each Plaintiff's relationship with class counsel; and request no. 15 sought document related to Plaintiffs' plan for "oversight of class counsel." (**Ex. 7**.) The Second Request does not seek documents of this nature (see **Ex. 1**).

The Second Request is made up of new, non-duplicate document requests that are intended to develop further evidence in support of Defendants' defenses on the merits of this case. For example, request no. 7 seeks documents related to any alleged false statement or omissions made by any Defendant; request no. 9 seeks documents related to any alleged admissions made by any Defendant; and request no. 13 seeks documents related to any individual defendant's knowledge of or participation in the alleged fraud. (**Ex. 1**.) Defendants did not request documents of this nature in their 2014 document requests. (See **Ex. 7**.)

Although certain requests made in the Second Request may overlap in part with more general requests they made in 2014, such overlap is not a reason to quash the Second Request as requested by Plaintiffs. In large-scale litigation such as this, specific document requests are

---

[15] A copy of Defendants' First Request for Production of Documents to Plaintiffs is attached as **Exhibit 7**.

frequently included within (or, in Plaintiffs' words, subsumed by) more general requests. Plaintiffs claim to have done exactly this in connection with KPMG, and they did it in connection with numerous other documents requests. For example, in their First Request for Production of Documents (**Ex. 2**), Plaintiffs propounded a general request for all documents "concerning KPMG in its capacity as the Bank's outside auditor" (no. 23), as well as a more specific request for documents "concerning any audits by KPMG . . . of the Bank's annual financial statements and review of the Bank's quarterly financial statements" (no. 24). Further, in their Second Request for Production of Documents (**Ex. 2**), Plaintiffs asked for every document Defendants intend to rely on for any affirmative defense (no. 3). This request plainly overlaps with many other, more specific requests made by Plaintiffs.

Plaintiffs' general objections based of overbreadth and undue burden are equally meritless. These objections are made without any specifics or demonstration of how the Second Request is overbroad or why it would be unduly burdensome for Plaintiffs to comply. Plaintiffs do not even identify the specific requests they deem to be objectionable in this regard, nor do they provide any showing of the alleged burden of complying with the Second Request. General objections of the sort made here by Plaintiffs cannot serve as the basis for quashing the Second Request. See Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) ("the burden of persuasion is on the party seeking the protective order" and the movant "must show good cause by demonstrating a particular need for protection"); Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (establishing "good cause" for a protective order requires the movant

to "specifically demonstrate . . . a clearly defined and serious injury," because "[b]road allegations of harm, unsubstantiated by specific examples . . . will not suffice").[16]

The most Plaintiffs say is that it would be "exceedingly burdensome" for them to be required to "produce additional documents at this late stage of the litigation" while engaged in "an intensive deposition and written discovery schedule." (D.I. 576 at 9.) This argument fails for at least four reasons.

First, Plaintiffs' claim of undue burden is undermined by, and inconsistent with, their argument that the Second Request is "largely duplicative." (D.I. 576 at 4.) If the new requests were duplicative (they are not), there should not be any (or many) new documents to produce, and, therefore, very little burden on Plaintiffs. In such a circumstance, Plaintiffs' proper response is to identify the supposedly duplicative requests and respond to each by asserting that all responsive documents have already been produced or making whatever supplemental productions are needed. See Fed. R. Civ. P. 26(e)(1).

Second, Plaintiffs urged the Court to enter the "intensive deposition and written discovery schedule" about which they now complain. Indeed, they asked the Court to impose an April 21, 2017 deadline for "all fact discovery," rather than June 1. (D.I. 498.) Plaintiffs cannot complain

---

16 See also E.E.O.C. v. Citicorp Diners Club, Inc., 985 F.2d 1036, 1040 (10th Cir. 1993) ("A court will not excuse compliance with a subpoena for relevant information simply upon the cry of unduly burdensome."); Rivera v. Exeter Fin. Corp., 2016 WL 374523, at *2 (D. Colo. Feb. 1, 2016) ("unless the challenged discovery is unduly burdensome on its face, a party seeking a protective order based upon undue burden or expense must submit affidavits or otherwise explain in detail the nature and extent of the claimed burden or expense"); 6-26 Moore's Federal Practice, §26.102 ("The party seeking a protective order must make a particular request and articulate facts in support of the request. The facts must show that a clearly defined and serious injury will result from the discovery sought. Conclusory or speculative statements about the need for a protective order and the harm that would be suffered without one are insufficient. … The demonstration of facts should be made by affidavits from knowledgeable persons.").

about any burdens caused by a compressed fact discovery schedule that they themselves urged the Court to enter.

Third, as described above, the supposed burdens of collecting and producing additional documents did not stop Plaintiffs from making new requests on Defendants after the Court lifted the stay in December 2016. For example, they requested (and received) over 560,000 documents that had been produced by the government and other parties in the parallel criminal case.

Fourth, this case is not at a "late stage." Trial is not scheduled to begin until June 18, 2018. (D.I. 509 at 3.) Fact discovery is still open for nearly two more months, and expert discovery has yet to begin. Defendants' Second Request is not a last-minute request for documents on the eve of trial. It was served well in advance of the June 1, 2017 deadline for all fact discovery.

Finally, without any explanation or analysis, Plaintiffs assert that "the majority of the Second Document Requests concern documents that relate principally to class certification."[17] (D.I. 576 at 11.) This is simply not so. Defendants' Second Request (**Ex. 1**) seeks documents that relate to the merits of this case:

- Request nos. 1 and 2 seek communications between, and documents sent among, Plaintiffs and various governmental entities. These requests have nothing to do with class certification. They are designed to, inter alia, seek non-privileged documents containing admissions or representations to or by Plaintiffs relating to the nature or strength of their claims.

- Request nos. 3 – 6 seek documents related to Plaintiffs' communications and relationship with their investment advisors. Documents of this kind are relevant to, inter alia, issues of loss causation or reliance in this securities fraud action. "In order to satisfy the loss

[17] Plaintiffs fail to identify which of the sixteen requests in the Second Request they believe "relate principally to class certification."

causation requirement . . . the plaintiff must show that the defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiff's economic loss." McCabe v. Ernst & Young, LLP., 494 F.3d 418, 426 (3d Cir. 2007). See also Barry D. Roseman Profit Sharing Plan v. Sports & Recreation, Inc., 165 F.R.D. 108, 113 (M.D. Fla. 1996) (in a securities fraud class action, denying the plaintiffs' motion for a protective order with respect to subpoenas issued on the defendants' stockbrokers, brokerage houses, and investments advisors, because "information about the plaintiffs' securities trading" is relevant to class certification and the merits of the case, including issues of reliance and rebutting the fraud-on-the-market theory); In re Harcourt Brace Jovanovich, Inc. Sec. Litig., 838 F. Supp. 109, 113-14 (S.D.N.Y. 1993) (in a securities fraud class action, permitting discovery into the named plaintiffs' investment history because, inter alia, such evidence could rebut the presumption of reliance under the fraud on the market theory").

- Request nos. 7, 8, and 13 seek documents related to any alleged false statements or omissions made by Defendants, any intentional or reckless conduct by them, and any individual defendant's knowledge of or participation in the alleged "fraud." These requests have nothing to do with class certification, but relate directly to the merits.

- Request nos. 9 – 11 and 14 are also merits-based. They seek documents related to any admissions or statements made by Defendants in connection with this action, documents related to any attempts by Plaintiffs to mitigate their alleged damages, and, to the extent not previously produced, any other documents supporting Plaintiffs' claims in this case. These documents are not related to class certification.

- Request nos. 12 and 16 seek documents related to Plaintiffs' investment decision-making during the relevant time period, including due diligence efforts, investments policies and objectives, etc. These documents are also relevant to issues of loss causation and reliance.

- Request no. 15 seeks copies of all documents that Plaintiffs have received from any current or former WT Corp. employee or agent, including all confidential witnesses. Such documents may potentially undermine or disprove allegations or claims made by Plaintiffs.

Plainly, Defendants' Second Request does not "relate principally to class certification." All sixteen numbered requests seek important documents relevant to the merits of this case.

**III. Denying the Motion and requiring Plaintiffs to produce all responsive, non-privileged documents will not prejudice Plaintiffs, but granting the Motion will certainly prejudice Defendants.**

Plaintiffs have not shown how they would be prejudiced in the slightest by being required to produce responsive documents. Their unsubstantiated claims of undue burden do not show prejudice.

On the other hand, Defendants will be prejudiced if the Court grants the Motion and quashes the Second Request. Plaintiffs clearly possess, maintain, or control responsive, non-privileged documents that have not previously been produced in this case. They admit as much in their Motion by arguing that they should not be burdened with a need to "produce additional documents." (D.I. 576 at 9.) If they had nothing responsive to produce, Plaintiffs could have simply responded to the Second Request by asserting that they have nothing further to produce. Instead, they filed their Motion in order to prevent Defendants from obtaining evidence -- presumably, evidence that does not favor Plaintiffs' claims.

Granting Plaintiffs' Motion and prohibiting Defendants from obtaining the un-produced documents will substantially prejudice Defendants in their defense of this securities fraud class action. Defendants would be denied potentially valuable documentary evidence, including but not limited to documents related to loss causation or reliance (e.g., 3 – 6, 12, 16) and admissions (e.g., 1 – 2, 9 – 10).

**Conclusion**

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion and confirm that the June 1, 2017 deadline for the completion of "all fact discovery" applies to requests for the production of documents served on parties (and document subpoenas served on non-parties).

April 7, 2017

Respectfully submitted,

**VENABLE LLP**

*<u>/s/ Jamie L. Edmonson</u>*
Jamie L. Edmonson (Bar No. 4247)
1201 N. Market Street
Suite 1400
Wilmington, Delaware 19801
302-298-3535 (telephone)
302-298-3550 (facsimile)
jedmonson@venable.com

James A. Dunbar (*admitted pro hac vice*)
Daniel P. Moylan (*admitted pro hac vice*)
Matthew R. Alsip (*admitted pro hac vice*)
Jessica B. Wack (*admitted pro hac vice*)
Venable LLP
210 West Pennsylvania Avenue – Suite 500
Towson, Maryland 21204
410-494-6200 (telephone)
410-821-0147 (facsimile)
jadunbar@venable.com
dpmoylan@venable.com
mralsip@venable.com
jbwack@venable.com

**WILLIAMS & CONNOLLY LLP**

Tobin J. Romero (*admitted pro hac vice*)
Barry Simon (*admitted pro hac vice*)
Margaret A. Keeley (*admitted pro hac vice*)
Lance A. Wade (*admitted pro hac vice*)
725 Twelfth Street, N.W.
Washington, D.C. 20005
202-434-5000 (telephone)
tromero@wc.com
bsimon@wc.com
mkeeley@wc.com
lwade@wc.com

**MCCARTER & ENGLISH, LLP**

*<u>/s/ Michael P. Kelly</u>*
Michael P. Kelly (No. 2295)
Steven P. Wood
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
Tel: 302-984-6300
mkelly@mccarter.com
swood@mccarter.com

OF COUNSEL:
Andrew M. Lawler (*admitted pro hac vice*)
Sharon D. Feldman (*admitted pro hac vice*)
ANDREW M. LAWLER, P.C.
641 Lexington Avenue
New York, NY 10022
Tel: 212-832-3160
alawler@amlpc.com
sfeldman@amlpc.com

***Attorneys for Defendant Robert V. A. Harra***

**DALTON & ASSOCIATES, P.A.**

*<u>/s/ Bartholomew J. Dalton</u>*
Bartholomew J. Dalton (#808)
Andrew C. Dalton (#5878)
DALTON & ASSOCIATES, P.A.
Cool Spring Meeting House
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
bdalton@bdaltonlaw.com
adalton@bdaltonlaw.com

Henry E. Klingeman *(admitted pro hac vice)*
Helen A. Nau *(admitted pro hac vice)*
KROVATIN KLINGEMAN LLC

***Attorneys for Wilmington Trust Corporation***

60 Park Place, Suite 1100
Newark, NJ 07102
Tel.: (973) 424-9777
hklingeman@krovatin.com
hnau@krovatin.com

***Attorneys for Defendant Kevyn Rakowski***

**WILKS, LUKOFF & BRACEGIRDLE, LLC**

*/s/ Samuel L. Moultrie*
David E. Wilks (No. 2793)
Andrea S. Brooks (No. 5064)
Samuel L. Moultrie (No. 5979)
R. Stokes Nolte (No. 2301)
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805
Tel: 302-225-0805

***Attorneys for Defendant William B. North***

**POTTER ANDERSON & CORROON LLP**

*/s/ John A. Sensing*
Stephen C. Norman (Bar No. 2686)
John A. Sensing (Bar No. 5232)
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
snorman@potteranderson.com
jsensing@potteranderson.com

Thomas C. Rice (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
Sara A. Ricciardi (*pro hac vice*)
Matthew T. O'Connor (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Ave.
New York, NY 10017
(212) 455-2000
trice@stblaw.com
cwaldman@stblaw.com
sricciardi@stblaw.com
moconnor@stblaw.com

***Counsel for Defendants J.P. Morgan Securities LLC and Keefe, Bruyette & Woods, Inc.***

**PEPPER HAMILTON LLP**

*/s/ Christopher B. Chuff*
M. Duncan Grant (Bar No. 2994)
Christopher B. Chuff (Bar No. 5729)
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE 19899-1709
Telephone: 302-777-6500
Fax: 302-421-8390
Email: grantm@pepperlaw.com
Email: chuffc@pepperlaw.com

Ivan B. Knauer (*admitted pro hac vice*)
Matthew D. Foster (*admitted pro hac vice*)
Pepper Hamilton LLP
Hamilton Square
600 14th Street, NW, Suite 500
Washington, DC 20005-2004
Telephone: 202-220-1200
Fax: 202-220-1665
Email: knaueri@pepperlaw.com
Email: fosterm@pepperlaw.com

***Attorneys for Independent Director Defendants Carolyn Burger, R. Keith Elliott, Donald Foley, Louis Freeh, Gailen Krug, Rex Mears, Stacey Mobley, Michelle Rollins, Oliver Sockwell, Robert Tunnell, Jr., and Susan Whiting***

**HOGAN LOVELLS US LLP**

*/s/ Virginia A. Gibson*
Virginia A. Gibson (No. 3699)
1835 Market Street, 29th Floor
Philadelphia, PA 19103
Tel: (267) 675-4635
Fax: (267) 675-4601
Email: virginia.gibson@hoganlovells.com

George A. Salter (*admitted pro hac vice*)
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Fax: (212) 918-3100
Email: george.salter@hoganlovells.com

***Counsel for KPMG LLP***

**MORGAN LEWIS & BOCKIUS LLP**

*/s/ Jody C. Barillare*
Colm F. Connolly (#3151)
Jody C. Barillare (#5107)
The Nemours Building
1007 N. Orange Street, Suite 501
Wilmington, DE 19801
(302) 574-3000
colm.connolly@morganlewis.com
jody.barillare@morganlewis.com

***Counsel for Defendant Ted T. Cecala***

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ William M. Lafferty*
William M. Lafferty (#2755)
Jay N. Moffitt (#4742)
1201 North Market Street
Wilmington, DE 19801
Tel.: (302) 658-9200
wlafferty@mnat.com
jmoffitt@mnat.com

OF COUNSEL:

PAUL HASTINGS LLP
Kenneth M. Breen *(admitted pro hac vice)*
Shahzeb Lari *(admitted pro hac vice)*
John P. Nowak *(admitted pro hac vice)*
Phara A. Guberman *(admitted pro hac vice)*
200 Park Avenue
New York, NY 10166
Tel.: (212) 318-6000
kennethbreen@paulhastings.com
shahzeblari@paulhastings.com
johnnowak@paulhastings.com
pharaguberman@paulhastings.com

***Attorneys for Defendant David R. Gibson***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of April, 2017, I served a copy of the foregoing opposition memorandum using the Court's CM/ECF system.

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (Bar No. 4247)

15191859/6