**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE WILMINGTON TRUST SECURITIES LITIGATION | Master File No. 10-cv-00990-SLR-SRF<br><br>(Securities Class Action)<br><br>Hon. Sue L. Robinson |
| This document relates to: ALL ACTIONS | |

**WILMINGTON TRUST'S OPPOSITION**
**TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**
**QUASHING DEFENDANT WILMINGTON TRUST CORPORATION'S SUBPOENAS**
***DUCES TECUM* TO WHV INVESTMENTS, INC., BUCKHEAD CAPITAL**
**MANAGEMENT, LLC, AND DEPRINCE, RACE & ZOLLO, INC.**

# TABLE OF CONTENTS


Introduction ........ 1

Procedural Overview ........ 2

- I. After initial discovery, the government intervened and this litigation was stayed beginning in late 2014. ........ 3
- II. The Court lifted the stay in December 2016 and entered a new scheduling order. ........ 4

Argument ........ 6

- I. Plaintiffs lack standing to move to quash the Subpoenas served on the investment advisors. ........ 6
- II. The Subpoenas are timely. ........ 8
- III. There is no other basis to quash the Subpoenas. ........ 12
- IV. Denying the Motion will not prejudice Plaintiffs, but granting the Motion will certainly prejudice Defendants. ........ 15

Conclusion ........ 16

CERTIFICATE OF SERVICE ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Barry D. Roseman Profit Sharing Plan v. Sports & Recreation,
Inc., 165 F.R.D. 108, 113 (M.D. Fla. 1996) ....................14

Cipollone v. Liggett Grp., Inc.,
785 F.2d 1108 (3d Cir. 1986)....................12

E.E.O.C. v. Citicorp Diners Club, Inc.,
985 F.2d 1036 (10th Cir. 1993) ....................12

Glenmede Trust Co. v. Thompson,
56 F.3d 476 (3d Cir. 1995)....................12

In re Harcourt Brace Jovanovich, Inc. Sec. Litig.,
838 F. Supp. 109, 113-14 (S.D.N.Y. 1993) ....................14

Integra Lifesciences I, Ltd. v. Merck KGaA,
190 F.R.D. 556 (S.D. Cal. 1999) ....................7

McCabe v. Ernst & Young, LLP.,
494 F.3d 418 (3d Cir. 2007)....................14

Norguard Ins. Co. v. Serveon Inc.,
2011 WL 344076 (D. Del. Jan. 28, 2011)....................6, 7, 13

Oliver B. Cannon & Son, Inc. v. Fidelity & Cas. Co. of New York,
519 F. Supp. 668 (D. Del. 1981)....................6, 7

Rivera v. Exeter Fin. Corp.,
2016 WL 374523 (D. Colo. Feb. 1, 2016) ....................12

Sciele Pharma, Inc. v. Lupin, Ltd.,
2013 WL 12161442 (D. Del. Jan. 31, 2013)....................2

Thomas v. Marina Assoc.,
202 F.R.D. 433 (E.D. Pa. 2001)....................7

Re XPRT Ventures, LLC v. eBay, Inc.,
2011 WL 13142141 (D. Del. June 15, 2011)....................2, 4

**Other Authorities**

6-26 Moore's Federal Practice, §26.102..........12

Wilmington Trust Corporation ("WT Corp."), by its undersigned counsel, submits this memorandum in opposition to Plaintiffs' Motion for Protective Order Quashing Defendant Wilmington Trust Corporation's Subpoenas Duces Tecum to WHV Investments, Inc., Buckhead Capital Management, LLC, and DePrince, Race & Zollo, Inc. (the "Motion"). (D.I. 573 & 577.)

## Introduction

There is no basis to quash the subpoenas duces tecum served on Plaintiffs' investment advisors, WHV Investments, Inc., Buckhead Capital Management, LLC, and DePrince, Race & Zollo, Inc. (collectively, the "Subpoenas") (D.I. 533 – 535), because the scheduling "deadline" on which Plaintiffs principally rely in their Motion never applied to third-party subpoenas and, even if it did, the "deadline" has had no effect in this case for years. WT Corp. served the Subpoenas in a timely manner under the Court's most recent scheduling order, which was entered on January 24, 2017. That order established a deadline of June 1, 2017 for "[a]ll fact discovery." (D.I. 509 at 3.)[1] The Subpoenas seek relevant and discoverable documents concerning, inter alia, Plaintiffs' purchases and sales of WT Corp. stock during the class period, which documents have not previously been produced in this action. Plaintiffs' Motion is a transparent attempt to hinder WT Corp.'s ability to develop its defenses in this securities fraud class action litigation. Not even the recipients of the Subpoenas, Plaintiffs' investment advisors, have moved the Court to quash the Subpoenas.

The high stakes of this litigation underscore the need to allow WT Corp. to undertake full document discovery. Plaintiffs are pursuing a class action against WT Corp. and other Defendants in which they are seeking alleged damages for a nationwide class of investors covering a nearly

[1] Page number references are to the Court's e-filing stamp located in the document header.

two-year time span. They undoubtedly will make a damage claim of tens or even hundreds of millions of dollars.

Plaintiffs' current obstructionism in discovery stands in stark contrast to their prior representations to the Court. Since late 2014, when fact discovery was initially stayed at the government's request, Plaintiffs have repeatedly urged the Court to lift the stay and re-open discovery so that this litigation may proceed to a resolution. In December 2016, they successfully moved the Court to lift the stay notwithstanding the parallel criminal case. (D.I. 461, 478, 488.) Plaintiffs then urged the Court to enter an expedited schedule to complete fact discovery. (D.I. 498.)

Plaintiffs got what they wanted. The Court lifted the stay and re-opened fact discovery, and required that "[a]ll fact discovery" be completed by June 1, 2017. (D.I. 509 at 3.) As a result, WT Corp. is entitled to obtain the discoverable documents properly sought in the Subpoenas. See, e.g., Sciele Pharma, Inc. v. Lupin, Ltd., 2013 WL 12161442, at *2 (D. Del. Jan. 31, 2013) ("[T]he Court must be mindful that the federal rules of discovery promote a broad and liberal policy of discovery for the parties to obtain the fullest possible knowledge of the issues and facts before trial."); Re XPRT Ventures, LLC v. eBay, Inc., 2011 WL 13142141, at *7 (D. Del. June 15, 2011) ("A liberal interpretation of the discovery rules will afford the parties opportunities to obtain the fullest possible knowledge of the issues and facts prior to trial.").[2] Plaintiffs cannot pick and choose discovery based on their strategic interests.

**Procedural Overview**

---

[2] Unless otherwise noted herein, internal citations and quotations are omitted.

## I. After initial discovery, the government intervened and this litigation was stayed beginning in late 2014.

The initial civil actions against Defendants alleging securities fraud were filed in late 2010. The actions were consolidated and, in May 2011, Plaintiffs filed their First Consolidated Securities Class Action Complaint. (D.I. 39.) Plaintiffs then spent more than two years amending their pleading multiple times. They did not file their current Fourth Amended Consolidated Securities Class Action Complaint until June 2013. (D.I. 149.)

The parties propounded their initial requests for the production of documents in mid-2014. (E.g., D.I. 192-195, 223, 241.) This early discovery included multiple sets of voluminous document requests propounded by Plaintiffs on Defendants, which collectively sought more than 100 broad categories of documents.[3] In response to these and later requests, WT Corp. alone has produced nearly 1.3 million documents (over ten million pages), and has spent a massive amount of time and money to do so.[4]

Discovery -- and the litigation, generally -- came to a halt in early October 2014. That is when the government made its initial intervention in this case and moved for a stay. (D.I. 297-298.) Discovery was effectively frozen for two years at the government's request until December 2016. During those two years, the only litigation activities related to class certification,

[3] Copies of Plaintiffs' initial requests for the production of documents to Defendants (other than KPMG), served in 2014, are attached as **Exhibit 1**. All exhibits are attached to the Declaration of Matthew R. Alsip. The 2014 requests served on KPMG are addressed below.

[4] In contrast, Plaintiffs have produced just over 13,000 documents in response to Defendants' requests. (D.I. 577 at 11.) In other words, Plaintiffs have produced about 1% of the number of documents that WT Corp. has produced.

Defendants' (primarily, WT Corp.'s) supplemental document productions in response to Plaintiffs' 2014 requests, and motion practice about the stay itself.[5]

The 2014 proceedings were governed by an initial case schedule ordered by the Court on May 19, 2014. That schedule, which the Court ordered prior to the government's intervention, established a deadline for a party to serve another party with a request for the production of documents: "[t]he parties shall substantially complete document production on or before October 17, 2014, and shall serve all requests for the production of documents so as to complete document production by that date." (D.I. 197 at 2.) The May 2014 schedule did not contain a separate deadline for serving third-party document subpoenas, but it did provide a December 19, 2014 deadline for the completion of all fact discovery. (Id.)

When it entered this order, the Court anticipated that the government might interfere with the discovery process. It therefore provided that, "the foregoing deadlines are conditioned on the Governmental Entities not interfering with discovery." (D.I. 197 at 4.) "In the event any Governmental Entity seeks to stay, limit, or review any discovery sought or provided by any party, the parties agree to meet and confer regarding the reasonable modifications of these deadlines." (Id.) Thus, once the government intervened in early October 2014, the case deadlines established in the May 2014 scheduling order no longer had any effect in this case.

## II. The Court lifted the stay in December 2016 and entered a new scheduling order.

On December 19, 2016, the Court lifted the stay upon motions made by Plaintiffs and the government. (D.I. 488.) The Court ordered the parties to meet and confer about a "revised schedule" for the case. (Id.) After the parties were unable to reach agreement on a new and revised

[5] The government did not seek to stay class certification proceedings, nor did the government seek to interrupt Defendants' supplemental productions in response to Plaintiffs' 2014 document requests.

case schedule, the Court held a hearing on January 19 to consider the parties' competing positions. On January 24, the Court entered a new scheduling order that provided, inter alia, that "[a]ll fact discovery shall be completed on or before June 1, 2017." (D.I. 509 at 3.) The Court's new scheduling order did not reference or incorporate any terms of the May 2014 scheduling order, or impose any deadlines other than June 1 for the completion of document discovery. (Id.)

The parties have engaged in extensive fact discovery since the Court entered the new scheduling order, including both Plaintiffs and Defendants making new requests for documents. Plaintiffs have made new requests that Defendants produce all documents produced by the government (and all other parties and persons) in the parallel criminal case, as well a new request for two years of loan policy documents that they had not previously requested.

WT Corp. served the Subpoenas at issue in the Motion in early March and requested document production by April 6, well in advance of the June 1 fact discovery deadline.[6] (D.I. 533 – 535.) None of the investment advisors served an objection in accordance with Fed. R. Civ. P. 45(d)(2)(B), which requires service of an objection within 14 days of service of the subpoena, and none of them filed a motion to quash under Fed. R. Civ. P. 45(d)(3). Rather, each advisor responded by indicating a willingness to produce responsive documents:

- Buckhead Capital Management was served on March 7. (D.I. 544.) It served a Response on April 3.[7] In its Response, Buckhead cited Plaintiffs' Motion as a basis for objection (p. 1), but stated that if the Motion is denied, it would produce any non-privileged documents responsive to numerous requests made by WT Corp. (pp. 2 – 5).

---

6 WT Corp. also served deposition subpoenas on the investment advisors, which requested depositions in May. (D.I. 533 – 535.)

7 A copy of Buckhead's Response is attached as **Exhibit 2**.

- DePrince, Race & Zollo was also served on March 7. (D.I. 545.) It served an Objection on April 5.[8] Notwithstanding the Objection, in a letter from its counsel, DePrince indicated a willingness to discuss a compromise and produce responsive documents.[9]

- WHV was served on March 8. (D.I. 546.) It served a letter response on March 27.[10] Although WHV generally objected to the subpoena, counsel indicated a willingness to produce documents (p. 1): "I invite you to give me a call to informally discuss what you need, and whether the material can be located and produced."[11]

On March 27, before any of the investment advisors had responded to the Subpoenas, Plaintiffs filed their Motion to quash the Subpoenas (D.I. 573 & 577), primarily arguing that the Subpoenas should have been served in advance of the October 17, 2014 document production deadline set forth in the Court's May 2014 scheduling order.

## Argument

### I. Plaintiffs lack standing to move to quash the Subpoenas served on the investment advisors.

Plaintiffs lack standing to move to quash the Subpoenas served on Buckhead, DePrince, and WHV. It is settled in this district that a party to civil litigation lacks standing to move to quash a subpoena served on a third-party witness. In Oliver B. Cannon & Son, Inc. v. Fidelity & Cas. Co. of New York, 519 F. Supp. 668, 680 (D. Del. 1981), this Court held, "[a]s a general matter, a

---

8 A copy of DePrince's Objection is attached as **Exhibit 3**.

9 A copy of the April 3 letter from counsel is attached as **Exhibit 4**.

10 A copy of the March 27 letter from counsel is attached as **Exhibit 5**.

11 WT Corp. disagrees with the various objections made by the investment advisors and reserves the right to move to compel a full production in response to the Subpoenas. Further, as none of the advisors complied with the 14-day service requirement for an objection under Fed. R. Civ. P. 45(d)(2)(B), they were required to produce all responsive, non-privileged documents on April 6. They failed to do so, and WT Corp. reserves all rights and remedies in that regard.

party has no standing to seek to quash a subpoena directed to one who is not a party." The Court repeated this principle in Norguard Ins. Co. v. Serveon Inc., 2011 WL 344076, at *2 (D. Del. Jan. 28, 2011) ("Generally, only the entity subject to the subpoena has standing to challenge it.") (citing Cannon).

The only exception to this rule recognized in Cannon and Norguard relates to a claim of "personal right or privilege relating to the documents sought," such as documents protected by the attorney-client privilege. See Cannon at 680; Norguard at *2. That exception is inapplicable here. In their Motion, Plaintiffs do not claim any "personal right or privilege" with respect to the documents sought in the Subpoenas.

Plaintiffs fail to mention either Cannon or Norguard in their Motion. Instead, in a footnote, they claim that they have standing because the Subpoenas are allegedly untimely under the May 2014 scheduling order. (D.I. 577 at 9 fn. 2.) Plaintiffs are incorrect. As demonstrated below (§ II), the Subpoenas are not untimely, and, therefore, Plaintiffs have no standing to move to quash the Subpoenas even under their own theory.

Furthermore, even assuming, arguendo, that the Subpoenas are untimely, Plaintiffs still would not have standing to pursue their Motion. The law as set forth in Cannon and Norguard is clear.[12] A civil litigant lacks standing to move to quash a third-party subpoena absent a claim of

---

12 Plaintiffs' citation of Thomas v. Marina Assoc., 202 F.R.D. 433 (E.D. Pa. 2001) and Integra Lifesciences I, Ltd. v. Merck KGaA, 190 F.R.D. 556 (S.D. Cal. 1999) (D.I. 577 at 9 fn. 2), does not suggest a different result. In dicta contained in footnotes, the courts in Thomas, 202 F.R.D. at 434-35, fn. 2, and Integra, 190 F.R.D. at 562, fn. 3, drew a technical distinction between standing to move to quash under Fed. R. Civ. P. 45 and standing to move for a protective order under Fed. R. Civ. P. 26. Whatever the merits of this distinction (a distinction not recognized in either Cannon or Norguard), the reality here is that Plaintiffs have moved for a protective order quashing the Subpoenas, and they have done so "[p]ursuant to Rule 45 of the Federal Rules of Civil Procedure." (D.I. 577 at 5.)

"personal right or privilege relating to the documents sought," which is not present here. The Court should deny the Motion on this basis alone.

**II. The Subpoenas are timely.**

Plaintiffs' principal argument is that the Subpoenas are untimely under the Court's May 2014 scheduling order. Based on that order (D.I. 197 at 2), Plaintiffs argue that all third-party document subpoenas (and requests for the production of documents served on parties) needed to be served in time to complete document production by October 17, 2014. (D.I. 577 at 5, 8 – 10.) Plaintiffs' argument fails for at least four reasons.

First, the October 17, 2014 deadline contained in the May 2014 scheduling order never had any application to third-party document subpoenas, like those at issue in the Motion. By the express terms of the May 2014 order, that deadline applied only to requests for the production of documents served on parties to the case: the "parties shall substantially complete document production on or before October 17, 2014, and shall serve requests for the production of documents so as to complete document production by that date." (D.I. 197 at 2; emphasis added.) "Requests for the production of documents" is a term of art that means requesting documents from other parties in a case. See Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request . . ..") (emphasis added).

Second, the case deadlines set forth in the May 2014 order became inoperative at the moment the government intervened in this civil case and moved for a stay on October 10, 2014. (D.I. 297-298.) The Court's May 2014 order says so:

> **Government Intervention.** All of the foregoing deadlines are conditioned on the Governmental Entities not interfering with discovery. In the event any Governmental Entity seeks to stay, limit, or review any discovery sought or provided by any party, the parties agree to meet and confer regarding the reasonable modifications of these deadlines.

(D.I. 197 at 4; emphasis added.) Thus, once the government intervened, all deadlines in the May 2014 order were null and void and subject to re-negotiation by the parties. No new deadlines were set again until the Court entered the January 24 case schedule, which established June 1, 2017 as the deadline for "[a]ll fact discovery." (D.I. 509 at 3.)

Third, even if the deadlines in the May 2014 order had not been voided by the government's intervention, those deadlines were superseded earlier this year by the Court's January 24 scheduling order. By relying on the three-year-old case schedule from 2014, Plaintiffs simply ignore the Court's January 24 scheduling order. In the 2017 order, the Court expressly provided a June 1, 2017 deadline for "[a]ll fact discovery." (D.I. 509 at 3.) The Court did not exclude or carve out document discovery, or set a separate deadline for document production or third-party subpoenas, or make any reference to the May 2014 order. It simply ordered that "[a]ll fact discovery" be completed by June 1, 2017. As Plaintiffs concede, a subpoena served on a third party is one type of "fact discovery." (D.I. 577 at 6, 9.)

The Court's entry of a new June 1 deadline for all fact discovery was no accident. Plaintiffs and Defendants submitted briefing and proposed case schedules that expressly asked for a new deadline for "all fact discovery." (D.I. 497 & 498.) Neither Plaintiffs nor Defendants sought to make an exception for document discovery or third-party subpoenas. (D.I. 497 & 498.) Nor did Plaintiffs argue in their briefing that document discovery had closed in October 2014 and should not be re-opened with the lifting of the stay that they requested. (D.I. 498.) Instead, Plaintiffs and Defendants urged the Court to enter a new deadline for "all fact discovery." The Court did exactly that in its January 24 order. (D.I. 509 at 3.) Thus, the current deadline for all fact discovery in

this case is June 1, 2017. Defendants served the Subpoenas in early March, well in advance of that deadline.[13] (D.I. 544 – 546.)

Fourth, Plaintiffs' own conduct in this litigation has been inconsistent with their current position that third-party document subpoenas (and requests for the production of documents served on parties) cannot be served after October 2014. Plaintiffs have themselves made multiple new requests for documents since October 2014, including since the Court lifted the stay in December 2016. This has occurred on at least three occasions:

- On December 19, 2016, just hours after the Court lifted the stay, Plaintiffs made a sweeping request to WT Corp.'s counsel in the parallel criminal case to produce all documents produced by the government or any other party or non-party in the criminal case.[14] Plaintiffs' broad request for all documents produced in the criminal case was not included in Plaintiffs' pre-October 2014 requests for the production of documents served on Defendants. (See **Ex. 1**.) As a result of this December 2016 request, WT Corp. produced over 560,000 documents to Plaintiffs.

- On March 2, 2017, Plaintiffs served an interrogatory on WT Corp. that requested the production of additional documents.[15] Specifically, Plaintiffs demanded the immediate production of numerous types of loan policy documents for the time period of January 1, 2005 through December 31, 2010. This represented a new request for an additional two years of loan

[13] Had the government not intervened, and had the Court not entered the superseding case scheduling on January 24, the deadline for third-party subpoenas under the May 2014 order would have been December 19, 2014, which is when all fact discovery was scheduled to close. (D.I. 197 at 2.)

[14] A copy of counsel's email request is attached as **Exhibit 6**. Plaintiffs' only prior request for documents produced in the criminal case were those that had been produced by WT Corp., not the government and other parties or witnesses.

[15] A copy of Plaintiffs' first set of interrogatories to WT Corp. is attached as **Exhibit 7**.

policy documents. Plaintiffs had previously only requested documents for the time period of January 1, 2007 through May 16, 2011.[16] (**Ex. 1**.)

- On November 26, 2014, more than a month after the supposed October 17, 2014 document production deadline, Plaintiffs served a request for the production of documents on Defendant KPMG -- and collected additional documents as a result of that request.[17] (D.I. 354; see also D.I. 577 at 10 fn. 3.)

In addition to Plaintiffs themselves making repeated new requests for documents after October 2014 (and receiving hundreds of thousands of documents in response), Plaintiffs did not object when, on November 4, 2014, Defendant J.P. Morgan Securities LLC served a document subpoena on Buckhead Capital Management. (D.I. 340-1.)[18] (In their Motion, Plaintiffs state that

---

16 WT Corp. has objected to the interrogatory, as well as the accompanying document request, on grounds unrelated to the supposed October 2014 document production deadline.

17 Plaintiffs argue in their Motion that their November 2014 requests to KPMG "were clearly subsumed within [their] previous requests." (D.I. 577 at 10 fn. 3.) This argument is incorrect and also irrelevant. The document requests served on KPMG in November 2014 sought, generally, all documents related to the "practices and procedures to be followed by KPMG" in planning and performing audits and reviews of WT Corp. during the relevant time period. That request simply was not made before the alleged October 2014 deadline. (Copies of Plaintiffs' requests for the production of documents to KPMG are attached as **Exhibits 8** (November 2014) and **9** (pre-October 2014). Had Plaintiffs actually believed that their November 2014 requests were "clearly subsumed within [their] previous requests," they would have moved to compel and not served another request for documents after the October 17, 2014 document production deadline they now rely on to attempt to thwart Defendants' discovery efforts.

Further, even assuming, arguendo, that Plaintiffs' request for the production of documents served on KPMG in November 2014 was "subsumed" within Plaintiffs' prior requests, the fact remains that Plaintiffs made a document request after the October 17, 2014 deadline, and they received new documents from KPMG in response to that request. (D.I. at 577 at 6 fn. 3.)

18 The document subpoena served on Buckhead Capital Management in November 2014 by J.P. Morgan Securities did not seek the same documents sought now by WT Corp. in the Subpoenas. (Compare D.I. 533 with D.I. 340-1.)

this subpoena was served "in 2014," but they fail to tell the Court that it was in November 2014, after the October 17, 2014 deadline on which they now rely. (D.I. 577 at 12.).)[19]

In sum, Plaintiffs ignore the alleged October 2014 deadline when it suits their needs, and they seek to enforce it when it suits their needs.

**III. There is no other basis to quash the Subpoenas.**

Plaintiffs make general assertions that that the Subpoenas are "overly burdensome and largely irrelevant." (D.I. 577 at 11.) These conclusory assertions are without merit.

Plaintiffs' general burden objection is made without any specific demonstration of why it would be unduly burdensome to Plaintiffs if the investment advisors comply with the Subpoenas and produce documents. See Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) (the "burden of persuasion is on the party seeking the protective order" and the movant "must show good cause by demonstrating a particular need for protection"); Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (establishing "good cause" requires the movant to "specifically demonstrate . . . a clearly defined and serious injury," because "[b]road allegations of harm, unsubstantiated by specific examples . . . will not suffice").[20]

---

19 Plaintiffs also did not object when, on March 13, 2017, WT Corp. served its First Request for Production of Documents to KPMG (D.I. 542), or when WT Corp. served document subpoenas on several federal and state banking regulators and other witnesses. (E.g., D.I. 547, 585 – 587, 599.)

20 See also E.E.O.C. v. Citicorp Diners Club, Inc., 985 F.2d 1036, 1040 (10th Cir. 1993) ("A court will not excuse compliance with a subpoena for relevant information simply upon the cry of unduly burdensome."); Rivera v. Exeter Fin. Corp., 2016 WL 374523, at *2 (D. Colo. Feb. 1, 2016) ("unless the challenged discovery is unduly burdensome on its face, a party seeking a protective order based upon undue burden or expense must submit affidavits or otherwise explain in detail the nature and extent of the claimed burden or expense"); 6-26 Moore's Federal Practice, §26.102 ("The party seeking a protective order must make a particular request and articulate facts in support of the request. The facts must show that a clearly defined and serious injury will result from the discovery sought. Conclusory or speculative statements about the need for a protective order and the harm that would be suffered without one are insufficient. The demonstration of facts should be made by affidavits from knowledgeable persons.").

Plaintiffs only say that they would be burdened by the "need to review new documents produced by the Investment Managers while in the midst of an intensive deposition and written discovery schedule." (D.I. 577 at 10.) This conclusory assertion fails for at least four reasons.

First, Plaintiffs urged the Court to enter the "intensive deposition and written discovery schedule" about which they now complain. Indeed, because of their "commitment to vigorously and expeditiously prosecute this Action" they asked the Court to impose an April 21, 2017 deadline for "all fact discovery," rather than June 1. (D.I. 498 at 3.) Plaintiffs cannot complain about any burdens caused by a compressed fact discovery schedule that they themselves urged the Court to enter.

Second, Plaintiffs' concerns about the burdens associated with reviewing documents are entirely speculative. The investment advisors have given no indication about the number of documents they may produce in the future. Even if that number is substantial, it would not provide a basis for Plaintiffs to move to quash the Subpoenas. See Norguard, 2011 WL 344076, at *3 ("[m]erely complaining that pre-trial discovery takes time and costs money cannot provide a sufficient basis to confer standing to quash a subpoena of a non-party").

Third, as described above, the supposed burdens of reviewing additional documents did not stop Plaintiffs from making new requests on Defendants after the Court lifted the stay in December 2016. For example, they requested (and received) over 560,000 documents that had been produced by the government and other parties in the parallel criminal case. Thus, while Plaintiffs apparently have ample time to review documents they want from Defendants, they have no time to review documents that Defendants need in order to prepare their defenses.

Fourth, this case is not at a "late stage." Trial is not scheduled to begin until June 18, 2018. (D.I. 509 at 3.) Fact discovery is still open for nearly two more months, and expert discovery has yet to begin. The Subpoenas are not last-minute requests for documents on the eve of trial. They were served well in advance of the June 1, 2017 deadline for all fact discovery.

In addition to claiming a burden, Plaintiffs argue that the Subpoenas are "largely irrelevant" because, according to Plaintiffs, they seek documents that "principally concern issues relevant to the prerequisites of class certification."[21] (D.I. 577 at 5, 11.) This is simply not so. The Subpoenas (D.I. 533 – 535) seek documents that relate to the merits of this case. For example:

- Request nos. 1 – 5 seek communications between the investments advisors and Plaintiffs or governmental entities, or documents sent between them, related to WT Corp. or this lawsuit. These requests have nothing to do with class certification. They seek merits-based documents that may contain, for example, admissions or representations made by or to Plaintiffs about the nature or strength of their alleged claims.

- Request nos. 8 – 9 and 23 – 27 seek communications and other documents generally associated with Plaintiffs' or their investment advisors' analyses, investigation, due diligence, and decision-making associated with purchasing, selling, or holding WT Corp. stock during the relevant time period. These types of documents are relevant to the merits, including issues of loss causation or reliance in this securities fraud class action. "In order to satisfy the loss causation requirement . . . the plaintiff must show that the defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiff's economic loss." McCabe v. Ernst & Young, LLP., 494 F.3d 418, 426 (3d Cir. 2007). See also Barry D. Roseman Profit Sharing Plan v. Sports

---

[21] Plaintiffs do not identify which specific requests contained within the Subpoenas they believe relate to class certification.

& Recreation, Inc., 165 F.R.D. 108, 113 (M.D. Fla. 1996) (in a securities fraud class action, denying the plaintiffs' motion for a protective order with respect to subpoenas issued on the defendants' stockbrokers, brokerage houses, and investments advisors, because "information about the plaintiffs' securities trading" is relevant to class certification and the merits of the case, including issues of reliance and rebutting the fraud-on-the-market theory); In re Harcourt Brace Jovanovich, Inc. Sec. Litig., 838 F. Supp. 109, 113-14 (S.D.N.Y. 1993) (in a securities fraud class action, permitting discovery into the named plaintiffs' investment history because, inter alia, such evidence could rebut the presumption of reliance under the fraud on the market theory).

- Request nos. 12 – 15 seek documents related to the investments advisors' purchases and sales of WT Corp. stock on behalf of each Plaintiff during the relevant time period. This is a securities fraud class action. Plaintiffs' purchases and sales of WT Corp. stock, made through their investment advisors, go to the heart of what this case is about.

Plainly, the Subpoenas do not "principally concern issues relevant to the prerequisites of class certification."

## IV. Denying the Motion will not prejudice Plaintiffs, but granting the Motion will certainly prejudice Defendants.

Plaintiffs have not shown how they would be prejudiced in the slightest if the investment advisors are required to produce responsive documents. Their unsubstantiated claims of undue burden do not show prejudice.

On the other hand, WT Corp. will be prejudiced if the Court grants the Motion and quashes the Subpoenas. All three of the investment advisors have indicated, in one way or another, that they possess discoverable documents, and all three have indicated a willingness to produce documents to WT Corp. Granting Plaintiffs' Motion and prohibiting WT Corp. from obtaining discoverable documents from the investment advisors will substantially prejudice its defenses in

this securities fraud class action. WT Corp. would be denied potentially valuable documentary evidence.

## Conclusion

For all of the foregoing reasons, WT Corp. respectfully request that the Court deny Plaintiffs' Motion and confirm that the June 1, 2017 deadline for the completion of "all fact discovery" applies to third-party document subpoenas (and requests for the production of documents).

April 7, 2017

Respectfully submitted,

**VENABLE LLP**

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (Bar No. 4247)
Daniel A. O'Brien (Bar No. 4897)
1201 N. Market Street
Suite 1400
Wilmington, Delaware 19801
302-298-3535 (telephone)
302-298-3550 (facsimile)
jedmonson@venable.com

James A. Dunbar (*admitted pro hac vice*)
Daniel P. Moylan (*admitted pro hac vice*)
Matthew R. Alsip (*admitted pro hac vice*)
Jessica B. Wack (*admitted pro hac vice*)
Venable LLP
210 West Pennsylvania Avenue – Suite 500
Towson, Maryland 21204
410-494-6200 (telephone)
410-821-0147 (facsimile)
jadunbar@venable.com
dpmoylan@venable.com
mralsip@venable.com
jbwack@venable.com

**WILLIAMS & CONNOLLY LLP**

Tobin J. Romero (*admitted pro hac vice*)
Barry Simon (*admitted pro hac vice*)
Margaret A. Keeley (*admitted pro hac vice*)
Lance A. Wade (*admitted pro hac vice*)
725 Twelfth Street, N.W.

Washington, D.C. 20005
202-434-5000 (telephone)
tromero@wc.com
bsimon@wc.com
mkeeley@wc.com
lwade@wc.com

***Attorneys for Wilmington Trust Corporation***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of April, 2017, I served a copy of the foregoing opposition memorandum using the Court's CM/ECF system.

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (Bar No. 4247)

15208854/3