**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **IN RE WILMINGTON TRUST SECURITIES LITIGATION** | Master File No. 10-cv-00990-ER |
| | (Securities Class Action) |
| This document relates to: ALL ACTIONS | Hon. Eduardo Robreno |
| | ELECTRONICALLY FILED |

# LEAD PLAINTIFFS' BRIEF IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO AMEND THE SCHEDULING ORDER


**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Blair Nicholas (*pro hac vice*)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323

-and-

Salvatore Graziano (*pro hac vice*)
Hannah Ross (*pro hac vice*)
Katherine M. Sinderson (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Lead Plaintiffs and Co-Lead Counsel for the Class*

**CHIMICLES & TIKELLIS LLP**

Pamela S. Tikellis (Bar No. 2172)
A. Zachary Naylor (Bar No. 4439)
Vera G. Belger (Bar No. 5676)
222 Delaware Avenue, 11th Floor
P.O. Box 1035
Wilmington, DE 19899
Phone: (302) 656-2500
Fax: (302) 656-9053

*Liaison Counsel for the Class*

**SAXENA WHITE P.A.**

Maya S. Saxena (*pro hac vice*)
Joseph E. White, III (*pro hac vice*)
Brandon T. Grzandziel (*pro hac vice*)
150 E. Palmetto Park Road, Suite 600
Boca Raton, FL 33432
Phone: (561) 394-3399
Fax: (561) 394-3382

-and-

Steven B. Singer (*pro hac vice*)
4 West Red Oak Lane, Suite 312
White Plains, NY 10604
T: (914) 437-8551
F: (888) 631-3611
*Counsel for Lead Plaintiffs and Co-Lead Counsel for the Class*

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. RELEVANT BACKGROUND ........ 3

A. After Two Years, the Court Lifted the Government-Initiated Stay in its Entirety ........ 3

B. Defendants Repeatedly Try to Circumvent the Lift Stay Order and Stay the Completion of Discovery Until After the Criminal Trial ........ 5

C. Defendants Fail to Pursue Deposition Discovery in This Action ........ 6

D. The Criminal Defendants Seek to Exploit the Postponed Criminal Trial to Circumvent the Lift Stay Order ........ 7

III. THE COURT SHOULD DENY DEFENDANTS' MOTION ........ 8

A. The Current Schedule Should Not Be Amended ........ 8

1. Four Indicted Bank Officials Who Face Years – If Not Decades – in Federal Prison Will Not Realistically File Affirmative Summary Judgment Motions ........ 8

2. The Individual Defendants' Arguments are Meritless ........ 10

a. Waiting for Verdicts in the Criminal Trial Does Not Support Postponement. ........ 10

b. Wished-For Testimony in the Criminal Trial Does Not Support Postponement ........ 11

c. Defendants' Objection to Magistrate Fallon's September 19, 2017 Order Does Not Support Postponement. ........ 14

d. Expert Discovery and Summary Judgment Do Not Require Bifurcation ........ 15

B. Plaintiffs Will Be Prejudiced by the Criminal Defendants' Proposed Schedule ........ 15

C. Plaintiffs Request that the Court Resolve the Motion Expeditiously and Set a Trial Date ........ 17

IV. CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Home Assurance Co. v. Sunshine Supermarket, Inc.*,
753 F.2d 321 (3d Cir. 1985)....................10

*Burdyn v. Old Forge Borough*,
2017 WL 394335 (M.D. Pa. Jan. 26, 2017)....................10

*Chek-Med Sys., Inc. v. PMT Corp.*,
2011 WL 13177569 (M.D. Pa. Apr. 14, 2011)....................14, 15

*Doe v. Abington Friends Sch.*,
480 F.3d 252 (3d Cir. 2006)....................14

*In re Herley Indus. Inc. Sec. Litig.*,
2007 WL 1120246 (E.D. Pa. Apr. 11, 2007)....................16

*SEC v. Graystone Nash, Inc.*,
1993 WL 580763 (D.N.J. July 23, 1993)....................13

*United States v. Premises Known as 1625 S. Delaware Ave., Philadelphia, Pa.*,
1989 WL 29271 (E.D. Pa. Mar. 29, 1989)....................13

*United States v. Wilmington Trust Corp. et al.*,
15-cr-00023-RGA (D. Del.).................... *passim*

## I. INTRODUCTION

The Criminal Defendants' Motion to Amend Scheduling Order (D.I. 797) is nothing more than their latest attempt to stay this litigation and avoid answering for their massive fraud. They do so despite the Court's repeated, clear directives that the Action proceed without delay. The Motion should be denied.

More than seven years after this case was filed, including a more-than two year stay that was lifted in its entirety nearly one year ago, Lead Plaintiffs have completed fact discovery and are on the cusp of filing expert reports and summary judgment papers that will bring Wilmington Trust Corporation's ("Wilmington Trust" or the "Bank") damaged shareholders within reach of long-delayed justice. Defendants' latest attempt to once again freeze this litigation – based solely on a delay in the pending criminal case against four of the Individual Defendants awaiting criminal trial (the "Criminal Defendants") – is unwarranted, unnecessary, and would unduly prejudice Lead Plaintiffs and the Class.

Specifically, the Criminal Defendants now claim that because the criminal trial in *United States v. Wilmington Trust Corp. et al.*, 15-cr-00023-RGA (D. Del.) (the "Criminal Action") was postponed from October 2017 to March 2018, they do not have the time and resources to follow the current schedule (D.I. 645), which provides for the disclosure of experts on December 1, 2017, exchange of expert reports on January 19, 2018, and for opening summary judgment briefs to be filed on January 31, 2018. Instead, they ask the Court to postpone the expert discovery and summary judgment deadlines so briefing on summary judgment will not conclude <u>until nearly a year from now</u>, on October 31, 2018. The Criminal Defendants' arguments are meritless.

First, the Criminal Defendants ask the Court to reject common sense and accept that four senior bank executives, who have all been indicted for securities fraud, face lengthy prison terms, and have all asserted the Fifth Amendment in response to every deposition question,

interrogatory, and request for admission propounded upon them, could possibly have viable summary judgment motions to file. This premise is absurd.

Second, even if the Criminal Defendants did have a viable summary judgment motion to make or expert reports to prepare, they will have had five months, from the end of fact discovery in August 2017, to do so. Yet, they have waited until just days prior to the December 1, 2017 deadline to disclose the subject of expert reports – and over a month from the date that Judge Andrews postponed the criminal trial – to file their Motion. The Criminal Defendants' deliberate delay should not be rewarded.

Third, it is specious to think that the Criminal Defendants would be performing any substantive work with respect to expert discovery and summary judgment here. Indeed, Defendant Gibson's counsel has conceded that, for all of the extensive discovery that has occurred in this Action to date, Wilmington Trust "<u>was taking the lead on everything</u>." D.I. 797-1 at 40. There is no reason to believe that the Criminal Defendants, who for years have abdicated their defense to Wilmington Trust, will suddenly take the lead during expert discovery and summary judgment. Moreover, Wilmington Trust is no longer a defendant in the Criminal Action, having recently paid $60 million to evade liability. Nor are Ted Cecala, KPMG, the Bank's Board of Directors, or the Underwriters parties to the Criminal Action. There is no reason these Defendants cannot abide by the schedule that is currently in place, nor have they offered any.

The Court already rejected the Criminal Defendants' arguments when it lifted the stay "in its entirety" in January 2017, and the Court should reject their arguments now. The Court should deny the Criminal Defendants' Motion. Expert discovery and summary judgment should proceed as currently scheduled.

## II. RELEVANT BACKGROUND

### A. After Two Years, the Court Lifted the Government-Initiated Stay in its Entirety

This securities fraud class action commenced seven years ago, in November 2010, after Wilmington Trust was forced to sell itself to M&T Bank due to $800 million in unreported losses in Wilmington Trust's loan portfolio. These debilitating losses were directly caused by the Bank's imprudent loan underwriting and asset review functions, illicit lending practices, and deliberate understatement of its past due loans and allowance for loan and lease losses. Wilmington Trust's investors suffered massive harm when the truth about these matters was revealed, and the Bank's illicit activity also gave rise to multiple criminal investigations. Two Wilmington Trust executives, Brian Bailey and Joseph Terranova, have already pled guilty to criminal conduct. Wilmington Trust itself – one of the only banks to have been indicted in the wake of the financial crisis – recently paid the Government $60 million to buy its way out of criminal liability. And, four of the Bank's most senior executives (who are all Defendants in this Action) – CFO David Gibson, President Robert Harra, Chief Credit Officer William North, and Controller Kevyn Rakowski –now await their own criminal trial.

In March 2014, Judge Robinson issued an Order denying Defendants' motions to dismiss the Fourth Amended Consolidated Securities Class Action Complaint (the "FAC"), sustaining Lead Plaintiffs' claims against Wilmington Trust, Gibson, Harra, North, Rakowski, and others. D.I. 184. Lead Plaintiffs immediately launched into discovery of Defendants and third parties, operating at the time under a fact discovery cutoff of December 19, 2014 and jury trial that was scheduled for October 26, 2015. *See* D.I. 197, 240.

After Judge Robinson sustained the Complaint and the parties initiated document discovery in 2014, this Action was stayed for over two years at the request of the Department of

Justice (the "Government"). Specifically, in October 2014, the Government moved to intervene and to stay this Action pending the ongoing criminal investigation of Wilmington Trust and its executives. D.I. 297. On July 2, 2015, the Court again stayed this Action "until further order of the court." D.I. 397. While the Action was stayed, the Government filed indictments against Gibson, Harra, North, and Rakowski for, among other actions, making false statements to investors (through the Bank's filings with the Securities and Exchange Commission ("SEC")) and to the Federal Reserve regarding the Bank's reporting of past due loans. Judge Andrews originally scheduled the Criminal Defendants' trial (the "Criminal Trial") for September 26, 2016. Criminal Action, D.I. 78. After the Government indicted Wilmington Trust, Judge Andrews rescheduled the Criminal Trial to commence January 23, 2017. Criminal Action, D.I. 153. In light of the Criminal Trial date, on April 13, 2016, the Court ordered that the stay would continue pending the completion of the Criminal Trial. D.I. 454.

On August 11, 2016, Wilmington Trust, joined by the Criminal Defendants, asked Judge Andrews to provide to them a second continuance of the Criminal Trial, citing their need for sufficient time to "analyz[e] and synthesiz[e] millions of pages of complex materials for trial." Criminal Action, D.I. 267 at 2. At their request and over the Government's objection, Judge Andrews postponed the Criminal Trial until October 10, 2017 – over a year after the original Criminal Trial date. Criminal Action, D.I. 288.

In response to this latest continuance, Lead Plaintiffs moved to lift the stay in this Action in its entirety to avoid delaying justice for the Class by an additional year. On December 19, 2016, after two years of stayed discovery, Judge Robinson granted Lead Plaintiffs' motion and lifted the stay "in its entirety." D.I. 488 (the "Lift Stay Order"). Judge Robinson later recognized, in connection with the Lift Stay Order and subsequent schedule, that "plaintiffs have

an interest in protecting the rights of the class, and resolution of the Civil Action has been delayed at least in part because of the stay." D.I. 509. Judge Robinson further noted that the "[C]ourt's interest is directed to resolving disputes promptly, efficiently, and fairly" and that "the public's interest is promoted by bringing to resolution this complex civil litigation[.]" *Id.*

### B. Defendants Repeatedly Try to Circumvent the Lift Stay Order and Stay the Completion of Discovery Until After the Criminal Trial

Defendants have repeatedly tried to circumvent and subvert the Lift Stay Order. First, in response to the Order, Defendants proposed a pretrial schedule that postponed the conclusion of fact discovery until early 2018, following the Criminal Trial, and delayed the conclusion of expert discovery and summary judgment motions until June 2018. D.I. 497, 501. This tactic effectively continued the stay that had just been lifted. On January 24, 2017, the Court rejected Defendants' attempt to enact an effective stay and ordered the parties to complete fact discovery by June 1, 2017 and expert discovery by September 1, 2017, in advance of the Criminal Trial. D.I. 509 (the "Scheduling Order"). Summary judgment motions were scheduled after the Criminal Trial to allow Wilmington Trust and the Criminal Defendants time to focus on the trial. Trial in this Action was set for June 18, 2018. *Id.*

Second, on February 7, 2017, the Criminal Defendants challenged the Scheduling Order and filed a meritless Motion to Certify an Interlocutory Appeal, an equally meritless Notice of Appeal to the Third Circuit, and yet another Motion to Stay pending resolution of the appeal. D.I. 513, 514, 515. The Motion and Notice rested on the uniformly discredited theory that fact discovery must extend past the Criminal Trial (with expert discovery and summary judgment motions to follow) because the Criminal Defendants should not be forced to assert the Fifth Amendment in response to discovery in this Action. Judge Robreno denied the Motion to

Certify in its entirety, and the Notice of Appeal was dismissed for lack of jurisdiction. D.I. 692, 706.

Third, following the dismissal of their motions by both this Court and the Third Circuit, the Criminal Defendants petitioned for rehearing *en banc* on June 28, 2017, and moved for reconsideration of Judge Robreno's Order denying their Motion to certify an interlocutory appeal on July 5, 2017. D.I. 711. All the while, the Criminal Defendants refused to schedule their depositions, which had been originally noticed in October 2014. As Lead Plaintiffs noted at the time, the Criminal Defendants' tactics were nothing more than a transparent ploy to run out the clock on the fact discovery schedule. D.I. 716 at 1. Both this Court and the Third Circuit recognized the Criminal Defendants' tactics for what they were, and denied both the Petition for *en banc* review and Motion for Reconsideration in short order. D.I. 719, 750. The Criminal Defendants informed the Court they would timely file a Petition for Writ of Certiorari with the Supreme Court of the United States (D.I. 722-1 at 2), but never did so. In late August 2017, after eight months of stonewalling and obfuscation, Plaintiffs were finally able to take the depositions of the Criminal Defendants. D.I. 761, 764, 765.

### C. Defendants Fail to Pursue Deposition Discovery in This Action

While the Criminal Defendants were not deposed until August 2017, Lead Plaintiffs began deposing fact witnesses in March 2017 to meet the then-operable June 2017 fact discovery deadline. In April, the Bank approached Lead Plaintiffs to request an extension to the fact discovery deadline. Lead Plaintiffs agreed to an extension, but only on the condition that Defendants could not use the extension as support for any pending motions in this Action, or in support of any further postponement of the Criminal Trial. D.I. 645, ¶6. Had Lead Plaintiffs not agreed to this modified schedule at Defendants' request, the parties would have completed expert discovery by September 2017.

During the six months of open deposition discovery, Lead Plaintiffs developed a robust factual record, while the Criminal Defendants took no active role in discovery, and Wilmington Trust took a very limited role. In all, Lead Plaintiffs deposed 29 witnesses, supported by over 1,000 exhibits. With few exceptions, the Criminal Defendants asked no substantive questions, instead abdicating that responsibility to Wilmington Trust. In turn, Wilmington Trust itself asked very few substantive questions – as little as ten questions in some depositions – of Lead Plaintiffs' witnesses. Notably, and despite their repeated claims that they planned to depose 30 witnesses (D.I. 497, at 2; D.I. 525-1 (January 19, 2017 Hearing Transcript) at 19, 22, 26, 45), Wilmington Trust deposed just five witnesses, with one deposition lasting less than one hour.

The Criminal Defendants concede that they took no part in Defendants' limited fact discovery. Indeed, Defendant Gibson's counsel admitted to Judge Andrews that in this Action Wilmington Trust's counsel, Williams & Connolly, "<u>was taking the lead on everything</u>. They were the primary questioner. Many of us, you know, didn't ask a single question during the entire process because Williams & Connolly was taking the lead." D.I. 797-1 at 40 (emphasis added); *see also id.* at 23 ("The record in the civil depositions is clear. In the very large majority of the civil depositions, the only questions asked of the adverse witnesses were asked by lawyers for Williams & Connolly."). Further, the Criminal Defendants have conceded that the Bank has also taken the lead in the current discovery dispute with the Federal Reserve (D.I. 797-1 at 10, 23) and on all work on expert discovery, both in this Action and the Criminal Action (*id.* at 39-40).

### D. The Criminal Defendants Seek to Exploit the Postponed Criminal Trial to Circumvent the Lift Stay Order

The Criminal Trial was set to begin on October 10, 2017. That morning, before the jury was seated, Wilmington Trust informed Judge Andrews that it reached a settlement with the

Government, whereby it would agree to pay $60 million (offset by $16 million already paid to the SEC) to resolve all criminal allegations against the Bank. At the Criminal Defendants' request, and over the objections of the Government, Judge Andrews postponed the Criminal Trial for a third time, setting the fourth trial date for March 12, 2018. D.I. 797-1 at 49.

After receiving their requested continuance, Defendants waited three weeks, until November 1, to approach Lead Plaintiffs to request an extension to the schedule. Lead Plaintiffs rejected Defendants' request, but offered to move forward the expert and summary judgment schedule by one month to address any possible concerns Defendants may have about overlap with the Criminal Trial. Defendants rejected this offer. Defendants then waited another <u>fifteen days</u> – <u>or more than one month after receiving their requested continuance in the Criminal Action</u> – to file this Motion. Defendants' delay means that the parties will not receive a decision in advance of the December 1, 2017 deadline to exchange information on the parties' expert witnesses, and creates a situation where the parties may not know whether expert discovery and summary judgment motions will move forward as scheduled until 2018, just days before the filing deadlines.

## III. THE COURT SHOULD DENY DEFENDANTS' MOTION

### A. The Current Schedule Should Not Be Amended

#### 1. Four Indicted Bank Officials Who Face Years – If Not Decades – in Federal Prison Will Not Realistically File Affirmative Summary Judgment Motions

Defendants' latest attempt to delay resolution of this Action through the postponement of expert discovery and summary judgment by eight months – with opening summary judgment motions being filed <u>over one year</u> following the close of fact discovery – is completely improper and unwarranted.

The Criminal Trial is now scheduled to begin on March 12, 2018 (at the Criminal Defendants' request), and the current schedule in this Action allows for the vast majority of the work on expert discovery and summary judgment motions to be completed in advance of the start of the Criminal Trial. All Defendants agreed to this schedule, and the Criminal Defendants' claims of necessity and prejudice ring hollow and ask the Court to reject common sense. It is difficult to conceive that the Criminal Defendants – four indicted senior bank executives who face lengthy prison terms and who all asserted the Fifth Amendment during their depositions – will make any affirmative summary judgment motion, especially considering the Bank that they ran into the ground just paid $60 million to buy its way out of criminal liability.

Indeed, the Criminal Defendants have made it patently clear that they have abdicated responsibility for their defense in this Action (including the conduct of discovery) to counsel for Wilmington Trust, which is no longer a defendant in the Criminal Action. According to the transcript they attached to their filing, counsel for Defendant Gibson informed Judge Andrews that, with respect to discovery in this civil action, "Williams & Connolly [counsel for the Bank] was taking the lead on everything. They were the primary questioner [at depositions]. Many of us, you know, didn't ask a single question during the entire process because Williams & Connolly was taking the lead." Motion, Ex. 1 at 799:12-19. Given these established facts, the Criminal Defendants' participation in any expert depositions will most likely amount to nothing, while their contribution to summary judgment briefing will likewise be limited to filing joinders – just as they have in the past. *See, e.g.*, D.I. 352, 466, 502, 506. Meanwhile, multiple attorneys from two large law firms – Williams & Connolly and Venable – represent the Bank and will attempt to carry the Criminal Defendants' burden, just as they have done throughout this Action.

Further, with respect to summary judgment briefing, Defendants' opposition to Lead Plaintiffs' motion will be filed before the Criminal Defendants' trial is currently set to begin. Thus, there will be no overlap between the trial and the Criminal Defendants' limited, "me too" briefing "obligations." Accordingly, the Criminal Defendants will be able to focus exclusively on their criminal trial and will suffer no prejudice from allowing this Action to proceed on its current schedule.[1] And while the remaining Defendants joined and supported the Criminal Defendants' Motion (D.I. 798), there is no conceivable prejudice to these Defendants, none of whom are parties to the Criminal Action.

### 2. The Individual Defendants' Arguments are Meritless

#### a. Waiting for Verdicts in the Criminal Trial Does Not Support Postponement.

The Criminal Defendants argue that a criminal conviction or acquittal is required before expert discovery and summary judgment motions in this civil action may proceed. Motion at 5-6. This is nonsense.

As an initial matter, the Criminal Defendants' statement that "it is hard to imagine a basis on which Lead Plaintiffs could prevail on summary judgment in this civil action against any Defendant" if the Criminal Defendants are acquitted in the Criminal Action (Motion at 6) is simply false. Indeed, it is blackletter law that an acquittal in a criminal action has no evidentiary value in a civil case and thus is irrelevant at summary judgment. *See Am. Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 325 (3d Cir. 1985) (holding evidence of an acquittal in a criminal arson case inadmissible in a civil arson case). "The rationale for excluding

[1] While the parties will be briefing any replies to summary judgment during the first few weeks of the trial, it is highly unlikely that the Individual Defendants will be filing any replies, because as indicted Bank executives, it is highly unlikely that they will be filing any affirmative summary judgment motions.

such a dismissal or acquittal from evidence in a civil trial is obvious. While a conviction can be considered a judicial determination of guilt, a dismissal, acquittal, or failure to prosecute may simply reflect an inability to meet the requisite burden of proof." *Burdyn v. Old Forge Borough*, 2017 WL 394335, at *3 (M.D. Pa. Jan. 26, 2017) (quoting C*unningham v. Wash. Gas Light Co.*, 1988 WL 90400, *1 (D.D.C. 1988)) (ruling evidence of acquittal inadmissible). Should the Government fail to carry its burden to prove criminal misconduct beyond a reasonable doubt, Lead Plaintiffs are not precluded in any way from proving Defendants' liability in this civil action, with its significantly reduced standard of proof.

Moreover, Defendants' suggestion that verdicts in the Criminal Action will "likely determine . . . which parties may settle" (Motion at 6) is speculative, at best. Wilmington Trust settled the criminal charges against it weeks ago, and this Action continues. There is no reason to believe that verdicts in the Criminal Action would force settlement talks.

**b. Wished-For Testimony in the Criminal Trial Does Not Support Postponement**

Defendants ask the Court effectively to stay this action again based on the mere hope that the Criminal Defendants might secure helpful testimony in the Criminal Action – testimony they were unable or unwilling to extract in this Action. Motion at 6-9. Their speculation and lack of action should not be rewarded.

Lead Plaintiffs worked diligently to develop a robust factual record to support their claims. Lead Plaintiffs deposed 29 witnesses – 24 for full-day depositions and five for two-day depositions. With the exception of Wilmington Trust's cross-examination of certain KPMG employees, Defendants asked minimal questions on cross examination. Wilmington Trust took only five depositions, while the Criminal Defendants, Director Defendants, Underwriter

Defendants and KPMG took no depositions. Defendants made the strategic decision to leave 20 depositions on the table.

It is remarkable that Defendants now argue that the entire expert discovery and summary judgment schedule should be delayed on nothing more than the possibility that the testimony of witnesses in the Criminal Action – each of whom could have been, but were not, deposed in this Action – "will be highly relevant to the allegations and defenses in this civil action." Motion at 6-7.[2] Defendants knew the identities and information possessed by many, if not all, of the potential Criminal Action witnesses that were not deposed in this Action. Indeed, Defendants received FBI "302" interview summaries of each of the potential witnesses detailing the witnesses' likely areas of testimony in the Criminal Action years ago. If Defendants truly felt that any of the potential Criminal Action trial witnesses supported their defenses such that they could be used during expert discovery or in support of summary judgment motions, they were obligated to depose them during the fact discovery period in this Action. Their failure to do so speaks volumes.

Defendants' true purpose in making this Motion is revealed when they contend that the five fact witnesses and each of the four Criminal Defendants who asserted their Fifth Amendment privilege in this Action will either testify substantively in the Criminal Action trial or "will be available to testify in this action after the conclusion of the criminal trial." Motion at 7-8. As discussed above, this Court (and the Third Circuit) has repeatedly rejected Defendants' attempts to delay their testimony until after the Criminal Trial so that they could potentially avoid asserting their Fifth Amendment rights during their depositions, and it should do so again

[2] Moreover, given the narrowed scope of the Criminal Trial now that Wilmington Trust has settled the claims against it, it is highly unlikely that the witness list the Criminal Defendants attached to their Motion is even relevant to the Criminal Trial that will purportedly commence in March.

here. There is no indication that any third-party fact witness who invoked the Fifth Amendment during his or her deposition in this Action will actually testify in the Criminal Action trial, with the exception of the two individuals who pled guilty and whose cooperation with the Government is documented. To the contrary, it is highly likely that the remaining individuals who invoked the Fifth Amendment in this civil action will do the same in the Criminal Action trial, if called to testify at all.

Even if Defendants are acquitted and then want to testify in this Action, the Court should not reopen fact discovery after the conclusion of the Criminal Action so that witnesses who once asserted the Fifth Amendment as a shield against discovery could then convert their testimony into a sword by choosing to testify. *See United States v. Premises Known as 1625 S. Delaware Ave., Philadelphia, Pa.*, 1989 WL 29271, at *1 (E.D. Pa. Mar. 29, 1989) ("While the fifth amendment forbids the compelled self-incrimination by one accused of a crime, courts have not hesitated to forbid parties from asserting the fifth amendment privilege as a shield against discovery and then attempting to convert it to a sword by testifying at trial."). In *SEC v. Graystone Nash, Inc.*, defendants invoked the Fifth Amendment during their depositions, but then attempted to submit affidavits containing factual responses to the SEC's allegations in opposition to the SEC's summary judgment motion. The district court excluded defendants' affidavits, concluding that defendants could "not wield the Fifth Amendment privilege as both a sword and a shield." *Id.*, 1993 WL 580763, at *2 (D.N.J. July 23, 1993). Understandably, the Criminal Defendants do not want to receive a negative inference for refusing to testify during their depositions. However, they must be foreclosed from testifying substantively after thwarting all attempts by Plaintiffs to develop a complete factual record during the Court-ordered fact discovery period.

Finally, Defendants posit that Criminal Action testimony may necessitate inefficient submissions of "supplemental expert reports or supplemental briefing." Motion at 8-9. Lead Plaintiffs have developed their case. The Defendants have not done the same. Fact discovery in this Action is complete and robust, and expert discovery and summary judgment motions are not dependent on ancillary evidence adduced during the Criminal Action trial. Defendants' conjecture that testimony in the Criminal Action may alter a party's summary judgment strategy is not a basis to upend the schedule entirely.

**c. Defendants' Objection to Magistrate Fallon's September 19, 2017 Order Does Not Support Postponement.**

Defendants speculate that "potentially vital discovery from the Federal Reserve could come too late for consideration by the parties' expert or for inclusion in the summary judgment briefing." Motion at 10-11. Once again, this is pure conjecture.[3] Lead Plaintiffs have already explained that their claims are not in any way predicated on establishing that Defendants misled the Federal Reserve, unlike the government's allegations in the Criminal Action. These depositions, therefore, are more relevant to the claims and defenses in the Criminal Action, and not to those in the civil action. *See* D.I. 782. In any event, there is no reason that Defendants' Objection cannot be resolved in advance of the current expert discovery and summary judgment deadlines.

[3] On October 3, 2017, Defendants filed their Objection to Magistrate Judge Fallon's September 19, 2017 Order quashing Wilmington Trust's deposition subpoenas for Federal Reserve employees, arguing that "Judge Fallon's findings are clearly erroneous and contrary to law" and "contravenes basic tenets of federal civil discovery." D.I. 790 at 4, 11. The Federal Reserve strongly opposed Defendants' Objection. D.I. 791, 794.

#### d. Expert Discovery and Summary Judgment Do Not Require Bifurcation

The parties long ago agreed to, and the Court approved, an efficient schedule where expert reports will be exchanged in advance of any oppositions to summary judgment motions, and expert discovery will conclude in advance of any replies in further support of summary judgment. This agreed-to schedule is fair, and balances the need expeditiously to advance this eight-year old case towards trial while allowing the parties to take full advantage of expert discovery. Defendants' claim that expert discovery must be completed fully in advance of summary judgment motions is contrary to their earlier position adopting the current schedule and should be rejected.[4] Additionally, even if the Court were inclined to postpone summary judgment briefing until after the Criminal Trial (which it should not do), there is no reason that expert discovery cannot take place prior to the Criminal Trial for the reasons stated above.

### B. Plaintiffs Will Be Prejudiced by the Criminal Defendants' Proposed Schedule

This Action has been pending since November 2010 and, as detailed above, the Defendants have tried to delay its progress at every turn. Judge Robinson expressly found that the "[C]ourt's interest is directed to resolving disputes promptly, efficiently, and fairly" and that "the public's interest is promoted by bringing to resolution this complex civil litigation[.]" D.I. 509. But accepting the Criminal Defendants' proposed schedule would push back resolution of

[4] The cases cited by Defendants do not support this bifurcated schedule. In *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2006), the Third Circuit simply held that summary judgment should not be granted where no fact discovery had been exchanged, but makes no mention of expert discovery. *Chek-Med Sys., Inc. v. PMT Corp.*, 2011 WL 13177569 (M.D. Pa. Apr. 14, 2011) is also inapposite. There, in an expert-dependent patent infringement case, the Court ruled the expert discovery should be completed "in this highly technical and specialized field surrounding the chemical composition of endoscopic dyes" before summary judgment motions were fully briefed. *Id.* at *5. That is exactly what will transpire here, where expert reports will be exchanged in advance of summary judgment oppositions, and expert discovery will be completed in advance of summary judgment replies.

this Action for at least another year – if not significantly longer considering that the Defendants are asking the Court to adjudicate complex summary judgment motions over the 2018 holiday season. Any motions for reconsideration or notices of interlocutory appeal that the Defendants would likely file would further delay justice for the Class.

This extensive delay significantly prejudices the Class. The Court has already recognized in its April 13, 2016 Order that Lead Plaintiffs face "risks associated with delay vis a vis the quantity and quality of evidence." D.I. 454 at 2. Indeed, even Defendant Harra has acknowledged that "[i]ndividuals' memories can fade over time, and to the extent relevant evidence in this case will be based upon, or contradicted by, the sworn recollection of witnesses, the interests of justice favor allowing depositions and other discovery to proceed[.]" D.I. 437. Every day that passes risks further faded memories and the death or other unavailability of key witnesses.

Moreover, Class members have a significant interest in obtaining a recovery of their losses – over $1 billion in market capitalization losses – due to the Defendants' fraud. *See In re Herley Indus. Inc. Sec. Litig.*, 2007 WL 1120246, at *3 (E.D. Pa. Apr. 11, 2007) (there is an "important public interest in the prompt resolution of securities claims"). Lead Plaintiffs have already spent years aggressively litigating this Action and are ready and willing to move this case forward. The ability to narrow the issues through summary judgment over the next several months will allow for a speedy resolution of this Action once the criminal case is completed. Without such relief, time will stand still for yet another year, with Lead Plaintiffs unable to move the case forward at all.

### C. Plaintiffs Request that the Court Resolve the Motion Expeditiously and Set a Trial Date

Lead Plaintiffs respectfully request that the Court decide this Motion in their favor expeditiously given that the deadlines impacted by the Motion are fast approaching. Indeed, given Defendants' inexcusable delay in filing the Motion, the December 1, 2017 deadline for the exchange of expert identities will have passed before this Motion will be fully briefed. Moreover, Lead Plaintiffs respectfully request that should the Criminal Defendants' Motion be denied, the Court set a trial date to provide finality to this long-delayed Action.

## IV. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request the Criminal Defendants' Motion be denied in its entirety.

Respectfully submitted,

Dated: November 29, 2017

**CHIMICLES & TIKELLIS LLP**

*/s/ A. Zachary Naylor*
Pamela S. Tikellis (Bar No. 2172)
A. Zachary Naylor (Bar No. 4439)
Vera G. Belger (Bar No. 5676)
222 Delaware Avenue, 11th Floor
P.O. Box 1035
Wilmington, DE 19899
Phone: (302) 656-2500
Fax: (302) 656-9053

*Liaison Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Blair Nicholas
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323

-and-

Hannah Ross
Katherine M. Sinderson
Lauren McMillen Ormsbee
Jesse L. Jensen
Julia K. Tebor
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 554-1400
Fax: (212) 554-1444

**SAXENA WHITE P.A.**

Maya S. Saxena
Joseph E. White, III
Brandon T. Grzandziel
Jorge Amador
Kathryn W. Weidner
150 E. Palmetto Park Road, Suite 600
Boca Raton, FL 33432
Phone: (561) 394-3399
Fax: (561) 394-3382

- and –

Steven B. Singer
4 West Red Oak Lane, Suite 312
White Plains, NY 10604
Telephone: (914) 437-8551
Fax: (888) 631-3611

*Counsel for Lead Plaintiffs and Co-Lead Counsel for the Class*