IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE WILMINGTON TRUST SECURITIES LITIGATION | Master File No. 10-cv-00990-ER-SRF<br>(Securities Class Action)<br>Hon. Eduardo C. Robreno |
| This document relates to: ALL ACTIONS | Hon. Sherry R. Fallon |

**RESPONSE TO MOTION FOR MODIFICATION**

Wilmington Trust Corporation ("WT Corp.") has asked this Court to reconsider its September 19, 2017 order ("Order") quashing depositions of three examiners and an officer at the Federal Reserve Bank of Philadelphia ("Reserve Bank"), D.I. 785, *aff'd*, D.I. 810, based on its dismissal in *United States v. Wilmington Trust Corp.*, et al., No. 15-cr-23 (D. Del.), ("Criminal Action"). It also seeks production of nearly every Reserve Bank record on past-due loans over a six year period, not only at the one bank named in the pleadings, Wilmington Trust Company ("WTC"), but at other affiliates of WT Corp. The motion should be denied.

Contrary to WT Corp.'s contentions, the multiple grounds cited in the Order for quashing the depositions are not undermined by events in the Criminal Action, where Fed employees will still testify. WT Corp.'s own assertions in its recent motion to modify deadlines in this case, which claimed such testimony would be helpful, further confirm the continuing validity of the Court's ruling. With respect to production of documents, recent events in the Criminal Action – where, in contrast to this case, WT Corp.'s disclosures to Fed examiners are directly at issue – do not establish that its record requests meet the tests of relevance or proportionality in this suit. In support of its request for more searches, WT Corp. cites ***one*** allegedly helpful record produced by the Board in the Criminal Action, Mot'n at 8 – among the over 120,000 pages produced by

the Federal Reserve ("Fed") that are overwhelmingly critical of WT Corp.'s loan practices. The Fed recently expended over 100 hours to produce a small set of similarly critical files in the Criminal Action. Yet here, WT Corp. seeks more irrelevant and disproportionate discovery at public expense. While WT Corp. may not like what the disclosed records say, it does not suffer from lack of disclosure. Its motion should be denied.

## I. Events in the Criminal Action Do Not Undermine the Court's Deposition Ruling

WT Corp.'s dismissal in the Criminal Action does not undermine the Order. The Order relied on several findings on that did not concern the Criminal Action. WT Corp.'s dismissal does not affect other findings on adequacy of criminal trial testimony in lieu of depositions in this action. WT Corp. itself said as much when it moved to extend deadlines in this case on the basis of the anticipated testimony in the Criminal Action. D.I. 797 at 6-9, 798 at 1. And the Order's concern about circumvention of criminal discovery rules remains valid, given that the remaining defendants – who unsuccessfully sought discovery in that action – remain parties to this case.

The Order made several findings bearing little connection to the Criminal Action:

1. The contemporary records already produced are the primary evidence. Order ¶ 7.
2. These records establish WT Corp.'s condition during the class period more reliably than examiners' recollection of events from years earlier. *Id.*[1]
3. Because examiners' loan ratings produced by the Fed sufficiently "'reveal what [the

[1]Subsequent events in the Criminal Action *bolster* these findings. Judge Andrews ruled, in denying a defense motion for pretrial examiner testimony, that an examiner interview cited by WT Corp. to show the purported insufficiency of our records production (*see* D.I. 780) merely described findings from reviews of loan ("credit") files in 2010, and matched criticisms stated in an exam report. Crim. Action D.I. 531 at 2-5. The report, and tens of thousands of pages of loan line sheets and attachments from the review, were produced to WT Corp. D.I. 712 at 4, 8.

Fed] thought,'" WT Corp. would not be allowed to depose a policy analyst to show purported Fed approval of WT Corp.'s practices.[2] *Id.* ¶ 9. (citation omitted)

4. The depositions burden the agency's mission of ensuring the safety and soundness of the banking system by diverting resources to a suit between private parties. *Id.* ¶ 8.[3]

These findings did not concern WT Corp's status in Criminal Action, as WT Corp. implies. In fact, the Court applied its ruling "with equal force" to the deposition of a policy analyst with different responsibilities from those of any criminal trial witness. *Id.* ¶ 9. WT Corp.'s dismissal from the Criminal Action does not undermine these findings.

WT Corp. also fails to show that its dismissal from the Criminal Action, which will still proceed to trial, undermines the following additional findings relating to criminal trial testimony:

1. The need for depositions is lessened because similar testimony is expected in the Criminal Action. Order ¶ 6. While one deponent was not listed as a trial witness, his testimony would be "of a similar nature" to that of a trial witness. *Id.* n. 2.

2. Because most depositions were likely to duplicate criminal trial testimony, the burden imposed on the Board was particularly "substantial." *Id.* ¶ 8.

WT Corp. claims that its dismissal and the rescheduling of the criminal trial to March somehow undermine these findings. Mot'n at 3-5. But trial against the remaining defendants will soon start. They face the charges that WT Corp. did, are sued jointly with it in this case, and

---

[2]While WT Corp. no longer seeks to depose the analyst, Mot'n at 2 n.1, it has argued that the remaining depositions are similarly needed to show the Fed purportedly approved its practices, *e.g.* D.I. 688 at 3 (claiming a need to show that the Fed "did not regard [WT Corp.'s practices] as improper"), and thus this finding should apply with equal force to the remaining depositions.

[3]Subsequent to the Order, the Board had to expend 100 hours, including substantial examiner time, producing cumulative records in that action, at a cost to its public mission. Gelblum Decl. ¶¶ 5-6. Any further diversion of resources is even more burdensome and unreasonable.

have claimed a need for the depositions. D.I. 783; D.I. 797 at 11. It is hardly a stretch to conclude that they will also elicit "similar testimony." Order ¶ 6. *Cf.* Fed. R. Evid. 804(b)(1) (admitting prior testimony against party whose "predecessor in interest" had a similar motive to examine); *Lloyd v. Am. Exp. Lines, Inc.*, 580 F.2d 1179, 1186-87 (3d Cir. 1978) ("Predecessor in interest" is a party seeking to prove similar matters).[4] And while WT Corp. claims that depositions will not be "duplicative" since trial was continued, Mot'n at 5, it fails to explain how the delay reduces cumulativeness or is even a "changed circumstance," since the Order was itself issued before the prior trial date. It is also disingenuous, since WT Corp. won a continuance in this case for the very purpose of using the criminal trial testimony, D.I. 805.[5]

Not only has WT Corp. failed to show that its dismissal renders the trial testimony any less helpful as a substitute for depositions, but in fact, it made contradictory representations when it sought a continuance in this action. Its motion relied entirely on the individual defendants' brief, D.I. 798 at 1 ("incorporating by reference" the brief filed by individual defendants). That brief, in turn, repeatedly argued that criminal trial testimony will be "highly relevant," D.I. 797 at 6-7, 8, particularly since it will include testimony from witnesses not deposed in this action. *Id.*

[4] WT Corp. has in fact recently indicated that it intends to confer with the defendants during the trial. Crim. Action D.I. 630 at 3.

[5] WT Corp. now claims that the Government may not call Reserve Bank Assistant Vice President Eric Sonnheim to testify. Mot'n at 4 n. 4. Setting aside its inability to show that *no party* will decide to call him, the Order already quashed a subpoena to a witness whose testimony was "of a similar nature" to that of a trial witness. Order at 6 n. 2. Sonnheim did not personally examine WTC, and primarily relied on what he learned from examiners, who will testify. D.I. 680-2 ¶ 8. There is no right to take the deposition of this senior public official, especially if subordinates will testify. *Wilson v. City of Wilmington*, No. 13-1390-LPS, 2015 WL 4594510 at *2 (D. Del. July 29, 2015) (citing cases). Further, the only specific matter WT Corp. stated he would testify to concerns its capital raise, D.I. 688 at 2, which is only relevant because the associated offering statement is alleged to be false. D.I. 149 ¶¶ 387 *et seq.* The offering statement was regulated by the SE.C., not the Fed; as a bank regulator, Mr. Sonnheim's interest would be limited to the *internal* impact of such fund-raising on the bank, a matter not placed at issue by the pleadings.

at 7 (citing list of 31 trial witnesses not deposed in this action, including three Fed employees). The court granted the motion over Plaintiffs' objection. D.I. 805. Even if WT Corp.'s litigation position on the contested scheduling issue does not warrant outright application of judicial estoppel, *cf. Md. Mall. Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 486 (3d Cir. 2013) (judicial estoppel bars litigants from asserting inconsistent positions in the same proceeding), it certainly confirms the continuing validity of the Court's findings that any need for Fed depositions is both lessened and burdensome given similar testimony in the criminal trial.

Lastly, WT Corp.'s claim that its dismissal from the Criminal Action "eliminates" the concern with use of depositions to avoid limitations on criminal discovery, Mot'n at 4, overlooks the fact that the remaining defendants to that action are also parties to this case and will be privy to any discovery; in fact, they have advocated for the depositions. *E.g,*. D.I. 783. Allowing depositions to proceed here will give them discovery they were denied in the Criminal Action. Specifically, since entry of the Order, Judge Andrews denied their motion seeking similar voir dire from one of the deponents, Crim. Action D.I. 531 (denying Crim. Action. D.I. 390), and denied their request for testimonial discovery in the form of "certifications" about what records the Fed received from WTC, *id.* Crim. Action D.I. at 606 (denying Crim. Action D.I. 598). Thus, the concern that civil discovery will give defendants access to discovery denied to them in Criminal Action remains valid.

Accordingly, WT Corp. has not provided a sufficient basis for this Court to reverse its earlier ruling barring deposition testimony from Fed employees, and the Court should decline to do so.

## II. The Request for Burdensome and Disproportional Searches Should be Denied

WT Corp. wrongly claims that it seeks only "narrow categories" of documents, Mot'n at 6, and that a ruling by Judge Andrews granting a small portion of a similar request, Crim. Action D.I. 549 at 1, supports its broad request. As shown below, WT Corp. seeks a new cumulative search for nearly all Fed records on its past-due loans, going well outside of the Class Period or the relevant bank, apparently in the belief that somehow, somewhere, a dissenting voice can be found that will contradict the overwhelmingly critical judgments of its actions evident in the voluminous material the Fed has already provided. *See, e.g.* D.I. 782-1 at 9 (copy of brief from Criminal Action quoting findings from 2010 exam report criticizing, *inter alia*, use of liberal loan extensions and interest reserves to "mask" nonperforming loans), *cited by* Crim. Action D.I. 531 at 5 (ruling by Judge Andrews describing these findings as referencing "arbitrary" loan extensions). But Judge Andrews' allowance of a limited subpoena for Federal Reserve records, in a case where the indictment expressly alleges that WT Corp. lied to Fed examiners, does not support the argument that the current, broader request is relevant or proportional in a private suit alleging lies to investors. And the outcome of its subpoena in the Criminal Action, *i.e.*, the diversion of 100 hours to produce a limited set of cumulative records no less adverse to WT Corp.'s position, at public expense, proves how disproportionate its current request is.

WT Corp.'s request for any responsive records handled by examiners, Ex. A. to Mot'n ¶¶ 2-3 is not at all "limited." Mot'n at 1. It targets nearly all records the Fed would have on past-due loans and related reporting, whether originating at the Fed or duplicative of WT Corp.'s own records;[6] is far broader in scope than the Fed's extensive productions (or the complaint's

[6] The fact that it seeks documents only from the examination unit hardly narrows its scope, since that unit had primary responsibility for in-depth assessment of these issues, including WT Corp.'s reporting practices, *e.g.* D.I. 689-1 ¶¶ 6-7, 9; and other functions, like enforcement,

allegations). Compared to the Criminal Action subpoena, which sought specified files or discs from an exam with limited Fed participation and records written by one examiner, Gelblum Decl. ¶ 3, the request is breathtakingly broad, seeking records authored *or received* by *any* examiner on past due loans, i.e. any such records that were in their hands, including, presumably, copies of WT Corp.'s own records. It also seeks records on matters dating years before the Class Period and at all WT Corp. affiliates, rather than at WTC, the only bank named in the complaint. Ex. A to Mot'n at 1. The Court has already found such matters – which were largely excluded from prior Fed productions – to be of "limited relevance" D.I. 459 at 18. And as the Fed learned in responding to the criminal subpoena, as a practical matter, a carve-out for the precompiled records previously produced does not reduce the burden of compliance. Gelblum Decl. ¶ 8.

Further, Judge Andrews' ruling, which called a similar request a "general fishing expedition" and denied it save for two "limited exceptions," Crim. Action D.I. 549 at 1, is far from an endorsement of WT Corp.'s position in this private suit. Examiners' "understanding" of WT Corp.'s practices, which was the subject of that ruling, *id.* at 2, is an express element of the Government's criminal case. *See, e.g.*, Crim. Action D.I. 243 at 26 ¶ K (conspiracy count based on false submissions in advance of two Fed exams and concealment during the exams). In contrast, the plaintiffs to this suit, who must expressly identify all statements they claim are false in their complaint, 15 U.S.C. § 78u-4, only list public "press releases, conference calls, and filings with the SEC" meant to deceive *investors* in the pertinent part of the complaint. D.I. 149 ¶¶ 247 *et seq.* The plaintiffs have repeatedly affirmed they are not suing over false disclosures to the Fed. *E.g.* D.I. 800 at 17. The confidential nature of bank exams and the fact that examiners

---

generally relied on its analyses, *see, e.g.* D.I. 710-1 at 6 (enforcement action against WT Corp. based on exam findings).

are ultimately concerned with banks' internal safety and soundness, rather than representations to investors, makes disclosures to them far less probative of intent to defraud these investors than they do of intent to defraud the examiners themselves, *see* D.I. 712 at 4, which was the issue that Judge Andrews addressed. His allowance of a limited subpoena in a case where the Government seeks jail sentences for felony misrepresentations to Fed examiners does not show that a breathtakingly broader request is proportional to the needs of a private suit over lies to investors.

Lastly, even assuming the records sought were particularly relevant to this action – which they are not – the request is cumulative and grossly disproportional to the needs of this case, as shown both by prior productions and the outcome of the recent subpoena in the Criminal Action. Apart from the Fed's prior productions of over 120,000 pages of documents from official files, reflecting the Fed's institutional position regarding WT Corp., WTC's state regulator, the Office of the State Bank Commissioner ("OSBC"), produced 21,000 more pages and computer files, Ex. A, and WT Corp. received additional productions from other regulators.[7] WT Corp. claims that the production from other regulators shows that it was "transparent" with those regulators regarding "waived" loans, and that it needs to show that it was similarly transparent with the Fed by establishing that that the Fed possessed the same types of documents that WT Corp. has already obtained from other regulators. Mot'n at 9. But given the issues in *this* case, involving false statements to investors, WT Corp. needs to do more to establish that such "transparency"

[7]In the Criminal Action, WT Corp. received records from the Federal Deposit Insurance Corporation, which was WTC's primary federal regulator prior to 2008, Crim. Action D.I. 338-2 at 11, and 3,500 computer files from the Office of the Comptroller of the Currency, *id.* D.I. 311-2 at 1-95, whose predecessor agency regulated a different affiliate not named in the complaint. *Id.* at 97. While WT Corp. has issued additional subpoenas to these agencies in this action, D.I. 587, 610, it has not challenged these agencies' objections or moved to compel production from them as it now seeks to do with respect to the Fed. It nonetheless demands that the Fed produce records on these institutions during a time period when the Fed would have relied on findings by these regulators, rather than conducting its own analyses. *See generally* D.I. 712 at 3-4.

with the Fed is so relevant here as to justify the highly burdensome demands its request would place on the agency. WT Corp. claims it needs even more Fed "analyses" to prove its practices were acceptable, *cf.* Mot'n at 8 (claiming a need to show that improperly extended, or "waived" loans, were not "actually" past-due), a dubious proposition that improperly seeks to obtain unretained expert opinions. *See generally* D.I. 712 at 7-8; Fed. R. Civ. P. 45(d)(3)(B)(ii); *cf.* Crim. Action D.I. 379-3 at 3 (proffer by WT Corp. of expert testimony by former bank supervisor that "it was reasonable not to report [waived loans] as past due" on Fed reports).

In any event, the Court has already ruled that "'the CAMELS ratings will reveal what [the agency] thought.'" Order ¶ 9 (citation omitted). And the Fed's production of these ratings, together with hundreds of pages of exam reports with the agency's official criticisms, and tens of thousands of supporting analyses and related records, D.I. 680-2, 689-1, makes quite clear what the agency thought of the alleged practices. Based on detailed reviews of WTC's loan portfolio, for which the Fed has provided over 40,000 pages of records, the Fed found that practices such as the waiver practice, misuse of interest reserves, and failure to perform timely appraisals, "masked" nonperforming loans. *See, e.g.* D.I. 782-1 at 9 (findings from 2010 exam report), *cited by* Crim. Action D.I. 531 at 5 (Ruling by Judge Andrews summarizing findings). *See also, e.g.*, D.I. 710-1 at 20, 39, 62 (additional analyses criticizing WT Corp. practices affecting past-due reporting). And the Fed's recent expenditure of an additional 100 hours responding to WT Corp.'s subpoena in the Criminal Action only yielded more of the same. Gelblum Decl. ¶¶ 5-6, 12-13.[8] WT Corp. is simply fishing for some type of informal dissent disagreeing with these

[8]WT Corp. tries to discount this effort by claiming, without support, that it is "more likely" that relevant analyses were performed by examiners other than the one whose records were sought in the Criminal Action. Mot'n at 7. In fact, not only did the search yield the same type of critical analyses by the subject examiner, but other analyses by him equally critical of WT Corp.'s loan-

official findings by the agency, *see.* D.I. 702 at 6 (explaining that WT Corp. seeks "observations that chief examiners may not have considered important enough to include in . . . official workpapers"). Such analyses, if they existed, would not reflect the position of the agency, which is set forth in the many documents WT Corp. already possesses. And to the extent that WT Corp. hopes that such analyses would provide a type of "expert" support for its position regarding the propriety of its actions, they would certainly carry no more weight than a retained expert's opinions, and do not justify the overbroad and burdensome fishing expedition that WT Corp. now seeks to impose on the Fed.

WT Corp.'s claim that it must show that it did not lie to the Fed in confidence, in order to prove that it lacked "intent" to lie to investors in public, Mot'n at 8, 9 (asserting need to prove transparency with bank regulators) does not show that it seeks relevant matter, as explained above. In any event, it does not justify WT Corp.'s demand for broad searches of *internal* Fed records (and communications with *other regulators*, Mot'n at 8-9) and copies of WT Corp.'s own records not shown to have any relevance. With respect to the request for regulators' work product, Judge Andrews has succinctly stated that "only a fisherman would expect to find out the state of minds of Wilmington Trust Co. employees" in such records. Crim. Action 342 at 1-2. As to WT Corp.'s own records, WT Corp. should be able to identify with specificity which of its own records (1) disclosed its practices and (2) were given to the Fed in its purported effort to be "transparent." Yet it has only attempted to do so with one record, a 2009 response to a loan data request, which the Fed promptly produced. D.I. 702 at 12; D.I. 712 at 10. It has not identified any other records with similar disclosures that the Fed has withheld.

---

related practices and related reporting were included in prior productions, *e.g.* Crim. Action D.I. 603-1 at 13 (earlier criticism by the same examiner in the workpapers previously produced).

In fact, WT Corp.'s request for all other responses to loan data requests by any WT Corp. affiliate over a six year period – without even attempting to make the questionable showing it made for WTC's 2009 responses[9] – only demonstrates how cumulative its demands are. Specifically, the Fed has *already* searched for all such responses submitted by WTC to the Fed or even WTC's state regulator after the Fed began regulating WTC in late 2007, and produced the two years' responses that it found. *See id.* (describing production of 2009 and 2010 responses submitted to the Fed). While the record shows that a similar response was submitted to OSBC (rather than the Fed) in late 2007, Ex. B, and later returned by OSBC to the bank, D.I. 712-1 at 15 ("Interagency Loan Review"), the Fed made an unsuccessful effort to locate this file in response to WT Corp.'s criminal subpoena by conducting what Judge Andrews held was an appropriate search, Gelblum Decl. ¶ 15; Ex. C. at 12:2-10, 24:4-10 (oral findings); Crim. Action D.I. 606 (resulting order). Thus, the only such files that WT Corp. presumably seeks are the same 2007 file that the Fed already failed to locate in a reasonable search, and similar files submitted to other regulators prior to the Class Period and/or files concerning loans at WT Corp. affiliates not named in the Complaint, both matters that the Court already found to be of "limited relevance." D.I. 459 at 18.

Apart from the lack of record support for such requests, fulfilling them would impose a significant burden on the Fed, as shown by recent events. Compliance with WT Corp.'s far more limited subpoena in the Criminal Action, required over 100 staff hours to produce a limited set of duplicative, cumulative, and unhelpful records at the expense of the Fed's public mission. Gelblum Decl. ¶¶ 5-6, 12-14. Fulfilling the present, broader request is expected to take hundreds

[9]The Fed will not rehash its prior point that any claims about the relevance of these files are not consistent with the Fed's exam manual, *see* D.I. 712 at 13-14, since it has already produced all such files that it could locate from the period when it regulated WTC.

more hours, to the detriment of mission-critical tasks ranging from stress tests to examinations of loan portfolios that are intended to prevent the same type of bank failure that precipitated this suit. *Id.* ¶¶ 9-11. WT Corp.'s hope that such cumulative and burdensome searches will yield something that prior searches and voluminous productions did not fails to show that more overbroad discovery at public expense is relevant and proportional to the needs of this private suit.

## III. Conclusion

For the foregoing reasons, the Court should deny the motion.

Dated: January 31, 2018

Respectfully Submitted,

KATHERINE H. WHEATLEY
ASSOCIATE GENERAL COUNSEL

/s/ Yonatan Gelblum
Yonatan Gelblum
Counsel
Board of Governors of the Federal Reserve System
20th & C Streets, N.W.
Washington, D.C. 20551
(202) 452-2046 (phone)
(202) 736-5615 (fax)
yonatan.gelblum@frb.gov

*Counsel for the Board of Governors of the Federal Reserve System*

CERTIFICATE OF SERVICE

I certify that I served a true and correct copy of the foregoing opposition with exhibits and declaration on all counsel of record with the Court's ECF system this 31st day of January, 2018.

/s/ Yonatan Gelblum
Yonatan Gelblum