**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE WILMINGTON TRUST SECURITIES LITIGATION | Master File No. 10-cv-00990-ER-SRF (Securities Class Action) Hon. Eduardo C. Robreno |
| This document relates to:  ALL ACTIONS | |

**WILMINGTON TRUST CORPORATION'S REPLY
<u>IN SUPPORT OF ITS MOTION FOR MODIFICATION</u>**

As Judge Robreno suggested in two separate orders, D.I. 804 n.1 & 810 n.1, Wilmington

Trust Corporation's ("WT Corp.") dismissal from the criminal case warrants reexamination of

the Court's September 19, 2017 order, D.I. 785 (the "Order").  The Board of Governors of the

Federal Reserve System ("Fed") cannot escape the fact that these new circumstances no longer

support the grounds relied upon in the Order.

## ARGUMENT

### I.    WT Corp. Is Entitled to Depose the Fed Employees

#### A.    WT Corp.'s need for deposition testimony is no longer "lessened"

The Fed argues that, because the remaining criminal defendants face the same charges as

WT Corp., are defendants in this civil case, and have also sought these depositions, WT Corp.'s

need for the depositions is no different now than when it was a criminal defendant.  D.I. 813 at 3-

4 ("Opposition").  This proposition is not supported by precedent or common sense.

Citing no case law to support its position, the Fed attempts to analogize the situation to

Federal Rule of Evidence 804(b)(1), suggesting that the remaining criminal defendants are akin

to "predecessors in interest" to WT Corp. because they will elicit "similar testimony" at the

criminal trial.  D.I. 813 at 4.  This analogy misses the mark completely, and actually underscores

the unfairness of precluding WT. Corp from conducting these depositions.  Rule 804(b)(1)

covers the use of prior testimony <u>against</u> a party when witnesses are unavailable.  The Fed's

citation to Rule 804(b)(1) highlights the fact that the criminal testimony of Fed witnesses might

be used <u>against</u> WT Corp., but not <u>by</u> WT Corp., when WT Corp. had no opportunity to depose

those witnesses, making the preclusion of depositions in this case entirely unfair.

WT Corp.'s need for the depositions has clearly been magnified by the changed

circumstances:  <u>it cannot cross examine Fed employees at the criminal trial or call them as</u>

<u>witnesses</u>.  Although WT Corp. wants to discuss the examination of criminal trial witnesses who

are potential civil trial witnesses with the remaining criminal defendants, it has no control over

the questions they will ask or the topics they will explore with the Fed witnesses.[1]  Moreover, the

Fed's position ignores the fact that each individual defendant may have different positions

relative to the facts, different strategies, and different interests that are not identical to WT

Corp.'s—particularly given that WT Corp. is not facing criminal charges.  Individual counsel

only represent their individual clients, not the bank.  WT Corp. cannot rely on counsel for the

remaining defendants to probe these witnesses in a manner that will protect WT Corp.'s interests

in the civil case.[2]  The continued presence of the remaining defendants in the criminal case is

therefore irrelevant to the analysis of WT Corp.'s need for this testimony.[3]

---

[1]      Even this may not be possible.  The government has filed a motion with Judge Andrews arguing that WT Corp. would breach its settlement agreement if it discusses the examination of a criminal trial witness with the remaining criminal defendants.  *See United States v. Wilmington Trust, et al.*, No. 15-cr-23 (D. Del.) ("Crim. Action"), D.I. 630 at 1.

[2]      The Fed cites the Order to suggest that WT Corp.'s need for depositions is unchanged because the remaining criminal defendants will elicit "similar testimony." D.I. 813 at 4.  This characterization distorts the Order.  When the Order was issued, WT Corp. was still a criminal defendant.  The Court's reference to "similar testimony," D.I. 785 ¶ 6, related to the likelihood that WT Corp. would ask Fed employees the same or similar questions at the criminal trial as it would in a civil deposition.  In any event, the Order does not account for the differences between the permissible scope of civil deposition examination and criminal trial examination, and that the subject matter in the civil case is far broader than the criminal case, *see* D.I. 509 at 1.

[3]      The Fed grossly mischaracterizes WT Corp.'s position when it suggests WT Corp. endorsed the position that the testimony in the criminal case would be adequate for purposes of the civil case.  *See* D.I. 813 at 2.  The brief referenced by the Fed was in support of a continuance of the civil trial, and argued that Fed witness testimony would be relevant to the civil case.  This is a far cry from saying the testimony would be adequate.  *See* D.I. 797 at 5-6.

Based on that same brief, the Fed calls WT Corp.'s argument against duplicativeness "disingenuous." D.I. 813 at 4-5.  But the fact that the criminal trial testimony of Fed witnesses— and scores of other potential witnesses—is obviously relevant to this case is not an argument that their testimony is a proper substitute for civil discovery.  Moreover, the continuance motion referenced by the Fed was based on a host of issues that the Fed fails to mention, including that the verdicts in the criminal trial may change or narrow issues for expert discovery and summary judgment; that the testimony from numerous witnesses—not just Fed witnesses—will be highly relevant for civil expert discovery and summary judgment; and that requiring the individual

**B.     WT Corp. cannot elicit cumulative testimony**

The testimony that WT Corp. would elicit from Fed witnesses in the civil case cannot be cumulative of testimony in the criminal trial because WT Corp. can no longer elicit testimony at the criminal trial.  The Fed's argument for cumulativeness is premised on the misguided notion that <u>another</u> defendant's lawyer <u>in the criminal case</u> can adequately represent WT Corp.'s interests <u>in the civil case</u>.  As discussed above, the Fed's argument ignores reality as much as it ignores precedent.  *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 251 (4th Cir. 2000).

**C.     The Fed concedes that the depositions do not impose an undue burden**

The Fed filed a declaration in which it spent nine (9) pages describing its supposed burden if it were required to produce documents; in stark contrast, it did not offer a single word in that declaration, or in its Opposition, about any burden it would face if the Fed witnesses were deposed, much less a word about how that burden would be <u>undue</u>.  *See* D.I. 812 & 812-2.  The Fed has not satisfied its "heavy burden" of showing that it would suffer an undue burden by presenting each of the Fed witnesses for a typical, one-day deposition.[4]  *See Composition Roofers v. Gravely Roofing Enter., Inc.*, 160 F.R.D. 70, 72 (E.D. Pa. 1995).

---

defendants to prepare for and participate in their criminal trial *and* engage in expert discovery and summary judgment briefing would be highly prejudicial to them.  D.I. 797 at 5-12.

[4]     Although the Court's Order found that the depositions would burden the Fed, it did not find that that burden would be <u>undue</u>.  *See* D.I. 785 ¶ 8.  There is always some burden associated with a deposition.  The Court did not find an undue burden in its Order, and it should not find an undue burden now—particularly in light of the Fed's failure to satisfy its "heavy burden" to show an undue burden.  *See* D.I. 688 at 3 & n.2.

3

**D.     Judge Robinson resolved the potential discovery abuse issue**

The Fed argues that, although WT Corp. can no longer use civil discovery to improperly aid its position in the criminal case, the other criminal defendants still could.  D.I. 813 at 5.  WT Corp.'s ability to fully defend this civil case should not turn on the existence of a criminal proceeding to which it is not a party.  The Fed cites no precedent for its outlandish proposition that civil discovery should be denied to WT Corp. because <u>other</u> defendants are parties to concurrent criminal proceedings.

Courts typically address the issues raised by parallel civil and criminal proceedings by imposing a stay in the civil case until the criminal case runs its course.  But this is not required. *See, e.g.*, *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980).  At the government's urging, D.I. 468 at 1, Judge Robinson lifted the stay "in its entirety" and ordered that fact discovery proceed concurrently with the criminal case.  D.I. 488 & 509.  At the time the Court lifted the stay, Judge Robinson was fully aware of the discovery issues the Fed now raises. *See* D.I. 468 at 15.  The Opposition shines no new light on these issues.

Rather, the Opposition effectively asks the Court to reimpose a stay on discovery—but only as it relates to the Fed.  What the Fed fails to apprehend is that the supposed risks of improperly using civil discovery to aid the criminal case <u>are not unique to Fed witnesses</u>.  The parties in the civil case have already deposed many witnesses that appear on the government's witness list.[5]  The testimony of these witnesses was just as susceptible to the risks that the Fed raises in its Opposition.  Judge Robinson—at the government's urging—concluded nearly a year

---

[5]     For example, the following individuals deposed in the civil case appeared on the government's potential witness list: Calvin Jaber; Terry Brewer; Rich Conway; Brian Bailey; Joe Terranova; Bob Gehring; Jason Delozier; John Depman; Julie Morris; Karen Thuresson; Martin Infanti; Robert Graber; Steve Cummings; Todd Glandon; Tosha Towe; Vidya Saligrama.  D.I. 797-1.

ago that these risks are tolerable in this case.  D.I. 488 & 509; *see also* D.I. 477 at 1 ("the government's all-or-nothing approach is the only proposal that appropriately balances the various interests of the victims, the defendants in the civil and criminal case, and the third party witnesses with the efficiency interests of the Court.").  It would be incongruous indeed for the Court to deny discovery only from the Fed, but permit depositions of all other likely government witnesses.  The Fed offers no explanation for why it should receive such favored treatment.  The denial of deposition testimony on this basis would be inconsistent with Judge Robinson's prior ruling to lift the stay "in its entirety."  D.I. 488 at 1.

> **E.      The other grounds cited by the Fed are insufficient to deny deposition testimony**

>> **1.      Civil discovery is not limited to "primary evidence"**

Whether contemporary records are "primary evidence" or not, D.I. 785 ¶ 7, the Federal Rules of Civil Procedure do not limit civil discovery to "primary evidence."  *See* D.I. 811 n.3.  In any event, most of these records are not self-explanatory, so deposition testimony is required to understand them; the Fed witnesses had communications with WT Corp. personnel that are not memorialized in any documents; and the Fed witnesses were required to perform analyses that are not memorialized in any documents.  *See id.*

>> **2.      WT Corp. does not seek deposition testimony to show "its condition during the class period"**

The Court observed in its Order that documents already produced by the Federal Reserve "establish Wilmington Trust's actual condition during the relevant period more reliably than the recollections of bank examiners."  D.I. 785 ¶ 7.  This finding does not support the denial of deposition testimony because this is not why the testimony is sought.  WT Corp. will use the requested deposition testimony to demonstrate, among other things:

- The Fed was charged with auditing the bank's "past due" loan reporting practices;

- The Fed was aware the bank did not report all of its matured loans as "past due";

- Fed awareness of this practice is strong evidence that those matured loans should not have been reported as "past due";

- Plaintiffs are incorrect in alleging that the bank's "past due" loan reporting was false; and

- The bank did not have fraudulent intent.

The Fed asserts that the Order found that loan ratings produced by the Fed sufficiently "'reveal what [the Fed] thought'" and precluded the deposition of a Fed analyst on that basis. D.I. 813 at 2-3.  That quotation is actually from a parenthetical citation in the Order that quotes an order by Judge Andrews.  *See* Crim. Action, D.I. 342 at 2.  The Opposition argues that this "finding" (which the Order never made) should also preclude the requested depositions that WT Corp. still seeks.  Unlike the Fed analyst, all other witnesses are percipient fact witnesses that have first-hand knowledge about WT Corp. and directly interacted with WT Corp. concerning relevant issues during the class period.[6]  Moreover, the loan ratings produced by the Fed in the criminal case do not help establish the evidence WT Corp. seeks to elicit through the depositions.

## II.     The Court Should Grant WT Corp.'s Narrowed Document Requests

### A.     WT Corp. has a critical need for the requested documents

WT Corp.'s document request should be granted because it is narrowly targeted to central issues in the case—past due loan reporting, loan extensions, interest reserves, and supplemental financing.  D.I. 149 ¶¶ 3, 8, 324.  These are the same limited categories that Judge Andrews concluded satisfied the *Cuthbertson* standard in the criminal case—a much more rigorous

---

[6]     Similarly, the testimony of subordinate Fed employees does not displace the need for the deposition testimony of Eric Sonnheim.  *See* D.I. 813 at 4 n.5.  He is a percipient fact witness who participated in relevant discussions with WT Corp. about which there are no documents. Subordinate testimony cannot substitute for Mr. Sonnheim's first-hand knowledge of specific events and conversations that are material to WT Corp.'s capital raise and Memorandum of Understanding.

standard than what is required for civil discovery.  Crim. Action, D.I. 564.  Judge Andrews's

conclusion should guide this Court because the importance of the requested documents applies

equally in both cases—the Fed's knowledge about the requested categories undermines

Plaintiffs' allegations of fraud <u>and</u> falsity.[7]  *See supra* Part I.E.2.

The time period of the document request is proper because it encompasses the conspiracy

period alleged in the Complaint.  *See* D.I. 702 at 3; D.I.  149 ¶¶ 91; 97; 98, 123 (alleging

fraudulent conduct beginning in 2005)[8].  The entities covered by the document request are proper

because the Fed was the primary regulator of WT Corp., <u>a defendant in this case</u>, and

Wilmington Trust of Pennsylvania, during the requested period.[9]

For all its claims of burden, the Fed completely fails to address the other side of the

proportionality analysis: the critical importance of the requested documents to a case in which

Plaintiffs are seeking hundreds of millions of dollars in alleged damages.  Fed examiners are

supposed to analyze WT Corp.'s reporting practices—analyses that were likely done by

---

[7]     In attempting to downplay the importance of Judge Andrews's order, the Fed gets several things wrong.  The Opposition asserts that "Examiners' 'understanding' of WT Corp.'s practices . . . is an express element of the Government's criminal case" and is not an "express element" for Plaintiffs in the civil case.  D.I. 813 at 7 (citing the conspiracy count of the criminal indictment). The government does not need to prove what examiners understood as an element of conspiracy; it needs to prove, *inter alia*, that the defendants had the requisite intent to defraud relating to the reporting of "past due" loans.  That is also what Plaintiffs need to prove to prevail on their fraud claims.  *See, e.g.*, D.I. 149 ¶¶ 341-352 (securities fraud).  More importantly, Plaintiffs and the government both have to prove that the bank's "past due" loan reporting <u>was actually false</u>.  As discussed above, examiners' knowledge of the bank's practices is highly relevant to the defense of <u>all</u> claims relating to falsity, not just those relating to fraud.  *See supra* Part I.E.2.

[8]     Given the Fed's concern that production of material within the scope of the alleged conspiracy period creates a burden concern, D.I. 813 at 7, WT Corp. will limit its request to the class period, January 18, 2008 to November 1, 2010.  *See* D.I. 149 ¶ 476.

[9]     Given the Fed's concern that requiring production concerning all "affiliates" of WT Corp. creates a potential burden concern, D.I. 813 at 7, WT Corp. will limit its request to WT Corp., Wilmington Trust Company, and Wilmington Trust of Pennsylvania.

Fomunyam's subordinates. *See* D.I. 699 at 27-33 & 688-5 at 17. For example, as WT Corp.

explained in its opening brief, a simple analysis (sorting a few columns in an Excel spreadsheet)

plainly discloses that WT Corp. did not report all of its matured loans as "past due." The Fed's

exam manuals explain that examiners were supposed to conduct this analysis, *see id.*, and an

interview with examiners from the Office of the State Bank Commissioner confirms that this

analysis was actually performed, D.I. 782 at 7. Evidence of this analysis is critical to

undermining Plaintiffs' claims of fraud and falsity. *See supra* Part I.E.2. The Fed does not

contest the heavy weight that these materials carry in the proportionality analysis.[10]

### B.      The Fed has not demonstrated an undue burden

The Fed repeatedly references the large number of pages it has produced in response to

<u>government</u> requests in the criminal case. D.I. 813 at 1, 8. WT Corp. has no control over the

government's requests. The Fed's cooperation with the government in a separate proceeding

should not factor into the Court's decision whether to direct the Fed to comply with <u>WT Corp.'s</u>

---

[10]      The Fed claims it has already produced all files it could locate related to the analyses its exam manuals required its examiners to conduct. D.I. 813 n.11. This is inconsistent with the statements in its declaration. The Fed previously represented to this Court that it has not searched its unofficial files for the exam manual analyses, and has argued that it <u>should not</u> search for those files. *See* D.I. 712 at 10, 12. The Fed also previously represented that all examiner records were contained in the official record. *See* Crim. Action, D.I. 354-2 at 101 & 354-3 at 297. Now, the Fed says it has "discovered" that custodians kept "soft copies of unofficial record materials <u>not previously produced</u>." D.I. 812-2 ¶ 8 (emphasis added). The Fed also now admits that it first searched its unofficial files in response to the criminal subpoena, *id.* ¶¶ 3-4, 7-8, which did not cover the exam manual analyses now sought in WT Corp.'s document request. The declaration also admits that "unofficial record materials" of WT Corp. exams in fact exist. *See id.* ¶ 8. Thus, the analyses required by the exam manuals, which were not included in the official record, have not already been produced by the Fed, because the Fed has never performed a search for that material. At this point, the Fed has only produced material from unofficial files if it was <u>authored</u> by Fomunyam. The Fed's resistance to discovery of similar material authored by other examiners who reported to Fomunyam is a shell game. Critical exam analyses were likely <u>received</u> by Fomunyam and authored by his subordinates, which is precisely what WT Corp.'s requests seek.

requests in this civil case, particularly given the fact that the government's requests apparently did not cover the material WT Corp. now seeks.  For this reason, the Fed's claim of cumulativeness is meritless.  WT Corp.'s argument all along has been that, despite the pages of documents produced by the Fed in the criminal case, virtually none of them relate to the "past due" loan analyses examiners are required to perform.[11]  The vast majority of those materials are simply not responsive to the categories of documents WT Corp. now seeks.  The Fed cannot credibly claim that the requested documents are cumulative when (1) it never received a government request to search for these documents; (2) it has not produced these documents pursuant to a broader government request; and (3) it has acknowledged that it has not searched for them in its unofficial files—including files it now admits exist.  *See* D.I. 712 at 10, 12.

The only legal process that has been successfully imposed on the Fed by any of the civil parties was accomplished by the individual defendants in the criminal case.  That subpoena yielded fewer than fifteen files, including eight e-mails, one draft presentation, and one 200MB word document.  D.I. 812-2 ¶¶ 12-14.

The Fed represents that it spent 100 hours spread over 20 employees to produce those documents.  *Id.* ¶ 5.  That is 5 hours per employee—the equivalent of less than one day of work.  The Fed uses this response time to estimate that it would take "at least hundreds more hours" to respond to WT Corp.'s document request.  *Id.* ¶ 9.  The Fed's basis for that estimate is arbitrary and groundless.  It does not even identify the number of individuals whose files would have to be searched.  WT Corp.'s request is limited to those on the examination team responsible for the

---

[11]     The Fed characterizes WT Corp.'s request for "past due" loan analyses as improperly seeking unretained expert opinions.  D.I. 813 at 9.  This is incorrect.  These document requests, as well as the deposition requests, seek the contemporaneous activities of percipient fact witnesses.  Evidence of what Fed examiners actually did at the relevant time is not expert testimony.

requested categories of documents.  Nevertheless, the Fed baldly asserts that the number of custodians needed to be searched would increase "exponentially."  D.I. 812-2 ¶ 9(a).  Even if the Fed's estimate is taken at face value, it does not explain why devoting the equivalent of several full work days over 20 days (the amount of time it spent preparing its response to the recent criminal subpoena, *id.* ¶ 2) would be unduly burdensome.  Nor does it explain why this burden could not be reduced if it were afforded more time to respond.

The Fed also claims that it did not take "detailed notes" while responding to the criminal subpoena "that might have helped it perform other searches months later."  *Id.* ¶ 10(b).  Ignoring the dubious nature of the claim that lawyers would take no notes to ensure they had properly complied with a criminal subpoena, the supposed explanation of that failure is inconsistent with the facts.  The Fed claims it did not take notes "due to severe time pressures imposed by WT Corp." because it had "less than six full working days to provide responsive materials."  *Id.*  WT Corp. served its subpoena on September 28, 2017.  *Id.*  The Fed never responded to that subpoena; instead, it responded to an identical subpoena made by the individual criminal defendants on October 18, 2017.  *Id.* ¶ 2.  The Fed offers no explanation why it could not take notes over the 20 days it took to respond to the criminal subpoena.

WT Corp. has demonstrated a legitimate need for the requested materials and has crafted narrow requests proportional to that need.  The Fed's unsubstantiated and misleading burden arguments do not justify denying access to these critical materials.

## CONCLUSION

In light of the new circumstances discussed in WT Corp.'s pleadings, the Court should modify its Order to permit the depositions of the four requested Fed employees and permit WT Corp. to obtain a limited subset of documents sought in its subpoena to the Fed.

Dated: February 7, 2018

**VENABLE LLP**


*Daniel A. O'Brien*
Jamie L. Edmonson (Bar No. 4247)
Daniel A. O'Brien (Bar No. 4897)
1201 N. Market Street,Suite 1400
Wilmington, Delaware 19801
302-298-3535 (telephone)
302-298-3550 (facsimile)
jledmonson@venable.com
daobrien@venable.com

James A. Dunbar (*admitted pro hac vice*)
Daniel P. Moylan (*admitted pro hac vice*)
Matthew R. Alsip (*admitted pro hac vice*)
Jessica B. Wack (*admitted pro hac vice*)
Venable LLP
210 West Pennsylvania Avenue – Suite 500
Towson, Maryland 21204
410-494-6200 (telephone)
410-821-0147 (facsimile)
jadunbar@venable.com
dpmoylan@venable.com
mralsip@venable.com
jbwack@venable.com

-   and   -

**WILLIAMS & CONNOLLY LLP**
Tobin J. Romero (*admitted pro hac vice*)
Barry Simon (*admitted pro hac vice*)
Margaret A. Keeley (*admitted pro hac vice*)
Lance A. Wade (*admitted pro hac vice*)
725 Twelfth Street, N.W.
Washington, D.C. 20005
202-434-5000 (telephone)
tromero@wc.com
bsimon@wc.com
mkeeley@wc.com
lwade@wc.com

***Attorneys for Wilmington Trust Corporation***

11

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 7th day of February, 2018, I served a copy of the foregoing *Reply* using the Court's CM/ECF system.

*/s/  Daniel A. O'Brien*
Daniel A. O'Brien (No. 4897)