UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| **IN RE WILMINGTON TRUST SECURITIES LITIGATION**<br><br>This document relates to: ALL ACTIONS | Master File No. 10-cv-0990-ER<br><br>(Securities Class Action) |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                                                     July 9, 2018

Presently before the Court is "Lead Plaintiffs' Unopposed Motion for (I) Preliminary Approval of Settlements and (II) Approval of Notice to the Class." On behalf of themselves and other members of the class, Lead Plaintiffs[1] have agreed to two class action settlements:[2] (i) a settlement with the Wilmington Trust Defendants and Underwriter Defendants, and (ii) a settlement with KPMG LLP ("KPMG"). The settlements will resolve the instant matter, in which Lead Plaintiffs allege that Defendants violated federal securities laws by making false and misleading statements to conceal Wilmington Trust Corporation's ("Wilmington Trust") true financial condition and lending practices. Lead Plaintiffs allege that these statements caused investors to purchase stock at artificially inflated prices and to suffer damages as a result.

---

[1] The United States District Court for the District of Delaware appointed Merced County Employees' Retirement Association, the Coral Springs Police Pension Fund, the St. Petersburg Firefighters' Retirement System, the Pompano Beach General Employers Retirement System, and the Automotive Industries Pension Trust Fund as Lead Plaintiffs, and Bernstein Litowitz Berger & Grossman LLP and Saxena White P.A. as Lead Counsel. ECF No. 26.

[2] The settlements are embodied in two Stipulations: the May 15, 2018 Stipulation and Agreement of Settlement with Wilmington Trust Defendants and Underwriter Defendants, setting forth an agreement to settle claims against them for $200 million; and the May 25, 2018 Stipulation and Agreement of Settlement with KPMG, setting forth an agreement to settle claims against it for $10 million. Pl. Mot. Exs. 1, 2, ECF No. 821.

For the reasons that follow, the Court will grant the motion, preliminarily approve the proposed class action settlements set forth in the Stipulations, and approve the form, content, and manner of giving notice to the Class.

I. BACKGROUND

A. Factual Background and Procedural History

Beginning in November 2010, numerous securities class actions were filed against certain Defendants in the United States District Court for the District of Delaware, alleging violations of federal securities laws. On March 7, 2010, the Court consolidated the various actions under the caption In re Wilmington Trust Securities Litigation pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and appointed Lead Plaintiffs and Lead Counsel.

Lead Plaintiffs allege that Defendants violated the federal securities laws by making false and misleading statements regarding Wilmington Trust in the offering materials for the Offering.[3]

On May 16, 2011, Lead Plaintiffs filed their Consolidated Securities Class Action Complaint. ECF No. 39. The matter was assigned to the Honorable Sue L. Robinson. After several rounds of motions to dismiss and to amend, Lead Plaintiffs filed the operative complaint, their Fourth Amended Consolidated Securities Class Action Complaint ("FAC"), on June 13, 2013. ECF No. 149.

The FAC asserted claims for (i) violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5, (ii) violations of § 20(a) of the Exchange Act, (iii) violations of § 11 of the Securities Act of 1933 (the "Securities Act") in connection

---

[3] The Offering refers to the secondary common stock offering that occurred on February 23, 2010.

with the Offering, (iv) violations of § 12(a)(2) of the Securities Act in connection with the Offering, and (v) violations of § 15 of the Securities Act in connection with the Offering. On March 20, 2013, the Court denied Defendants' motions to dismiss the FAC as to all Defendants except two. ECF No. 185.

On September 12, 2014, Lead Plaintiffs moved for class certification. ECF No. 259. On September 3, 2015, the Court granted Lead Plaintiff's class certification motion in full, appointed Lead Plaintiffs as "Class Representatives," Lead Counsel as "Class Counsel," and Chimicles & Tikellis LLP as "Liaison Counsel" for the Class. ECF No. 406.

On January 15, 2016, the Court approved notice to be disseminated to potential members of the class (the "Class Notice"). ECF No. 429. The Class Notice informed Class Members of (i) the action pending against the Defendants, (ii) the Court's certification of the action as a class action, and (iii) Class Members' right to request exclusion from the Class.[4] Id.

Beginning on March 1, 2016, the Notice of Pendency of Class Action was mailed to potential Class Members, and on March 8, 2016, the Summary Notice of Pendency of Class Action was published in the Investor's Business Daily and transmitted over the PR Newswire.

On June 13, 2017, the Action was reassigned to the Honorable Eduardo C. Robreno of the United States District Court for the Eastern District of Pennsylvania, sitting by designation in the District of Delaware.

At that time, Lead Plaintiffs, Wilmington Trust Defendants and Underwriter Defendants reached an agreement to settle. The agreed-upon settlement stipulated that

---

[4] The Class Notice informed Class Members of the effect of requesting exclusion from the Class and set forth procedures for doing so. The Class Notice also informed Class Members that if they chose to remain in the Class, they would "be bound by all past, present, and future orders and judgments in the Action, whether favorable or unfavorable." The deadline for mailing any requests for exclusion from the Class was June 13, 2016. Eight requests for exclusion were received.

Wilmington Trust would pay $200,000,000 in cash to resolve all claims against Wilmington Trust Defendants and Underwriter Defendants. On May 15, 2018, the parties signed the stipulated settlement.

On May 21, 2018, Lead Plaintiffs and KPMG reached an agreement stipulating that KPMG would pay $10,000,000 to resolve all claims against it. On May 25, 2018, Lead Plaintiffs and KPMG signed the stipulation.

On May 25, 2018, Lead Plaintiffs filed the instant motion for preliminary approval of the settlements and approval of the notice program. ECF No. 821.

      B.      <u>The Proposed Class Action Settlement</u>

The terms of the proposed class action settlement agreement are set forth in the Stipulation and Agreement of Settlement with Wilmington Trust Defendants and Underwriter Defendants, Pl. Mot. Ex. 1, and the Stipulation and Agreement of Settlement with KPMG. Pl. Mot. Ex. 2. The terms are outlined below.

           1.      <u>The Class</u>

The Stipulation and Agreement of Settlements provide for a Class defined as follows:

> All persons or entities who purchased or otherwise acquired Wilmington Trust common stock during the period of January 18, 2008 up to November 1, 2010 (the "Class Period"), including all persons or entities who purchased shares of Wilmington Trust common stock issued in the secondary common stock offering that occurred on or about February 23, 2010 (the "Offering"), and were damaged thereby.[5]

---

[5] Excluded from the Class are: (i) Defendants; (ii) members of the Immediate Family of each Individual Defendant; (iii) any person who was an Officer or director of Wilmington Trust, KPMG, or any of the Underwriter Defendants during the Class Period; (iv) any firm, trust, corporation, Officer, or other entity in which any Defendant has or had a controlling interest; (v) any person who participated in the wrongdoing alleged herein; and (vi) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any such excluded party; provided that Investment Vehicles meeting the criteria as defined

4

Pl. Mot. Ex. 1, at 8-9; Pl. Mot. Ex. 2, at 8-9.

At the hearing, Counsel informed the Court that they had sent out 65,500 notice packets to likely Class Members, which they estimated consisted of about 80% institutional shareholders. Counsel also indicated that approximately 130 million shares were allegedly damaged by Defendants' actions. Of the potential Class Members, eight opted out during the notice period.

### 2. The Proposed Settlement Terms

The settlement agreements provide that Wilmington Trust will pay $200,000,000 in cash and KPMG will pay $10,000,000 in cash to be deposited into separate escrow accounts no later than ten business days after the Court enters an order preliminarily approving the settlement agreements. The Settlement Amounts plus any interest earned thereon comprise the "Settlement Funds." A Class Member who submits a valid Claim Form will be reimbursed a pro rata share of the Settlement Funds in accordance with the proposed Plan of Allocation.

The Plan of Allocation is a method of weighing the claims of Claimants against one another to make pro rata allocations of the Settlement Funds based on the timing of and amount of Wilmington Trust stock each Claimant purchased. The Recognized Loss Amount will be based primarily on the difference between the amount of artificial inflation in the prices of Wilmington Trust common stock at the time of acquisition and at the time of sale, or the difference between the actual purchase price and the sale price.

---

herein shall in no event be excluded. Also excluded from the class are the persons and entities that submitted a request for exclusion from the Class in connection with the Class Notice.

The Settlement Funds shall also be used to pay attorney's fees not to exceed 28% of each Settlement Fund, and expenses and costs of not more than $7,500,000.[6]

In exchange for the benefits provided by the settlement, settlement Class Members agree to release all claims that they alleged or could have alleged in the action.

II. DISCUSSION

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval. Fed. R. Civ. P. 23(e)(2). A district court may approve a settlement agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Id.; In re Nat'l Football League Players Concussion Injury Litig., 775 F.3d 570, 581 (3d Cir. 2014).

The Federal Judicial Center's Manual for Complex Litigation (Fourth) explains that "review of a proposed class action settlement generally involves two hearings." In re Nat'l Football League, 775 F.3d at 581 (quoting Manual for Complex Litigation § 21.632 (4th ed. 2004)). In the first hearing, or "preliminary fairness review," counsel submit the proposed terms of the settlement to the court, and the court makes a "preliminary fairness evaluation." Id. (quoting Manual for Complex Litigation § 21.632).

If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement to

---

[6] At the hearing, Counsel represented that their billing time equaled roughly $59 million, and further, that the attorney's fees recovered would be split evenly between the two lead plaintiffs' firms, Bernstein Litowitz Berger & Grossman, and Saxena White. Counsel also informed the Court that Saxena White will pay approximately 10% of its fees to referral counsel, and that Bernstein Litowitz will pay the fees of liaison counsel, Robert Kriner, Esq. Counsel also indicated that the expenses claimed will include a request for enhancement awards for the five Lead Plaintiffs. In preparation of the final fairness hearing, Counsel will submit supportive documents regarding, inter alia, hours billed by all involved, costs expended, referral fees paid, costs for local and liaison counsel, and documentation of the work performed by Lead Plaintiffs that would support the enhancement awards.

afford them an opportunity to be heard, opt out of the class, or object to the settlement. See Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5); Manual for Complex Litigation § 21.633.

After class members are notified, the court proceeds with the second hearing, the formal "fairness hearing" as required by Rule 23(e)(2). Manual for Complex Litigation § 21.633. If the court ultimately concludes that the settlement is "fair, reasonable, and adequate," the settlement is given final approval. Fed. R. Civ. P. 23(e)(2). In the instant motion, Plaintiffs seek preliminary approval.

      A.      Whether the Proposed Settlement is Fair

In approving a class action settlement, the court must determine whether the proposed settlement is "fair, adequate, and reasonable," as required by Rule 23(e)(2). In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 316-17 (3d Cir. 1998). In deciding whether to grant preliminary approval of a proposed class action settlement, the court is required to determine only whether "'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorney, and whether it appears to fall within the range of possible approval.'" In re Nat'l Football League Players' Concussion Injury Litig., 301 F.R.D. 191, 198 (E.D. Pa. 2014) (quoting Mehling v. N.Y. Life Ins., 246 F.R.D. 467, 472 (E.D. Pa. 2007)); see also 4 Newberg on Class Actions § 13:11 (5th ed.) (providing that "the court is not actually 'approving' the settlement at this first stage but simply 'reviewing' the settlement to determine whether it is reasonable enough to direct notice to the class"). A settlement falls within the "range of possible approval," if there is a conceivable basis for presuming that the standard applied for final approval – fairness, adequacy, and reasonableness – will be satisfied. Mehling, 246 F.R.D. at 472.

In making this preliminary determination, the Court's "first and primary concern is whether there are any obvious deficiencies that would cast doubt on the proposed settlement's fairness." In re Nat'l Football League, 301 F.R.D. at 198. The Court must also consider whether the settlement negotiations occurred at arm's length, whether there was significant investigation of Plaintiff's claims, and whether the proposed settlement provides preferential treatment to certain class members. Id. Ultimately, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975).

Defendants asserted that the maximum recoverable damages would be $590 million and that the settlements offer the Class compensation of 40% of that amount.[7] After fees and expenses are extracted, the remainder of the $210 million cash recovery will be distributed proportionately to Class Members, depending on when the Class Member purchased and/or sold his Wilmington Trust common stock. This pro rata distribution will account for changes in artificial inflation rates and closing prices over the course of the Class Period. The Court finds that, based on the representations by Counsel at the hearing, the settlement agreements facially provide a reasonable and substantial benefit to the class, especially in light of the complexity and likely duration of the case, the expense of bringing it to trial, and the risks to both sides that would be present at trial. See id. at 157. Therefore, the Court finds that there is a reasonable basis for presuming that the fairness, adequacy, and reasonableness of the settlement agreements will be demonstrated during the final approval process. The settlement agreements were reached at arms-length, after substantial discovery, between well-informed and experienced counsel that

---

[7] Counsel also explained that, in order to avoid double recovery, the total maximum amount of damages considered during settlement negotiations was offset by $44 million, which is the amount the government received in a settlement of the related criminal case. As part of the preparation for the final fairness hearing, Counsel will submit an expert report regarding, inter alia, how they calculated the maximum damages that could have been recovered.

were agreed to after extensive fact and expert discovery. Facially, the settlement agreements do not disclose grounds to doubt their fairness or other obvious deficiencies. As a result, the settlement agreements appear proper under Rule 23(e)(2).

        B.        <u>Whether the Notices are Adequate</u>

The Court further concludes that the notices of the class action settlement submitted by the parties are adequate. Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement. Fed. R. Civ. P. 23(e)(1). This "notice is designed to summarize the litigation and the settlement" and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." <u>Prudential</u>, 148 F.3d at 327 (internal quotation marks omitted).

The Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq") was previously approved by the Court to administer the dissemination of the Class Notice, to supervise and administer the notice procedure in connection with the proposed settlements as well as the processing of claims. Lead Plaintiffs describe two forms of notice in their motion. First, they propose a Settlement Notice Packet, consisting of a copy of the Settlement Notice and the Claim Form, to be mailed by first-class mail to members of the Class who may be identified through reasonable effort. Pl. Mot. Ex. 3, ECF No. 821-3 at 19-55. The Claims Administrator will also post copies of the Settlement Notice and the Claim Form on the website for this Action, [www.WilmingtonTrustSecuritiesLitigation.com](http://www.WilmingtonTrustSecuritiesLitigation.com). Second, the Claims Administrator will cause a Summary Settlement Notice to be published once in <u>Investor's Business Daily</u> and to be transmitted once over <u>PR Newswire</u>. <u>Id.</u> at 54-55.

The notices, inter alia, advise the Class Members of the essential terms of the Settlement and how to file a claim or object, provide information regarding Class counsel and

their fees, and provide information regarding the final fairness hearing. The Court has reviewed the notices and concludes that they explain, in plain language, the settlement and the procedures. Accordingly, the Court finds that the settlement notice program satisfies Rule 23(e). The Court further concludes that, given the extensive and detailed previous notice in this case providing the Class Members with the opportunity to exclude themselves from the Class, there is no need under Rule 23(e)(f) to provide another period of time for Class members to request exclusion from the Class.

## III. CONCLUSION

The terms in the settlement agreements, as well as the forms of notice, appear fair, reasonable, and adequate. As a result, the Court will grant Lead Plaintiffs' motion for preliminary approval of the settlements and notice program.

An appropriate order follows.