# EXHIBIT 1

Exhibit 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **IN RE WILMINGTON TRUST SECURITIES LITIGATION** | Master File No. 10-cv-00990-ER |
| | (Securities Class Action) |
| This document relates to: ALL ACTIONS | Hon. Eduardo C. Robreno |

## NOTICE OF (I) PROPOSED SETTLEMENTS AND PLAN OF ALLOCATION; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

**TO:** **All persons or entities who purchased or otherwise acquired Wilmington Trust Corporation ("Wilmington Trust" or the "Bank") common stock during the period January 18, 2008 up to November 1, 2010 (the "Class Period"), including all persons or entities who purchased shares of Wilmington Trust common stock issued in the secondary common stock offering that occurred on or about February 23, 2010 (the "Offering"), and were damaged thereby.**

### _A Federal Court authorized this notice. This is not a solicitation from a lawyer._

**NOTICE OF SETTLEMENTS:** This notice has been sent to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the District of Delaware (the "Court"). Please be advised that the Court-appointed representatives for the Court-certified Class (as defined in ¶ 24 below), Lead Plaintiffs, the Coral Springs Police Pension Fund, the St. Petersburg Firefighters' Retirement System, the Pompano Beach General Employees Retirement System, the Merced County Employees' Retirement Association, and the Automotive Industries Pension Trust Fund (collectively, "Lead Plaintiffs" or "Class Representatives"), on behalf of themselves and the Class, have reached two proposed all-cash settlements in the above-captioned securities class action (the "Action"), as follows: (i) a $200 million settlement with the Wilmington Trust Defendants[1] and Underwriter Defendants[2] (the "Wilmington Trust/Underwriter Settlement") and (ii) a $10 million settlement with KPMG LLP ("KPMG") (the "KPMG Settlement," and together with the Wilmington

---

[1] The "Wilmington Trust Defendants" consist of (i) defendant Wilmington Trust and (ii) defendants Ted T. Cecala, David R. Gibson, Robert V.A. Harra, Jr., William B. North, Kevyn N. Rakowski, Carolyn S. Burger, R. Keith Elliott, Donald E. Foley, Gailen Krug, Stacey J. Mobley, Michele M. Rollins, Oliver R. Sockwell, Robert W. Tunnell, Jr., Susan D. Whiting, Rex L. Mears, and Louis Freeh (collectively, the "Individual Defendants").

[2] The "Underwriter Defendants" consist of defendants J.P. Morgan Securities LLC, formerly known as J.P. Morgan Securities Inc. and named in the Complaint as "J.P. Morgan Securities," and Keefe, Bruyette & Woods, Inc.

Trust/Underwriter Settlement, the "Settlements").[3]    If the Settlements are approved, they will resolve all claims asserted in the Action against Defendants and bring the Action to an end.[4]

This notice is directed to you in the belief that you may be a member of the Class.  If you do not meet the Class definition, or if you previously excluded yourself from the Class in connection with the Notice of Pendency of Class Action that was mailed to potential Class Members beginning on March 1, 2016 (the "Class Notice") and are listed on Appendix 1 to the Stipulations, this notice does not apply to you.

**PLEASE READ THIS NOTICE CAREFULLY. It explains important rights you may have, including the possible receipt of cash from the Settlements.  If you are a member of the Class, your legal rights will be affected whether or not you act.**

**If you have any questions about this notice, the proposed Settlements, or your eligibility to participate in the Settlements, please DO NOT contact the Court, the Clerk's office, any of the Defendants, M&T Bank, or their counsel.  All questions should be directed to Lead Counsel or the Claims Administrator (*see* ¶ 85 below).**

1.    **Description of the Action and the Class:**  This notice relates to Settlements of claims in a pending securities class action brought by investors alleging that Defendants violated the federal securities laws by, among other things, making false and misleading statements regarding Wilmington Trust or were statutorily liable for false and misleading statements in the offering materials for the Offering.  A more detailed description of the Action is set forth in ¶¶ 11-23 below.  If the Court approves the proposed Settlements, the claims asserted in the Action against the respective Settling Defendants will be dismissed with prejudice and members of the Class (defined in ¶ 24 below) will settle and release all Released Plaintiffs' Claims (defined in ¶ 30 below) against the respective Settling Defendants' Releasees (defined in ¶ 32 below).

2.    **Statement of the Class's Recovery:**  Subject to Court approval, Lead Plaintiffs, on behalf of themselves and the Class, have agreed to settle the Action in exchange for settlement payments totaling $210,000,000 in cash.  Specifically, Lead Plaintiffs have agreed to settle with the Wilmington Trust Defendants and Underwriter Defendants for $200,000,000 in cash (the "Wilmington Trust/Underwriter Defendant Settlement Amount") and to settle with KPMG for a payment of $10,000,000 in cash (the "KPMG Settlement Amount" and together with the Wilmington Trust/Underwriter Defendant Settlement Amount, the "Settlement Amounts").  The respective Net Settlement Funds (*i.e.*, the respective Settlement Amounts plus any and all interest earned thereon (the "Settlement Funds") less (i) any Taxes, (ii) any and all Notice and Administration Costs, (iii) any attorneys' fees awarded by the Court; (iv) any Litigation Expenses awarded by the Court; and (v) any other costs or fees approved by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will

---

[3] The Wilmington Trust Defendants, Underwriter Defendants, and KPMG are collectively referred to as the "Defendants" or "Settling Defendants".

[4] The terms and provisions of the Settlements are contained in the: (i) Stipulation and Agreement of Settlement with Wilmington Trust Defendants and Underwriter Defendants dated May 15, 2018, entered into by and among Lead Plaintiffs, the Wilmington Trust Defendants, M&T Bank (an affiliate company to Wilmington Trust), and the Underwriter Defendants (the "Wilmington Trust/Underwriter Stipulation"); and (ii) Stipulation and Agreement of Settlement with KPMG dated May 25, 2018, entered into by and between Lead Plaintiffs and KPMG (the "KPMG Stipulation" and together with the Wilmington Trust/Underwriter Stipulation, the "Stipulations").  The Stipulations can be viewed at www.WilmingtonTrustSecuritiesLitigation.com.  Any capitalized terms used in this notice that are not otherwise defined shall have the meanings given to them in the Stipulations.

determine how the Net Settlement Funds shall be allocated among members of the Class. The proposed plan of allocation (the "Plan of Allocation") is set forth in ¶¶ 47-69 below.

3. **Estimate of Average Amount of Recovery Per Share:** Based on Lead Plaintiffs' damages expert's estimates of the number of shares of Wilmington Trust common stock purchased during the Class Period that may have been affected by the conduct alleged in the Action, and assuming that both Settlements are approved and that all Class Members elect to participate in the Settlements, the estimated average recovery (before the deduction of any Court-approved fees, expenses, and costs as described below) per eligible share would be $1.61. Class Members should note, however, that the foregoing average recovery per share is only an estimate. Some Class Members may recover more or less than this estimated amount depending on, among other factors, the price at which they purchased shares of Wilmington Trust common stock, whether they sold their shares of Wilmington Trust common stock, and the total number and value of valid Claim Forms submitted. Distributions to Class Members will be made based on the Plan of Allocation set forth in this notice (*see* pages __-__ below) or such other plan of allocation as may be ordered by the Court.

4. **Average Amount of Damages Per Share:** The Settling Parties do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiffs were to prevail in the Action. Among other things, the Settling Defendants do not agree with the assertion that they violated the federal securities laws or that any damages were suffered by any members of the Class as a result of their conduct.

5. **Attorneys' Fees and Expenses Sought:** Lead Counsel, which have been prosecuting the Action on a wholly contingent basis since its inception in 2010, have not received any payment of attorneys' fees for their representation of the Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action. Court-appointed Lead Counsel – Bernstein Litowitz Berger & Grossmann LLP and Saxena White P.A. – will apply to the Court for an award of attorneys' fees in an amount not to exceed 28% of each Settlement Fund. Lead Counsel will also apply for reimbursement of Litigation Expenses in an amount not to exceed $7,500,000, which amount may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class. Class Members are not personally liable for any such fees or expenses. Assuming both Settlements are approved, if the Court approves Lead Counsel's fee and expense application, the estimated average cost per eligible share of Wilmington Trust common stock would be $0.51. **Please note that this amount is only an estimate.**

6. **Identification of Counsel Representatives and Further Information:** Lead Plaintiffs and the Class are represented by Hannah Ross, Esq. of Bernstein Litowitz Berger & Grossmann LLP, 1251 Avenue of the Americas, 44th Floor, New York, NY 10020, 1-800-380-8496, blbg@blbglaw.com, and Joseph E. White, III, Esq. of Saxena White P.A., 150 E. Palmetto Park Rd., Ste. 600, Boca Raton, FL 33432, 561-394-3399, settlements@saxenawhite.com. Further information regarding the Action, the Settlements, and this notice may be obtained by contacting Lead Counsel, or the Court-appointed Claims Administrator at Wilmington Trust Securities Litigation, c/o Epiq Class Action & Claims Solutions, Inc., P.O. Box 2838, Portland, OR 97208-2838.

7. **Reasons for the Settlements:** Lead Plaintiffs' principal reason for entering into the Settlements is the substantial immediate cash benefits for the Class without the risk or the delays inherent in further litigation. Moreover, the substantial cash benefits provided under the Settlements must be considered against the significant risk that a smaller recovery – or indeed no recovery at all – against Defendants might be achieved after further contested motions, a trial of the Action, and the likely appeals that would follow a trial. This process could last several additional years. Defendants, who deny all allegations of wrongdoing or liability whatsoever, are entering into their respective Settlements to eliminate the uncertainty, burden, and expense of further protracted litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENTS | |
|---|---|
| **SUBMIT A CLAIM FORM POSTMARKED NO LATER THAN _____, 2018.** | This is the only way to be eligible to receive a payment from the Net Settlement Funds. If you are a Class Member, you will be bound by the Settlements as approved by the Court and you will give up any and all Released Plaintiffs' Claims (defined in ¶ 30 below) that you have against Defendants and the other Settling Defendants' Releasees (defined in ¶ 32 below), so it is in your interest to submit a Claim Form. |
| **OBJECT TO THE SETTLEMENTS BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2018.** | If you do not like the proposed Settlements, the proposed Plan of Allocation, and/or the request for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court and explain why you do not like them. You cannot object to the Settlements, the Plan of Allocation, or the fee and expense request unless you are a Class Member. |
| **GO TO A HEARING ON _____, 2018 AT __:__ __.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2018.** | Filing a written objection and notice of intention to appear by _____, 2018 allows you to speak in Court, at the discretion of the Court, about the fairness of the proposed Settlements, the proposed Plan of Allocation, and/or the request for attorneys' fees and reimbursement of Litigation Expenses. If you submit a written objection, you may (but you do not have to) attend the hearing and, at the discretion of the Court, speak to the Court about your objection. |
| **DO NOTHING.** | If you are a member of the Class and you do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement Funds. You will, however, remain a member of the Class, which means that you give up your right to sue about the claims that are resolved by the Settlements and you will be bound by any judgments or orders entered by the Court in the Action. |

**The rights and options set forth above -- and the deadlines to exercise them -- are explained in this notice.**

| WHAT THIS NOTICE CONTAINS |
|---|

Why Did I Get This Notice? ................................................................ Page __
What Is This Case About? ................................................................... Page __
How Do I Know If I Am Affected By The Settlements? Who Is Included In The Class? ... Page __
What Are Lead Plaintiffs' Reasons For The Settlements? ............................ Page __
What Might Happen If There Were No Settlements? ................................... Page __
How Are Class Members Affected By The Settlements? ............................... Page __
How Do I Participate In The Settlements? What Do I Need To Do? ................... Page __
How Much Will My Payment Be? What Is The Proposed Plan of Allocation? ........... Page __
What Payment Are The Counsel For The Class Seeking? How Will The Lawyers Be Paid? . Page __

4

When And Where Will The Court Decide Whether To Approve The Settlements?
   Do I Have To Come To The Hearing?  May I Speak At The Hearing If I Don't
   Like The Settlements?                Page __
What If I Bought Wilmington Trust Shares On Someone Else's Behalf?     Page __
Can I See The Court File?  Whom Should I Contact If I Have Questions?     Page __

| WHY DID I GET THIS NOTICE? |
|:---:|

8.   The Court directed that this notice be mailed to you because you or someone in your family or an investment account for which you serve as a custodian may have purchased or otherwise acquired Wilmington Trust common stock during the Class Period (*i.e.*, the period January 18, 2008 up to November 1, 2010).  The Court has directed us to send you this notice because, as a potential Class Member, you have a right to know about your options before the Court rules on the proposed Settlements.  Additionally, you have the right to understand how this class action lawsuit and the Settlements will affect your legal rights.  If the Court approves the Settlements, and the Plan of Allocation (or some other plan of allocation), the claims administrator selected by Lead Plaintiffs and approved by the Court will make payments pursuant to the Settlements after any objections and appeals are resolved.

9.   The purpose of this notice is to inform you of the terms of the proposed Settlements, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlements, the proposed Plan of Allocation, and the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Fairness Hearing").  *See* ¶ 73 below for details about the Settlement Fairness Hearing, including the date and location of the hearing.

10.   The issuance of this notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlements.  If the Court approves the Settlements and a plan of allocation, then payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing.  Please be patient, as this process can take some time to complete.

| WHAT IS THIS CASE ABOUT? |
|:---:|

11.  This case arises out of allegations that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933.  Among other things, the Action alleges that, during the Class Period, the Wilmington Trust Defendants engaged in a broad conspiracy to fraudulently conceal Wilmington Trust's true financial condition by representing to the investing public that Wilmington Trust managed risk conservatively.  Specifically, Lead Plaintiffs allege that, among other things, unbeknownst to investors, (i) the Bank's senior executives manipulated the loan loss reserve by concealing hundreds of millions of dollars in past due and nonperforming loans; (ii) the Bank's senior executives fraudulently extended $1.74 billion of matured and past due loans; (iii) the Bank regularly engaged in fraudulent underwriting practices by lending money in violation of the Bank's underwriting policies; (iv) the Bank's officers fraudulently manipulated the Bank's asset review process by understaffing and overriding the credit risk function; and (v) in 2009, the Federal Reserve issued a Memorandum of Understanding identifying these fundamental failures at the Bank.  Lead Plaintiffs allege that Defendants misled the investing public by fraudulently concealing Wilmington Trust's true financial condition and lending practices, which caused Class Members to purchase their stock at artificially inflated prices, and to suffer damages when the truth was revealed before the stock market opened on November 1, 2010.

12.  The Action was commenced in November 2010.  On March 7, 2011, the Court issued an Order that (i) consolidated all related actions under the caption, *In re Wilmington Trust Securities Litigation*, Master File

No. 10-cv-00990-LPS; (ii) appointed the Coral Springs Police Pension Fund, the St. Petersburg Firefighters' Retirement System, the Pompano Beach General Employees Retirement System, the Merced County Employees' Retirement Association, and the Automotive Industries Pension Trust Fund as Lead Plaintiffs pursuant to the PSLRA; and (iii) approved Lead Plaintiffs' selection of Bernstein Litowitz Berger & Grossmann LLP and Saxena White P.A. as Lead Counsel for the Class.

13. Lead Plaintiffs filed an Amended Complaint on May 16, 2011. On March 29, 2012, the Court dismissed the May 2011 complaint on largely non-substantive grounds. Lead Plaintiffs filed a Second Amended Complaint on May 10, 2012.

14. Later in 2012, before the Court could rule on Defendants' fully briefed motion to dismiss the Second Amended Complaint, documents were publicly released in connection with the criminal prosecution of one of the Bank's former clients. Those documents provided new information concerning the Bank's most fraudulent banking practices, and caused Lead Counsel to further amend the allegations and file a Third Amended Complaint on January 9, 2013. Lead Counsel fully briefed Defendants' motions to dismiss the Third Amended Complaint.

15. However, before those motions could be decided, two of Wilmington Trust's most senior lending officers pled guilty to bank fraud. The information provided by these individuals in their guilty pleas provided additional evidence of misconduct. Based upon this and other information coming to light, Lead Counsel amended the pleadings and filed a Fourth Amended Complaint on June 13, 2013, this time adding claims against the Bank's former auditor KPMG. Motions to dismiss were briefed yet again. On March 20, 2014, the Court rejected Defendants' motions to dismiss the Fourth Amended Complaint.

16. In October 2014, once Lead Counsel served the first round of notices to take fact depositions, the United States Attorney for the District of Delaware ("USAO") moved to intervene in the action and stay all depositions to allow a USAO investigation into the same conduct as alleged in Lead Plaintiffs' complaints. While the Court never ruled on the motion, its pendency caused discovery with regard to the taking of fact depositions to be stayed until December 2016. In May 2015, the USAO indicted Wilmington Trust and four of the individual defendants (David R. Gibson, Robert V.A. Harra, Jr., William B. North, and Kevyn N. Rakowski) in connection with the conduct alleged in Lead Plaintiffs' Complaint in *U.S. v. Wilmington Trust Corporation*, No. 15-cr-00023 (D. Del.).

17. Despite the stay of fact depositions, the parties continued producing and reviewing documents and Lead Plaintiffs moved to certify the Class on September 12, 2014. The Court granted the motion to certify the class on September 3, 2015. In connection with discovery, counsel for the parties completed extensive class, fact, and expert discovery, which included 39 depositions, the production and review of more than 12.7 million pages of documents, the preparation of hundreds of pages of written discovery, and the litigation of numerous discovery motions.

18. On January 15, 2016, the Court granted Lead Plaintiffs' motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for approval of notice of pendency of the Action and entered an Order approving the form, content, and method of notice to the Class (the "Notice Order"). Among other things, the Notice Order found that the form, content, and method of notice of pendency of the Action met the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled to receive notice.

19. Beginning on March 1, 2016, the Notice of Pendency of Class Action was mailed to potential Class Members, and on March 8, 2016, the Summary Notice of Pendency of Class Action was published in the *Investor's Business Daily* and transmitted over the *PR Newswire*.

20. The Class Notice provided Class Members with the opportunity to request exclusion from the Class, explained that right, and set forth the deadline and procedures for doing so. The Class Notice stated that it would

be within the Court's discretion whether to permit a second opportunity to request exclusion if there were a settlement. The Class Notice informed Class Members that if they chose to remain a member of the Class, they would "be bound by all past, present and future orders and judgments in the Action, whether favorable or unfavorable." The deadline for requesting exclusion from the Class was June 13, 2016. Eight (8) requests for exclusion from the Class were received in connection with the dissemination of the Class Notice, as listed on Appendix 1 to the Stipulations.[5]

21.  The criminal trial against Wilmington Trust and the four individual defendants was set to begin on October 10, 2017. That morning, Wilmington Trust and the USAO announced that they had reached a civil settlement whereby they agreed that all criminal charges against Wilmington Trust would be dismissed with prejudice, and Wilmington Trust would pay $44 million to resolve civil claims against the Bank. At the individual defendants' request, the criminal trial was postponed again, setting the trial date for March 12, 2018.

22.  Following extensive arm's-length negotiations, Lead Plaintiffs, the Wilmington Trust Defendants, M&T Bank, and the Underwriter Defendants reached an agreement in principle to settle for $200,000,000 in cash, which was memorialized in a settlement term sheet executed on April 9, 2018. On May 3, 2018, while the settling parties where finalizing the terms of the Individual/Underwriter Settlement, the jury in the criminal trial found the four individual defendants guilty of all charges, including charges of securities fraud, conspiracy, and making false statements to federal regulators. On May 15, 2018, the Wilmington Trust settling parties entered into the Wilmington Trust Stipulation, which sets forth the final terms and conditions of the Wilmington Trust/Underwriter Settlement. Following further negotiations, Lead Plaintiffs and KPMG reached an agreement in principle to settle for $10,000,000 in cash, the final terms and conditions of which are set forth in the KPMG Stipulation. The Stipulations can be viewed at www.WilmingtonTrustSecuritiesLitigation.com.

23.  On _____, 2018, the Court preliminarily approved the Settlements, authorized this notice to be disseminated to potential Class Members, and scheduled the Settlement Fairness Hearing to consider whether to grant final approval of the Settlement.

---

**HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENTS?**
**WHO IS INCLUDED IN THE CLASS?**

---

24.  If you are a member of the Class who has not previously sought exclusion from the Class in connection with the Class Notice, you are subject to the Settlement. The Class certified by Order of the Court on September 3, 2015 consists of:

> all persons or entities who purchased or otherwise acquired Wilmington Trust common stock during the period January 18, 2008 up to November 1, 2010 (the "Class Period"), including all persons or entities who purchased shares of Wilmington Trust common stock issued in the secondary common stock offering that occurred on or about February 23, 2010 (the "Offering"), and were damaged thereby.

Excluded from the Class are: (i) Defendants; (ii) members of the Immediate Family of each Individual Defendant; (iii) any person who was an Officer or director of Wilmington Trust, KPMG, or any of the Underwriter Defendants during the Class Period; (iv) any firm, trust, corporation, Officer, or other entity in which any Defendant has or had a controlling interest; (v) any person who participated in the wrongdoing alleged herein; and (vi) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any such excluded

---

[5] Pursuant to its Order Preliminarily Approving Settlements and Providing for Notice ("Preliminary Approval Order") dated _____, 2018, the Court is not permitting Class Members a second opportunity to exclude themselves from the Class in connection with the Settlements.

party, *provided, however,* that any investment company, separately managed account or pooled investment fund, including but not limited to mutual fund families, exchange-traded funds, fund of funds and hedge funds, retirement accounts and employee benefit plans in which any Underwriter Defendant has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, as well as any trust, trust account, custodial account, and any other accounts controlled by a Settling Defendant in a fiduciary capacity rather than for the Settling Defendant's own benefit (any such entity or fund, an "Investment Vehicle"), shall in no event be excluded; and *further provided, however,* that (i) any Claim Form submitted by an Investment Vehicle shall be limited to purchases or acquisitions made on behalf of or for the benefit of persons or entities other than persons or entities that are excluded from the Class by definition, and (ii) the definition of Investment Vehicle shall not bring into the Class any of the Settling Defendants. Also excluded from the Class are the persons and entities that submitted a request for exclusion from the Class in connection with the Class Notice as set forth on Appendix 1 to the Stipulations.

**PLEASE NOTE: RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENTS.**

**IF YOU ARE A CLASS MEMBER AND YOU WISH TO BE ELIGIBLE TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE SETTLEMENTS, YOU ARE REQUIRED TO SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN POSTMARKED NO LATER THAN _____, 2018.**

| **WHAT ARE LEAD PLAINTIFFS' REASONS FOR THE SETTLEMENTS?** |
| --- |

25. Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. They recognize, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through expert discovery, summary judgment, trial, and appeals, as well as the very substantial risks they would face in establishing liability at trial. For example, in addition to credible arguments concerning liability and scienter for the entire Class Period alleged in the Action, Defendants would have likely argued that Lead Plaintiffs cannot establish that Defendants' alleged false and misleading statements and omissions caused any investor losses, or at least did not cause all of the losses that Lead Plaintiffs allege. Specifically, Defendants would likely argue that the drops in the price of Wilmington Trust common stock that Lead Plaintiffs asserted were caused by Defendants' alleged fraud did not relate to the disclosure of any new information corrective of— or the materialization of any risks concealed by—Defendants' alleged false statements and omissions. While Lead Plaintiffs believe they had compelling arguments in response, Lead Plaintiffs acknowledge that a serious risk exists that Defendants' arguments would persuade the Court to reduce dramatically, or even eliminate altogether, the damages that it could recover from Defendants.

26. In light of these risks, the amount of the Settlements, and the immediacy of recovery to the Class, Lead Plaintiffs and Lead Counsel believe that the proposed Settlements are fair, reasonable, and adequate, and in the best interests of the Class. Lead Plaintiffs and Lead Counsel believe that the Settlements, which total $210 million in cash (less the various deductions described in this notice), individually and collectively provide substantial benefits to the Class now as compared to the risk that the claims asserted in the Action would produce a smaller, or zero, recovery after trial and appeals, possibly years in the future.

27. Defendants have denied all claims asserted against them in the Action and deny having engaged in any wrongdoing or violation of law of any kind whatsoever. Defendants have agreed to the respective Settlements solely to eliminate the burden and expense of continued litigation. Accordingly, the Settlements may not be construed as an admission of any wrongdoing by Defendants.

| WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENTS? |
| --- |

28.   If there were no Settlements and Lead Plaintiffs failed to establish any essential legal or factual element of their claims against Defendants, neither Lead Plaintiffs nor the other members of the Class would recover anything from Defendants.  Also, if Defendants were successful in proving any of their defenses at trial or on appeal, the Class could recover less than the amount provided in the respective Settlements, or nothing at all.

| HOW ARE CLASS MEMBERS AFFECTED BY THE SETTLEMENTS? |
| --- |

29.   If you are a Class Member, you will be bound by any orders issued by the Court.  As to each Settlement that is approved, the Court will enter a judgment (the "Judgment").  The Judgment will dismiss with prejudice the claims against the applicable Settling Defendant(s) and will provide that, upon the Effective Date of each Settlement, Lead Plaintiffs and each of the other Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, will have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim (as defined in ¶ 30 below) against the applicable Settling Defendants' Releasees (as defined in ¶ 32 below), and will forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the applicable Settling Defendants' Releasees.

30.   "Released Plaintiffs' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Lead Plaintiffs or any other member of the Class (i) asserted in the Complaint, or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase or acquisition of Wilmington Trust common stock during the Class Period.[6]

31.   "Unknown Claims" means any Released Plaintiffs' Claims which Lead Plaintiffs or any other Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims which, as applicable, the Wilmington Trust Defendants, the Underwriter Defendants, M&T, and KPMG does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the applicable Settlement.  With respect to any and all Released Claims, the applicable Settling Parties stipulate and agree that, upon the Effective Date of the applicable Settlement, Lead Plaintiffs and, as applicable, the Wilmington Trust Defendants, the Underwriter Defendants, M&T, and KPMG shall expressly waive, and each of the other Class Members shall be deemed to have waived, and by operation of the Judgment or the Alternate Judgment, if applicable, shall have expressly waived, any and all provisions, rights, and benefits conferred by any

---

[6] Released Plaintiffs' Claims do not include (i) with respect to the Wilmington Trust/Underwriter Settlement, any claims asserted against KPMG, and with respect to the KPMG Settlement, any claims asserted against the Wilmington Trust Defendants or Underwriter Defendants; (ii) any claims to any funds paid to the United States Government as part of a settlement or judgment in *United States v. Wilmington Trust Corp.*, *et al.*, No. 15-cr-23-RGA (D. Del.) or settlement of Securities and Exchange Commission Administrative Proceeding No. 3-16098; (iii) any claims relating to the enforcement of the Settlements; (iv) any claims of the persons and entities that submitted a request for exclusion from the Class in connection with the Class Notice as set forth on Appendix 1 to the Stipulations; and (v) if and only if the Court permits a second opportunity for Class Members to request exclusion from the Class, any claims of any person or entity that submits a request for exclusion from the Class in connection with the Settlement Notice and whose request is accepted by the Court (the "Excluded Plaintiffs' Claims").

law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiffs and, as applicable, the Wilmington Trust Defendants, the Underwriter Defendants, M&T, and KPMG acknowledge, and each of the other Class Members shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the applicable Settlement.

32. "Settling Defendants' Releasees" or "Settling Defendant's Releasees" means as to the respective Settlements:

> Wilmington Trust/Underwriter Settlement:   the Wilmington Trust Defendants, the Underwriter Defendants, Thomas DuPont, David P. Roselle, and M&T, and their respective employees, officers, directors, agents, counsel, insurers, affiliates, parents, predecessors, successors, assigns, heirs, executors, administrators, and legal and/or authorized representatives.

> KPMG Settlement:  KPMG and its current and former employees, officers, principals, partners, directors, and agents, and its counsel, insurers, affiliates, parents, predecessors, successors, assigns, heirs, executors, administrators, and legal and/or authorized representatives.

33. The Judgments will also provide that, upon the Effective Date of each Settlement, each of the applicable Settling Defendants, and with respect to the Wilmington Trust/Underwriter Settlement, Thomas DuPont, David P. Roselle, and M&T, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, will have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Settling Defendants' Claim (as defined in ¶ 34 below) against Lead Plaintiffs and the other Plaintiffs' Releasees (as defined in ¶ 35 below), and will forever be barred and enjoined from prosecuting any or all of the Released Settling Defendants' Claims against any of the Plaintiffs' Releasees.

34. "Released Settling Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against the Settling Defendants.[7]

35. "Plaintiffs' Releasees" means Lead Plaintiffs, and their respective counsel, and all other Class Members, and Lead Plaintiffs' and all other Class Members' respective employees, officers, directors, agents, counsel, insurers, affiliates, parents, predecessors, successors, assigns, heirs, executors, administrators and legal and/or authorized representatives.

---

[7] Released Settling Defendants' Claims do not include: (i) any claims relating to the enforcement of the Settlements; (ii) any claims against the persons and entities that submitted a request for exclusion from the Class in connection with the Class Notice as set forth on Appendix 1 to the Stipulations; and (iii) if and only if the Court permits a second opportunity for Class Members to request exclusion from the Class, any claims against any person or entity that submits a request for exclusion from the Class in connection with the Settlement Notice and whose request is accepted by the Court (the "Excluded Settling Defendants' Claims").

## HOW DO I PARTICIPATE IN THE SETTLEMENTS?  WHAT DO I NEED TO DO?

36.    To be eligible for a payment from the proceeds of the Settlements, you must be a member of the Class and you must timely complete and return the Claim Form with adequate supporting documentation **postmarked no later than _____, 2018**. A Claim Form is included with this notice, or you may obtain one from the website maintained by the Claims Administrator for the Action, www.WilmingtonTrustSecuritiesLitigation.com, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-866-800-6639 or by emailing the Claims Administrator at info@WilmingtonTrustSecuritiesLitigation.com.  Please retain all records of your ownership of and transactions in Wilmington Trust common stock, as they may be needed to document your Claim.  If you previously requested exclusion from the Class in connection with Class Notice or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Funds.

37.    Participants in and beneficiaries of any employee retirement and/or benefit plan ("Employee Plan") should NOT include any information relating to shares of Wilmington Trust common stock purchased/acquired through an Employee Plan in any Claim Form they submit in this Action.  They should include ONLY those shares of Wilmington Trust common stock purchased/acquired during the Class Period outside of an Employee Plan. Claims based on any Employee Plan(s)' purchases/acquisitions of eligible Wilmington Trust common stock during the Class Period may be made by the Employee Plan(s)' trustees.  To the extent any of the Defendants or any of the other persons or entities excluded from the Class are participants in an Employee Plan(s), such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from the Settlements by such Employee Plan(s).

38.    Unless the Court otherwise orders, any Class Member who fails to submit a Claim Form postmarked on or before _____, 2018 shall be fully and forever barred from receiving payments pursuant to the Settlements but will in all other respects remain a Class Member and be subject to the provisions of the Stipulations, including the terms of any Judgment(s) entered and the releases given.  This means that each Class Member releases the Released Plaintiffs' Claims (as defined in ¶ 30 above) against the applicable Settling Defendants' Releasees (as defined in ¶ 32 above) and will be barred and enjoined from filing, prosecuting, or pursuing any of the Released Plaintiffs' Claims against any of the applicable Settling Defendants' Releasees whether or not such Class Member submits a Claim Form.

## HOW MUCH WILL MY PAYMENT BE?

39.    At this time, it is not possible to make any determination as to how much any individual Class Member may receive from the Settlements.

40.    Pursuant to the Settlements, Wilmington Trust has agreed to pay $200,000,000 in cash and KPMG has agreed to pay $10,000,000 in cash.  The Settlement Amounts have been deposited into separate escrow accounts. The respective Settlement Amounts plus any interest earned thereon are referred to as the "Settlement Funds."  If the Settlements are approved by the Court and the Effective Date occurs, the respective "Net Settlement Funds" (that is, the respective Settlement Funds less (i) any Taxes, (ii) any and all Notice and Administration Costs, (iii) any attorneys' fees awarded by the Court; (iv) any Litigation Expenses awarded by the Court; and (v) any other costs or fees approved by the Court) will be distributed to Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve. The Court may revise the plan of allocation without notifying the Class.  Any modified plan of allocation will be posted on the website for the Action, www.WilmingtonTrustSecuritiesLitigation.com.

41.   The Net Settlement Funds will not be distributed unless and until the Court has approved the Settlements and a plan of allocation, and the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.

42.   Neither the Settling Defendants, M&T, nor any other person or entity that paid any portion of the Settlement Amount on their behalves are entitled to get back any portion of the respective Settlement Funds once the Court's order or judgment approving the relevant Settlement become Final.  Settling Defendants shall not have any liability, obligation, or responsibility for the administration of the Settlements, the disbursement of the Net Settlement Funds, or the plan of allocation.

43.   Approval of the Settlements is independent from approval of a plan of allocation.  Any determination with respect to a plan of allocation will not affect the Settlements, if approved.

44.   The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Class Member.

45.   Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its Claim Form.

46.   Only Class Members or persons authorized to submit a Claim on their behalf will be eligible to share in the distribution of the Net Settlement Funds.  Persons and entities that are excluded from the Class by definition or that previously excluded themselves from the Class pursuant to request in connection with the Class Notice will not be eligible to receive a distribution from the Net Settlement Funds and should not submit Claim Forms.

## PROPOSED PLAN OF ALLOCATION

47.   The objective of the Plan of Allocation is to equitably distribute the Net Settlement Funds to those Class Members who suffered economic losses as a result of the alleged violations of the federal securities laws.  The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Class Members might have been able to recover after a trial.  Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlements.  The computations under the Plan of Allocation are only a method to weigh the claims of Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Funds.

48.   In developing the Plan of Allocation, Lead Plaintiffs' damages expert calculated the estimated amount of artificial inflation in the per share closing price of Wilmington Trust common stock which allegedly was proximately caused by Defendants' alleged false and misleading statements and material omissions.

49.   In calculating the estimated artificial inflation allegedly caused by Defendants' alleged misrepresentations and omissions, Lead Plaintiffs' damages expert considered price changes in Wilmington Trust common stock in reaction to certain public announcements allegedly revealing the truth concerning Defendants' alleged misrepresentations and material omissions, adjusting for price changes that were attributable to market or industry forces.  The estimated artificial inflation in Wilmington Trust common stock is stated in Tables A-1 and A-2 at the end of this Notice.

50.   In order to have recoverable damages, the disclosure of the allegedly misrepresented information must be the cause of the decline in the price of Wilmington Trust common stock.  In this case, Lead Plaintiffs allege that Defendants made false statements and omitted material facts during the period between January 18, 2008 and October 31, 2010, inclusive, which had the effect of artificially inflating the price of Wilmington Trust common stock.  Lead Plaintiffs further allege that corrective information was released to the market on:  January 29, 2010 (before the opening of trading), April 23, 2010 (before the opening of trading), June 3, 2010 (after the close of trading), June 23, 2010 (before the opening of trading), July 23, 2010 (before the opening of trading), and November 1, 2010 (before the opening of trading), which partially removed the artificial inflation from the price

of Wilmington Trust common stock on:  January 29, 2010, April 23, 2010, June 4, 2010, June 23-24, 2010, July 23, 2010, and November 1, 2010.[8]

51.   Recognized Loss Amounts are based primarily on the difference in the amount of alleged artificial inflation in the prices of Wilmington Trust common stock at the time of purchase or acquisition and at the time of sale or the difference between the actual purchase price and sale price.  Accordingly, in order to have a Recognized Loss Amount under the Plan of Allocation, a Class Member who or which purchased or otherwise acquired Wilmington Trust common stock prior to the first corrective disclosure, which occurred prior to the opening of trading on January 29, 2010, must have held his, her, or its shares of Wilmington Trust common stock through at least the opening of trading on that day.  A Class Member who purchased or otherwise acquired Wilmington Trust common stock from the opening of trading on January 29, 2010 through and including October 31, 2010, must have held those shares through at least one of the later dates where new corrective information was released to the market and partially removed the artificial inflation from the price of Wilmington Trust common stock.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

52.   Based on the formula stated below, a "Recognized Loss Amount" will be calculated for each purchase or acquisition of Wilmington Trust common stock that is listed on the Claim Form and for which adequate documentation is provided.  If a Recognized Loss Amount calculates to a negative number or zero under the formula below, that number will be zero.

53.   For each share of Wilmington Trust common stock purchased or otherwise acquired during the Class Period (*i.e.*, during the period from January 18, 2008 through and including the close of trading on October 31, 2010), and:

(i)   Sold before the opening of trading on January 29, 2010, the Recognized Loss Amount will be $0.00;

(ii)   Sold from the opening of trading on January 29, 2010 through and including the close of trading on October 31, 2010, the Recognized Loss Amount will be ***the lesser of***: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A-1 *minus* the amount of artificial inflation per share on the date of sale as stated in Table A-2; or (ii) the purchase/acquisition price *minus* the sale price.

(iii)   Sold from November 1, 2010 through and including the close of trading on January 28, 2011, the Recognized Loss Amount will be ***the least of***: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A-1; (ii) the purchase/acquisition price *minus* the average closing price between November 1, 2010 and the date of sale as stated in Table B below; or (iii) the purchase/acquisition price *minus* the sale price

(iv)   Held as of the close of trading on January 28, 2011, the Recognized Loss Amount will be ***the lesser of***: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A-1; or (ii) the purchase/acquisition price minus $4.25.[9]

---

[8] With respect to the partial corrective disclosure that occurred on June 23, 2010, the alleged artificial inflation was removed from the price of Wilmington Trust common stock over two days: June 23, 2010 and June 24, 2010.

[9] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on

## ADDITIONAL PROVISIONS

54. **Calculation of Claimant's "Recognized Claims":** A Claimant's "Class Period Recognized Claim" will be the sum of his, her, or its Recognized Loss Amounts as calculated above with respect to shares of Wilmington Trust common stock purchased or otherwise acquired during the full Class Period. A Claimant's "Auditor Recognized Claim" will be the sum of his, her, or its Recognized Loss Amounts as calculated above with respect to any shares of Wilmington Trust common stock purchased or otherwise acquired from February 22, 2010 through and including the close of trading on October 31, 2010 (the "Auditor Class Period").

55. **FIFO Matching:** If a Class Member made more than one purchase/acquisition or sale of Wilmington Trust common stock during the Class Period, all purchases/acquisitions and sales will be matched on a First In, First Out ("FIFO") basis. Class Period sales will be matched first against any holdings at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

56. **"Purchase/Sale" Dates:** Purchases or acquisitions and sales of Wilmington Trust common stock will be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance, or operation of law of Wilmington Trust common stock during the Class Period shall not be deemed a purchase, acquisition or sale of Wilmington Trust common stock for the calculation of a Claimant's Recognized Loss Amount, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition/sale of Wilmington Trust common stock unless (i) the donor or decedent purchased or otherwise acquired or sold Wilmington Trust common stock during the Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (iii) no Claim was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of Wilmington Trust common stock.

57. **Short Sales:** The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the Wilmington Trust common stock. The date of a "short sale" is deemed to be the date of sale of the Wilmington Trust common stock. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "short sales" and the purchases covering "short sales" is zero.

58. In the event that a Claimant has an opening short position in Wilmington Trust common stock, the earliest purchases or acquisitions of Wilmington Trust common stock during the Class Period will be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered.

59. **Common Stock Purchased/Sold Through the Exercise of Options:** With respect to Wilmington Trust common stock purchased or sold through the exercise of an option, the purchase/sale date of the common stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

60. **Class Period Market Gains and Losses:** The Claims Administrator will determine if the Claimant had a "Market Gain" or a "Market Loss" with respect to his, her, or its overall transactions in Wilmington Trust common stock during the Class Period. For purposes of making this calculation, the Claims Administrator shall determine the difference between (i) the Claimant's Total Purchase Amount[10] and (ii) the sum of the Claimant's

the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Wilmington Trust common stock during the "90-day look-back period," November 1, 2010 through and including January 28, 2011. The mean (average) closing price for Wilmington Trust common stock during this 90-day look-back period was $4.25.

[10] The "Total Purchase Amount" is the total amount the Claimant paid (excluding all fees, taxes and commissions) for all shares of Wilmington Trust common stock purchased/acquired during the Class Period.

Total Sales Proceeds[11] and the Claimant's Holding Value.[12]  If the Claimant's Total Purchase Amount *minus* the sum of the Claimant's Total Sales Proceeds and the Holding Value is a positive number, that number will be the Claimant's Market Loss; if the number is a negative number or zero, that number will be the Claimant's Market Gain.

61.   If a Claimant had a Market Gain with respect to his, her, or its overall transactions in Wilmington Trust common stock during the Class Period, the value of the Claimant's Class Period Recognized Claim will be zero, and the Claimant will in any event be bound by the Settlements.  If a Claimant suffered an overall Market Loss with respect to his, her, or its overall transactions in Wilmington Trust common stock during the Class Period but that Market Loss was less than the Claimant's Class Period Recognized Claim, then the Claimant's Class Period Recognized Claim will be limited to the amount of the Market Loss.

62.   **Auditor Market Gains and Losses:**  The Claims Administrator will also determine if the Claimant had an "Auditor Market Gain" or an "Auditor Market Loss" with respect to his, her, or its overall transactions in Wilmington Trust common stock during the Auditor Class Period.  For purposes of making this calculation, the Claims Administrator shall determine the difference between (i) the Claimant's Auditor Purchase Amount[13] and (ii) the sum of the Claimant's Auditor Sales Proceeds[14] and the Claimant's Auditor Holding Value.[15]  If the Claimant's Auditor Purchase Amount *minus* the sum of the Claimant's Auditor Sales Proceeds and the Auditor Holding Value is a positive number, that number will be the Claimant's Auditor Market Loss; if the number is a negative number or zero, that number will be the Claimant's Auditor Market Gain.

63.   If a Claimant had an Auditor Market Gain with respect to his, her, or its overall transactions in Wilmington Trust common stock during the Auditor Class Period, the value of the Claimant's Auditor Recognized Claim will be zero, and the Claimant will in any event be bound by the Settlements.  If a Claimant suffered an overall Auditor Market Loss with respect to his, her, or its overall transactions in Wilmington Trust common stock during the Auditor Class Period but that Auditor Market Loss was less than the Claimant's Auditor Recognized Claim, then the Claimant's Auditor Recognized Claim will be limited to the amount of the Auditor Market Loss.

---

[11]  The Claims Administrator shall match any sales of Wilmington Trust common stock during the Class Period first against the Claimant's opening position in Wilmington Trust common stock (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received (excluding all fees, taxes and commissions) for sales of the remaining shares of Wilmington Trust common stock sold during the Class Period is the "Total Sales Proceeds."

[12]  The Claims Administrator shall ascribe a "Holding Value" of $4.21 to each share of Wilmington Trust common stock purchased/acquired during the Class Period that was still held as of the close of trading on October 31, 2010.

[13]  The "Auditor Purchase Amount" is the total amount the Claimant paid (excluding all fees, taxes and commissions) for all shares of Wilmington Trust common stock purchased/acquired during the Auditor Class Period.

[14]  The Claims Administrator shall match any sales of Wilmington Trust common stock during the Auditor Class Period first against the Claimant's opening position in Wilmington Trust common stock and against Class Period purchases/acquisitions prior to the Auditor Class Period (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received (excluding all fees, taxes and commissions) for sales of the remaining shares of Wilmington Trust common stock sold during the Auditor Class Period is the "Auditor Sales Proceeds."

[15]  The Claims Administrator shall ascribe an "Auditor Holding Value" of $4.21 to each share of Wilmington Trust common stock purchased/acquired during the Auditor Class Period that was still held as of the close of trading on October 31, 2010.

64.    **Allocation of Wilmington Trust/Underwriter Net Settlement Fund:**  The Net Settlement Fund for the Wilmington Trust/Underwriter Settlement (the "Wilmington Trust/Underwriter Net Settlement Fund") will be allocated on a *pro rata* basis among Authorized Claimants.  An Authorized Claimant's *pro rata* share of the Wilmington Trust/Underwriter Net Settlement Fund will be his, her, or its Class Period Recognized Claim divided by the total Class Period Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Wilmington Trust/Underwriter Net Settlement Fund.

65.    **Allocation of KPMG Net Settlement Fund:**  The Net Settlement Fund for the KPMG Settlement (the "KPMG Net Settlement Fund") will be allocated on a *pro rata* basis among Authorized Claimants.  An Authorized Claimant's *pro rata* share of the KPMG Net Settlement Fund will be his, her, or its Auditor Recognized Claim divided by the total Auditor Recognized Claims of all Authorized Claimants, multiplied by the total amount in the KPMG Net Settlement Fund.

66.    **Determination of Distribution Amount:**  An Authorized Claimant's "Distribution Amount" will be the sum of (i) his, her, or its *pro rata* share of the Wilmington Trust/Underwriter Net Settlement Fund; and (ii) his, her, or its *pro rata* share, if any, of the KPMG Net Settlement Fund.  If an Authorized Claimant's Distribution Amount calculates to less than $10.00, no distribution will be made to that Authorized Claimant.

67.    After the initial distribution of the Net Settlement Funds, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks.  To the extent any monies remain in the Net Settlement Funds nine (9) months after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlements, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution.  Additional re-distributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional re-distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determine that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective.  At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Funds is not cost-effective, the remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

68.    Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, will be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, Lead Plaintiffs' damages expert, Lead Plaintiffs' consulting experts, the Settling Defendants, Settling Defendants' Counsel, or any of the other Plaintiffs' Releasees or Settling Defendants' Releasees, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court. Lead Plaintiffs, the Settling Defendants, and their respective counsel, and all other Settling Defendants' Releasees, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Funds or the Net Settlement Funds; the plan of allocation; the determination, administration, calculation, or payment of any Claim or nonperformance of the Claims Administrator; the payment or withholding of Taxes; or any losses incurred in connection therewith.

69.    The Plan of Allocation stated herein is the plan that is being proposed to the Court for its approval by Lead Plaintiffs after consultation with their damages expert. The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Class. Any Orders regarding any modification of the Plan of Allocation will be posted on the case website, www.WilmingtonTrustSecuritiesLitigation.com.

| WHAT PAYMENT ARE COUNSEL FOR THE CLASS SEEKING? |
| :-: |
| HOW WILL THE LAWYERS BE PAID? |

70.    As a Class Member, you are represented by Lead Plaintiffs and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her appearance on the counsel listed in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlements?," on page ___ below.

71.    Lead Counsel have not received any payment for their services in pursuing claims against Defendants on behalf of the Class, nor have Lead Counsel been paid for their litigation expenses.  Before final approval of the Settlements, Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 28% of each Settlement Fund.  At the same time, Lead Counsel also intend to apply for reimbursement of Litigation Expenses to be paid from the Settlement Funds in an amount not to exceed $7,500,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class.  The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses.  Should the Court approve only one of the two Settlements, attorneys' fees will be paid only on the approved Settlement from the Settlement Fund created by that approved Settlement, and the Litigation Expenses approved by the Court will be paid proportionally from the Settlement Fund created by the approved Settlement.  Class Members are not personally liable for any such fees or expenses.

| WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE |
| :-: |
| SETTLEMENTS?  DO I HAVE TO COME TO THE HEARING? |
| MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENTS? |

72.    **Class Members do not need to attend the Settlement Fairness Hearing.  The Court will consider any submission made in accordance with the provisions below even if a Class Member does not attend the hearing.  You can participate in the Settlements without attending the Settlement Fairness Hearing.**  Please Note: The date and time of the Settlement Fairness Hearing may change without further written notice to the Class. You should monitor the Court's docket and the website maintained by the Claims Administrator, www.WilmingtonTrustSecuritiesLitigation.com, before making plans to attend the Settlement Fairness Hearing. You may also confirm the date and time of the Settlement Fairness Hearing by contacting Lead Counsel.

73.    The Settlement Fairness Hearing will be held on _____, 2018 at __:__ _.m., before the Honorable Eduardo C. Robreno, in the United State District Court for the District of Delaware, in Courtroom _____ of the J. Caleb Boggs Federal Building, 844 North King Street, Wilmington, DE 19801.  The Court reserves the right to approve the Settlements, the Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and/or any other matter related to the Settlements at or after the Settlement Fairness Hearing without further notice to the members of the Class.

74.    Any Class Member may object to the Settlements, the proposed Plan of Allocation, and/or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Objections must be in writing. You must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the District of Delaware at the address set forth below on or before _____, 2018.  You must also serve the papers on Lead Counsel and on Representative Defendants' Counsel at the addresses set forth below so that the papers are ***received*** **on or before** _____, **2018**.

|  | **Clerk's Office** | **Lead Counsel** | **Representative Defendants' Counsel** |
|---|---|---|---|

<table>
<tr>
<td>

**United States District Court District of Delaware**
Office of the Clerk of the Court
844 North King Street, Unit 18
Wilmington, DE 19801-3570

</td>
<td>

**Bernstein Litowitz Berger & Grossmann LLP**
Hannah Ross, Esq.
1251 Avenue of the Americas, 44th Floor
New York, NY 10020

**Saxena White P.A.**
Joseph E. White, III, Esq.
150 E. Palmetto Park Rd., Ste. 600
Boca Raton, FL 33432

</td>
<td>

**Williams & Connolly LLP**
Margaret A. Keeley, Esq.
725 Twelfth Street NW
Washington, D.C. 20005

**Venable LLP**
James A. Dunbar, Esq.
210 West Pennsylvania Avenue
Suite 500
Towson, MD 21204

**Hogan Lovells US LLP**
George A. Salter
875 Third Avenue
New York, NY 10022

</td>
</tr>
</table>

75.   Any objections, filings, and other submissions (i) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (ii) must state whether the objector is represented by counsel and, if so, the name, address, and telephone number of the objector's counsel; (iii) must contain a statement of the Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention; and (iv) must include documents sufficient to prove membership in the Class, consisting of documents showing the number of shares of Wilmington Trust common stock that the objector (a) owned as of the opening of trading on January 18, 2008, and (b) purchased/acquired and/or sold during the period January 18, 2008 up to November 1, 2010 (*i.e.*, through and including October 31, 2010), as well as the number of shares, dates, and prices for each such purchase/acquisition and sale. Documentation establishing membership in the Class must consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement. You may not object to the Settlements, the Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses if you are not a member of the Class or if you excluded yourself from the Class in connection with the Class Notice and are listed on Appendix 1 to the Stipulations.

76.   You may file a written objection without having to appear at the Settlement Fairness Hearing. You may not, however, appear at the Settlement Fairness Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

77.   If you wish to be heard orally at the hearing in opposition to the approval of the Settlements, the Plan of Allocation, and/or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and if you timely file and serve a written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Lead Counsel and Representative Defendants' Counsel at the addresses set forth in ¶ 74 above so that it is *received* **on or before _____, 2018**. Persons who intend to object and desire to present evidence at the Settlement Fairness Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing. Such persons may be heard orally at the discretion of the Court.

78.   You are not required to hire counsel to represent you in making written objections or in appearing at the Settlement Fairness Hearing.  However, if you decide to hire counsel, it will be at your own expense, and your counsel must file a notice of appearance with the Court and serve it on Lead Counsel and Representative Defendants' Counsel at the addresses set forth in ¶ 74 above so that the notice is *received* **on or before** **_____, 2018**.

79.   The Settlement Fairness Hearing may be adjourned by the Court without further written notice to the Class.  If you plan to attend the Settlement Fairness Hearing, you should confirm the date and time with Lead Counsel.

80.   **Unless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlements, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Class Members do not need to appear at the Settlement Fairness Hearing or take any other action to indicate their approval.**

| **WHAT IF I BOUGHT WILMINGTON TRUST SHARES ON SOMEONE ELSE'S BEHALF?** |
| --- |

81.   **IMPORTANT:  If you previously provided the names and addresses of persons and entities on whose behalf you purchased/acquired Wilmington Trust common stock during the period January 18, 2008 up to November 1, 2010 (*i.e.*, through and including October 31, 2010), in connection with the Class Notice, and (i) those names and addresses remain current and (ii) you have no additional names and addresses for potential Class Members to provide to the Claims Administrator, *you need do nothing further at this time*. The Claims Administrator will mail a copy of this notice (the "Settlement Notice") and the Claim Form (together, the "Settlement Notice Packet") to the beneficial owners whose names and addresses were previously provided in connection with the Class Notice.**  If you elected to mail the Class Notice directly to beneficial owners, you were advised that you must retain the mailing records for use in connection with any further notices that may be provided in the Action.  If you elected this option, the Claims Administrator will forward the same number of Settlement Notice Packets to you to send to the beneficial owners. If you require more copies of the Settlement Notice Packet than you previously requested in connection with the Class Notice mailing, please contact the Claims Administrator, Epiq Class Action & Claims Solutions, Inc., toll-free at 1-866-800-6639 and let them know how many additional packets you require. You must mail the Settlement Notice Packets to the beneficial owners within seven (7) calendar days of your receipt of the packets.

82.   If you have not already provided the names and addresses for persons and entities on whose behalf you purchased/acquired Wilmington Trust common stock during the period January 18, 2008 up to November 1, 2010 (*i.e.*, through and including October 31, 2010), in connection with the Class Notice, then, the Court has ordered that you must, WITHIN SEVEN (7) CALENDAR DAYS OF YOUR RECEIPT OF THIS NOTICE, either:  (i) send the Settlement Notice Packet to all beneficial owners of such Wilmington Trust common stock, or (ii) send a list of the names and addresses of such beneficial owners to the Claims Administrator at Wilmington Trust Securities Litigation, c/o Epiq Class Action & Claims Solutions, Inc., P.O. Box 2838, Portland, OR 97208-2838, in which event the Claims Administrator shall promptly mail the Settlement Notice Packet to such beneficial owners.  **AS STATED ABOVE, IF YOU HAVE ALREADY PROVIDED THIS INFORMATION IN CONNECTION WITH THE CLASS NOTICE, UNLESS THAT INFORMATION HAS CHANGED (*E.G.*, BENEFICIAL OWNER HAS CHANGED ADDRESS), IT IS UNNECESSARY TO PROVIDE SUCH INFORMATION AGAIN.**

83.   Upon full and timely compliance with these directions, nominees who mail the Settlement Notice Packet to beneficial owners may seek reimbursement of their reasonable expenses actually incurred by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.

Such properly documented expenses incurred by nominees shall be paid from the Settlement Fund, with any disputes as to the reasonableness or documentation of expenses incurred subject to review by the Court.

84.    Copies of the Settlement Notice and the Claim Form may also be obtained from the website maintained by the Claims Administrator, www.WilmingtonTrustSecuritiesLitigation.com, by calling the Claims Administrator toll-free at 1-866-800-6639, or by emailing the Claims Administrator at info@WilmingtonTrustSecuritiesLitigation.com.

---

### CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

---

85.    This notice contains only a summary of the terms of the proposed Settlements.  For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulations, which may be inspected during regular office hours at the Office of the Clerk, Office of the Clerk of the Court, 844 North King Street, Unit 18, Wilmington, DE 19801-3570.  Additionally, copies of the Stipulations and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.WilmingtonTrustSecuritiesLitigation.com.

All inquiries concerning this notice and the Claim Form should be directed to:

Wilmington Trust Securities Litigation
c/o Epiq Class Action & Claims Solutions, Inc.
P.O. Box 2838
Portland, OR 97208-2838


and/or

| Bernstein Litowitz Berger & Grossmann LLP | Saxena White P.A. |
|---|---|
| Hannah Ross, Esq. | Joseph E. White, III, Esq. |
| 1251 Avenue of the Americas | 150 E. Palmetto Park Rd., Ste. 600 |
| New York, NY 10020 | Boca Raton, FL 33432 |
| 1-800-380-8496 | 561-394-3399 |
| blbg@blbglaw.com | settlements@saxenawhite.com |


**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF THE COURT, DEFENDANTS (INCLUDING WILMINGTON TRUST), M&T BANK, OR THEIR COUNSEL REGARDING THIS NOTICE.**

Dated: _____, 2018

By Order of the Court
United States District Court
District of Delaware

## TABLE A-1

**Estimated Artificial Inflation With Respect to Purchases/Acquisitions of Wilmington Trust Common Stock from January 18, 2008 through and including October 31, 2010**

| Date Range | Artificial Inflation Per Share |
|---|---|
| January 18, 2008 - January 28, 2010 | $8.83 |
| January 29, 2010 - April 22, 2010 | $6.97 |
| April 23, 2010 - June 3, 2010 | $5.74 |
| June 4, 2010 - June 22, 2010 | $5.29 |
| June 23, 2010 | $3.88 |
| June 24, 2010 - July 22, 2010 | $3.88 |
| July 23, 2010 - October 31, 2010 | $2.67 |

## TABLE A-2

**Estimated Artificial Inflation With Respect to Sales of Wilmington Trust Common Stock from January 18, 2008 through and including October 31, 2010**

| Date Range | Artificial Inflation Per Share |
|---|---|
| January 18, 2008 - January 28, 2010 | $8.83 |
| January 29, 2010 - April 22, 2010 | $6.97 |
| April 23, 2010 - June 3, 2010 | $5.74 |
| June 4, 2010 - June 22, 2010 | $5.29 |
| June 23, 2010 | $4.14 |
| June 24, 2010 - July 22, 2010 | $3.88 |
| July 23, 2010 - October 31, 2010 | $2.67 |

**TABLE B**

**90-Day Look-back Table for Wilmington Trust Common Stock**
**(Closing Price and Average Closing Price November 1, 2010 through January 28, 2011)**

| Date | Closing Price | Average Closing Price Between November 1, 2010 and Date Shown | Date | Closing Price | Average Closing Price Between November 1, 2010 and Date Shown |
|---|---|---|---|---|---|
| 11/1/2010 | $4.21 | $4.21 | 12/15/2010 | $4.07 | $4.16 |
| 11/2/2010 | $4.11 | $4.16 | 12/16/2010 | $4.12 | $4.16 |
| 11/3/2010 | $4.19 | $4.17 | 12/17/2010 | $4.08 | $4.15 |
| 11/4/2010 | $4.28 | $4.20 | 12/20/2010 | $4.28 | $4.16 |
| 11/5/2010 | $4.31 | $4.22 | 12/21/2010 | $4.29 | $4.16 |
| 11/8/2010 | $4.23 | $4.22 | 12/22/2010 | $4.36 | $4.17 |
| 11/9/2010 | $4.11 | $4.21 | 12/23/2010 | $4.28 | $4.17 |
| 11/10/2010 | $4.20 | $4.21 | 12/27/2010 | $4.31 | $4.17 |
| 11/11/2010 | $4.39 | $4.23 | 12/28/2010 | $4.32 | $4.18 |
| 11/12/2010 | $4.33 | $4.24 | 12/29/2010 | $4.41 | $4.18 |
| 11/15/2010 | $4.36 | $4.25 | 12/30/2010 | $4.39 | $4.19 |
| 11/16/2010 | $4.29 | $4.25 | 12/31/2010 | $4.34 | $4.19 |
| 11/17/2010 | $4.28 | $4.25 | 1/3/2011 | $4.48 | $4.20 |
| 11/18/2010 | $4.23 | $4.25 | 1/4/2011 | $4.38 | $4.20 |
| 11/19/2010 | $4.23 | $4.25 | 1/5/2011 | $4.42 | $4.21 |
| 11/22/2010 | $4.04 | $4.24 | 1/6/2011 | $4.46 | $4.21 |
| 11/23/2010 | $4.03 | $4.22 | 1/7/2011 | $4.38 | $4.22 |
| 11/24/2010 | $4.06 | $4.22 | 1/10/2011 | $4.29 | $4.22 |
| 11/26/2010 | $4.04 | $4.21 | 1/11/2011 | $4.36 | $4.22 |
| 11/29/2010 | $3.98 | $4.20 | 1/12/2011 | $4.41 | $4.22 |
| 11/30/2010 | $3.92 | $4.18 | 1/13/2011 | $4.33 | $4.23 |
| 12/1/2010 | $3.95 | $4.17 | 1/14/2011 | $4.40 | $4.23 |
| 12/2/2010 | $4.07 | $4.17 | 1/18/2011 | $4.35 | $4.23 |
| 12/3/2010 | $4.08 | $4.16 | 1/19/2011 | $4.33 | $4.23 |
| 12/6/2010 | $4.00 | $4.16 | 1/20/2011 | $4.29 | $4.23 |
| 12/7/2010 | $4.01 | $4.15 | 1/21/2011 | $4.36 | $4.24 |
| 12/8/2010 | $4.15 | $4.15 | 1/24/2011 | $4.36 | $4.24 |
| 12/9/2010 | $4.18 | $4.15 | 1/25/2011 | $4.37 | $4.24 |
| 12/10/2010 | $4.29 | $4.16 | 1/26/2011 | $4.35 | $4.24 |
| 12/13/2010 | $4.25 | $4.16 | 1/27/2011 | $4.39 | $4.25 |
| 12/14/2010 | $4.19 | $4.16 | 1/28/2011 | $4.37 | $4.25 |

#1191498

# EXHIBIT 2

Exhibit 2

**Wilmington Trust Securities Litigation**
**c/o Epiq Class Action & Claims Solutions, Inc.**
**P.O. Box 2838**
**Portland, OR 97208-2838**

**Toll-Free Number:  1-866-800-6639**
**Email:  info@WilmingtonTrustSecuritiesLitigation.com**
**Website:  www.WilmingtonTrustSecuritiesLitigation.com**

# PROOF OF CLAIM AND RELEASE FORM

TO BE ELIGIBLE TO RECEIVE A SHARE OF THE NET SETTLEMENT FUNDS IN CONNECTION WITH THE PROPOSED SETTLEMENTS, YOU MUST COMPLETE AND SIGN THIS PROOF OF CLAIM AND RELEASE FORM ("CLAIM FORM") AND MAIL IT BY PREPAID, FIRST-CLASS MAIL TO THE ABOVE ADDRESS, **POSTMARKED NO LATER THAN _____, 2018**.

FAILURE TO SUBMIT YOUR CLAIM FORM BY THE DATE SPECIFIED WILL SUBJECT YOUR CLAIM TO REJECTION AND MAY PRECLUDE YOU FROM BEING ELIGIBLE TO RECOVER ANY MONEY IN CONNECTION WITH THE PROPOSED SETTLEMENTS.

**DO NOT MAIL OR DELIVER YOUR CLAIM FORM TO THE COURT, THE PARTIES TO THIS ACTION, OR THEIR COUNSEL.  SUBMIT YOUR CLAIM FORM ONLY TO THE CLAIMS ADMINISTRATOR AT THE ADDRESS SET FORTH ABOVE.**

| TABLE OF CONTENTS | PAGE # |
|---|---|
| **PART I – GENERAL INSTRUCTIONS** | ___ |
| **PART II – CLAIMANT INFORMATION** | ___ |
| **PART III – SCHEDULE OF TRANSACTIONS IN WILMINGTON TRUST COMMON STOCK** | ___ |
| **PART IV – RELEASE OF CLAIMS AND SIGNATURE** | ___ |

## PART I – GENERAL INSTRUCTIONS

1.      It is important that you completely read and understand the Notice of (I) Proposed Settlements and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Settlement Notice") that accompanies this Claim Form, including the proposed Plan of Allocation of the Net Settlement Funds set forth in the Settlement Notice (the "Plan of Allocation"). The Settlement Notice describes the proposed Settlements, how Class Members are affected by the Settlements, and the manner in which the Net Settlement Funds will be distributed if the Settlements and Plan of Allocation are approved by the Court. The Settlement Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form. By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Settlement Notice, including the terms of the releases described therein and provided for herein.

2.      This Claim Form is directed to all persons or entities who purchased or otherwise acquired Wilmington Trust common stock during the period from January 18, 2008 up to November 1, 2010 (*i.e.*, through and including October 31, 2010) (the "Class Period"), including all persons or entities who purchased shares of Wilmington Trust common stock issued in the secondary common stock offering that occurred on or about February 23, 2010 (the "Offering"), and were damaged thereby (the "Class"). Certain persons and entities are excluded from the Class by definition as set forth in Paragraph 24 of the Settlement Notice.

3.      By submitting this Claim Form, you will be making a request to share in the proceeds of the Settlements described in the Settlement Notice. IF YOU ARE NOT A CLASS MEMBER (see the definition of the Class in Paragraph 24 of the Settlement Notice, which sets forth who is included in and who is excluded from the Class), OR IF YOU, OR SOMEONE ACTING ON YOUR BEHALF, SUBMITTED A REQUEST FOR EXCLUSION FROM THE CLASS, DO NOT SUBMIT A CLAIM FORM. **YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENTS.** THUS, IF YOU ARE EXCLUDED FROM THE CLASS, ANY CLAIM FORM THAT YOU SUBMIT, OR THAT MAY BE SUBMITTED ON YOUR BEHALF, WILL NOT BE ACCEPTED.

4.      **Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlements. The distribution of the Net Settlement Funds will be governed by the Plan of Allocation set forth in the Settlement Notice, if it is approved by the Court, or by such other plan of allocation as the Court approves.**

5.      Use the Schedule of Transactions in Part III of this Claim Form to supply all required details of your transaction(s) (including free transfers and deliveries) in and holdings of Wilmington Trust common stock. On this schedule, please provide all of the requested information with respect to your holdings, purchases, acquisitions, and sales of Wilmington Trust common stock, whether such transactions resulted in a profit or a loss. **Failure to report all transaction and holding information during the requested time period may result in the rejection of your claim.**

6.      **Please note:** Only Wilmington Trust common stock purchased or otherwise acquired during the Class Period, *i.e.*, during the period from January 18, 2008 through and including October 31, 2010, is eligible under the Settlements. However, under the "90-day look-back period" (described in the Plan of Allocation set forth in the Settlement Notice), your sales of Wilmington Trust common stock during the period from November 1, 2010 through and including January 28, 2011, will be used for purposes of calculating your claim under the Plan of Allocation. Therefore, in order for the Claims Administrator to be able to balance your claim,

the requested purchase information during the 90-day look-back period must also be provided.

7.    You are required to submit genuine and sufficient documentation for all of your transactions in and holdings of Wilmington Trust common stock set forth in the Schedule of Transactions in Part III of this Claim Form.  Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement.  The Settling Parties and the Claims Administrator do not independently have information about your investments in Wilmington Trust common stock.  IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OF THE DOCUMENTS OR EQUIVALENT DOCUMENTS FROM YOUR BROKER.  FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM.  DO NOT SEND ORIGINAL DOCUMENTS.  **Please keep a copy of all documents that you send to the Claims Administrator.  Also, do not highlight any portion of the Claim Form or any supporting documents.**

8.    All joint beneficial owners each must sign this Claim Form and their names must appear as "Claimants" in Part II of this Claim Form.  The complete name(s) of the beneficial owner(s) must be entered.  If you purchased or otherwise acquired Wilmington Trust common stock during the Class Period and held the shares in your name, you are the beneficial owner as well as the record owner.  If you purchased or otherwise acquired Wilmington Trust common stock during the Class Period and the shares were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these shares, but the third party is the record owner.  The beneficial owner, not the record owner, must sign this Claim Form.

9.    **One Claim should be submitted for each separate legal entity**.  Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in the individual's name).  Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity on one Claim Form, no matter how many separate accounts that entity has (*e.g.*, a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

10.   Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

   (a)   expressly state the capacity in which they are acting;

   (b)   identify the name, account number, Social Security Number (or taxpayer identification number), address and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the Wilmington Trust common stock; and

   (c)   furnish herewith evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting.  (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade securities in another person's accounts.)

11.   By submitting a signed Claim Form, you will be swearing that you:

   (a)   own(ed) the Wilmington Trust common stock you have listed in the Claim Form; or

   (b)   are expressly authorized to act on behalf of the owner thereof.

12.     By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America.  The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

13.     If the Court approves the Settlement(s), payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after any appeals are resolved, and after the completion of all claims processing.  The claims process will take substantial time to complete fully and fairly.  Please be patient.

14.     **PLEASE NOTE:**  As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Funds.  If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

15.     If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Settlement Notice, you may contact the Claims Administrator, Epiq Class Action & Claims Solutions, Inc., at the above address, by email at info@WilmingtonTrustSecuritiesLitigation.com, or by toll-free phone at 1-866-800-6639, or you can visit the case website, www.WilmingtonTrustSecuritiesLitigation.com, where copies of the Claim Form and Settlement Notice are available for downloading.

16.     NOTICE REGARDING ELECTRONIC FILES:  Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files.  To obtain the ***mandatory*** electronic filing requirements and file layout, you may visit the case website at www.WilmingtonTrustSecuritiesLitigation.com or you may email the Claims Administrator's electronic filing department at info@WilmingtonTrustSecuritiesLitigation.com.  **Any file not in accordance with the required electronic filing format will be subject to rejection.**  Only one claim should be submitted for each separate legal entity (*see* Paragraph 9 above) and the ***complete*** name of the beneficial owner of the securities must be entered where called for (*see* Paragraph 8 above).  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email to that effect.  **Do not assume that your file has been received until you receive this email.  If you do not receive such an email within 10 days of your submission, you should contact the Claims Administrator's electronic filing department at info@WilmingtonTrustSecuritiesLitigation.com to inquire about your file and confirm it was received.**

## <u>IMPORTANT: PLEASE NOTE</u>

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD.  THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL WITHIN 60 DAYS.   IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT POSTCARD WITHIN 60 DAYS, CALL THE CLAIMS  ADMINISTRATOR TOLL FREE AT 1-866-800-6639.**

# PART II – CLAIMANT IDENTIFICATION

**Please complete this PART II in its entirety.   The Claims Administrator will use this information for all communications regarding this Claim Form.   If this information changes, you MUST notify the Claims Administrator in writing at the address above.**

Beneficial Owner's First Name

Beneficial Owner's Last Name

Co-Beneficial Owner's First Name

Co-Beneficial Owner's Last Name

Entity Name (if Beneficial Owner is not an individual)

Representative or Custodian Name (if different from Beneficial Owner(s) listed above)

Address1 (street name and number)

Address2 (apartment, unit or box number)

City                                                                                    State      Zip Code

Country

Last four digits of Social Security Number or Taxpayer Identification Number

Telephone Number (home)                                             Telephone Number (work)

Email address (E-mail address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.):

Account Number (where securities were traded)[1]:

Claimant Account Type (check appropriate box):
- ☐   Individual (includes joint owner accounts)        ☐   Pension Plan        ☐   Trust
- ☐   Corporation                                                              ☐   Estate
- ☐   IRA/401K                                                                ☐   Other _____ (please specify)

---

[1] If the account number is unknown, you may leave blank.  If filing for more than one account for the same legal entity you may write "multiple."  Please see Paragraph 9 of the General Instructions above for more information on when to file separate Claim Forms for multiple accounts.

## PART III – SCHEDULE OF TRANSACTIONS IN WILMINGTON TRUST COMMON STOCK

Complete this Part III if and only if you purchased or acquired Wilmington Trust common stock during the period from January 18, 2008 through and including October 31, 2010.  Please be sure to include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 7, above.  Do not include information regarding securities other than Wilmington Trust common stock.

| 1. HOLDINGS AS OF JANUARY 18, 2008 – State the total number of shares of Wilmington Trust common stock held as of the opening of trading on January 18, 2008.  (Must be documented.)  If none, write "zero" or "0." _____ | Confirm Proof of Position  Enclosed ○ |
|---|---|

**2. PURCHASES/ACQUISITIONS FROM JANUARY 18, 2008 THROUGH OCTOBER 31, 2010** – Separately list each and every purchase/acquisition (including free receipts) of Wilmington Trust common stock from after the opening of trading on January 18, 2008 through and including October 31, 2010.  (Must be documented.)

| Date of Purchase/ Acquisition (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/Acquired | Purchase/Acquisition Price Per Share | Total Purchase/ Acquisition Price (excluding taxes, commissions, and fees) | Confirm Proof of Purchase Enclosed |
|---|---|---|---|---|
| /    / | | $ | $ | ○ |
| /    / | | $ | $ | ○ |
| /    / | | $ | $ | ○ |
| /    / | | $ | $ | ○ |

| 3. PURCHASES/ACQUISITIONS FROM NOVEMBER 1, 2010 THROUGH JANUARY 28, 2011 – State the total number of shares of Wilmington Trust common stock purchased/acquired (including free receipts) from November 1, 2010 through and including the close of trading on January 28, 2011.  (Must be documented.)  If none, write "zero" or "0."[2] _____ |
|---|

| 4. SALES FROM JANUARY 18, 2008 THROUGH JANUARY 28, 2011 – Separately list each and every sale/disposition (including free deliveries) of Wilmington Trust common stock from after the opening of trading on January 18, 2008 through and including the close of trading on January 28, 2011. (Must be documented.) | IF NONE, CHECK HERE ○ |
|---|---|

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) | Confirm Proof of Sale Enclosed |
|---|---|---|---|---|
| /    / | | $ | $ | ○ |
| /    / | | $ | $ | ○ |
| /    / | | $ | $ | ○ |

---

[2] **Please note**:  Information requested with respect to your purchases/acquisitions of Wilmington Trust common stock from November 1, 2010 through and including the close of trading on January 28, 2011 is needed in order to balance your claim; purchases/acquisitions during this period, however, are not eligible transactions and will not be used for purposes of calculating Recognized Loss Amounts pursuant to the Plan of Allocation.

| / / | | $ | $ | ○ |
|---|---|---|---|---|

**5. HOLDINGS AS OF JANUARY 28, 2011 –** State the total number of shares of Wilmington Trust common stock held as of the close of trading on January 28, 2011.  (Must be documented.) If none, write "zero" or "0." _____

Confirm Proof of Position Enclosed
○

**IF YOU REQUIRE ADDITIONAL SPACE FOR THE SCHEDULE ABOVE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT.  PRINT THE BENEFICIAL OWNER'S FULL NAME AND LAST FOUR DIGITS OF SOCIAL SECURITY/TAXPAYER IDENTIFICATION NUMBER ON EACH ADDITIONAL PAGE.  IF YOU DO ATTACH EXTRA SCHEDULES, CHECK THIS BOX**

## PART IV - RELEASE OF CLAIMS AND SIGNATURE

**YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW AND SIGN ON PAGE __ OF THIS CLAIM FORM.**

### Release of Claims Against Wilmington Trust Defendants and Underwriter Defendants:

I (we) hereby acknowledge that, pursuant to the terms set forth in the Wilmington Trust/Underwriter Stipulation, upon the Effective Date of the Wilmington Trust/Underwriter Settlement, I (we), on behalf of myself (ourselves) and my (our) heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the judgment entered with respect to the Settlement, shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim (as defined in the Wilmington Trust/Underwriter Stipulation and the Settlement Notice) against the Wilmington Trust Defendants, M&T Bank, the Underwriter Defendants and the other Settling Defendants' Releasees (as defined in the Wilmington Trust/Underwriter Stipulation and the Settlement Notice), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Settling Defendants' Releasees.

### Release of Claims Against KPMG:

I (we) hereby acknowledge that, pursuant to the terms set forth in the KPMG Stipulation, upon the Effective Date of the KPMG Settlement, I (we), on behalf of myself (ourselves) and my (our) heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the judgment entered with respect to the Settlement, shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim (as defined in the KPMG Stipulation and the Settlement Notice) against KPMG and the other Settling Defendant's Releasees (as defined in the KPMG Stipulation and the Settlement Notice), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Settling Defendant's Releasees.

## CERTIFICATION

By signing and submitting this Claim Form, the claimant(s) or the person(s) who represent(s) the claimant(s) agree(s) to the release above and certifies (certify) as follows:

     1.     that I (we) have read and understand the contents of the Settlement Notice and this Claim Form, including the releases provided for in the Settlements and the terms of the Plan of Allocation;

     2.     that the claimant(s) is a (are) member(s) Class Member(s), as defined in the Settlement Notice, and is (are) not excluded by definition from the Class as set forth in the Settlement Notice;

     3.     that the claimant has **not** submitted request(s) for exclusion from the Class;

     4.     that I (we) own(ed) the Wilmington Trust common stock identified in the Claim Form and have not assigned the claim against any of the Settling Defendants or any of the other Settling Defendants' Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

5.      that the claimant(s) has (have) not submitted any other claim covering the same purchases of Wilmington Trust common stock and knows (know) of no other person having done so on the claimant's (claimants') behalf;

6.      that the claimant(s) submit(s) to the jurisdiction of the Court with respect to claimant's (claimants') claim and for purposes of enforcing the releases set forth herein;

7.      that I (we) agree to furnish such additional information with respect to this Claim Form as Lead Counsel, the Claims Administrator or the Court may require;

8.      that the claimant(s) waive(s) the right to trial by jury, to the extent it exists, agree(s) to the determination by the Court of the validity or amount of this Claim and waives any right of appeal or review with respect to such determination;

9.      that I (we) acknowledge that the claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

10.     that the claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (a) the claimant(s) is (are) exempt from backup withholding or (b) the claimant(s) has (have) not been notified by the IRS that he/she/it is subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified the claimant(s) that he/she/it is no longer subject to backup withholding.  **If the IRS has notified the claimant(s) that he/she/it is subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____

Signature of claimant                                                          Date

_____

Print claimant name here

_____

Signature of joint claimant, if any                                            Date

_____

Print joint claimant name here

*If the claimant is other than an individual, or is not the person completing this form, the following also must be provided:*

_____

Signature of person signing on behalf of claimant                                    Date

_____

Print name of person signing on behalf of claimant here

_____

Capacity of person signing on behalf of claimant, if other than an individual, *e.g.*, executor, president, trustee, custodian, etc. (Must provide evidence of authority to act on behalf of claimant – see Paragraph 10 on page __ of this Claim Form.)

## REMINDER CHECKLIST:

1. Sign the above release and certification. If this Claim Form is being made on behalf of joint claimants, then both must sign.

2. Attach only **copies** of acceptable supporting documentation as these documents will not be returned to you.

3. Do not highlight any portion of the Claim Form or any supporting documents.

4. Keep copies of the completed Claim Form and documentation for your own records.

5. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days. Your claim is not deemed filed until you receive an acknowledgement postcard. **If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll-free at 1-866-800-6639.**

6. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, you must send the Claims Administrator written notification of your new address. If you change your name, inform the Claims Administrator.

7. If you have any questions or concerns regarding your claim, please contact the Claims Administrator at the address below, by email at info@WilmingtonTrustSecuritiesLitigation.com, or by toll-free phone at 1-866-800-6639 or you may visit www.WilmingtonTrustSecuritiesLitigation.com. DO NOT call Wilmington Trust, any of the other Defendants, M&T Bank, or their counsel with questions regarding your claim.

THIS CLAIM FORM MUST BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN _____, 2018**, ADDRESSED AS FOLLOWS:

Wilmington Trust Securities Litigation
c/o Epiq Class Action & Claims Solutions, Inc.
P.O. Box 2838
Portland, OR 97208-2838

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before _____, 2018 is indicated on the envelope and it is mailed First Class, and addressed in accordance with the above instructions.  In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms.  Please be patient and notify the Claims Administrator of any change of address.

#1186282

# EXHIBIT 3

Exhibit 3

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---

**IN RE WILMINGTON TRUST SECURITIES LITIGATION**

---

This document relates to: ALL ACTIONS

Master File No. 10-cv-00990-ER

(Securities Class Action)

Hon. Eduardo C. Robreno

---

**SUMMARY NOTICE OF (I) PROPOSED SETTLEMENTS AND PLAN OF ALLOCATION; (II) SETTLEMENT HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**To:**     All persons or entities who purchased or otherwise acquired Wilmington Trust Corporation ("Wilmington Trust") common stock during the period January 18, 2008 up to November 1, 2010 (the "Class Period"), including all persons or entities who purchased shares of Wilmington Trust common stock issued in the secondary common stock offering that occurred on or about February 23, 2010, and were damaged thereby (the "Class").[1]

**PLEASE READ THIS NOTICE CAREFULLY; YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT OF A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the District of Delaware, that Court-appointed Lead Plaintiffs, the Coral Springs Police Pension Fund, the St. Petersburg Firefighters' Retirement System, the Pompano Beach General Employees Retirement System, the Merced County Employees' Retirement Association, and the Automotive Industries Pension Trust Fund, on behalf of themselves and the Court-certified Class in the above-captioned securities class action (the "Action"), have reached proposed settlements with the Individual Defendants and Underwriter Defendants for $200 million in cash and with Wilmington Trust's auditor during the Class Period, KPMG LLP, for $10 million in cash (collectively, the "Settlements") for a total settlement amount of $210 million in cash, plus interest thereon, if both Settlements are approved by the Court.

A hearing will be held on _____, 2018 at __:__ _.m., before the Honorable Eduardo C. Robreno, in the United State District Court for the District of Delaware, in Courtroom _____ of the J. Caleb Boggs Federal Building, 844 North King Street, Wilmington, DE 19801 to determine: (i) whether the proposed Settlements should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against the Settling Defendants in the respective Settlements, and the releases specified and described in the respective Stipulations of Settlement should be granted; (iii) whether the proposed Plan of Allocation should be

---

[1] Certain persons and entities are excluded from the Class by definition and others are excluded pursuant to request. The full definition of the Class including a complete description of who is excluded from the Class is set forth in the full Settlement Notice referred to below.

approved as fair and reasonable; and (iv) whether Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved.

**If you are a member of the Class, your rights will be affected by the pending Action and the Settlements, and you may be entitled to share in the Net Settlement Funds.**  If you have not yet received the full printed Notice of (I) Proposed Settlements and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Settlement Notice") and the Claim Form, you may obtain copies of these documents from the website for the Action, www.WilmingtonTrustSecuritiesLitigation.com, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-866-800-6639 or by emailing the Claims Administrator at info@WilmingtonTrustSecuritiesLitigation.com.

If you are a Class Member, in order to be eligible to receive a payment under the proposed Settlements, you must submit a Claim Form *postmarked* **no later than _____, 2018**.  If you are a Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlements but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

Any objections to the proposed Settlements, the proposed Plan of Allocation, and/or Lead Counsel's application for attorneys' fees and reimbursement of expenses, must be filed with the Court and delivered to Lead Counsel and Representative Defendants' Counsel such that they are *received* **no later than _____, 2018**, in accordance with the instructions set forth in the Settlement Notice.

**Please do not contact the Court, the Clerk's office, any Defendants in the Action (including Wilmington Trust), M&T Bank, or their counsel regarding this notice.  All questions about this notice, the proposed Settlements, or your eligibility to participate in the Settlements should be directed the Claims Administrator or Lead Counsel.**

Requests for the Settlement Notice and Claim Form should be made to:

Wilmington Trust Securities Litigation
c/o Epiq Class Action & Claims Solutions, Inc.
P.O. Box 2838
Portland, OR 97208-2838

Inquiries, other than requests for the Settlement Notice and Claim Form, may be made to Lead Counsel:

| | |
|---|---|
| Bernstein Litowitz Berger & Grossmann LLP | Saxena White, P.A. |
| Hannah Ross, Esq. | Joseph E. White III, Esq. |
| 1251 Avenue of the Americas | 150 E. Palmetto Park Rd., Ste. 600 |
| New York, NY 10020 | Boca Raton, FL 33432 |
| 1-800-380-8496 | 561-394-3399 |
| blbg@blbglaw.com | contact@saxenawhite.com |

By Order of the Court

#1192068