UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| **IN RE WILMINGTON TRUST SECURITIES LITIGATION** | Master File No. 10-cv-0990-ER |
| | (Securities Class Action) |
| This document relates to: ALL ACTIONS | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                                    November 19, 2018


Presently before the Court are Plaintiffs' "Motion for Final Approval of Class Action Settlements and Plan of Allocation" and Plaintiffs' "Motion for an Award of Attorney's Fees and Reimbursement of Litigation Expenses." On behalf of themselves and other members of the class, Lead Plaintiffs[1] have agreed to two class action settlements:[2] (i) a settlement with the Wilmington Trust Defendants and Underwriter Defendants, and (ii) a settlement with KPMG LLP ("KPMG"). The settlements will resolve the instant matter, in which Lead Plaintiffs allege that Defendants violated federal securities laws by making false and misleading statements to

---

[1]        The United States District Court for the District of Delaware appointed Merced County Employees' Retirement Association, the Coral Springs Police Pension Fund, the St. Petersburg Firefighters' Retirement System, the Pompano Beach General Employers Retirement System, and the Automotive Industries Pension Trust Fund as Lead Plaintiffs, and Bernstein Litowitz Berger & Grossman LLP and Saxena White P.A. as Lead Counsel. ECF No. 26.

[2]        The settlements are embodied in two stipulations: the May 15, 2018 Stipulation and Agreement of Settlement with the Wilmington Trust Defendants and Underwriter Defendants, setting forth an agreement to settle claims against them for $200 million; and the May 25, 2018 Stipulation and Agreement of Settlement with KPMG, setting forth an agreement to settle claims against it for $10 million. ECF No. 821 Exhs. 1 & 2.

conceal Wilmington Trust Corporation's ("Wilmington Trust") true financial condition and

lending practices. Lead Plaintiffs allege that these statements caused investors to purchase stock

at artificially inflated prices and to suffer damages as a result.

For the reasons that follow, the Court will grant both motions.

I.      **BACKGROUND**

A.      Factual and Procedural History

Beginning in November 2010, numerous securities class actions were filed

against certain Defendants in the United States District Court for the District of Delaware,

alleging violations of federal securities laws. On March 7, 2010, the Court consolidated the

various actions under the caption In re Wilmington Trust Securities Litigation pursuant to the

Private Securities Litigation Reform Act of 1995 ("PSLRA"), and appointed Lead Plaintiffs and

Lead Counsel.

On May 16, 2011, Lead Plaintiffs filed their Consolidated Securities Class Action

Complaint. ECF No. 39. The matter was assigned to the Honorable Sue L. Robinson. After

several rounds of motions to dismiss and to amend, Lead Plaintiffs filed the operative complaint,

their Fourth Amended Consolidated Securities Class Action Complaint ("FAC"), on June 13,

2013. ECF No. 149.

The FAC asserted claims for (i) violations of § 10(b) of the Securities Exchange

Act of 1934, and SEC Rule 10b-5, (ii) violations of § 20(a) of the Exchange Act, (iii) violations

of § 11 of the Securities Act of 1933, (iv) violations of § 12(a)(2) of the Securities Act, and (v)

violations of § 15 of the Securities Act. On March 20, 2013, the Court denied Defendants'

motions to dismiss the FAC as to all Defendants except two. ECF No. 185.

On September 12, 2014, Lead Plaintiffs moved for class certification. ECF No. 259. On September 3, 2015, the Court granted Lead Plaintiff's class certification motion in full, appointed Lead Plaintiffs as "Class Representatives," Lead Counsel as "Class Counsel," and Chimicles & Tikellis LLP as "Liaison Counsel" for the Class. ECF No. 406.

On January 15, 2016, the Court approved notice to be disseminated to potential members of the Class. ECF No. 429. The Class Notice informed Class Members of (i) the action pending against the Defendants, (ii) the Court's certification of the action as a class action, and (iii) Class Members' right to request exclusion from the Class. Id. Beginning on March 1, 2016, the Class Notice was mailed to potential Class Members.

On June 13, 2017, the Action was reassigned to the Honorable Eduardo C. Robreno of the United States District Court for the Eastern District of Pennsylvania, sitting by designation in the District of Delaware.

At that time, Lead Plaintiffs, Wilmington Trust Defendants and Underwriter Defendants reached an agreement to settle. The agreed-upon settlement stipulated that Wilmington Trust would pay $200,000,000 in cash to resolve all claims against the Wilmington Trust Defendants and Underwriter Defendants. On May 15, 2018, the parties signed the stipulated settlement. On May 21, 2018, Lead Plaintiffs and KPMG reached an agreement stipulating that KPMG would pay $10,000,000 to resolve all claims against it. On May 25, 2018, Lead Plaintiffs and KPMG signed the stipulation. Lead Counsel assert that the total settlement amount, $210 million, is the second largest securities class action recovery obtained in Delaware.

On July 2, 2018, the Court held a hearing regarding the motion for preliminary approval of the settlement agreements and granted the motion and approved the notice program on July 10, 2018. ECF Nos. 824 & 825.

From July 25, 2018 through September 14, 2018, the claims administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), sent out the approved notice packets. Epiq also published the notices as specified in the settlement agreements and maintained a toll-free information line and website.

Lead Counsel filed the current motions for final approval of the settlements and for fees and costs on September 15, 2018. On October 25, 2018, Lead Counsel updated its filings by reply indicating that no Class Member had objected to the settlements or request for attorney's fee and costs. The Court held a hearing on the two motions on November 5, 2018. ECF No. 826.

B.        The Proposed Class Action Settlements

The terms of the proposed class action settlement agreements are set forth in the Stipulation and Agreement of Settlement with Wilmington Trust Defendants and Underwriter Defendants, ECF No. 821 Exh. 1, and the Stipulation and Agreement of Settlement with KPMG. ECF No. 821 Exh. 2. The terms are outlined below.

1.        The Class

The settlement agreements provide for a Class defined as follows:

> All persons or entities who purchased or otherwise acquired Wilmington Trust common stock during the period of January 18, 2008 up to November 1, 2010 (the "Class Period"), including all persons or entities who purchased shares of Wilmington Trust common stock issued in the secondary common stock offering that occurred on or about February 23, 2010 (the "Offering"), and were damaged thereby.[3]

---

[3]        Excluded from the Class are: (i) Defendants; (ii) members of the Immediate Family of each Individual Defendant; (iii) any person who was an Officer or director of Wilmington Trust, KPMG, or any of the Underwriter Defendants during the Class Period; (iv) any firm, trust, corporation, Officer, or other entity in which any Defendant has or had a controlling interest; (v) any person who participated in the wrongdoing alleged herein; and (vi) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any such excluded party; provided that Investment Vehicles meeting the criteria as defined

ECF No. 821 Exhs. 1 & 2, at 8-9.

        2.        The Proposed Settlement Terms

The settlement agreements provide that Wilmington Trust will pay $200,000,000 and KPMG will pay $10,000,000. Class Members who submit a valid claim form will be reimbursed a pro rata share of the settlement funds in accordance with the proposed Plan of Allocation.

The Plan of Allocation is a method of weighing the claims of the claimants against one another to make pro rata allocations of the settlement funds based on the timing of and amount of Wilmington Trust stock each claimant purchased. Each claimant's Recognized Loss Amount will be based primarily on the difference between the amount of artificial inflation in the prices of Wilmington Trust common stock at the time of acquisition and at the time of sale, or the difference between the actual purchase price and the sale price.

The settlement agreements and notices provided that the settlement funds would also be used to pay attorney's fees not to exceed 28% of each settlement fund, and expenses and costs of not more than $7,500,000. In the instant motions, Plaintiffs' Counsel seek exactly 28% in fees, and $6,845,500.88 in costs and expenses for themselves and Lead Plaintiffs.

In exchange for the benefits provided by the settlement, settlement Class Members agree to release all claims that they alleged or could have alleged in the action.

## II.    DISCUSSION

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval. Fed. R. Civ. P. 23(e)(2). A district court may approve a settlement

---

herein shall in no event be excluded. Also excluded from the class are the persons and entities that submitted a request for exclusion from the Class in connection with the Class Notice.

agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Id. The factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 299 (3d Cir. 1998) (quoting Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975)).

Under Rule 23(h), at the conclusion of a successful class action, class counsel may apply to a court for an award of attorney's fees. The amount of an attorney's fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes finding of fact not clearly erroneous[.]" Sullivan v. DB Invs., Inc., 667 F.3d 273, 329 (3d Cir. 2011) (en banc) (internal quotation marks omitted).

A.      Whether the Notice to the Class Members Was Adequate

The Court must review the settlement notice procedures implemented by the parties. In that notice of the class action was previously approved, the Court is only concerned with notice of the settlements. Rule 23 includes two provisions concerning notice to the class members.

First, Rule 23(c)(2)(B) requires that class members be given the best notice practicable under the circumstances, including individual notice to all potential class members identifiable through reasonable efforts. Specifically, the Rule provides that such notice must, in clear, concise, and plain language, state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) the class member's right to enter an appearance by an attorney; (v) the class member's right to be excluded from the class; (vi) the

time and manner for requesting exclusion; and (vii) the binding effect of settlement on class members. Fed. R. Civ. P. 23(c)(2)(B).

Second, Rule 23(e) requires notification to all members of the class of the terms of any proposed settlement. Fed. R. Civ. P. 23(e)(1). This "notice is designed to summarize the litigation and the settlement" and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." Prudential, 148 F.3d at 327 (internal quotation marks omitted).

In the Court's memorandum and order granting preliminary approval of the settlement, the Court approved notice by direct mail, periodical publication, toll-free information number, and a settlement-specific website. At that time, the Court reviewed the parties' notice program, including the language of the notices, and found that they were clear, included all requisite information, and met the requirements of Rule 23(c)(2)(B) and (e).

Epiq administered the approved notice program. An Epiq representative has declared that 92,339 notice packets have been mailed since September 14, 2018. ECF No. 836 Exh. G. The representative further stated that 5,688 packets were returned as undeliverable. Id. Of those, 1,512 had forwarding addresses and were re-mailed. Id. The notice was also published as agreed and Epiq managed the toll free information number and the website. Id.

Accordingly, the Court finds that the settlement notice program used in this case satisfied Rule 23(c)(2)(B) and (e) and was reasonably calculated to apprise the Class of the proposed settlements, the Class Members' rights to object, and the applicability of a final judgment on all participating Class Members. Fed. R. Civ. P. 23(c)(2)(B); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).

B.        Whether the Proposed Settlements Are Fair and Reasonable

The court must approve the settlement of a class action and determine whether the proposed settlement is "fair, adequate, and reasonable," as required by Rule 23(e)(2). Prudential, 148 F.3d at 316-17. Ultimately, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." Girsh, 521 F.2d at 156. There is a "presumption of fairness in reviewing a class settlement when: '(1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 436 (3d Cir.) (quoting In re Cendant Corp. Litig., 264 F.3d 201, 233 (3d Cir. 2001)). Upon review of the circumstances of the case, the Court concludes that the presumption of fairness applies here: after unsuccessful formal mediation in 2012 and after the parties had taken two years of discovery, they began serious arm's-length negotiations amongst experienced class-action counsel. There were no objections to the settlement.

1.        The Girsh Factors

In Girsh, the Third Circuit identified nine factors to be considered when determining the fairness of a proposed settlement: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the

settlement fund to a possible recovery in light of all the attendant risks of litigation. 521 F.3d at 157. The Court addresses the <u>Girsh</u> factors below, some individually, some together as a group.

a.  <u>The Complexity, Expense, and Likely Duration of the Litigation</u>

The first <u>Girsh</u> factor is the complexity, expense, and likely duration of the litigation, which aims to take into account the "probable costs, in both time and money, of continued litigation." <u>Cendant Corp. Litig.</u>, 264 F.3d at 233 (internal quotation marks omitted).

This case involved a number of highly complex issues, even for a securities action, and counsel devoted substantial resources to consulting with experts to gather the highly technical evidence. That complex and expensive work would have continued if the settlements had not been reached. But for the settlements, the case would have required significant additional expenses including detailed expert reports, cross-motions for summary judgment, motions in limine, pre-trial documents and significant trial preparation, and almost certainly an appeal. The Court concludes that this factor weighs in favor of the settlements.

b.  <u>The Reaction of the Class to Settlement</u>

The second <u>Girsh</u> factor is the reaction of the class to the settlement. "In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." <u>In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.</u>, 55 F.3d 768, 812 (3d Cir. 1995).

There were no objections to the settlements or the request for fees and costs. Lead Counsel contend that this is particularly remarkable in that 82% of Wilmington Trust shares are owned by institutional investors who have the knowledge and resources to properly evaluate a settlement and to object if necessary. The Court concludes that this factor weighs in favor of the settlements.

c.    The Stage of the Proceedings

The third factor to be considered is the stage of the proceedings and the amount of

discovery completed. This <u>Girsh</u> factor requires the Court to evaluate whether Plaintiffs had an

"adequate appreciation of the merits of the case before negotiating" settlement. <u>Prudential</u>, 148

F.3d at 319 (internal quotation marks omitted).

After eight years of intense litigation which included significant discovery

(including the exchange of nearly 13 million documents and the taking of 39 depositions) and

certification of the Class, Lead Counsel and Lead Plaintiffs thoroughly understand the strengths

and weaknesses of the case. This factor weighs in favor of the settlements.

d.    The Risks of Continued Litigation

The fourth, fifth, and sixth <u>Girsh</u> factors are the risks of establishing liability, the

risks of establishing damages, and the risks of maintaining the class action throughout the trial.

These factors "balance the likelihood of success and the potential damage award if the case were

taken to trial against the benefits of immediate settlement." <u>Prudential</u>, 148 F.3d at 319. As to the

risks of establishing liability, this factor "examine[s] what the potential rewards (or downside) of

litigation might have been had class counsel elected to litigate the claims rather than settle them."

<u>Gen. Motors</u>, 55 F.3d at 814. As to damages, this factor "attempts to measure the expected value

of litigating the action rather than settling it at the current time." <u>Cendant Corp. Litig.</u>, 264 F.3d

at 238–39 (quoting <u>Gen. Motors</u>, 55 F.3d at 816). Finally,

> [b]ecause the prospects for obtaining certification have a great
> impact on the range of recovery one can expect to reap from the
> [class] action, this factor [concerning the risks of maintaining the
> class action through trial] measures the likelihood of obtaining and
> keeping a class certification if the action were to proceed to trial.

<u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation

marks and citations omitted).

As discussed above, the parties have had sufficient opportunity to evaluate the

strengths and weaknesses of the case, including the risks of continuing the litigation. This is a

technical financial matter that would likely turn on highly complex expert testimony. While both

parties believe in the merits of their case, they understand the unpredictability of a case of this

type. Moreover, to support their fraud claims, Plaintiffs would have been required to establish

that Defendants acted intentionally or recklessly, which is very difficult to prove. See, e.g.,

Kalnit v. Eichler, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000), aff'd, 264 F.3d 131 (2d Cir. 2001)

("The element of scienter is often the most difficult and controversial aspect of a securities fraud

claim."). Likewise, Plaintiffs would have had to establish that their losses were attributable to

Defendants' fraud rather than upheaval in the market. The fact of a related criminal trial and

subsequent convictions also added significant delays, would have added risk and uncertainty in

litigating the action, and would have likely affected the financial recovery in this case. The risk

of class decertification would have been low, but such a risk did exist. Thus, the factors

regarding risks of establishing liability and damages weigh in favor of the settlement, while the

risk of decertification is neutral.

          e.        The Ability of the Defendant to Withstand Greater Judgment

The seventh factor regards the ability of the defendant to withstand a greater

judgment. This factor is "most clearly relevant where a settlement in a given case is less than

would ordinarily be awarded but the defendant's financial circumstances do not permit a greater

settlement," Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011). That is not

the case here.

Defendants are capable of withstanding a larger judgment. However, they would

still not be required to pay more than the Class Members are entitled. See Warfarin, 391 F.3d at

538 (finding this factor irrelevant since the defendant would not have to pay more than what the

class members were owed). The Court finds that this factor does not weigh heavily for or against the settlement. See, e.g., In re Processed Egg Prod. Antitrust Litig., No. 08-MD-2002, 2016 WL 3584632, at *16 (E.D. Pa. June 30, 2016) ("Even if the Court were to presume that the defendants' resources far exceeded the settlement amount, in light of the balance of the other factors considered which indicate the fairness, reasonableness, and adequacy of the settlement, the ability of the defendants to pay more, does not weigh against approval of the settlement.").

        f.        The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The eighth and ninth factors are the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation. These factors examine "whether the settlement represents a good value for a weak case or a poor value for a strong case." Warfarin, 391 F.3d at 538.

Plaintiffs estimate that the Class suffered $530 million to $546 million in recoverable damages and have provided expert calculations to support the estimate. ECF No. 836 Exh. B. Thus, the $210 million recovery is nearly 40% of the Class' maximum likely recovery, which Plaintiffs argue is far better than average. ECF No. 835 p. 8 (citing Cornerstone Research, Securities Class Action Settlements: 2017 Review and Analysis, at 19-20 (2018) (providing that the median recovery of damages in class action securities litigation in the Third Circuit from 2008-2017 was 5%)). The Court concludes this factor weighs in favor of the settlement agreements.

It is clear that upon balancing of the Girsh factors, they tip strongly in favor of the settlement.

        2.        The Prudential Factors

The Court also finds that the similar factors from Prudential, 148 F.3d at 323, are

met in this case. Those factors include:

> [1] the maturity of the underlying substantive issues, as measured by [among other things] . . . the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

Id. at 323.

As stated above, the issues are very mature and probable outcomes were identified. There do not appear to be any other similar pending cases. Class Members were given the opportunity to opt-out of the Class when it was certified. As discussed below, the fees and costs sought are reasonable. Regarding the final factor, the court finds that the allocation of the settlement funds to the individual Class Members is fair and reasonable. The allocation was developed by the parties' experts and includes a calculated loss amount for each relevant stock purchase. Specifically, the loss amount equals the difference between the alleged artificial inflation on the date of stock purchase and the alleged artificial inflation on the date of sale, or the difference between the actual purchase price and the sale price, whichever is less. The settlement funds will be allocated on a pro rata basis based on the relative size of the Class Members' loss.

In that the Girsh and Prudential factors weigh in favor of the settlements, the Court finds them fair and will approve the settlement agreements.

D.     Attorney's Fees, Costs, and Lead Plaintiffs' Expenses

When class counsel successfully settle a class action, they may apply for reasonable attorney's fees and nontaxable costs. Fed. R. Civ. P. 23(h). "[A] thorough judicial

review of fee applications is required in all class action settlements." Gen. Motors, 55 F.3d at 819. The amount of the fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes finding of fact not clearly erroneous[.]" Sullivan, 667 F.3d at 329 (internal quotation marks and citation omitted).

Lead Counsel seek an attorney's fee award in the amount of 28% of the settlement fund, or $58.8 million, plus interest at the same rate as earned by the settlement fund. Counsel also seeks reimbursement of $6,790,044.82 in litigation expenses while Lead Plaintiffs seek $55,456.06 in costs and expenses related to time they spent on the case.

Courts in the Third Circuit have repeatedly approved the percentage-of-recovery method of awarding fees in common fund securities fraud cases "because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" In re Rite Aid Corp. Sec. Litig, 396 F.3d 294, 300 (3d Cir. 2005) (quoting Prudential, 148 F.3d at 333). Courts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly selected lead plaintiff and properly selected lead counsel. In re Cendant Corp. Sec. Litig., 404 F.3d 173, 197 (3d Cir. 2005).

In this case, the five Lead Plaintiffs agreed to the 28% attorney's fee request. Counsel exhaustively details the extensive work performed in this case in their declaration in support of the motion, which includes the detailing of multiple rounds of voluminous motions to dismiss, significant discovery and investigative efforts as well as related motion practice, the successful certification of the Class, Plaintiffs' Counsel's work with experts, and significant settlement negotiations. ECF No. 836.

1.      The Gunter/Prudential Factors

The Court has also determined that the Gunter/Prudential factors indicate that the

attorney's fee request is fair and reasonable. See In re Diet Drugs, 582 F.3d at 541. The factors

are: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence

of substantial objections by members of the class to the settlement terms and/or fees requested by

counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of

the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by class

counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of

class counsel relative to the efforts of other groups, such as government agencies conducting

investigations; (9) the percentage fee that would have been negotiated had the case been subject

to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative

terms of settlement. Id.

a.      The Size of the Fund Created and the Number of Beneficiaries

Plaintiffs' Counsel have secured a recovery that provides for a payment of

$210,000,000, which accounts for nearly 40% of the Class' maximum likely recoverable

damages. This is much higher than the Third Circuit median recovery of 5% of damages in class

action securities litigation. See ECF No. 835 p. 8 (citing Cornerstone Research, Securities Class

Action Settlements: 2017 Review and Analysis, at 19-20 (2018)). The Court concludes that this

factor weighs in favor of the request for fees.

b.      The Absence of Substantial Objections by Class Members

The Class Members were on notice that Plaintiffs' Counsel would apply for

attorney's fees not to exceed 28% of the settlement fund and costs of not more than $7,500,000.

As stated, Plaintiffs' Counsel has requested exactly 28% but has requested slightly less for their

and Lead Plaintiffs' expenses. There were no objections to the settlement or the attorney's fees request. The Court concludes that this factor weighs in favor of the request for fees.

### c. The Skill and Efficiency of the Attorneys

As stated above, Plaintiffs' Counsel are highly experienced attorneys. The significant amount of recovery in the settlement agreements attests to their efficiency. Defense counsel was likewise skilled and experienced. Plaintiffs' Counsel's ability to successfully litigate against and negotiate with them further shows Plaintiffs' Counsel's legal prowess. The Court concludes that this factor weighs in favor of the request for fees.

### d. The Complexity and Duration of the Litigation

As also detailed above, the case is very complex, even for a securities case, and has taken, and would have continued to take, significant time to litigate. The Court concludes that this factor weighs in favor of the request for fees.

### e. The Risk of Non-Payment

Plaintiffs' Counsel undertook this case on a contingent basis, taking the risk that the litigation would yield little or no recovery and leave them uncompensated. Plaintiffs' Counsel has also waited eight years to receive any payment. There were significant risks involved in this complex case. The risks in the case were also discussed above and are exhaustively documented in Lead Counsel's declaration in support of their motion. ECF No. 836. The Court concludes that this factor weighs in favor of the request for fees.

### f. The Amount of Time Devoted to the Case by Class Counsel

Plaintiffs' Counsel have identified 195,075.13 hours in the prosecution of this litigation over eight years with a resulting lodestar of $79,976,223.50. They also asserted $6,790,044.82 in litigation expenses for the benefit of the settlement Class. Counsel

proceeded through intensive discovery and motions practice including four rounds of motions to dismiss, successfully moving for class certification, compelling substantial document production, and settling only near the summary judgment deadline. There are over 800 docket entries in the case. While the Court could disagree with the "billing payment" exercise in some of Counsels' allocation of resources to certain tasks (too many lawyers assigned to accomplish certain tasks), as a whole, the amount of time claimed is not unreasonable. The Court concludes that this factor weighs in favor of the request for fees.

g.      Awards in Similar Cases

Counsel seeks 28% of the settlement fund in fees. Regarding securities settlements in the Third Circuit, this is a typical fee percentage. See In re Datatec Sys., Inc. Sec. Litig., No. 04-CV-525 (GEB), 2007 WL 4225828, at *8 (D.N.J. Nov. 28, 2007) (providing that fees of 25% to 33 1/3% of the recovery are typical in similar cases); see also In re: Genworth Fin. Sec. Litig., No. 3:14-CV-682-JAG, 2016 WL 7187290, at *1 (E.D. Va. Sept. 26, 2016) (approving 28% of the settlement fund for fees). The Court concludes that this factor weighs in favor of the request for fees.

h.      The Value of Benefits Attributable to the Efforts of Class Counsel Relative to the Efforts of Other Groups, such as Government Agencies

While there was an overlapping criminal investigation, the underlying events of the civil action occurred two years before the charged criminal conduct and the criminal action was narrower in scope than the civil action. Lead Counsel also obtained the settlement with Wilmington Trust before the end of the criminal trial. As discussed at the July 2, 2018 preliminary approval hearing, it appears that most of the work in this case was done

independently of the government's work in the criminal action. See ECF No. 826 pp. 36-37. The

Court concludes that this factor weighs in favor of the request for fees.

       i.      The Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement at the Time Counsel Was Retained

There is no indication that a 28% fee is not commensurate with any negotiated

fee. In fact, the Lead Plaintiffs have all authorized this number and support the fee request in

their declarations. See ECF No. 836 Exh. C. Moreover, the requested fee award is less than one-

third of the recovery, which is often cited as the market rate for contingent fee cases in litigation

in general. The Court concludes that this factor weighs in favor of the request for fees.

       j.      Any innovative terms of settlement

Lead Counsel does not specifically highlight any particularly innovative terms.

Thus, Court concludes that this factor is neutral.

In that nearly all of the Gunter/Prudential factors favor the fee request (and none

disfavor it), the Court concludes that the fee request is fair and reasonable.[4]

       2.      Litigation Costs

Plaintiffs' Counsel also seek the reimbursement of $6,790,044.82 in litigation

expenses. Although high, Counsel has demonstrated that their expenses were necessary and the

fees paid to third-parties at market rates. These expenses relate to the management of documents,

expert fees, computerized research, photocopying, transcripts, postage, travel, and discovery

expenses. Expert fees alone were 68.8% of the total litigation expenses due to the highly

---

[4]      A lodestar cross-check indicates fairness as well. Plaintiffs' Counsel provide that their lodestar is $79,976,223.50 which is more than their request for $58.8 million. This results in a negative multiplier of .74. Counsel have demonstrated through extensive documentation that they and their staff have expended 195,075.13 hours on the litigation with reasonable attorney hourly rates ranging from $295 to $1,250. See ECF No. 836 Exh. D.

technical and complicated nature of the subject matter. After examining the records provided by

Lead Counsel, the Court concludes that the expenses detailed appear to have been reasonably

necessary for the prosecution of the case and are, therefore, reasonable. See ECF No. 836 Exhs.

D & E; In re Viropharma Inc. Sec. Litig., No. CV 12-2714, 2016 WL 312108, at *18 (E.D. Pa.

Jan. 25, 2016) (providing that class counsel "are entitled to reimbursement of expenses that were

'adequately documented and reasonable and appropriately incurred in the prosecution of the

class action'") (quoting Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir. 1995)).

       3.      Reimbursement to Lead Plaintiffs under 15 U.S.C. § 78u-4(a)(4)

Pursuant to 15 U.S.C. § 78u-4(a)(4), Lead Plaintiffs seek reimbursement of

$55,456.06 in costs and expenses related to time they spent on the case. Lead Counsel indicates

that this amount is not in the nature of an incentive award but is strictly reimbursement. See 15

U.S.C. § 78u-4(a)(4) ([A]n "award of reasonable costs and expenses (including lost wages)

directly relating to the representation of the class" may be made to "any representative party

serving on behalf of a class."). Specifically, Coral Springs Police Pension Fund seeks $7,556.00,

Pompano Beach General Employees Retirement System seeks $11,538.24, St. Petersburg

Firefighters' Retirement System seeks $22,109.00, and Merced County Employees' Retirement

Association seeks $14,252.82.[5] Lead Plaintiffs detail the hours of work performed by each of

them in their declarations and indicate that their employees took an active role in the litigation,

including reviewing significant pleadings and briefs, communicating regularly with Lead

Counsel, authorizing settlement discussions, monitoring the progress of settlement negotiations,

and approving the settlements. ECF No. 836 Exh. C. After reviewing the submitted materials, the

---

[5]    Lead Plaintiff Automotive Industries Pension Trust Fund has not requested
reimbursement.

Court concludes that the reimbursement to Lead Plaintiffs provided for under the statute is reasonable.

## II.       CONCLUSION

The Court concludes that notice was properly administered to the Class Members; the case was hard-fought over an extended period of time between sophisticated parties and counsel; and the settlement agreements are fair, reasonable, and adequate and, thus, the Court will approve them. Further, the Court finds that the requests for Plaintiffs' Counsel's fees and costs as well as reimbursement for Lead Plaintiffs' relevant expenditures are reasonable. As a result, the Court will grant Plaintiffs' "Motion for Final Approval of Class Action Settlements and Plan of Allocation" and Plaintiffs' "Motion for an Award of Attorney's Fees and Reimbursement of Litigation Expenses."

Appropriate orders follow.