**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **IN RE WILMINGTON TRUST SECURITIES LITIGATION** | Master File No. 10-cv-00990-ER |
| | (Securities Class Action) |
| This document relates to: ALL ACTIONS | Hon. Eduardo C. Robreno |

## ~~[PROPOSED]~~ ORDER APPROVING DISTRIBUTION PLAN

Lead Plaintiffs moved this Court for an order approving a plan for distribution of the Net Settlement Funds to Authorized Claimants in the above-captioned class action (the "Action"). Having reviewed and considered all the materials and arguments submitted in support of Plaintiffs' motion, including the Memorandum in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan and the Declaration of Alexander Villanova in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan (the "Villanova Declaration"),

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. This Order incorporates by reference the definitions in the Villanova Declaration, the Stipulation and Agreement of Settlement with Wilmington Trust Defendants and Underwriter Defendants dated May 15, 2018 (D.I. 821-1) (the "Wilmington Trust/Underwriter Stipulation"), and the Stipulation and Agreement of Settlement with KPMG dated May 25, 2018 (D.I. 821-2) (the "KPMG Stipulation," and together with the Wilmington Trust/Underwriter Stipulation, the

"Stipulations"), and all capitalized terms used in this Order shall have the same meanings as defined in the Villanova Declaration or the Stipulations.

2. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members.

3. Lead Plaintiffs' proposed plan for distribution of the Net Settlement Funds to Authorized Claimants is **APPROVED**. Accordingly:

(a) The administrative recommendations of the Court-approved Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), to accept the Timely Eligible Claims stated in Exhibit D to the Villanova Declaration and the Late But Otherwise Eligible Claims stated in Exhibit E to the Villanova Declaration, are adopted;

(b) The Claims Administrator's administrative recommendations to reject wholly ineligible Claims, as stated in Exhibit F to the Villanova Declaration, are adopted;

(c) Epiq is directed to conduct an Initial Distribution of the Net Settlement Funds, after deducting all payments previously allowed and the payments approved by this Order, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, while maintaining a 10% reserve from the Net Settlement Funds to address any tax liability and claims administration-related contingencies that may arise, as stated in paragraph 39(a) of the Villanova Declaration. Specifically, as stated in paragraph 39(a)(1) of the Villanova Declaration: (1) Epiq will calculate each Authorized Claimant's: (a) *pro rata* share of the Wilmington Trust/Underwriter Net Settlement Fund based on the amount of the Authorized Claimant's Class Period Recognized Claim in comparison to the total Class Period Recognized Claims of all Authorized Claimants; and (b) *pro rata* of the KPMG Net

Settlement Fund based on the amount of the Authorized Claimant's Auditor Recognized Claim in comparison to the total Auditor Recognized Claims of all Authorized Claimants as stated in subparagraph 39(a)(1) of the Villanova Declaration; (2) Epiq will, in accordance with the terms of the Court-approved Plan of Allocation, calculate the total amount each Authorized Claimant would recover in accordance with the calculations stated in subparagraph 39 (a)(2) and then it will eliminate from the Initial Distribution any Authorized Claimant whose combined *pro rata* shares of the Wilmington Trust/Underwriter Net Settlement Fund and/or KMPG Net Settlement Fund calculates to less than $10.00. These Claimants will not receive any payment from the Net Settlement Funds and will be so notified by Epiq; (3) After eliminating Claimants who would have received less than $10.00 in the Initial Distribution, Epiq will recalculate the *pro rata* share of the Wilmington Trust/Underwriter Net Settlement Fund and KPMG Net Settlement Fund for all Authorized Claimants who would have received $10.00 or more pursuant to the calculations described in subparagraph (a)(1) above. The sum of those *pro rata* shares is the Authorized Claimant's "Distribution Amount"; (4) Authorized Claimants whose Distribution Amount calculates to less than $100.00 under subparagraph 39(a)(4) above will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). These Authorized Claimants will get no additional funds in subsequent distributions; (5) After deducting the payments to the Claims Paid in Full, 90% of the remaining balance of each Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $100.00 or more under subparagraph (c)(3) above. The remaining 10% of the Net Settlement Funds will be held in reserve (the "Reserve") to address any tax liability and claims administration-

related contingencies that may arise. To the extent the Reserve is not depleted, the remainder will be distributed in the "Second Distribution" described in subparagraph (f) below.

(d) In order to encourage Authorized Claimants to promptly cash their checks, all distribution checks will bear the following notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." Lead Counsel and Epiq are authorized to take appropriate action to locate and contact any Authorized Claimant who has not cashed his, her, or its check within said time as detailed in paragraph 39(b) footnote 7 of the Villanova Declaration;

(e) Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions stated in paragraph 39(b) footnote 7 of the Villanova Declaration will irrevocably forfeit all recovery from the Settlements, and the funds allocated to all stale-dated checks will be available to be distributed to other Authorized Claimants in the Second Distribution. Similarly, Authorized Claimants who do not cash their second or subsequent distributions (should such distributions occur) within the time allotted or on the conditions stated in paragraph 39(b) footnote 7 of the Villanova Declaration will irrevocably forfeit any further recovery from the Net Settlement Funds;

(f) After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks (as provided in paragraph 39(b) footnote 7 of the Villanova Declaration), but not earlier than nine (9) months after the Initial Distribution, Epiq will, after consulting with Lead Counsel, conduct a second distribution

(the "Second Distribution"), in which any amount remaining in the Net Settlement Funds after the Initial Distribution, including from the Reserve and the funds for all void stale-dated checks, after deducting Epiq's fees and expenses incurred in administering the Settlements for which it has not yet been paid, including Epiq's estimated costs of the Second Distribution, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Initial Distribution who cashed their Initial Distribution check and are entitled to receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. Additional distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter in six-month intervals until Lead Counsel, in consultation with Epiq, determines that further distribution is not cost-effective;

(g) At such time as Lead Counsel, in consultation with Epiq, determines that further distribution of the funds remaining in the Net Settlement Funds is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after August 1, 2019, such Claims will be processed, and any such Claims that are otherwise valid, as well as any previously received Claims for which an adjustment was received after submission of Lead Plaintiffs' motion that resulted in an increased Recognized Claim, will be paid in accordance with subparagraph (h) below. If any funds remain in the Net Settlement Funds after payment of such late or late-adjusted Claims, the remaining balance of the Net Settlement Funds, after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Funds and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and

any escrow fees, will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court;

(h) No new Claims may be accepted after August 1, 2019, and no further adjustments to previously received Claims that would result in an increased Recognized Claim amount may be made, subject to the following exception. If Claims are received or modified that would have been eligible for payment or additional payment under the Plan of Allocation if timely received, then, at the time that Lead Counsel, in consultation with Epiq, determines that a redistribution is not cost-effective as provided in subparagraph (g) above, and after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Funds and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, such Claimants, at the discretion of Lead Counsel, may be paid the distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible;

(i) All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted, or who are otherwise involved in the administration or taxation of the Settlements, are hereby released and discharged from any and all claims arising out of that involvement, and all Class Members and other Claimants, whether or not they receive payment from the Net Settlement Funds, are hereby barred from making any further claims against the Net Settlement Funds, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with

the administration or taxation of the Settlements, or any other person released under the Settlements beyond the amounts allocated to Authorized Claimants;

(j) All of Epiq's fees and expenses incurred in the administration of the Settlements and estimated to be incurred in connection with the Initial Distribution of the Net Settlement Funds as stated in the invoices attached as Exhibit G to the Villanova Declaration are approved, and Lead Counsel is directed to pay the outstanding balance of $444,243.02 out of the Settlement Funds to Epiq; and

(k) Unless otherwise ordered by the Court, Epiq may destroy the paper copies of the Claims and all supporting documentation one year after the Initial Distribution, and one year after all funds have been distributed, Epiq may destroy electronic copies of the same.

4. This Court retains jurisdiction to consider any further applications concerning the administration of the Settlements, and any other and further relief that this Court deems appropriate.

SO ORDERED this 10th day of October 2019.

The Honorable Eduardo C. Robreno
United States District Judge